IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| STELLA MORRISON | § | |
| | § | |
| v. | § | NO. 1:13-CV-327 |
| | § | |
| LAYNE WALKER, JEFFERSON | § | |
| COUNTY, TEXAS, AND THE STATE | § | |
| OF TEXAS | § | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

The Plaintiff, Stella Morrison ("Morrison"), an attorney, filed suit against Layne Walker, District Judge for the 252nd District Court ("Walker") and Jefferson County ("the County"), Texas.[1] (Doc. No. 1.) Morrison filed the suit pursuant to 42 U.S.C. §§ 1981 and 1983 claiming Walker and the County have violated her civil and constitutional rights. She also alleges numerous state law claims against both Defendants. Pending before the court is Walker's "Motion to Dismiss" (Doc. No. 4) in which he asserts the following grounds for dismissal: Walker is entitled to judicial immunity; the suit is barred by the *Rooker-Feldman* doctrine; and the state law claims are barred by TEX. CIV. PRAC. & REM. CODE § 101.106. For the reasons stated below, the court finds Morrison's claims should be dismissed as her complaint fails to contain "enough facts to state a claim to relief that is plausible on its face" to overcome Walker's defenses of absolute judicial immunity and statutory immunity found in TEX. CIV. PRAC. & REM. CODE § 101.106. However, Morrison will be provided the opportunity to amend one of her claims.

**I. Jurisdiction**

Morrison seeks recovery pursuant to 42 U.S.C. §§ 1981 and 1983. For actions brought under these statutory provisions, the court has subject matter jurisdiction predicated upon federal

---

[1]. The State of Texas was formerly a defendant, but Morrison later moved to dismiss it from the lawsuit. (Doc. No. 17.)

question jurisdiction. See 28 U.S.C. §1331. The court has supplemental jurisdiction over the state law causes of action. See 28 U.S.C. § 1367. Venue is proper in this case because the events giving rise to the above claims occurred within the confines of this district. See 28 U.S.C. § 1391.

Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, the Local Rules of the United States District Court for the Eastern District of Texas, Appendix B, and order of the District Court, this matter is before the undersigned United States Magistrate Judge for all proceedings and entry of judgment in accordance with the consent of the parties. (Doc. No. 28.)

## II. Motion to Dismiss

Walker moves to dismiss the case under FED. R. CIV. P. 12(b)(1) and 12(b)(6). A party asserts a motion under Rule 12(b)(1) if it believes the court lacks subject matter jurisdiction, and under Rule 12(b)(6) if it believes the complaint fails to state a claim upon which relief can be granted.

*1. Should this motion be decided under Rule 12(b)(1) or 12(b)(6)?*

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. Willoughby v. U.S. ex rel. U.S. Dept. of the Army, 730 F.3d 476, 479 (5th Cir. 2013). As a threshold matter, it is not entirely clear whether claims of judicial immunity are properly decided under Rule 12(b)(1). Citing no authority, Walker obliquely argues that because he is entitled to judicial immunity, the claims against him should be dismissed because the court lacks subject matter jurisdiction. (Doc. No. 4, p.6.) Because Morrison has filed her lawsuit pursuant to 42 U.S.C. §§1981 and 1983, this court has federal question jurisdiction. The instant motion to dismiss does not call into question this court's jurisdiction to hear the case *per se*, so it is not

entirely clear how a claim of judicial immunity deprives the court with that federal question jurisdiction.

While motions to dismiss under Rule 12(b)(1) and 12(b)(6) are analyzed under the same standards, Benton v. United States, 960 F.2d 19, 21 (5th Cir. 1992), the differences between the two rules for the purposes of this motion are not simply academic. First, in reviewing a 12(b)(6) motion, a court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. City of Clinton v. Pilgrim's Pride Corp., 632 F.3d 148, 152-53 (5th Cir. 2010). In reviewing a motion under 12(b)(1), however, the court is not only permitted to look at the complaint alone, but also undisputed facts evidenced in the record, and the court's resolution of disputed facts. Willoughby, 730 F.3d 476, 479. Second, since a court must have original jurisdiction in order to exercise supplemental jurisdiction, a dismissal pursuant to Rule 12(b)(1) precludes a district court from exercising supplemental jurisdiction over related state law claims—which are alleged here. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).

There is no clear guidance whether this court should decide the motion to dismiss as it relates to judicial immunity under either Rule 12(b)(1) or 12(b)(6). Courts have analyzed motions to dismiss raising judicial immunity under either, and sometimes both. Compare Ballard v. Wall, 413 F.3d 510 (5th Cir. 2005) (deciding motion to dismiss raising judicial immunity under 12(b)(6)); Shipula v. Texas Dept. of Family Protective Services, No. H-10-3688, 2011 WL 1882521, at *12 (S.D. Tex. May 17, 2011) (deciding motion to dismiss raising judicial immunity under 12(b)(1)); Mireles v. Waco, 502 U.S. 9 (1991) (motion to dismiss granted pursuant 12(b)(1) and 12(b)(6)); Campbell v. Rugg, No. 1:12-cv-385, 2013 WL 4013180, at *3 n.2 (E.D. Tex, Aug. 5, 2013) (Giblin, M.J.) (*sua sponte* analyzing judicial immunity under 12(b)(1) and 12(b)(6) even though defendant incorrectly filed motion to dismiss under 12(b)(2)). Because Morrison does not

dispute in her response that this motion should only be analyzed under a particular rule, and there is no clear indication from a higher court that claims of judicial immunity must be raised pursuant to 12(b)(1) or 12(b)(6), this court will analyze Walker's motion under both.

    a. Rule 12(b)(1) Standard

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a lawsuit because the court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). As mentioned previously, to determine whether the case should be dismissed, a court may evaluate "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." United States ex rel. Vavra v. Kellogg Brown & Root, Inc., No. 1:04-cv-42, 2011 U.S. Dist. LEXIS 85712, at *8-9 (E.D. Tex. Feb. 8, 2011) (quoting Spotts v. United States, 613 F.3d 559, 565 (5th Cir. 2010) (internal quotation marks omitted)). In doing so, a court "must accept all factual allegations in the plaintiff's complaint as true." Den Norkse Stats Oljeselkap As v. Heeremac V.O.F., 241 F.3d 420, 424 (5th Cir. 2001).

"Federal courts are courts of limited jurisdiction," possessing only that power granted by the Constitution or a statute. Rasul v. Bush, 542 U.S. 466, 489 (2004). Parties to an action cannot confer jurisdiction on a federal court through "indolence, oversight, acquiescence, or consent." Johnson v. United States, 460 F.3d 616, 621 (5th Cir. 2006) (quoting United States v. Horn, 29 F.3d 754, 768 (1st Cir. 1994) (internal quotation marks omitted)). Therefore, a court must dismiss an action for lack of subject matter jurisdiction when it lacks the constitutional or statutory authority to adjudicate the case. CleanCOALition v. TXU Power, 536 F.3d 469, 473 (5th Cir. 2008).

"It is to be presumed that a cause lies outside" of the limited jurisdiction of a federal court. Rasul, 542 U.S. at 489 (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal quotation marks omitted)). The burden of rebutting this presumption rests on the party seeking to invoke federal jurisdiction. United States *ex rel.* Vavra, 2011 U.S. Dist. LEXIS 85712, at *8 (citing Hertz Corp. v. Friend, 130 S. Ct. 1181, 1194 (2010)).

    b. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009). When a court analyzes a Rule 12(b)(6) motion, it "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Beaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)). A court should grant such a motion only when the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

### III. Background

Morrison is a veteran criminal defense attorney who has practiced law in Jefferson County, Texas for many years. (Doc. No. 1, p.2.) She is African-American. Layne Walker is the presiding judge for the 252nd District Court in Jefferson County. Both Morrison and her husband,

Kermit Morrison, have at different times unsuccessfully run against Walker for election to the 252nd District Court. Morrison's complaint alleges that because of these unsuccessful campaigns, she has been the victim of ongoing tortious, intentionally racist and unconstitutional actions at the hands of Walker. In her complaint, Morrison lists several alleged incidents that she believes indicate her constitutional and civil rights have been violated, and therefore state a cause of action under 42 U.S.C. §§ 1981 and 1983:

- Over an unknown period of time, Walker filed an unspecified number of grievances against Morrison in order to have her law license revoked. ("filing grievances")

- Over an unspecified period of time, Walker issued a standing order preventing Morrison from entering a public hallway leading to Walker's and another judge's chambers. Pursuant to this order, Morrison was assaulted by a sheriff's deputy when she was removed from this area. ("the removal incident")

- On an unspecified date, Walker informed Morrison that she could not practice law in the 252nd District Court. After that pronouncement proved unsuccessful, Walker acted unprofessionally towards Morrison and her clients. Over an unspecified period of time, he has also intentionally disrupted Morrison's relationships with courtroom personnel on an ongoing basis. ("unprofessional treatment")

- On an unspecified date, Walker unlawfully held Morrison in contempt of court. ("holding Morrison in contempt")

- On an unspecified date, Walker worked together with the Jefferson County District Attorney to fabricate perjury charges against Morrison. ("false criminal charges")

### IV. Analysis

*1. Absolute Judicial Immunity*

Judicial immunity is immunity from suit and not just from the ultimate assessment of damages. Mireles, 502 U.S. at 9-10. Judicial immunity applies even if the judge is alleged to have acted maliciously, corruptly and in bad faith. Pierson v. Ray, 386 U.S. 547, 554 (1967). "It is the judge's actions alone, not intent, that [courts] must consider." Malina v. Gonzales, 994 F.2d 1121, 1125 (5th Cir. 1993).

Judicial immunity is only overcome in two sets of circumstances. Mireles, 502 U.S. at 11. First, a judge is not immune from liability for "non-judicial actions." Id. (citations omitted). To determine whether a judge's actions are in fact judicial in nature, the court is required to consider four factors: 1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. Ballard v. Wall, 413 F.3d at 515 (citation omitted) (hereinafter referred to as the *Ballard* factors). These factors are broadly construed in favor of immunity. Id. Furthermore, a judge enjoys immunity even if not all of the factors are met. Malina, 994 F.2d at 1124. The relevant inquiry regarding the above four factors is to examine the "nature and function" of the act, not the act itself. Id. (citation omitted). The court is to look to the particular act's relation to a general function normally performed by a judge. Id.

Second, a judge is not immune for actions, though judicial in nature, that are taken in the complete absence of all jurisdiction. Mireles, 502 U.S. at 9-10. A judge is immune from suit if there is at least *some* subject matter jurisdiction for the judge's action—even if he acted in excess of his authority. Malina, 994 F.2d at 1125.

In response to the motion to dismiss, Morrison urges the court to follow the "seminal" Fifth Circuit decision regarding a judge's personal liability, Harper v. Merckle, 638 F.2d 848 (5th Cir. 1981). In *Harper*, the Fifth Circuit held "only when it is beyond reasonable dispute that a judge has acted out of personal motivations and has used his judicial office as an offensive weapon to vindicate personal objectives, and it further appears certain that no party has invoked the judicial machinery for any purpose at all, then the judge's actions do not amount to 'judicial acts.'" Id. at 859. That case involved Judge Merckle's use of a sham contempt proceeding and later incarceration of an acquaintance's former husband.[2] Yet, the *Harper* court cautioned that their holding has "extremely limited applicability" and is "exceedingly narrow and tailored to this, the rarest of factual settings." Id. In Adams v. McIlhany, 764 F.2d 294, 298 n.4 (1985), the Fifth Circuit subsequently declared *Harper* "virtually without precedential value," and stated its reasons are inconsistent with McAlester v. Brown, 469 F.2d 1280 (5th Cir. 1972), Bradley v. Fisher, 80 U.S. 335 (1871), Stump v. Sparkman, 435 U.S. 349 (1978), and Harlow v. Fitzgerald, 457 U.S. 800 (1982). This is hardly the description of a "seminal case," and the precedential value of *Harper*, if any, is not controlling given the distinguishing facts in the instant suit.

---

2. Throughout her response, Morrison repeatedly argues Walker is not entitled to judicial immunity because like Judge Merckle, Walker used his "position as a judge as an offensive weapon against" Morrison. (Doc. No. 22.)

2. *The alleged incidents giving rise to relief under 42 U.S.C. §§ 1981, 1983*

    a. <u>Filing Grievances</u>

Morrison alleges Walker has orchestrated and written grievances to the Texas State Bar against Morrison in an ongoing effort to have her law license revoked. (Doc. No. 1, pp.4-5.) The unspecified number of grievances allegedly contain a barrage of insults directed at Morrison for demonstrating professional misconduct and providing constitutionally ineffective assistance of counsel. (<u>Id.</u>) Although the context of the grievances is not clear from the complaint, Morrison admits the grievances relate to her alleged malfeasance in his court. (Doc. No. 22, p.14.)

First, the court must disregard Walker's intent and examine the nature and function of the acts—filing grievances to the State Bar—not the acts themselves. <u>Malina</u>, 994 F.2d at 1124 (citing <u>Mireles</u>, 502 U.S. at 13). This analysis is to be scrutinized against the factors set forth in *Ballard*. A judge shall inform the State Bar of Texas or take other appropriate action when he feels the attorney is in violation of the Texas Disciplinary Rules of Professional Conduct or if the judge has a substantial question as to the lawyer's fitness to act as an attorney. TEX. CODE OF JUDICIAL CONDUCT, *reprinted in* V.T.C.A., Govt. Code T. 2, Subt. G App. B, Jud. Conduct, Canon 3. The grievances concerned Morrison's representation of defendants in Walker's court. Thus, notifying the State Bar of Morrison's conduct through grievances is a judicial function, for activities occurring in the court, concerning cases in the court, and arising directly out of seeing the judge in his official capacity. All of the *Ballard* factors are met. Because the grievances also concerned Morrison's performance as a lawyer handling cases in the district court, Walker did not act without any jurisdiction.

    b. <u>The Removal Incident</u>

Morrison next alleges Walker issued a standing order that Morrison was not allowed either in his chambers or in the public hallway outside his chambers. (Doc. No. 1, p.7.) Upon

Walker's orders, this "edict" led to the alleged assault and forcible removal of Morrison by a sheriff's deputy. Attached to Morrison's complaint is her affidavit in which she recounts this incident. (Doc. No. 1, Ex. 2.) In her affidavit, Morrison stated that she advised a court employee she wished to speak to Ed Tanner, an assistant to Walker, about confirming her receipt of a "writ." That employee "opened the secure door that leads to Judge Walker and Judge Stevens office's [sic] and closed it behind her." Then, another employee "opened the secure door and escorted [her] in." After Morrison knocked on the glass to let Tanner know she was there, Tanner waved at her to go away. At that moment, one of Walker's bailiffs yelled at her stating, "Judge Walker doesn't want you back here, you got no business being back here." He then allegedly grabbed her and escorted her to the Sheriff's office where he referred her to their internal affairs department.

The complaint describes the area where the alleged assault occurred as a "public hallway outside" Walker's chambers, whereas in her affidavit, Morrison describes it as an area behind a "secure door" leading to Judge Walker's chambers. Since this motion is filed pursuant to Rule 12(b)(1), the court can resolve disputed facts. To the extent there is a dispute between the complaint and Morrison's affidavit concerning the characterization of the area, the court finds the alleged assault occurred in a secured area leading to Walker's chambers rather than a public hallway. Morrison's description of the incident in her affidavit is more credible than the complaint because it was made under oath, based upon her own observations and submitted to a lieutenant with the internal affairs division. Therefore, the court finds the alleged assault occurred in a secure area, not a "public hallway."

For this incident, all of the *Ballard* factors are met as well. Controlling visitor access to a judge's chambers and secured areas leading to their chambers is a normal judicial function. Even if the secured area was technically outside Walker's chambers, it surely is an "appropriate adjunct

space." See Adams, 764 F.2d at 298 n.2 ("Where, for example, a judge cites a person raising a disturbance immediately outside a courtroom window for contempt, judicial immunity is plainly available although factors (2), (3) and (4) [of *McAlester/Ballard*] might not apply."). The incident centered around a case pending before the court because it concerned a writ drafted by Walker's assistant and it arose directly out of a visit to the judge or his staff in his official capacity. Likewise, since the flashpoint of the alleged assault stemmed from a writ issued out of the court, Walker was not acting outside the complete absence of all jurisdiction. A district court has the power to issue writs of habeas corpus. See Article 5, Section 8 of the Constitution of Texas; Ex parte Crosley, 548 S.W.2d 409 (Tex. Crim. App. 1977).

    c. Unprofessional Treatment

Morrison next alleges that due to an unsuccessful attempt to prevent Morrison from practicing law in the 252nd District Court, Walker "did and continues to do everything he can to disrupt and harm her law practice in that court." (Doc. No. 1, pp.9-10.) This includes acting unprofessionally, rudely, and viciously to Morrison. Although appearing in a different portion of her complaint, in the same vein, Morrison submits Walker has intentionally disrupted her relationships with courtroom personnel on an ongoing basis which also disrupts or hinders her ability to practice law. (Doc. No. 1, pp.11-12.)

According to the Texas Code of Judicial Conduct, a judge's behavior, demeanor and interaction with attorneys are "adjudicative responsibilities." See V.T.C.A., Govt. Code T. 2, Subt. G App. B, Jud. Conduct, Canon 3. One of the judge's "administrative responsibilities" is to require staff, court officials and others subject to the judge's direction and control to observe the same standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties. Id. Clearly, Walker's treatment of

Morrison and his directive to court personnel as to their relationship with Morrison are judicial in nature as they are covered adjudicative and administrative responsibilities in the Texas Code of Judicial Conduct. The second, third and fourth *Ballard* factors are also met because this behavior occurs in the 252nd District Court, centers around cases pending before the court and arise directly out of visits to the judge in his official capacity. Neither does the complaint allege any facts questioning whether Walker acted in the clear absence of all jurisdiction. As stated previously, judges have immunity for their actions even if they act maliciously, corruptly and in bad faith. Their intent cannot be considered. While Morrison assuredly disagrees with whether Walker is following these Canons, the failure to follow judicial Canons is not sufficient to defeat absolute judicial immunity.

    d.  Holding Morrison in Contempt

On an unspecified date, Morrison alleges Walker unlawfully held Morrison in contempt of court, disregarding the protection she was entitled to under "TEX. GOV. CODE § 22.001."[3] (Doc. No. 1, p.10.) This allegation merits little discussion. The first, second and fourth *Ballard* factors are easily met. Conducting contempt proceedings are judicial in nature and the proceedings were heard by Walker in his official capacity. Courts have repeatedly afforded judges immunity for conducting even questionable contempt proceedings. Malina, 994 F.2d at 1124-25; Adams, 764 F.2d at 298; McAlester, 469 F.2d at 1282-83. While it is not entirely clear from the complaint whether the contempt proceedings centered around a case pending before the court—the third *Ballard* factor—absolute judicial immunity applies even without a finding of all the *Ballard* factors. Malina, 944 F.2d at 1124. Lastly, Walker did not act in clear absence of all jurisdiction since district courts have contempt authority. TEX. GOV. CODE § 21.002; see In re Reece, 341

---

    3. This statute deals with the jurisdiction of the Texas Supreme Court, not contempt proceedings.

S.W.3d 360, 362 (Tex. 2011) ("It is well-rooted in our jurisprudence that contempt is a broad and inherent power of a court.").

    e.  False Criminal Charges

Next, Morrison alleges Walker falsified criminal charges against her with the cooperation of the Jefferson County District Attorney, Tom Maness. (Doc. No. 1, p.6.) The complaint accuses both Walker and Maness of working together to have her prosecuted for alleged perjury, when they both knew the charges were false. As part of this scheme, Walker requested that the District Attorney's office convene a grand jury to investigate the fabricated perjury charges against Morrison. She was then compelled to appear before the grand jury for almost five hours, but the grand jury eventually declined to indict Morrison.

Morrison is correct that under some circumstances, judges who instigate criminal prosecutions are not protected by judicial immunity. (See Doc. No. 22, p.10 and cases cited, e.g. King v. Love, 766 F.2d 962 (6th Cir 1985); Sevier v. Turner, 742 F.2d 262 (6th Cir. 1984); Harris v. Harvey, 605 F.2d 330 (7th Cir. 1979)). Unfortunately, the complaint is lacking of any facts that would help determine whether Morrison states a plausible claim for relief that overcomes absolute judicial immunity. The complaint fails to explain how the alleged falsified perjury charges and investigation were not judicial acts, whether they occurred as a result of Morrison's actions in the courtroom, whether the controversy centered around a case pending before the court and whether the acts arose directly out of a visit to the judge in his official capacity. Without these factual details, the court cannot reasonably apply the *Ballard* factors to these allegations or determine whether the factual predicate for the claim is similar to the cases cited by Morrison above. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 556

U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

    f. State Law Tort Claims

Morrison further asserts the state common law tort claims of negligence, gross negligence, negligence *per se*, tortious interference with business relationships, defamation, defamation *per se*, and intentional infliction of emotional distress. (Doc. No. 1, pp.29-31.) In the instant motion, Walker asserts Morrison's state tort claims are barred by § 101.106(f) of the Texas Civil Practice and Remedies Code, which provides that "if suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment, and if it could have been brought against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only." See TEX. CIV. PRAC. & REM. CODE § 101.106(f); Franka v. Velasquez, 332 S.W.3d 367, 369-85 (Tex. 2011). Accordingly, "on the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed." Id. "The Plaintiff may elect to sue both the government and its employee, but the statute grants the government the unconditional right to have its employee dismissed from the suit if the plaintiff makes that election." See TEX. CIV. PRAC. & REM. CODE § 101.106(e); Franka, 332 S.W.3d at 387. The Texas Supreme Court has explained that the purpose of § 101.106(f) was to "foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment." Franka, 332 S.W.3d at 381. "Under the *Franka* rule, all tort claims, including intentional torts, 'could have been brought' against the governmental unit, regardless of whether the governmental unit's immunity from suit is expressly waived by the TTCA for those claims." Bordges v. City of Flower Mound,

Texas, 4:11-cv-310, 2011 WL 5600339, at *2 (E.D. Tex. Oct. 14, 2011) (Mazzant, M.J.) (citing Franka, 332 S.W.3d at 385).

Morrison summarily argues that "most of" Walker's actions at issue were not within the course and scope of his employment for the same reasons she believes Walker would not be entitled to judicial immunity. (Doc. No. 22, pp.28-29.) That is, Walker's alleged misconduct falls outside the course and scope of his duties that only include adjudicating cases and matters assigned to the 252nd District Court. This argument lacks merit. All of Walker's actions alleged in the complaint occurred within the general scope of his employment as a judge assigned to the district court.

## V. Conclusion

Morrison's complaint fails to contain "enough facts to state a claim to relief that is plausible on its face" to defeat Walker's defense of absolute judicial immunity and the statutory bar of her state law claims pursuant to TEX. CIV. PRAC. & REM. CODE § 101.106.[4] Bell Atl. Corp., 550 U.S. at 570. Thus, it should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). However, a Plaintiff's failure to meet the specific pleading requirements should not automatically result in dismissal of the complaint without allowing the plaintiff an opportunity to amend the complaint. Hart v. Bayer Corp., 199 F.3d 239, 248 n.6 (5th Cir. 2000). But when a claim is frivolous or the complaint alleges the plaintiff's best case, a court does not need to allow a further factual statement from the plaintiff. Jones v. Greninger, 188 F.3d 322, 327 (5th Cir. 1999). This is true especially when the plaintiff makes no attempt to amend his complaint in response to the defendant's challenge pursuant to Rule 12(b)(6). Spiller v. City of Texas City, 130 F.3d 162, 167 (5th Cir. 1997).

---

4. Because the claims should be dismissed on these two grounds raised by Walker, the undersigned does not discuss Walker's claim that the case should also be dismissed under the *Rooker-Feldman* doctrine.

Although leave to amend is to be freely given when justice so requires, the decision is left to the sound discretion of the district court. U.S. ex rel. Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 387 (5th Cir. 2003). Here, it is clear Morrison's §§ 1981 and 1983 claims not relating to the alleged fabrication of the perjury charge are barred by judicial immunity and her state law claims are precluded by TEX. CIV. PRAC. & REM. CODE § 101.106. Allowing Morrison to amend those claims would be futile. Therefore, the claims are dismissed with prejudice. However, at this time, it does not appear that Morrison's claims concerning the fabrication of the criminal charges are patently frivolous or than an amendment could not cure their defects. Therefore, Morrison is directed to replead these claims with the requisite particularity[5] as required by Rule 12(b)(6) within thirty days of the date of this order. See Whiddon v. Chase Home Finance, LLC, 666 F.Supp.2d 681, 693 (E.D. Tex. Oct. 14, 2009) (Crone, D.J.) (dismissing DTPA and negligence claims but allowing plaintiff amendment to cure defects in fraud and breach of contract claims).

SIGNED this 2nd day of January, 2014.

_____
Zack Hawthorn
United States Magistrate Judge

---

5. If Morrison decides to file an amended complaint, she should answer the following questions: 1. When did Walker fabricate perjury charges?; 2. How was this accomplished?; 3. What evidence is there that Walker knew the perjury charges were false?; 4. Did the perjury charges concern activity in his court?; 5. What was Tom Maness's personal involvement in this activity?; 6. Did Morrison appear voluntarily before the grand jury; 7. What facts suggest Walker's motivation was based upon retaliation and personal animus and not for other reasons?