UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| STELLA MORRISON | § | |
| | § | |
| VS. | § | |
| | § | CASE NO. 1:13-CV-00327 |
| LAYNE WALKER, THE COUNTY OF | § | |
| JEFFERSON, TEXAS AND THE STATE | § | |
| OF TEXAS | § | |

PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, STELLA MORRISON, files Plaintiff's First Amended Complaint, as follows.

PARTIES

1.    Plaintiff, STELLA MORRISON, is an individual residing in Jefferson County, Texas and is appearing in court through her attorney of record.

2.    Defendant, LAYNE WALKER, can be served through his attorney of record.

3.    Defendant, THE COUNTY OF JEFFERSON, TEXAS, can be served with process through its attorney of record.

4.    Defendant, DEPUTY ANTHONY BARKER, can be served with process at his place of employment, 1001 Pearl Street, Beaumont, Texas 77701.

5.    Defendant, TOM RUGG, can be served with process at his place of employment, Jefferson County District Attorney's Office, 1001 Pearl Street,

1

Beaumont, Texas 77701, or where he resides.

6.     Defendant, SHANE PHELPS, can be served at Shane Phelps, P.C. 400 N. Washington, Bryan, Texas 77803.

7.     Defendant, THOMAS MANESS, can be served at his residence, 25 Bellechase Gardens Drive, Beaumont, Texas 77706-8728.

8.     Defendant, MARK SPARKS, can be served at his place of employment, Provost Umphrey Law Firm, 600 Park Street, Beaumont, Texas 77701.

9.     Defendant, JEFFERSON COUNTY JUDGE JEFF BRANICK, can be served at his place of employment, 1149 Pearl Street, Beaumont, Texas 77701.

10.     Defendant, ED SHETTLE, can be served at his former place of employment, Jefferson County District Attorneys' Office, 1001 Pearl Street, Beaumont, Texas 77701, or where he resides.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the Parties, the subject matter and the causes of action pursuant to federal question jurisdiction. 28 U.S.C. § 1331. This Court also has jurisdiction over the pendent Texas state law claims.  Venue is appropriate in this District and Division of Federal Court.

## BACKGROUND FACTS

12.     Morrison is an African-American attorney who has practiced criminal defense law in Jefferson County for many years.  Morrison is a civil rights leader

who has made a very positive impact upon this community.  Similar to many other people, however, Morrison has been the victim of ongoing tortious, intentionally racist and unconstitutional actions perpetrated by Layne Walker, acting under color of state law, the former Texas District Judge of the 252nd Judicial District Court.  Walker recently resigned from the bench as a result of the Texas Commission on Judicial Conduct (Judicial Commission) informing Walker that he had to either resign or face formal removal, due to his corruption. Ms. Morrison and her husband, Honorable Judge Kermit Morrison, ran against Walker for this elected office.  Since those elections Walker had engaged in an ongoing pattern of harassment, retaliation, unconstitutional actions, and intentional Texas torts against Morrison.  The vast majority of these culpable actions have occurred outside the scope of his jurisdiction as a judge.

13.    In addition to tormenting Morrison due to her running for office against him, Walker's unlawful conduct against her was also based upon his intentional racial discrimination against African-Americans.  Walker demonstrated racial discrimination through his unlawful actions against Morrison and other African-Americans, that included but was not limited to Walker regularly imposing sentences upon African-American criminal defendants beyond the legal sentencing limits under Texas law, and also beyond comparable sentences that Walker imposed upon Caucasian defendants in his court. Further, Walker had

a history of erratic behavior and furious outbursts.  In his overall pattern and practice of unconstitutional, racist and tortious activity, Walker was and still is supported and facilitated by the Jefferson County Sheriff's Department, The Jefferson County District Attorney's Office, the government of Jefferson County, and the Provost Umphrey Law Firm.

14.    Walker's unlawful conduct against Morrison included, but is not limited to, the following.

15.    Walker filed multiple grievances against Morrison to the Texas State Bar Chief Disciplinary Counsel, in an ongoing effort to have  Morrison's law license revoked.  Walker demonstrated an overall pattern of vindictively seeking the revocation of law licenses and professional licenses of all those persons whom Walker perceived as his personal enemies.  Walker's multiple grievances against Morrison were based upon his personal hatred of her due to her running for office against him, and also due to her race.  Walker's actions were outside of his former jurisdiction as a Texas state court judge.  These actions also constitute constitutional violations against Morrison that: (1) interfered with her contractual rights to practice law, which is a constitutionally recognized property interest in her career under the Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution; and (2) retaliated against her in violation of the her constitutionally recognized right to freedoms of association and speech

under the First Amendment of the U.S. Constitution, because she associated with people who opposed Walker's unlawful and retaliatory actions, and she ran for office against Walker.

16.     Walker's efforts to revoke Morrison's law license is exemplified by a grievance he wrote to Texas State Bar investigator Ms. Morgan.  This particular Grievance insults Morrison for allegedly "demonstrating professional misconduct," providing "constitutionally ineffective assistance to counsel," and contains a barrage of insults toward Morrison, all demonstrating Walker's racial and personal hatred of Morrison.  Walker references the judicial elections at issue involving both Morrison and her husband, the Honorable Judge Kermit Morrison.  Attached as Exhibit "1" is the affidavit of Sheriff Deputy Rodney Williams, Bailiff, who confirms that Walker's ongoing unconstitutional and racist retaliatory actions "have been going on since Walker first defeated her [Morrison] in the first election for the 252nd Criminal District Court and has continued since defeating her husband Judge Kermit Morrison in the March Primary 2006."

17.     Walker has filed several grievances against Morrison, and not all of these grievances related to her conduct as counsel in his Court. Under the factors enunciated in Ballard v. Wall, 413 F. 3d 510 (5th Cir. 2005), the filing of these repetitive, malicious grievances should not be protected by judicial immunity for

several reasons.  The first factor demonstrates that immunity is not appropriate, because the filing of repetitive grievances for the express purpose of trying to take away Morrison's law license and therefore deprive her of her Due Process Rights to her career (a constitutionally protected property interest) in violation of the 5th and 14th Amendments, is not a normal judicial function.  The filing of grievances presumably occurred in the Judge's chambers, so therefore the second factor would seem to be in favor of judicial immunity. The filing of these grievances, however, did not always involve cases pending before Walker in his Court.  One of these grievances was based upon Morrison's handling a case not in Walker's court.  Therefore, the third factor does not favor judicial immunity. Similarly, the filing of repetitive grievances for the express purpose of trying to suspend or revoke Morrison's law license did not arise directly out of a visit to Walker in his official capacity. Walker's targeting of Morrison's law license and career  by the filing of repetitive grievances is a habit and a pattern.  For example, Walker targeted Stephen Hartman's professional licenses, Walker targeted Mr. Philip Klein by seeking an indictment on false charges to suspend Klein's professional licenses, and Walker (and several others) targeted Undersigned Counsel with multiple attempts at indictment and the formation of a grievance committee to revoke or suspend the Undersigned's law license (discussed infra).  Under these circumstances, Morrison submits that Walker

should not be entitled to judicial immunity for his filing of repetitive grievances against her law license. These actions by Walker also violate Ms. Morrison's First Amendment rights of freedom of speech and freedom of association, because Walker was retaliating against Morrison for campaigning against him and exercising her constitutional rights to associate with political opponents of Walker.  Walker's actions also violate Morrison's Fifth Amendment right to Due Process of Law, because Morrison was deprived of any orderly legal process to prevent Walker from filing retaliatory grievances.  Further, Walker's actions violate Ms. Morrison's Fourteenth Amendment rights to Equal Protection under the law, because Walker did not treat Morrison equally when compared to Caucasian attorneys who practiced law in his Court, and when compared to other attorneys who did not run for office against him.

18.    Walker also has a prodigious habit, which is still ongoing, of seeking falsified criminal charges against people that he does not like.  Walker worked with the former Criminal District Attorney, Defendant Thomas Maness and his former Criminal First Assistant, Defendant Ed Shettle, to fabricate false criminal charges against Morrison.  Defendant Maness recently resigned, not long after the discovery that his Office controlled a multi-million dollar slush fund of illegally obtained money for the purpose of funding various unlawful activities.  Defendant Shettle was recently fired by permitting him to turn in his

resignation.  Maness and Shettle  personally prevented all criminal and civil investigations into Walker, including by refusing to authorize any investigations by the Texas Attorney General or by the Texas Rangers. Walker, Maness and Shettle worked together to try to have Morrison wrongfully indicted and prosecuted for alleged perjury based upon Walker's request due to his hatred of Morrison, even though Walker, Maness and Shettle knew that Morrison did not commit any crime. That is, Walker, Maness and Shettle knew these criminal charges against Morrison were entirely false and were fabricated by Walker, Maness and Shettle.  Walker, Maness and Shettle arranged to have the Jefferson County District Attorney's Office convene a grand jury to consider falsified perjury charges against Morrison.  Based upon these fraudulent charges,  Morrison was compelled to appear before the grand jury for almost five (5) hours, which was a very humiliating and degrading situation for her.  The grand jury determined that the charges against Morrison were falsified and were being brought in bad faith, and thus the grand jury refused to indict Morrison. The County of Jefferson paid for this illegal conduct, as part of its and unconstitutional policy of fully supporting every bit of Walker's criminal and unconstitutional activities, with taxpayer money.  These false criminal charges against Morrison that were orchestrated by Defendants Walker, Maness and Shettle had nothing to do with a case that was pending or had been adjudicated

in Walker's Court.  In fact, Walker ordered Maness and Shettle to come up with false charges, so they fabricated perjury charges against Morrison based on a statement she made regarding a client's probationary status in a case pending before Judge Gist, the presiding Judge of Drug Court.

19.    Under the factors in Ballard v Wall, 413 F. 3d 510 (5th Cir. 2005), all four (4) factors demonstrate there should be no judicial immunity for the fabrication of false criminal charges against Morrison by Walker, Maness and Shettle. When considering the first factor, it is clear that Walker's fabrication of false criminal charges is not a normal judicial function.  Morrison has already provided the Court with case law demonstrating that federal Circuit Courts have held that a judge is neither a prosecutor nor a district attorney, and a judge trying to act as a prosecutor or a district attorney seeking false criminal charges due to personal hatred of the victim can never be considered a judicial function, much less a normal judicial function.  The second Ballard factor also favors Morrison, because Walker, Maness, and Shettle's fabrication of false criminal charges did not occur in Walker's courtroom or in any appropriate adjunct spaces, which is defined as Walker's former chambers.  Instead, the fabrication of these false criminal charges occurred in the Jefferson County District Attorneys' Office, and the wrongful attempt to indict Morrison occurred in the Jefferson County grand jury room.  The third Ballard factor also supports

Morrison, because the fabrication of these false criminal charges did not center upon a case either pending or that had been adjudicated in Walker's former court.  To the contrary, the charges were based upon a case pending in Drug Court, presided over by Judge Gist.   Indeed, Walker has demonstrated a propensity for, and a habit of, seeking false criminal charges against people he does not like, and this behavior pattern has manifested itself repeatedly over the years against many victims, with the constant participation of Maness and Shettle.  The fourth Ballard factor also favors Morrison, because this civil and criminal conspiracy by Walker, Maness and Shettle to fabricate false criminal charges against Morrison did not arise out of a visit by Morrison to Walker in his official capacity. The reality is that Walker,  Maness, and Shettle have for years targeted people for false criminal prosecution based upon their personal and political motives. This includes not only Morrison, but also Stephen Hartman, former Beaumont Police Officer Heilman, former Beaumont Police Officer Beaulieu, Mr. Philip Klein, Undersigned Counsel and others.  Walker, Maness and Shettle's attempt to have Morrison indicted and prosecuted had absolutely nothing to do with Walker's role as a judge, but was based upon Walker's normal practice of abusing his status and using the allegiance of Maness and Shettle to try to destroy the lives of persons Walker perceived to be his political enemies, such as Morrison.  These falsified criminal charges orchestrated by Walker,

Maness and Shettle violated Morrison's First Amendment rights to freedoms of speech and association, because these actions were based upon Morrison exercising her right to free speech by campaigning against Walker for judge of the 252nd District Court, and also her freedom to associate with persons whom Walker perceived to be his political opponents.   These actions were specifically intended to destroy Morrison's constitutionally recognized contractual right to practice law and her property interest in her career, which is recognized by the Due Process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution.   Further, these actions by Walker and Maness violated Ms. Morrison's right to Due Process under the Fifth Amendment, because the fraudulent charges and the grand jury were orchestrated in a retaliatory manner that denied Ms. Morrison due process of law, because the entire Jefferson County legal system was twisted to serve Walker, Maness and Shettle's illicit goals.  Similarly, this misconduct violated  Morrison's right to Equal Protection guaranteed by the Fourteenth Amendment, because she was treated adversely in comparison to (1) Caucasian attorneys practicing in the 252nd Judicial District Court, (2) other attorneys who had not run for office against Walker.

20.    Walker had issued a standing order that Morrison is not allowed either in his chambers or in the hallway outside his chambers, even though this hallway leads to both the chambers of Judge John Stevens and Walker's former

11

chambers.  This hallway used to be entirely open to the public. When Walker was elected judge, however, he insisted upon a secure doorway with a lock put in at the base of this hallway, such that nobody could enter the hallway without being "buzzed in" after identifying themselves.   In this circumstance, as demonstrated by Morrison's affidavit, she was assaulted by Defendant Deputy Barker, when she was in this hallway, which is accessible to all members of the bar and is necessary for attorneys to use who practice criminal defense law. This hallway is also necessarily used by prosecutors from the Jefferson County District Attorney's office, and court staff.  Morrison states clearly that she was near the window to Ed Tanner, when Deputy Barker assaulted her upon Walker's direct order and used physical force to remove her from this hallway. Morrison was not in Walker's former chambers, and she was not attempting to go into Walker's chambers at that particular time.  Notably, Walker's order barring Morrison from this hallway also barred Morrison from attempting to travel toward Judge Steven's chambers, whether as part of her practice of law or otherwise.

21.    Under the four (4) factors set forth in Ballard v. Wall, 413 F. 3d 510 (5th Cir. 2005), Walker should not have judicial immunity for this. The first factor favors Morrison. Banning an attorney from a hallway which is used by all attorneys and is necessary for the practice of law is not a normal judicial

function.  Further, it is not a normal judicial function for Walker to have banned Morrison from using this same hallway to head toward the chambers of Judge Stevens.  Walker had no judicial jurisdiction over a hallway, or over access to Judge Stevens' chambers.  The second Ballard factor also favors Morrison.  This unlawful edict by Walker did not occur in the courtroom, or in an appropriate adjunct space, which Ballard v. Wall defines as the judge's chambers.  In this instance, Walker's ordered Barker to assault Morrison when she was not attempting to enter Walker's former chambers, and when she was not breaching the peace in any way.  The third Ballard factor also favors Morrison, because Walker's assault order did not center around a case pending before Walker.  The fourth Ballard factor also favors Morrison, because Walker's assault order did not arise out of a visit by Morrison to Walker in his former official capacity. Morrison was not trying to visit Walker at all. Pursuant to this unlawful and racist edict, Walker ordered an assault upon Morrison by Sheriff Deputy Anthony Barker.  Sheriff Mitch Woods is a personal friend of Walker, and they are known as "hunting buddies." The Sheriff has permitted his Office and his Deputies to be used by Walker to carry out a plethora of unconstitutional and illegal actions, such as this incident at issue.  Exhibit "2" is Morrison's Statement pertaining to the assault upon her by Deputy Barker, which occurred on the instructions of Walker.   After this assault, Morrison retained

13

Undersigned Counsel, and his Letter of Representation and Notice is attached as Exhibit "3." Walker and Barker's actions violated Morrison's constitutionally recognized contractual right to practice law and her property interest in her career, which is recognized by the Due Process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution.  Further, these actions by Walker violated Morrison's right to freedom of association under the U.S. Constitution First Amendment, to associate with courthouse personnel and staff, including her attempt to speak to Ed Tanner near his window, and also the right to possibly speak to Judge Stevens or the staff in Judge Stevens' court. Similarly, this misconduct violated Morrison's right to Equal Protection guaranteed by the Fourteenth Amendment, because she was treated adversely in comparison to (1) Caucasian attorneys practicing in the 252nd Judicial District Court, (2) other attorneys who had not run for office against Walker.  Further, this misconduct violated Ms. Morrison's First Amendment rights of freedom of speech and association, because Layne Walker promulgated this policy to retaliate against Morrison for (1) exercising her free speech right to campaign against him, and (2) her right to associate with political opponents of Walker. Further, these actions violate Morrison's right to Due Process of Law under the Fifth Amendment, because there was no legal process and no legal grounds involved in Walker's unlawful edict.

22.     Walker informed Morrison that he would not allow her to practice law in the 252nd District Court.  Walker believed the 252nd District Court belonged to him personally, instead of to the citizens of Jefferson County, Texas.  When Walker was unsuccessful with that illegal pronouncement, he did everything he could do to disrupt and harm Morrison's law practice in the 252nd District Court. Walker was unprofessional, rude, vicious, and ugly toward Morrison.  These actions intentionally harmed Morrison's legal practice,  because Walker's misconduct deterred clients from hiring her, and Walker retaliated against clients that retained Morrison, particularly African-American clients.  Walker's overt prejudice and rages against Morrison when she conducted her profession in the 252nd Judicial District Court, therefore, damaged Morrison's contractual right to practice law and her property interest in her career, which is recognized by the Due Process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution.  Further, these actions by Walker violated Morrison's right to freedom of association under the U.S. Constitution's First Amendment, to associate with courthouse personnel during her practice of law.  Similarly, this misconduct violated Ms. Morrison's right to Equal Protection guaranteed by the Fourteenth Amendment, because she was treated adversely in comparison to (1) Caucasian attorneys practicing in the 252nd Judicial District Court, (2) other attorneys who had not run for office against Walker.  Further, this misconduct

violated Morrison's First Amendment rights of freedom of speech and association, because Walker promulgated this policy to retaliate against Morrison for (1) exercising her free speech right to campaign against him, and (2) her right to associate with political opponents of Walker.  Further, these actions violated Morrison's right to Due Process of Law under the Fifth Amendment, because there was no legal process and no legal grounds involved in Walker's unlawful behavior.

23.    Walker had also unlawfully held Morrison in contempt of Court, disregarding the protection she was entitled to under Tex. Gov't Code § 22.001. This provision of the Government Code required Walker to have any contempt proceedings against an attorney considered by another Judge, but  Walker habitually refused to follow Texas law. These actions by Walker violated Morrison's contractual right to practice law, because Walker is harming Morrison's ability to practice her profession.   This misconduct violated Morrison's rights to Free Speech and Freedom of Association under the First Amendment, because Walker's misconduct was retaliatory for Morrison exercising her free speech right to campaign for office against Walker and her right to associate with Walker's political opponents.  Further, these actions violated  Morrison's right to Due Process under the Fifth Amendment, because Walker expressly nullified the legal protections available to Morrison under the

Texas Government Code.  Finally, these actions violated Morrison's Fourteenth Amendment right to Equal Protection, because this misconduct treated Morrison worse than comparable Caucasian attorneys practicing in the 252nd Judicial District Court.

24.   Walker also intentionally disrupted Morrison's relationships with courtroom personnel on an ongoing basis.  Courtroom personnel were afraid to talk to her, because they feared retaliation by Walker.  These actions by Walker violated Morrison's contractual rights to practice law, because professional relationships with courtroom personnel are necessary for the successful practice of law. This misconduct also violated Morrison's rights to free speech and freedom of association under the First Amendment, because  Walker's conduct was retaliatory for Morrison exercising her free speech right to campaign against Walker and her right to associate with Walker's political opponents.  These actions violate Morrison's right to Due Process under the Fifth Amendment, because Walker's conduct had no basis in law. These actions also violated Morrison's Fourteenth Amendment right to Equal Protection, because this misconduct treated Morrison worse than comparable Caucasian attorneys practicing in the 252nd Judicial District Court.

25.   Recently, Defendants Walker, Tom Maness, Ed Shettle, Tom Rugg, Shane Phelps, Jeff Branick, and Mark Sparks entered into yet another civil and

17

criminal conspiracy to harm Morrison. These Defendants worked together to try to obtain wrongful indictments of both Philip Klein and Undersigned Counsel (referred to as Morgan for purpose of these allegations), through the improper use of money diverted from the Texas Indigent Defense Fund, which is in violation of state and federal law.  Shane Phelps was appointed the Special Prosecutor, and he obtained payment from the Texas Indigent Defense Fund. The purpose of indicting Morgan was to prevent Morgan from continuing to represent either Morrison or Stephen Hartman in their civil rights cases against Walker and Jefferson County. These Defendants reasoned that by indicting Morgan on false criminal charges, they would obtain the suspension of Morgan's law license, and cause his incarceration.[1] This would send a clear signal to all other attorneys that if they attempted to represent Morrison and Hartman in their cases, they would risk retaliation and loss of their ability to practice law, if not loss of their liberty. As part of this conspiracy, the Defendants Walker, Rugg and also with the help of Judge Olen Underwood, filed several grievances

---

[1]Morgan has reported to both federal and state law enforcement that Walker met with Provost Umphrey Law Firm partners, including Joe Fisher II, Mark Sparks and others, to have Morgan jailed without charges on a six month "no bond hold" in 2012.  During this meeting, these conspirators allegedly discussed making arrangements to have Morgan "shanked" in prison through Walker's purported connections to a white supremacist group operating in the Jefferson County jail.  In this latest conspiracy to indict Morgan, the conspirators purchased a liability insurance policy for Phelps to defend and indemnify him from a subsequent civil suit brought by Klein, but not by Morgan.  That is, these conspirators did not believe that Morgan would be physically able to file suit after his false indictment and subsequent arrest, which logically leads to the conclusion that these conspirators again planned physical harm against Morgan.

against Morgan, to seek the suspension of his law license.   Walker, Maness, Branick, Shettle and Rugg made sure Phelps was illegally paid for his work out of the Texas Indigent Defense Fund, which is unlawful because Phelps was not providing legal services to indigent defendants.  Walker personally signed the requests for payment from Shane Phelps, who billed the Texas Indigent Defense Fund $26,000.00 for his work as the Special Prosecutor for this planned indictment of Morgan.  The plan was to have Morgan indicted and jailed prior to the Texas Judicial Commission's deadline for Walker to leave the bench due to his corruption.  The first time Phelps went to procure these indictments in Jefferson County was on or around November, 2013, Channel Six and Jerry Jordan published a pre-planned defamatory news story stating that a Special Prosecutor would seek indictments against both Morgan and Klein.  Defendant Phelps appeared before the Grand Jury in Jefferson County, but he realized that Walker had impaneled that particular Grand Jury, which had been "stacked" to ensure that the wrongful indictments would occur.  Out of fear of facing a potential federal criminal RICO prosecution, Defendant Phelps refused to proceed with the indictments at that time.

26.    Subsequently, in early January, 2014, Phelps, Rugg, Shettle, Branick, Maness and Walker, agreed that Phelps should attempt one last time to obtain these indictments, because the Texas Judicial Commission gave Walker a firm

deadline of January 22, 2014, to resign from the bench or face forced removal. The Grand Jury in January, 2013 was impaneled by Judge Stevens, but this panel was also "stacked". Included on the Grand Jury panel was Mark Sparks and two other persons (whose identities are unknown at this time) who had committed to indict Morgan and Klein. Based upon information and belief, after Sparks and Phelps became aware of outside law enforcement's awareness that this Grand Jury panel was "stacked," Sparks and the other two corrupt panel members scurried away from the Grand Jury panel and went back to the Provost Umphrey Law Firm. Defendant Phelps then decided to stop his attempt to procure these indictments.

27.    This criminal and civil conspiracy became exposed and was known to Morgan and Klein after Shane Phelps went to Grand Jury on or around November, 2013. Larry Watts filed a state court injunction lawsuit on behalf of Mr. Klein to prevent Klein's wrongful indictment. Morgan filed his own pro se state court injunction lawsuit against Phelps. Judge Olen Underwood assigned both cases to Judge Mayes, who will not grant either Morgan or Klein any hearing on their respective state court injunction lawsuits against Phelps.

28.    The actions of these Defendants in seeking the wrongful indictment of Morgan were specifically intended to harm both Morrison and Hartman. This misconduct violated Morrison's substantive Due Process rights under the United

States Constitution 5th and 14th Amendments, because this misconduct was specifically intended to take away her right to seek redress in a federal court of law for all the constitutional and civil rights deprivations she has experienced due to the Defendants.   Accordingly, this conspiracy between these Defendants is actionable by Morrison, as set forth below.

LIABILITY OF THE STATE OF TEXAS AND THE COUNTY OF
JEFFERSON UNDER 42 U. S. C. §§ 1981 & 1983.

29.    In accordance with the requirements of 42 U.S.C. § 1981, Morrison has pled facts demonstrating she is the victim of intentional racial discrimination by Walker.  Further, Morrison has pled facts demonstrating that she is the victim of retaliation by Walker based on her race and his personal vendetta, which violates  § 1981.  See CBOCS West, Inc. v. Humphries, 553 U. S. 442 (2008). Morrison has also pled facts demonstrating she has been the victim of multiple intentional constitutional deprivations by the state actor Defendants Walker, Maness, Rugg, Shettle, Branick, Phelps in his role as Special Prosecutor, Jefferson County, and also Deputy Barker.  Pursuant to the requirements of 42 U.S.C. § 1983, Morrison has pled facts demonstrating an ongoing pattern of violations of her rights secured by the United States Constitution.  Morrison has also identified the actors of the State of Texas and the County of Jefferson who performed and ratified these ongoing constitutional violations.  A state actor is one acting "under color of any statute, ordinance, regulation, custom, or usage

21

of any State..." 42 U.S.C. § 1983; Johnson v. Dallas Independent School District, 38 F. 3d 198, 200 (5th Cir. 1994), cert. denied, 514 U.S. 1017 (1995).   Under this definition, the state actors are Deputy Barker, Jefferson County, Tom Maness, Tom Rugg, Ed Shettle, Jeff Branick, Walker, and Phelps, which for many years have done everything illegal and unconstitutional that Walker requested, that have repetitively violated the legal and constitutional rights of Morrison and multiple other victims.   The state actor Defendants entered into an actual meeting of the minds with Walker to perpetrate a lengthy, ongoing pattern of constitutional and civil rights violations against Morrison and others.   Their combined actions, and the actions undertaken alone by Walker with ratification by the State of Texas and the County of Jefferson, constitute an official policy, custom, or practice of these governmental entities sufficient to impose monetary liability upon them for all the unlawful conduct at issue.   Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978).

30.    The Fifth Circuit interprets the Monell requirement of an official policy, custom or practice to "include persistent or widespread practices which, although not officially authorized, are 'so common and well settled as to constitute a custom that fairly represents [official] policy.'" Muldrow v. Berthot, No. 6:12 CV 460, 2012 W.L. 3991366 (E.D. Tex. 2012), citing Campbell v. City of San Antonio,

43 F.3d 973, 977 (5th Cir. 1995).   A pattern of incidents with notice to a governmental entity can satisfy the applicable standards.   See authority supra; see also Webster v. City of Houston, 735 F. 2d 838, 841 (5th Cir. 1984); Travis v. Texas Department of Criminal Justice, No. 3-06-CV-1854 M, 2006 W.L. 3831221, at 2 (N.D. Tex. 2006).

31.   The State of Texas and the County of Jefferson have knowledge, both actual and constructive, that Walker, acting individually and also with the other state actor Defendants, and also Sparks, have consistently engaged in ongoing misconduct that includes the ongoing and constant deprivation of  Morrison's civil and constitutional rights under Color of State Law, intentional discrimination based on Ms. Morrison's race, as well as entering into agreements with others (the former Jefferson County District Attorney Tom Maness, Tom Rugg, Ed Shettle, Shane Phelps, Deputy Barker, and Mark Sparks, a non-state actor Defendant) to violate the civil and constitutional rights of numerous people including but not limited to Morrison.  Walker and all the other Defendants have consistently violated Morrison's civil and constitutional rights in an ongoing pattern or scheme for up to ten (10) years.

32.   The Jefferson County Sheriff's Department, through Sheriff Mitch Woods, and Defendant Barker, facilitated and participated in Walker's vendettas against Morrison and others.  Despite having knowledge that many of Walker's

actions are unconstitutional and impermissibly racially motivated against Morrison, the Jefferson County Sheriff's Department refuses to follow its oath to support and defend the laws and Constitutions of the United States and Texas, and this Department continues to support Walker and implement his unlawful orders.

33.    The actions of Defendant Barker, in physically assaulting Morrison, were done in deliberate violation of Morrison's civil and constitutional rights, and also in violation of Texas Penal Code § 39.02 (Abuse of Official Capacity), § 39.03 (Official Oppression), and § 22.01 (Assault). Defendant Barker acted negligently per se and also grossly negligent per se in violating these Texas Penal Codes. Defendant Barker is a Sheriff's Deputy with the Jefferson County Sheriff's Department.  He is fully knowledgeable of his oath and responsibility to follow the laws of the State of Texas.  He is fully knowledgeable of the Texas Penal Code standards, and that it was unlawful for him to assault Morrison.  He is fully knowledgeable that he has an independent duty to follow the law, and therefore he should have ignored or refused to implement any unlawful or possibly criminal directive from Walker.  Instead, Barker did precisely as he was told by Walker, and in the process Barker violated Texas Penal Code statutes, as well as the constitutional and civil rights of Morrison.  There is no way that Barker's actions could have been undertaken in good faith, because he knew that

he was doing wrong and committing acts that should be considered criminal, if only Jefferson County had a District Attorney's Office that was not dedicating to shielding the legal system from any and all criminal responsibility.  Therefore, Barker does not qualify for a defense of either official or qualified immunity.

34.    The Jefferson County District Attorneys' Office through Maness, Shettle, Rugg, and Phelps have directly participated in some of Walker's culpable acts against Morrison and others.  Defendant Maness authorized the use of taxpayer money from the citizens of Jefferson County to work with Walker and Shettle to fabricate criminal charges against Morrison and to convene a grand jury against her under pretenses that these Defendants knew were false and intended solely to injure and humiliate Morrison.  Further, Defendants Walker, Maness, Rugg, Branick, and Phelps conspired together with the non-state actor Defendant Sparks to misuse funds from the Texas Indigent Defense Fund to try to indict Morgan, for the specific purpose of preventing the further prosecution of civil rights cases against Walker and Jefferson County, including this case.  The purloining of funds from the Texas Indigent Defense Fund deliberately violated Tex. Gov't Code  § 79.001 et seq.  Further, the Jefferson County District Attorney's Office has consistently blocked all criminal and civil investigations into Walker and the attorneys who support him, thereby empowering and enabling Walker to engage in further racist, unlawful, unconstitutional and

tortious actions against Morrison and others.

35.    The State of Texas has direct knowledge of Walker's ongoing racist and unconstitutional conduct against Morrison and others.   The Texas Judicial Commission received a massive amount of complaints against Walker. Belatedly, the Judicial Commission gave Walker the choice between resigning from the bench after he vested for his ten (10) year retirement benefit, or being forcefully removed from the bench.   To make matters worse, the Administrative Judge Olen Underwood has always ratified and supported the unconstitutional, racist, unlawful and tortious actions of Walker against  Morrison and others.   Judge Underwood's support of Walker has included Underwood putting in writing that legitimate efforts to utilize the legal system to protect Morrison from harm by Walker are "worthy of reprimand."   All this constitutes  acquiescence and ratification by the State of Texas of  Walker's unlawful misconduct toward Morrison and others, and therefore constitutes a custom, policy or practice of the State of Texas to support the unconstitutional, racist and tortious actions of Walker against Morrison.

JUDGE WALKER IS INDIVIDUALLY LIABLE FOR
MONETARY DAMAGES TO MS. MORRISON

36.    Walker's order that Deputy Barker assault Ms. Morrison was a non-judicial action completely outside the scope of his jurisdiction, and this order violated multiple Texas Penal Codes, identified above.   This order by Walker

26

was not based upon any case assigned to the 252nd Judicial District Court, and this order was not based on Walker's adjudicative functions.  Every time Walker filed a grievance against Morrison with the State Bar of Texas, he acted outside the scope of his jurisdiction pursuant to his individual and racial vendetta against Morrison.  When Walker threatened court staff with retaliation if they should be friendly with or have any dealings with Morrison, Walker engaged in misconduct in his individual capacity outside the scope of jurisdiction of any particular case pending in the 252nd District Court.  When Walker ordered that Morrison cannot be in a  hallway that is by necessity used by attorneys practicing criminal defense law in Jefferson County, Texas, and by prosecutors and all court staff employed in the criminal district courts, Walker acted outside the scope of his jurisdiction on any case pending in the 252nd District Court.

37.   One of Walker's favorite unconstitutional practices is his persistent referral of people he dislikes to Special Prosecutors or to the Jefferson County District Attorney's Office to fabricate phony criminal charges, and to convene a grand jury to seek an indictment for falsified criminal charges.  Maness, Shettle, Branick, and Rugg participated in this illegal and unconstitutional practice. Walker, Shettle, Rugg, and Maness orchestrated false charges through the Jefferson County District Attorney's Office against Morrison, discussed above. These actions by Walker (and also by Maness, Rugg, and Shettle) are acts of

Official Oppression and Abuse of Capacity, in violation of Texas Penal Codes §§ 39.02 and 39.03.   Further, these actions violated Texas Penal Code § 15.02, as a criminal conspiracy, and are also a civil conspiracy.   Likewise, Defendants Phelps, Maness, Walker, Rugg, Branick and non-state actor Defendant Sparks violated these same Texas Penal Code provisions by their scheme to indict both Morgan and Klein, the indictment of Morgan was specifically intended to cause constitutional deprivations to Morrison.

CASE LAW SUPPORTING INDIVIDUAL LIABILITY
AGAINST LAYNE WALKER

38.    A judge acting in his official judicial capacity has absolute immunity from liability for judicial acts performed within the scope of his jurisdiction.  Dallas County v. Halsey, 87 S.W.3d 552, 554 (Tex. 2002).  The United States Supreme Court holds that judicial immunity extends to judge's judicial actions. Stump v. Sparkman, 435 U.S. 349, 356-57 (1978). The inquiry for judicial immunity is whether the judge's questioned act was undertaken in the course and scope of his adjudicative role over cases or other proceedings assigned to his or her court. Judges are not immune from suit, however, when they undertake non-judicial actions, which are those actions not done in the judge's official adjudicative capacity, or those actions taken in the absence of the judge's court's jurisdiction. Mireles v. Waco, 502 U.S. 9, 11-12 (1991).

28

39.    The United States Supreme Court in Forrester v. White, 484 U.S. 219, 227, 108 S. Ct. 5, 8 (1988), discussed the distinction between "judicial" versus "non-judicial" acts, for which a judge's culpable conduct  leads to individual liability.  The Supreme Court focused on the nature of the judge's act at issue.  The Court inquires whether the questioned act is a function normally performed by a judge, as contrasted with an administrative, legislative, or executive function that a judge may be called to perform as a result of his position or otherwise.

40.    Non-judicial acts include all those acts not associated with a judge's normal duties.  Stated another way, a judge's actions unrelated to the ongoing adjudication of a matter lawfully pending in the judge's court constitute non-judicial acts.  The Forrester Court provided several examples of non-judicial acts for which individual liability applies: (1) selecting jurors for the county's courts; (2) promulgating and enforcing a code of conduct for attorneys; and (3) making personnel decisions regarding court employees and officers.  Forrester, 484 U.S. at 228-30.

41.    An important Fifth Circuit decision for this case regarding a judge's personal liability for acts outside of the scope of his jurisdiction is Harper v. Merckle, 638 F.2d 848 (5th Cir. 1981), cert. denied, 454 U.S. 816 (1982).  The Fifth Circuit held a judge did not have immunity for any conduct that is not a

judicial act.  In Harper, the plaintiff instituted a civil rights action against Judge Merckle under 42 U. S. C. § 1983.  The case involved an underlying divorce proceeding.  The plaintiff went to tender a child support payment, and Judge Merckle was present in the office.  The judge entered the office not dressed in a formal robe, and asked the court clerk to retrieve the case file from the clerk's office.  The judge claimed he was trying to clear up a rumor about an outstanding contempt violation against the plaintiff, stating he was attempting to "help" the plaintiff.  The judge then began a conversation with the plaintiff about his child support check, questioned plaintiff over his address, the post office box, etc.  The judge then swore the plaintiff in to give testimony.  The plaintiff turned around to leave, and the judge sent the court bailiff to retrieve the plaintiff.  The judge ordered the arrest of the plaintiff, who was frisked and hand-cuffed.  The judge then held his own contempt proceeding in his chambers.  638 F.2d at 852.  After, the judge placed the plaintiff in a small room to await transportation to jail.  The plaintiff was threatened with physical harm while in custody.

42.    The Fifth Circuit provided a lengthy discussion of judicial immunity, discussing several decisions distinguishing between a "judicial act" and a "non-judicial act."  638 F.2d 858-859 (citing Fifth Circuit cases).  The Court held that personal liability attaches to a judge for actions occurring outside the scope of

his jurisdiction.  Although Judge Merckle was exercising a "normal judicial function" by holding a contempt hearing and by swearing in the plaintiff, the Court found Merckle could be held individually liable, because his actions "centered around the domestic problems of one of the Judge's friends, Harper's former wife."  The Court held that Merckle abused normal judicial powers and his ill-motives were outside the scope of a judicial proceeding and therefore exceeded the scope of his jurisdiction.  The Fifth Circuit held:

> Succinctly stated, we hold only that when it is beyond reasonable dispute that a judge has acted out of personal motivation and has used his judicial office as an offensive weapon to vindicate personal objectives, and it further appears that no party invoked the judicial machinery for any purpose at all, then the judge's actions do not amount to "judicial acts."  These nonjudicial acts, to state the obvious, are not cloaked with judicial immunity from suit under § 1983.  638 F.2d at 859.

There is also Texas authority following this same logic in distinguishing between immune acts and non-immune acts of a judge.  The Houston Court of Appeals explained that  "[j]udicial acts include those performed by judges involving adjudicating, or otherwise exercising their judicial authority over, proceedings pending in their courts."  Twilligear v. Carrell, 148 S.W.3d 502, 505 (Tex. App. -- Houston [14th Dist.] 2004, pet. denied).

43.   Another important case guiding the issue of Walker's potential personal liability is Ballard v Wall, 413 F. 3d 510 (5th Cir. 2005), which contains the four (4) factors the Fifth Circuit considers when evaluating judicial immunity.  This

Amended Complaint addresses the Ballard factors above for each of Morrison's allegations of Walker's misconduct.   Walker's orchestration of false criminal charges against Morrison and attempts to indict Morrison's attorney to prevent prosecution of this case, clearly satisfy all of the Ballard factors demonstrating Walker should be held personally liable.  Also, Walker's order banning Morrison from the hallway at issue, and also the filing of repetitive grievances, satisfy all of the Ballard factors for the imposition of personal liability.   Further, all of Walker's misconduct, taken as a whole, involved using his former authority and status as a judge "as an offensive weapon to vindicate personal objectives." None of Walker's vindictive actions pled in this Amended Complaint are based upon him actually adjudicating a case in his court.   Walker had a long-standing pattern and practice of using his authority as an offensive weapon to perpetrate unlawful actions.

44.    In addition to Fifth Circuit cases, there are other cases finding no judicial immunity for misconduct that includes some of Walker's misbehavior in this matter.   That is, many of these cases involve circumstances similar to Ms. Morrison's situation. In King v. Love, 766 F. 2d 962 (6th Cir. 1985), cert. denied, 474 U. S. 971 (1985), the Sixth Circuit held that although setting a bond on an arrest warrant is a judicial act, the judge was not immune when the judge deliberately misled the police officer who was to execute the warrant about the

identity of the person sought.  That is, the judge tried to institute criminal proceedings against the wrong person, and these actions were deliberate.   In this case, Walker, along with Maness, Rugg, and Shettle tried to institute false criminal charges against Morrison, wasting taxpayer money convening a grand jury under fraudulent pretenses.  Later, all Defendants (except Barker) tried to indict Morgan to prevent the continued prosecution of this civil rights case.  There should be  no judicial immunity for that misconduct.

45.    In Morrison v. Lipscomb, 877 F.2d 463 (6th Cir. 1989), the Sixth Circuit held that a state court judge was not entitled to judicial immunity for an order declaring a moratorium on issuance of writs of restitution, because the judge was acting in an administrative capacity.  In  Sevier v. Turner, 742 F.2d 262 (6th Cir. 1984), the court found individual liability against a juvenile court judge for his initiation of criminal prosecution and civil contempt proceedings against a father for his child support arrearage.  The judge in that case acted unilaterally and instituted the proceedings instead of adjudicating a matter that was lawfully assigned to him.  In  New Alaska Development Corp. v. Guetschow, 869 F.2d 1298 (9th Cir. 1988), the Ninth Circuit held that a receiver appointed by a state court to manage the business assets of an estate was not immune from allegations that he stole assets or slandered the parties, since those actions were not judicial in nature, but instead were the receiver's intentional torts. In Harris

v. Harvey, 605 F.2d 330 (7th Cir. 1979), cert. denied, 445 U. S. 938 (1980), the Seventh Circuit held that repeating communications to the press and city officials that were critical of a police lieutenant, and the improper instigation of criminal proceedings against that lieutenant by a judge were not judicial acts. The judge in that case, therefore, had no immunity from monetary liability.

46.     Virtually every action at issue perpetrated by Walker (and also the other Defendants to the extent they are linked to specific unconstitutional and unlawful actions) against Morrison is a non-judicial act outside the scope of his jurisdiction, including but not limited to: (1) seeking false criminal charges against her; (2) impaneling a grand jury to indict her under fraudulent pretenses; (3) filing repetitive grievances with the Texas State Bar to try to revoke her law license; (4) issuing an arrest or removal order authorizing an assault by Deputy Barker when Morrison was in a hallway that was not Walker's courtroom or an adjunct space which means Walker's former chambers; (5) threatening others with retaliation in order to harm Ms. Morrison's professional relationships with court personnel; and (6) attempting to indict Morrison's attorney to prevent prosecution of this civil rights case. There was not and is no pending proceeding lawfully assigned to the 252nd Judicial District Court that forms the basis of any of these unlawful actions. Therefore, in addition to seeking liability under 42 U.S.C. §§ 1981 and 1983 against the State

of Texas and the County of Jefferson under Monell and its progeny, Morrison is also seeking individual monetary liability against Walker for these actions under 42 U.S.C. §§ 1981 and 1983, and for the pendent Texas tort claims, set forth below.

47.    Defendant Tom Maness is the former Criminal District Attorney for Jefferson County, Texas. Defendant Maness had been actively involved in the wrongdoings at issue pertaining to the fabrication of false criminal charges against Morrison, and the attempts to indict Morgan in order to prevent prosecution of this civil rights case and the Stephen Hartman civil rights case. Defendant Maness has been implicated therefore in multiple constitutional deprivations set forth above and in multiple Texas Penal Code violations, as well as violating Tex. Gov't Code § 79.001 et seq. Maness worked together with Rugg, Walker, Sparks, Shettle, Branick and Phelps to seek wrongful prosecution of Morrison's attorney, as discussed above. Maness was an employee of Jefferson County, Texas. He was  a policy maker as the former elected District Attorney of Jefferson County, Texas.  Maness resigned not long after his illegal slush fund was discovered.  Maness as a state actor acted in violation of 42 U.S.C. § 1983 by intentionally participating in a plethora of unlawful conduct and constitutional deprivations, and also by acting negligently per se and also grossly negligent per se in violation of: (1) Texas Penal Code § 39.02, by Abuse of Official

35

Capacity;  (2) Texas Penal Code § 15.02, by entering into a criminal conspiracy with the other Defendants to violate Texas Penal Code provisions; (3) Texas Penal Code §§ 7.01 & 7.02, by becoming a party to criminal activity; (4) Texas Penal Code § 36.06, by retaliating against Morgan to destroy Morrison's constitutional right to seek redress in a federal court; (5) Texas Penal Code § 39.03, by Official Oppression; (6) Texas Disciplinary Rule of Professional Conduct § 4.04, by violating his duty of respecting the rights of third persons; and (7) Texas Disciplinary Rules of Professional Conduct § 8.04(a) (1), (2), (3), (4) & (6), by violating the Texas Disciplinary Rules, assisting others in violating these rules, committing criminal acts, engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, engaging in obstruction of justice, knowingly assisting a former judge in conduct that is a violation of applicable rule of judicial conduct of other laws.  Maness' misconduct was intentional and particularly egregious, since he is an attorney, the former Jefferson County District Attorney, and a policy maker of Jefferson County, with the sworn oath to respect and obey the Constitution and laws of the United States and the State of Texas. Maness knows intimately all of the Texas Penal Code provisions that he willingly violated and assisted others in violating, as well as all the Rules of Professional Conduct and Morrison's rights guaranteed under the United States Constitution that he willfully and flagrantly violated.  These laws, constitutional

36

rights and rules were very well established at the time Maness committed his misconduct, and Maness is charged with full knowledge of them.  Maness' misconduct is objectively unreasonable, particularly for a licensed attorney and as the former Criminal District Attorney of Jefferson County, Texas. Accordingly, at no time did Maness act in good faith, and therefore, he is not entitled to a defense of qualified or official immunity. Defendant Maness' negligence per se and gross negligence per se for violating those Texas Penal Codes and Disciplinary Rules identified above, have proximately caused Morrison substantial actual or compensatory damages. Further, Defendant Maness engaged in misconduct that is extreme and outrageous, particularly for a licensed attorney and the former Criminal District Attorney, for the express purpose of causing Morrison substantial and severe emotional and mental anguish. Accordingly, Defendant Maness committed the tort of intentional infliction of emotional distress against Morrison, and Maness' misconduct in this regard proximately caused Morrison substantial actual or compensatory damages. Further, Defendant Maness acted knowingly, willfully, with deliberate disregard for the rights and welfare of Morrison. Defendant Maness' misconduct therefore knowingly and willingly facilitated the County of Jefferson, Walker, and the other Individual Defendants to violate Morrison's 5th Amendment and 14th Amendment Due Process Rights in her property interest in her career, her

14th Amendment Equal Protection Rights, and also Morrison's 1st Amendment Rights to Freedom of Association and Freedom of Speech. Maness supported and facilitated the unconstitutional policy and practice of Jefferson County, Texas and the State of Texas to fully support, ratify, and participate in all of Walker's intentionally illegal and unconstitutional misconduct that for over ten (10) years habitually violated the constitutional and legal rights of many innocent citizens, like Morrison. Maness viewed his role to engage in public corruption, using his office as an offensive weapon to support unconstitutional and criminal misconduct all throughout the Jefferson County legal system. Further, since Defendant Maness acted maliciously, with conscious disregard for the rights and welfare of Morrison, and with the intent to cause Morrison as much harm and damage as possible, Morrison requests the imposition of punitive or exemplary damages at the discretion of the jury to punish Maness and to deter any further misconduct.

48.    Defendant Ed Shettle is the former First Assistant Criminal District Attorney for Jefferson County, Texas. Defendant Shettle had been actively involved in the wrongdoings at issue pertaining to the fabrication of false criminal charges against Morrison, and the attempts to indict Morgan in order to prevent prosecution of this civil rights case and the Stephen Hartman civil rights case.   Defendant Shettle has been implicated therefore in multiple

38

constitutional deprivations set forth above and in multiple Texas Penal Code violations, as well as violating Tex. Gov't Code § 79.001 et seq. Shettle worked together with Rugg, Sparks, Maness, Branick and Phelps to seek wrongful prosecution of Morrison's attorney, as discussed above.  Shettle was an employee of Jefferson County, Texas. He was a policy maker as the former First Assistant Criminal District Attorney of Jefferson County, Texas.  He very recently lost his job.   Shettle as a state actor acted in violation of 42 U.S.C. § 1983 by intentionally participating in a plethora of unlawful conduct and constitutional deprivations, and also by acting negligently per se and also grossly negligent per se in violation of: (1) Texas Penal Code § 39.02, by Abuse of Official Capacity; (2) Texas Penal Code § 15.02, by entering into a criminal conspiracy with the other Defendants to violate Texas Penal Code provisions; (3) Texas Penal Code §§ 7.01 & 7.02, by becoming a party to criminal activity; (4) Texas Penal Code § 36.06, by retaliating against Morgan to destroy Morrison's constitutional right to seek redress in a federal court; (5) Texas Penal Code § 39.03, by Official Oppression; (6) Texas Disciplinary Rule of Professional Conduct § 4.04, by violating his duty of respecting the rights of third persons; and (7) Texas Disciplinary Rules of Professional Conduct § 8.04(a)(1),(2),(3),(4),&(6), by violating the Texas Disciplinary Rules, assisting others in violating these rules, committing criminal acts, engaging in conduct involving dishonesty, fraud,

deceit or misrepresentation, engaging in obstruction of justice, knowingly assisting a former judge in conduct that is a violation of applicable rule of judicial conduct of other laws.   Shettle's misconduct was intentional and particularly egregious, since he is an attorney, the former First Assistant Criminal District Attorney, and a policy maker of Jefferson County, with the sworn oath to respect and obey the Constitution and laws of the United States and the State of Texas.  Shettle knows intimately all of the Texas Penal Code provisions that he willingly violated and assisted others in violating, as well as all the Rules of Professional Conduct and Morrison's rights guaranteed under the United States Constitution that he willfully and flagrantly violated.  These laws, constitutional rights and rules were very well established at the time Shettle committed his misconduct, and Shettle is charged with full knowledge of them.  Shettle's misconduct is objectively unreasonable, particularly for a licensed attorney and as the former First Assistant Criminal District Attorney of Jefferson County, Texas. Accordingly, at no time did Shettle act in good faith, and therefore, he is not entitled to a defense of qualified or official immunity. Defendant Shettle's negligence per se and gross negligence per se for violating those Texas Penal Codes and Disciplinary Rules identified above, have proximately caused Morrison substantial actual or compensatory damages. Further, Defendant Shettle engaged in misconduct that is extreme and

outrageous, particularly for a licensed attorney and the former First Assistant Criminal District Attorney, for the express purpose of causing Morrison substantial and severe emotional and mental anguish. Accordingly, Defendant Shettle committed the tort of intentional infliction of emotional distress against Morrison, and Shettle's misconduct in this regard proximately caused Morrison substantial actual or compensatory damages. Further, Defendant Shettle acted knowingly, willfully, with deliberate disregard for the rights and welfare of Morrison. Defendant Shettle's misconduct therefore knowingly and willingly facilitated the County of Jefferson, Walker, and the other Individual Defendants to violate Morrison's 5th Amendment and 14th Amendment Due Process Rights in her property interest in her career, her 14th Amendment Equal Protection Rights, and also Morrison's 1st Amendment Rights to Freedom of Association and Freedom of Speech. Shettle supported and facilitated the unconstitutional policy and practice of Jefferson County, Texas and the State of Texas to fully support, ratify, and participate in all of Walker's intentionally illegal and unconstitutional misconduct that for over ten (10) years habitually violated the constitutional and legal rights of many innocent citizens, like Morrison. Shettle viewed his role to engage in public corruption, using his office as an offensive weapon to support unconstitutional and criminal misconduct all throughout the Jefferson County legal system. Further, since Defendant Shettle acted

41

maliciously, with conscious disregard for the rights and welfare of Morrison, and with the intent to cause Morrison as much harm and damage as possible, Morrison requests the imposition of punitive or exemplary damages at the discretion of the jury to punish Shettle  and to deter any further misconduct.

49.     Defendant Tom Rugg is the current First Assistant Civil District Attorney for Jefferson County, Texas.  Defendant Rugg has been actively involved in the wrongdoings at issue pertaining to the fabrication of false criminal charges against Morrison, and the attempts to indict Morgan in order to prevent prosecution of this civil rights case and also the Stephen Hartman case. Defendant Rugg has been implicated therefore in multiple Constitutional deprivations set forth above and in multiple Texas Penal Code violations, as well as violating Tex. Gov't Code § 79.001 et seq.  Rugg is an employee of Jefferson County, Texas.  He is a policy maker as the First Assistant to the Criminal District Attorney of Jefferson County, Texas.  Rugg acted in violation of 42 U.S.C. § 1983 by intentionally participating in a plethora of unlawful conduct and also by acting negligently per se and also grossly negligent per se in violation of: (1) Texas Penal Code § 39.02, by Abuse of Official Capacity;  (2) Texas Penal Code § 15.02, by entering into a criminal conspiracy with the other Defendants to violate Texas Penal Code provisions; (3) Texas Penal Code §§ 7.01 & 7.02, by becoming a party to criminal activity; (4) Texas Penal Code § 36.06,

42

by retaliating against Morgan to destroy Morrison's constitutional right to seek
redress in a federal court; (5) Texas Penal Code § 39.03, by Official Oppression;
(6) Texas Disciplinary Rule of Professional Conduct § 4.04, by violating his duty
of respecting the rights of third persons; and (7) Texas Disciplinary Rules of
Professional Conduct § 8.04(a)(1),(2),(3),(4),&(6), by violating the Texas
Disciplinary Rules, assisting others in violating these rules, committing criminal
acts, engaging in conduct involving dishonesty, fraud, deceit or
misrepresentation, engaging in obstruction of justice, knowingly assisting a
former judge in conduct that is a violation of applicable rule of judicial conduct
of other laws.  Rugg's misconduct was intentional and particularly egregious,
since he is an attorney, the current or former First Assistant to the Jefferson
County Criminal District Attorney, and a policy maker of Jefferson County, with
the sworn oath to respect and obey the Constitution and laws of the United
States and the State of Texas. Rugg knows intimately all of the Texas Penal
Code provisions that he willingly and flagrantly violated and assisted others in
violating, as well as all the Rules of Professional Conduct that he violated. These
laws, constitutional rights and Disciplinary Rules were very well-established
and well-known at the time Rugg committed his misconduct, and Rugg is
charged with full knowledge of them.  Rugg's misconduct is objectively
unreasonable, particularly for a licensed attorney and as the current or former

First Assistant to the Criminal District Attorney of Jefferson County, Texas. Accordingly, at no time did Rugg act in good faith, and therefore, he is not entitled to a defense of qualified or official immunity. Defendant Rugg's negligence per se and gross negligence per se have proximately caused Morrison substantial actual or compensatory damages. Further, Defendant Rugg engaged in misconduct that is extreme and outrageous, particularly for a licensed attorney and the current or former First Assistant Criminal District Attorney, for the express purpose of causing Morrison substantial and severe emotional and mental anguish. Accordingly, Defendant Rugg committed the tort of intentional infliction of emotional distress against Morrison, and Rugg's misconduct in this regard proximately caused Morrison substantial actual or compensatory damages. Further, Defendant Rugg acted knowingly, willfully, with deliberate disregard for the rights and welfare of Morrison. Defendant Rugg's misconduct therefore knowingly and willingly facilitated the County, Walker, and the other Individual Defendants to violate Morrison's 5th Amendment and 14th Amendment Due Process Rights in her property interest in her career, her 14th Amendment Equal Protection Rights, and also Morrison's 1st Amendment Rights to Freedom of Association and Freedom of Speech. Rugg supported and facilitated the unconstitutional policy and practice of Jefferson County, Texas and the State of Texas to fully support, ratify, and participate in

44

all of Walker's intentionally illegal and unconstitutional misconduct that for ten (10) years habitually violated the constitutional and legal rights of many innocent citizens, like Morrison.  Rugg viewed his role to engage in public corruption, using his office as an offensive weapon to support unconstitutional and criminal misconduct all throughout the Jefferson County legal system. Further, since Defendant Rugg acted maliciously, with conscious disregard for the rights and welfare of Morrison, and with the intent to cause Morrison as much harm and damage as possible, Morrison requests the imposition of punitive or exemplary damages at the discretion of the jury to punish Rugg  and to deter any further misconduct.

50.     Defendant Shane Phelps is the Special Prosecutor. He has a long-standing friendship with Walker and Maness, and he has deliberately engaged in criminal and unconstitutional actions to oppress Morrison and others.  Defendant Phelps has been actively involved in the wrongdoings at issue pertaining to the conspiracy to indict Morgan in order to prevent prosecution of this civil rights case and also the Stephen Hartman case. Defendant Phelps has been implicated therefore in multiple Constitutional deprivations and Texas Penal Code violations, as well as violating Tex. Gov't Code § 79.001 et seq.  Phelps worked together with Walker, Maness, Rugg, Branick, and non-state actor Sparks, to seek wrongful prosecution of Morrison's attorney, as discussed above. Phelps

acted in violation of 42 U.S.C. § 1983 by intentionally participating in a plethora of unlawful and unconstitutional misconduct and also by acting negligently per se and also grossly negligent per se in violation of:  (1) Texas Penal Code § 39.02, by Abuse of Official Capacity;  (2) Texas Penal Code § 15.02, by entering into a criminal conspiracy with the other Defendants to violate Texas Penal Code provisions;  (3) Texas Penal Code §§ 7.01 & 7.02, by becoming a party to criminal activity; (4) Texas Penal Code § 36.06, by retaliating against Morgan to destroy Morrison's constitutional right to seek redress in a federal court; (5) Texas Penal Code § 39.03, by Official Oppression; (6) Texas Disciplinary Rule of Professional Conduct § 4.04, by violating his duty of respecting the rights of third persons; and (7) Texas Disciplinary Rules of Professional Conduct § 8.04(a)(1), (2), (3), (4) &(6), by violating the Texas Disciplinary Rules, assisting others in violating these rules, committing criminal acts, engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, engaging in obstruction of justice, knowingly assisting a former judge in conduct that is a violation of applicable rule of judicial conduct of other laws. Phelps' misconduct was intentional and particularly egregious since he is an attorney specializing in criminal defense law and Board Certified by the Texas Board of Legal Specialization in Criminal Defense Law, and the Special Prosecutor, with the sworn oath to respect and obey the Constitution and laws of the United States and the State of Texas.

Phelps knows intimately all of the Texas Penal Code provisions that he willingly violated and assisted others in violating, as well as all the Rules of Professional Conduct that he violated. These laws, constitutional rights, and rules were very well-established at the time Phelps committed his misconduct, and Phelps is charged with full knowledge of them. Phelps' misconduct is objectively unreasonable, particularly for a licensed attorney, a Board Certified expert in criminal law, and as the Special Prosecutor. Accordingly, at no time did Phelps act in good faith, and therefore, he is not entitled to a defense of qualified or official immunity. Defendant Phelps' negligence per se and gross negligence per se have proximately caused Morrison substantial actual or compensatory damages. Further, Defendant Phelps engaged in misconduct that is extreme and outrageous, particularly for a licensed attorney, a Board Certified expert in criminal law, and as the Special Prosecutor, for the express purpose of causing Morrison substantial and severe emotional and mental anguish. Accordingly, Defendant Phelps committed the tort of intentional infliction of emotional distress against Morrison, and Phelps' misconduct in this regard proximately caused Morrison substantial actual or compensatory damages. Further, Defendant Phelps acted knowingly, willfully, with deliberate disregard for the rights and welfare of Morrison. Defendant Phelps' misconduct therefore knowingly and willingly facilitated the County, Walker, and the other Individual

Defendants to violate Morrison's 5th Amendment and 14th Amendment Due Process Rights in her property interest in her career, her 14th Amendment Equal Protection Rights, and also Morrison's 1st Amendment Rights to Freedom of Association and Freedom of Speech.   Phelps supported and facilitated the unconstitutional policy and practice of Jefferson County, Texas and the State of Texas to fully support, ratify, and participate in all of Walker's intentionally illegal misconduct that for ten (10) years habitually violated the constitutional and legal rights of many innocent citizens, like Morrison.   Phelps knowingly used his office as the Special Prosecutor to perpetrate crime and to support unconstitutional and criminal misconduct against Morrison.   Further, since Defendant Phelps acted maliciously, with conscious disregard for the rights and welfare of Morrison, and with the intent to cause Morrison as much harm and damage as possible, Morrison requests the imposition of punitive or exemplary damages at the discretion of the jury to punish Phelps, and to deter any further misconduct.

51.    Defendant Jeff Branick is a former partner in the Provost Umphrey Law Firm, a licensed attorney, and the current Jefferson County Judge, which is the highest and most powerful political office in Jefferson County, Texas.   Branick has been actively involved in the attempts to indict Morgan in order to prevent prosecution of this civil rights case and also the Stephen Hartman case.   Branick

48

and Rugg both believe that doing so would save Jefferson County money for having to defend and pay any judgments that may be rendered against the state actors and Jefferson County as a result of the claims of Morrison and Stephen Hartman.   Defendant Branick has been implicated therefore in multiple constitutional deprivations set forth above and in multiple Texas Penal Code violations, as well as violating Tex. Gov't Code § 79.001 et seq. Branick is a policy maker as the County Judge for Jefferson County, Texas.  Branick acted in violation of 42 U.S.C. § 1983 by intentionally participating in a plethora of unlawful conduct and also by acting negligently per se and also grossly negligent per se in violation of: (1) Texas Penal Code § 39.02, by Abuse of Official Capacity; (2) Texas Penal Code § 15.02, by entering into a criminal conspiracy with the other Defendants to violate Texas Penal Code provisions; (3) Texas Penal Code §§ 7.01 & 7.02, by becoming a party to criminal activity; (4) Texas Penal Code § 36.06, by retaliating against Morgan to destroy Morrison's constitutional right to seek redress in a federal court; (5) Texas Penal Code § 39.03, by Official Oppression; (6) Texas Disciplinary Rule of Professional Conduct § 4.04, by violating his duty of respecting the rights of third persons; and (7) Texas Disciplinary Rules of Professional Conduct § 8.04(a)(1),(2),(3),(4),&(6), by violating the Texas Disciplinary Rules, assisting others in violating these rules, committing criminal acts, engaging in conduct involving dishonesty, fraud,

deceit or misrepresentation, engaging in obstruction of justice, knowingly assisting a former judge in conduct that is a violation of applicable rule of judicial conduct of other laws.   Branick's misconduct was intentional and particularly egregious, since he is an attorney, the Jefferson County Judge, and the highest policy-maker of Jefferson County, with the sworn oath to respect and obey the Constitution and laws of the United States and the State of Texas. Branick knows intimately all of the Texas Penal Code provisions that he willingly and flagrantly violated and assisted others in violating, as well as all the Rules of Professional Conduct that he violated. These laws, constitutional rights and Disciplinary Rules were very well-established and well-known at the time Branick committed his misconduct, and Branick is charged with full knowledge of them.   Branick's misconduct is objectively unreasonable, particularly for a licensed attorney and as the current Jefferson County Judge. Accordingly, at no time did Branick act in good faith, and therefore, he is not entitled to a defense of qualified or official immunity. Defendant Branick's negligence per se and gross negligence per se have proximately caused Morrison substantial actual or compensatory damages. Further, Defendant Branick engaged in misconduct that is extreme and outrageous, particularly for a licensed attorney and the current Judge of Jefferson County, Texas, for the express purpose of causing Morrison substantial and severe emotional and

50

mental anguish. Accordingly, Defendant Branick committed the tort of intentional infliction of emotional distress against Morrison, and Branick's misconduct in this regard proximately caused Morrison substantial actual or compensatory damages. Further, Defendant Branick acted knowingly, willfully, with deliberate disregard for the rights and welfare of Morrison. Defendant Branick's misconduct therefore knowingly and willingly facilitated the County, Walker, and the other Individual Defendants to violate Morrison's 5th Amendment and 14th Amendment Due Process Rights in her property interest in her career, her 14th Amendment Equal Protection Rights, and also Morrison's 1st Amendment Rights to Freedom of Association and Freedom of Speech. Branick supported and facilitated the unconstitutional policy and practice of Jefferson County, Texas and the State of Texas to fully support, ratify, and participate in all of Walker's intentionally illegal misconduct that for ten (10) years habitually violated the Constitutional and legal rights of many innocent citizens, like Morrison.  Branick views his role to engage in public corruption, using his office as an offensive weapon to support unconstitutional and criminal misconduct all throughout the Jefferson County legal system. Further, since Defendant Branick acted maliciously, with conscious disregard for the rights and welfare of Morrison, and with the intent to cause Morrison as much harm and damage as possible, Morrison requests the imposition of punitive or exemplary

damages at the discretion of the jury to punish Branick and to deter any further misconduct.

52.    Defendant Mark Sparks, a non-state actor Defendant willingly in the civil and criminal conspiracy to indict Morgan, which included the "stacking" of the Grand Jury panel in order try to indict both Klein and Morgan, for the reasons set forth herein. The indictment of Morgan was intended to cause constitutional deprivations and harm to Morrison, and therefore is actionable by Morrison. Defendant Sparks acted willingly, knowingly, and with the express desire to participate in a civil and criminal conspiracy in violation of multiple Texas Penal Code provisions, and therefore Mark Sparks committed negligence per se and gross negligence per se by violating:  (1) Texas Penal Code § 15.02, by entering into a criminal conspiracy with the other Defendants to violate Texas Penal Code provisions; (2) Texas Penal Code §§ 7.01 & 7.02, by becoming a party to criminal activity; (3) Texas Penal Code § 36.06, by retaliating against Morgan to destroy Morrison's constitutional right to seek redress in a federal court; (4) Texas Disciplinary Rule of Professional Conduct § 4.04, by violating his duty of respecting the rights of third persons; and (5) Texas Disciplinary Rules of Professional Conduct § 8.04(a)(1),(2),(3),(4),&(6), by violating the Texas Disciplinary Rules, assisting others in violating these rules, committing criminal acts, engaging in conduct involving dishonesty, fraud, deceit or

misrepresentation, engaging in obstruction of justice, knowingly assisting a former judge in conduct that is a violation of applicable rule of judicial conduct of other laws. Additionally, Mark Sparks committed overt acts in furtherance of this conspiracy, by stacking the Grand Jury panel and including himself on this Grand Jury panel, and to ensure that two other presently unknown co-conspirators were on the Grand Jury panel for the specific purpose of seeking this wrongful indictment against Morgan to stop the prosecution of this civil rights case and also the case of Stephen Hartman. Accordingly, Mark Sparks should be held jointly and severally liable with all of the other Defendants, as part of an overall civil and criminal conspiracy to violate Morrison's legal, civil and constitutional rights, on all of the bases set forth in this Complaint. Morrison seeks to recover from Mark Sparks all of her compensatory damages. Morrison also seeks to recover from Sparks punitive damages because he acted willfully, intentionally, and with knowing disregard for the rights and welfare of Morrison, with knowing disregard for the United States Constitution, and with knowledge he was violating multiple Texas Penal Code provisions.

### DAMAGE CLAIMS

53.   Morrison asserts this lawsuit pursuant to 42 U.S.C. §§ 1981 & 1983. Walker, Maness, Rugg, Shettle, Branick, Barker, Phelps, and Jefferson County are state and county actors and a governmental entity, and they have violated

the constitutional, legal and civil rights of the Plaintiff in an ongoing basis, pursuant to an ongoing scheme due to Walker's racial prejudice and pursuant to a custom, practice and standard operating procedure of the State of Texas and the County of Jefferson. The complicity, ratification and facilitation by the State of Texas and the County of Jefferson of all of Walker's unconstitutional and unlawful activity are so wide-spread and persistent that they constitute a custom that fairly represents official policy of both the State of Texas and the County of Jefferson.  All the state actor Defendants have acted jointly, with a unity of purpose and with collective action, justifying the imposition of joint and several liability against all the state actor Defendants.  These state actor Defendants have caused Ms. Morrison substantial damages.

54.    Pursuant to §§ 1981, 1981a and 1983, Plaintiff seeks to recover against Walker, Maness, Shettle, Rugg, Barker, Branick, Phelps, and the County of Jefferson all of her compensatory or actual damages for all her economic and non-economic harm that have been caused by these ongoing violations of §§ 1981 & 1983. Morrison's economic damages are her financial or economic losses in the past, present and future, that include but are not limited to loss of revenue and profits from her business and her practice of law, loss of goodwill, loss of business, and other economic losses in the past, present and future, to be demonstrated at the time of trial.  Morrison also seeks to recover all her non-

economic losses for her mental anguish and loss of enjoyment of life in the past, present and future.   Plaintiff seeks to recover from all these state actor Defendants and also Jefferson County, $5,000,000.00 for her past, present and future compensatory damages from each and every state actor Defendant and also from Jefferson County as a governmental entity, to be adjudicated jointly and severally against the state actor Defendants and also Jefferson County, Texas.

55.    Sections 1981, 1981a and 1983 also authorize the recovery of punitive or exemplary damages against state or local officials in their individual capacity, for conduct that the fact-finder finds to be malicious, intentional, recklessly or callously indifferent to a plaintiff's constitutional rights.   Smith v. Wade, 461 U.S. 30 (1983).   In order to recover punitive or exemplary damages, the jury need not find the conduct at issue was "outrageous" or "extraordinary," even though the misconduct of Jefferson County, Walker, Maness, Rugg, Shettle, Branick, Barker and Phelps certainly is outrageous and extraordinary.   Id.; Kolstad v. American Dental Ass'n, 527 U.S. 526, 535-36 (1999). Based upon these standards, Morrison seeks the imposition of punitive or exemplary damages against each and every state actor Defendant and Jefferson County in an amount to be set by the jury to punish all these  wrongdoers fully and to deter any future misconduct either by each and every state actor Defendant and

Jefferson County.   While the amount   awarded as punitive or exemplary damages is solely within the jury's discretion, Plaintiff requests the jury consider an award of punitive or exemplary damages against these Defendants in an amount of at least seven (7) times the compensatory or actual damages awarded by the jury.   The breach of public trust and blatant misuse of power by all of these state actor Defendants and Jefferson County against Morrison and others merit a strong punitive response.   Plaintiff requests the jury make an example of each and every one of these state actor Defendants and Jefferson County to punish and deter each and all of them, to clean up Jefferson County, Texas and ensure a rule of law for all the citizens of Jefferson County, Texas, and in the process send a message to the Jefferson County legal system that this type of conduct will no longer be tolerated by law-abiding citizens.   None of the state actor Defendants are entitled to official or qualified immunity, because their negligence and negligence per se were all part of overall criminal activities and intentional misconduct outside the course and scope of their employment and at all times conducted in bad faith.

56.    Plaintiff also sues non-state actor Defendant Mark Sparks, and also all the state actor Defendants, separately, for intentional infliction of emotional distress, general negligence and also negligence per se in violation of multiple Texas Penal Codes and Disciplinary Rules (which are identified above and

incorporated into this section of this Amended Complaint), and a civil conspiracy with all the other Defendants to perpetrate all the legal wrongs at issue in this case against Morrison, all of which have proximately caused actual or compensatory damages to Morrison.  Morrison seeks to recover $5,000,000.00 from Mark Sparks for her compensatory damages proximately caused by him.

57.    Further, Morrison sues Walker, Maness, Rugg, Shettle Barker, Branick, Phelps, Jefferson County and Sparks for gross negligence and gross negligence per se, due to each and every one of these Defendants' grossly negligent conduct against her and their repetitive, willful violations against Morrison of (1) the Texas Code of Judicial Conduct for Defendant Walker, (2) the Texas Penal Code provisions identified in this Complaint, (3) the Texas Government Code, (4) the Texas Disciplinary Rules, and (5) the United States Constitution.  Plaintiff contends that each and every Defendant is grossly negligent and grossly negligent per se for their all their breaches of constitutional, statutory duties, attorney Disciplinary Rules and common law duties to Morrison.  Walker was also negligent per se and grossly negligent per se by violating multiple Texas Judicial Cannons, including (1) Cannon One, which is maintaining the Independence and Integrity of the Judiciary; (2) Canon Two, which is Avoiding Impropriety in All of the Judge's Activities; (3) Canon Three, which is Performing the Duties of Judicial Office Impartially and Diligently; (4) Canon

Four, which is Conducting the Judge's Extra-Judicial Activities to Minimize the Risk of Conflict with Judicial Obligations; and (5) Canon Five, which is Compliance with the Code of Judicial Conduct.  Walker's oppressive conduct toward Morrison has violated all these Judicial Canons openly and in an ongoing basis, with the knowledge and support of the State of Texas and the County of Jefferson.  The malicious and tortious conduct of all the state actor Defendants, Jefferson County and Mark Sparks also constitutes gross negligence and gross negligence per se by violating (1) Ms. Morrison's civil rights under 18 U.S.C. § 241, and (2) Ms. Morrison's civil rights under Color of State law, in violation of 18 U.S.C. § 242.  All these actions by these Defendants have proximately caused Morrison actual or compensatory damages, as set forth and enumerated above. Further, these Texas state law torts have been perpetrated by each and every Defendant  maliciously and with a specific intent to harm  Morrison, justifying the imposition of punitive or exemplary damages against each and every Defendant in an amount set forth above.

## ATTORNEYS' FEES, COSTS AND EXPENSES

58.    Morrison seeks to recover all her attorneys' fees, costs and expenses pursuant to 42 U.S.C. §§ 1981, 1981a and 1983.  Plaintiff has employed Undersigned Counsel, who is Board Certified by the Texas Board of Legal Specialization in Civil Trial Law.  Plaintiff has retained the Morgan Law Firm

on a standard 40% contingent fee basis, plus recoupment of all the Morgan Law Firm's costs and expenses incurred in prosecuting this cause of action.  Pursuant to the Lodestar methodology, Plaintiff shall provide proof of attorneys' fees and expenses itemized on a hourly basis, at the rate of $450.00 per hour.  Plaintiff anticipates that hourly attorneys' fees, costs and expenses incurred through a trial of this case could reasonably reach  $350,000.00 or more.  For making or responding to any necessary appeal to the United States Court of Appeals for the Fifth Circuit, Plaintiff seeks attorneys' fees, costs and expenses in the amount of $75,000.00 for the initial appellate brief and oral argument, and $35,000.00 for any necessary motions for rehearing or rehearing en banc, conditioned upon success on appeal.  Further, for making or responding to a Petition for Certiorari to the United States Supreme Court, Plaintiff seeks an additional $75,000.00, conditioned upon success before the United States Supreme Court.

59.    Plaintiff also requests an enhancement to the award of attorneys' fees for prosecuting this cause of action.  See Perdue v. Kenny A, 559 U.S. 542 (2010).  Ms. Morrison's attorney, Undersigned Counsel, has experienced ongoing retaliation orchestrated by all the Defendants and also the Provost Umphrey Law Firm and others, for (1) representing Ms. Morrison and (2) reporting and opposing unlawful conduct.   For example, Walker and Rugg, with the participation of Judge Olen Underwood filed retaliatory grievances against

Undersigned Counsel based on his representation of Morrison, Hartman and for reporting criminal activity to federal and state law enforcement. This also includes attempts to indict, arrest and jail Undersigned Counsel and arrange to have him shanked or stabbed (presumably to death) in jail.   This is all significant organized crime. Undersigned Counsel reasonably anticipates, based upon the extensive history of ongoing official oppression and retaliation, this retaliatory conduct will continue and intensify, in an attempt to bully Undersigned Counsel and Morrison into dismissing this cause of action. Accordingly, due to the past retaliatory misconduct and the specter of more retaliation against both   Morrison and her attorney, an enhancement of attorneys' fees should be consider by the Court in this matter.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendants be cited to appear and answer herein.  Plaintiff requests that she obtain a Judgment against all Defendants, jointly and severally, for all her compensatory damages.  Plaintiff also requests that she recover punitive or exemplary damages against each Defendant in this case, jointly and severally. Plaintiff also requests that she recover all her reasonable and necessary attorneys' fees, court costs and expenses, and an enhancement for her attorneys' fees. Finally, Plaintiff requests such other and further relief, at law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,


/s/ John S. Morgan
JOHN S. MORGAN
TBA#14447475
Morgan Law Firm
2175 North Street, Suite 101
Beaumont, Texas 77701
(409) 239-5984
(409) 835-2757 facsimile
jmorgan@jsmorganlaw.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

This hereby certify that a true and correct copy of the foregoing document has been provided to counsel of records, via electronic filing on this 31st day of January, 2014.

Tom Rugg                           <u>Via electronic filing</u>
First Assistant Criminal District Attorney
Civil Division
1001 Pearl, Suite 301
Beaumont, Texas 77701

Joe J. Fisher, II                  <u>Via electronic filing</u>
Walter Umphrey
Mark Sparks
Provost Umphrey Law Firm
P. O. Box 4905
Beaumont, Texas 77704

David A. Harris                    <u>Via electronic filing</u>
Assistant Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711

/s/ John S. Morgan
JOHN S. MORGAN