UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
TEXAS BEAUMONT DIVISION

STELLA MORRISON

VS.                                    CASE NO. 1:13-CV-00327

LAYNE WALKER, THE COUNTY OF

PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, STELLA MORRISON, files Plaintiff's First Amended Complaint.

PARTIES

1.      Plaintiff, STELLA MORRISON, is an individual residing in Jefferson County, Texas and
is appearing in court through her attorney of record.

2.      Defendant, LAYNE WALKER, can be served through his attorney of record.

3.      Defendant, THE COUNTY OF JEFFERSON, TEXAS, can be served with process through
its attorney of record.

4.      Defendant, DEPUTY ANTHONY BARKER, can be served with process at his place of
employment, 1001 Pearl Street, Beaumont, Texas 77701.

5.      Defendant, THOMAS MANESS, can be served at his residence, 25 Bellechase Gardens
Drive, Beaumont, Texas 77706-8728.

JURISDICTION AND VENUE

6.      This Court has jurisdiction over the Parties, the subject matter and the causes of action
pursuant to federal question jurisdiction. 28 U.S.C. § 1331. This Court also has jurisdiction over the

1

pendent Texas state law claims.  Venue is appropriate in this District and Division of Federal Court.

BACKGROUND FACTS

7.    Morrison is an African-American attorney who has practiced criminal defense law in Jefferson County for many years. Morrison is a civil rights leader who has made a very positive impact upon this community.  Similar to many other people, however, Morrison has been the victim of ongoing tortious, intentionally racist and unconstitutional actions perpetrated by Layne Walker, acting under color of state law, the former Texas District Judge of the 252nd Judicial District Court. Walker recently resigned from the bench. Ms. Morrison and her husband, Honorable Judge Kermit Morrison, ran against Walker for this elected office in 2006.  Since those elections Walker had engaged in an ongoing and consistent pattern of harassment, retaliation, unconstitutional actions, and intentional Texas torts against Morrison.  The vast majority of these culpable actions have occurred outside the scope of his jurisdiction as a judge.

8.    In addition to tormenting Morrison due to her running for office against him, Walker's unlawful conduct against her was also based upon his intentional racial discrimination against African-Americans. Walker demonstrated racial discrimination through his unlawful actions against Morrison and other African Americans, that included but was not limited to Walker regularly imposing sentences upon African-American criminal defendants beyond the legal sentencing limits under Texas law, and also beyond comparable sentences that Walker imposed upon Caucasian defendants in his court. Further, Walker had a history of erratic behavior and furious outbursts.  In his overall pattern and practice of unconstitutional, racist and tortious activity, Walker was and still is supported and facilitated by the Jefferson County Sheriff's Department, The Jefferson County District Attorney's Office, and the government of Jefferson County.

2

9.      Walker's consistent and ongoing pattern of unlawful conduct against Morrison included, but is not limited to, the following.

10.     Walker filed multiple grievances against Morrison to the Texas State Bar Chief Disciplinary Counsel, in an ongoing effort to have  Morrison's law license revoked. Walker has demonstrated an overall pattern of vindictively seeking the revocation of law licenses and professional licenses of all those persons whom Walker perceived as his personal enemies. Walker's multiple grievances against Morrison were based upon his personal hatred of her due to her running for office against him, and also due to her race. Walker's actions were outside of his former jurisdiction as a Texas state court judge.  These actions also constitute constitutional  violations against Morrison that: (1) interfered with  her contractual rights to practice law, which is a constitutionally recognized property interest in her career under the Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution; and (2) retaliated against her in violation of her constitutionally recognized right to freedoms of association and speech under the First Amendment of the U.S. Constitution, because she associated with people who opposed Walker's unlawful and retaliatory actions, and she ran for judicial office against Walker.

11.     Walker's efforts to revoke Morrison's law license is exemplified by a grievance he wrote to Texas State Bar investigator Ms. Morgan. This particular Grievance insults Morrison for allegedly "demonstrating  professional misconduct," providing "constitutionally  ineffective  assistance  to counsel," and contains a barrage of insults toward Morrison, all demonstrating Walker's racial and personal  hatred  of  Morrison.   Walker  references  the  judicial  elections  at  issue  involving  both Morrison and her husband, the Honorable Judge Kermit Morrison.  Attached as Exhibit "1" to the Original Complaint is the Affidavit of Sheriff Deputy Rodney Williams, Bailiff, who confirms that

3

Walker's ongoing unconstitutional and racist retaliatory actions "have been going on since Walker first defeated her [Morrison] in the first election for the 252nd Criminal District Court and has continued since defeating her husband Judge Kermit Morrison in the March Primary 2006."

12.     Walker has filed several grievances against Morrison, and not all of these grievances related to her conduct as counsel in his Court. Under the factors enunciated in *Ballard v. Wall*, 413 F. 3d 510 (5th Cir. 2005), the filing of these repetitive, malicious grievances should not be protected by judicial immunity for several reasons. The first factor demonstrates that immunity is not appropriate, because the filing of repetitive grievances for the express purpose of trying to take away Morrison's law license and therefore deprive her of her Due Process Rights to her career (a constitutionally protected property interest) in violation of the 5th and 14th Amendments, is not a normal judicial function.   The filing of grievances presumably occurred in the Judge's chambers, so therefore the second factor would seem to be in favor of judicial immunity. The filing of these grievances, however, did not always involve cases pending before Walker in his Court.  One of these grievances was based upon Morrison's handling a case not in Walker's court.  Therefore, the third factor does not favor judicial immunity. Similarly, the filing of repetitive grievances for the express purpose of trying to suspend or revoke Morrison's law license did not arise directly out of a visit to Walker in his official capacity. Walker's targeting of Morrison's law license and career  by the filing of repetitive grievances is part of his overall habit and pattern of oppressing Morrison. Walker's habit and pattern of filing retaliatory grievances is substantiated by grievances filed by Walker against other person's professional licenses, when Walker perceives other persons to be his political or personal enemies.  Under these circumstances, Morrison submits that Walker should not be entitled to judicial immunity for his filing of repetitive grievances against her law license. These actions by

4

Walker also violate Ms. Morrison's First Amendment rights of freedom of speech and freedom of association, because Walker was retaliating against Morrison for campaigning against him and exercising her constitutional rights to associate with political opponents of Walker. Walker's actions also violate Morrison's Fourteenth Amendment right to Due Process of Law, because Morrison was deprived of any orderly legal process to prevent Walker from filing retaliatory grievances. Further, Walker's actions violate Ms. Morrison's Fourteenth Amendment rights to Equal Protection under the law, because Walker did not treat Morrison equally when compared to Caucasian attorneys who practiced law in his Court, and when compared to other attorneys who did not run for office against him.

13.     Walker also has a prodigious habit, which is still ongoing, of seeking falsified criminal charges against people that he does not like.  Walker worked with the former Criminal District Attorney, Defendant Thomas Maness, to fabricate false criminal charges against Morrison. Defendant Maness recently resigned, reportedly after the discovery that his Office controlled a substantial slush fund of illegally obtained money for the purpose of funding various unlawful activities. Maness personally prevented all criminal investigations into Walker's misconducts, including by refusing to authorize any investigations by the Texas Attorney General or by the Texas Rangers. Maness worked together with Walker to try to have Morrison wrongfully indicted and prosecuted for alleged perjury based upon Walker's request due to his hatred of Morrison, even though Walker and Maness knew that Morrison did not commit any crime. That is, Walker and Maness knew these criminal charges against Morrison were entirely false and were fabricated by Walker and Maness, and were only for political purposes.  Walker and Maness arranged to have the Jefferson County District Attorney's Office convene a grand jury to consider falsified perjury charges against

Morrison. Based upon these fraudulent charges, Morrison felt compelled to appear before the grand jury for almost five (5) hours, which was a very humiliating and degrading situation for her.  While Texas law cannot force a target of a grand jury investigation to appear before a grand jury, Morrison appeared to defend herself and thereby prevent her wrongful indictment.  If Morrison had not appeared, the grand jury would have only considered the false statements made through the Jefferson County District Attorneys' Office to facilitate a wrongful indictment. Morrison does not remember the precise dates when here grand jury appearance occurred, but Morrison believes this occurred in approximately 2010.  Discovery should yield the exact dates of this occurrence. The grand jury determined that the charges against Morrison were falsified and were being brought in bad faith, and thus the grand jury refused to indict Morrison. The County of Jefferson paid for this illegal conduct, as part of its and unconstitutional policy of fully supporting all of Walker's criminal and unconstitutional activities, with taxpayer money. These false criminal charges against Morrison that were orchestrated by Defendants Walker and Maness, had nothing to do with a case that was pending or had been adjudicated in Walker's Court.  In fact, Walker ordered Maness to come up with false charges, so they fabricated perjury charges against Morrison based on a statement she made regarding a client's probationary status in a case pending before Judge Gist, the presiding Judge of Drug Court.  That is, these false charges were not based upon a case pending before Walker. The case in which Morrison made her allegedly false statement was pending before Judge Gist. This attempt to indict Morrison was based upon Walker's ongoing personal and racial vendetta against Morrison, discussed above.

14.     Under the factors in *Ballard v Wall*, 413 F. 3d 510 (5th Cir. 2005), all four (4) factors demonstrate there should be no judicial immunity for the fabrication of false criminal charges against

6

Morrison by Walker and Maness.  When considering the first factor, it is clear that Walker's and Maness' fabrication of false criminal charges is not a normal judicial function.  Morrison has already provided the Court with case law demonstrating that federal Circuit Courts have held that a judge is neither a prosecutor nor a district attorney, and a judge trying to act as a prosecutor or a district attorney seeking false criminal charges due to personal hatred of the victim can never be considered a judicial function, much less a normal judicial function.  The second *Ballard* factor also favors Morrison, because Walker's and Maness'  fabrication of false criminal charges did not occur in Walker's courtroom or in any appropriate adjunct spaces, which is defined as Walker's former chambers.  Instead, the fabrication of these false criminal charges occurred in the Jefferson County District Attorneys' Office, based upon Morrison's statement regarding her client's probation status in Judge Gist's court, and the wrongful attempt to indict Morrison occurred in the Jefferson County grand jury room.  The third *Ballard* factor also supports Morrison, because the fabrication of these false criminal charges did not center upon a case either pending or that had been adjudicated in Walker's former court.  To the contrary, the charges were based upon a case pending in Drug Court, presided over by Judge Gist.  Indeed, Walker has demonstrated a propensity for, and a habit of, seeking false criminal charges against people he does not like, and this behavior pattern has manifested itself repeatedly over the years against many victims, with the repetitive participation of Maness and the Jefferson County District Attorneys' Office. The fourth *Ballard* factor also favors Morrison, because this civil and criminal conspiracy by Walker and Maness to fabricate false criminal charges against Morrison did not arise out of a visit by Morrison to Walker in his official capacity. The reality is that Walker and Maness have for years targeted people for false criminal prosecution based upon their personal and political motives. This includes not only Morrison, but

also Stephen Hartman, former Beaumont Police Officer Heilman, former Beaumont Police Officer Beaulieu, Mr. Philip Klein, and possibly others to be developed during discovery. The attempts by Walker and Maness to have Morrison indicted and prosecuted had absolutely nothing to do with Walker's role as a judge, but was based upon Walker's normal practice of abusing his status and using the allegiance of Maness to try to destroy the lives of persons Walker perceived to be his political enemies, such as Morrison. These falsified criminal charges orchestrated by Walker and Maness violated Morrison's First Amendment rights to freedoms of speech and association, because these actions were based upon Morrison exercising her right to free speech by campaigning against Walker for judge of the 252nd District Court, and also her freedom to associate with persons whom Walker perceived to be his political opponents. These actions were specifically intended to destroy Morrison's constitutionally recognized contractual right to practice law and her property interest in her career, which is recognized by the Due Process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution. Further, these actions by Walker and Maness violated Ms. Morrison's right to Due Process under the Fourteenth Amendment, because the fraudulent charges and the grand jury were orchestrated in a retaliatory manner that denied Ms. Morrison due process of law, because the entire Jefferson County legal system was twisted to serve Walker's illicit goals. Similarly, this misconduct violated Morrison's right to Equal Protection guaranteed by the Fourteenth Amendment, because she was treated adversely in comparison to (1) Caucasian attorneys practicing in the 252nd Judicial District Court, (2) other attorneys who had not run for office against Walker.

15.     Walker had issued a standing order that Morrison is not allowed either in his chambers or in the hallway outside his chambers, even though this hallway leads to both the chambers of Judge

8

John Stevens and Walker's former chambers. This hallway used to be entirely open to the public. When Walker was elected judge, however, he insisted upon a secure doorway with a lock put in at the base of this hallway, such that nobody could enter the hallway without being "buzzed in" after identifying themselves. In this circumstance, as demonstrated by Morrison's affidavit, she was assaulted by Defendant Deputy Barker, when she was in this hallway, which is accessible to all members of the bar and is necessary for attorneys to use who practice criminal defense law. This hallway is also necessarily used by prosecutors from the Jefferson County District Attorney's office, and court staff. Morrison states clearly that she was near the window to Ed Tanner, when Deputy Barker assaulted her upon Walker's direct order, and Barker used physical force to remove her from this hallway. Morrison was not in Walker's former chambers, and she was not attempting to go into Walker's chambers at that particular time. Notably, Walker's order barring Morrison from this hallway also barred Morrison from attempting to travel toward Judge Steven's chambers, whether as part of her practice of law or otherwise.

16.     Under the four (4) factors set forth in *Ballard v. Wall*, 413 F. 3d 510 (5th Cir. 2005), Walker should not have judicial immunity for this. The first factor favors Morrison. Banning an attorney from a hallway which is used by all attorneys and is necessary for the practice of law is not a normal judicial function. Further, it is not a normal judicial function for Walker to have banned Morrison from using this same hallway to head toward the chambers of Judge Stevens. Walker had no judicial jurisdiction over any hallway, and Walker had no jurisdiction over access to Judge Stevens' chambers. The second *Ballard* factor also favors Morrison. This unlawful edict by Walker did not occur in the courtroom, or in an appropriate adjunct space, which *Ballard v. Wall* defines as the judge's chambers. In this instance, Walker's ordered Barker to assault Morrison when she was not

9

attempting to enter Walker's former chambers, and when she was not breaching the peace in any way.   These facts are clear from Morrison's statement.   The third *Ballard* factor also favors Morrison, because Walker's assault order did not involve a case pending before Walker. The fourth *Ballard* factor also favors Morrison, because Walker's assault order did not arise out of a visit by Morrison to Walker in his former official capacity. Morrison was not trying to visit Walker at all. Pursuant to this unlawful and racist edict, Walker ordered an assault upon Morrison by Sheriff Deputy Anthony Barker.  Sheriff Mitch Woods is a personal friend of Walker, and they are known as "hunting buddies." The Sheriff has permitted his Office and his Deputies to be used by Walker to carry out a plethora of unconstitutional and illegal actions, such as this incident at issue.  Exhibit "2" to the Original Complaint is Morrison's Statement pertaining to the assault upon her by Deputy Barker, which occurred on the  instructions  of  Walker.  After  this  assault,  Morrison  retained Undersigned Counsel, and his Letter of Representation and Notice is attached as Exhibit "3" to the Original Complaint.  Walker and Barker's actions violated  Morrison's constitutionally recognized contractual right to practice law and her property interest in her career, which is recognized by the Due Process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution.  Further, these actions by Walker violatedMorrison's right to  freedom  of  association under  the  U.S. Constitution First Amendment, to associate with courthouse personnel and staff, including her attempt to speak to Ed Tanner near his window, and also the right to possibly speak to Judge Stevens or the staff in Judge Stevens' court.  Similarly, this misconduct violated Morrison's right to Equal Protection guaranteed by the Fourteenth Amendment, because she was treated adversely in comparison to (1) Caucasian attorneys practicing in the 252nd Judicial District Court, (2) other attorneys who had not run for office against Walker.  Further, this misconduct violated Ms.

Morrison's First Amendment rights of freedom of speech and association, because Layne Walker promulgated this policy to retaliate against Morrison for (1) exercising her free speech right to campaign against him, and (2) her right to associate with political opponents of Walker. Further, these actions violate Morrison's right to Due Process of Law under the Fourteenth Amendment, because there was no legal process and no legal grounds involved in Walker's unlawful edict.

17.     Walker informed Morrison that he would not allow her to practice law in the 252nd District Court. Walker believed the 252nd District Court belonged to him personally, instead of to the citizens of Jefferson County, Texas. When Walker was unsuccessful with that illegal pronouncement, he did everything he could do to disrupt and harm Morrison's law practice in the 252nd District Court. Walker was unprofessional, rude, vicious, and ugly toward Morrison. These actions intentionally harmed Morrison's legal practice, because Walker's misconduct deterred clients from hiring her, and Walker retaliated against clients that retained Morrison, particularly African-American clients. Walker's overt prejudice and rages against Morrison when she conducted her profession in the 252nd Judicial District Court, therefore, damaged Morrison's contractual right to practice law and her property interest in her career, which is recognized by the Due Process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution. Further, these actions by Walker violated Morrison's right to freedom of association under the U.S. Constitution's First Amendment, to associate with courthouse personnel during her practice of law. Similarly, this misconduct violated Ms. Morrison's right to Equal Protection guaranteed by the Fourteenth Amendment, because she was treated adversely in comparison to (1) Caucasian attorneys practicing in the 252nd Judicial District Court, (2) other attorneys who had not run for office against Walker. Further, this misconduct violated Morrison's First Amendment rights of freedom of speech and association, because

11

Walker promulgated this policy to retaliate against Morrison for (1) exercising her free speech right to campaign against him, and (2) her right to associate with political opponents of Walker. Further, these actions violated Morrison's right to Due Process of Law under the Fourteenth Amendment, because there was no legal process and no legal grounds involved in Walker's unlawful behavior.

18.     Walker had also unlawfully held Morrison in contempt of Court, disregarding the protection she was entitled to under Tex. Gov't Code § 22.001. This provision of the Government Code required Walker to have any contempt proceedings against an attorney considered by another Judge, but Walker habitually refused to follow Texas law. These actions by Walker violated Morrison's contractual right to practice law, because Walker is harming Morrison's ability to practice her profession. This misconduct violated Morrison's rights to Free Speech and Freedom of Association under the First Amendment, because Walker's misconduct was retaliatory for Morrison exercising her free speech right to campaign for office against Walker and her right to associate with Walker's political opponents. Further, these actions violated Morrison's right to Due Process under the Fourteenth Amendment, because Walker expressly nullified the legal protections available to Morrison under the Texas Government Code. Finally, these actions violated Morrison's Fourteenth Amendment right to Equal Protection, because this misconduct treated Morrison worse than comparable Caucasian attorneys practicing in the 252nd Judicial District Court.

19.     Walker also intentionally disrupted Morrison's relationships with courtroom personnel on an ongoing basis. Courtroom personnel were afraid to talk to her, because they feared retaliation by Walker. These actions by Walker violated Morrison's contractual rights to practice law, because professional relationships with courtroom personnel are necessary for the successful practice of law.

This misconduct also violated Morrison's rights to free speech and freedom of association under the First Amendment, because Walker's conduct was retaliatory for Morrison exercising her free speech right to campaign against Walker and her right to associate with Walker's political opponents.  These actions violate Morrison's right to Due Process under the Fourteenth Amendment, because Walker's conduct had no basis in law. These actions also violated Morrison's Fourteenth Amendment right to Equal Protection, because this misconduct treated Morrison worse than comparable Caucasian attorneys practicing in the 252nd Judicial District Court.

LIABILITY OF THE STATE OF TEXAS AND THE COUNTY
OF JEFFERSON UNDER 42 U. S. C. §§ 1981 & 1983.

20.    In accordance with the requirements of 42 U.S.C. § 1981, Morrison has pled facts demonstrating she is the victim of intentional racial discrimination by Walker.  Further, Morrison has pled facts demonstrating that she is the victim of retaliation by Walker based on her race and his personal vendetta, which  violates  § 1981.  *See CBOCS West, Inc. v. Humphries*, 553 U. S. 442 (2008).  Morrison has also pled facts demonstrating she has been the victim of multiple intentional constitutional deprivations by the state actor Defendants Walker, Maness, and also Deputy Barker. Pursuant to the requirements of 42 U.S.C. § 1983, Morrison has pled facts demonstrating an ongoing pattern of violations of her rights secured by the United States Constitution. Morrison has also identified the actors of the State of Texas and the County of Jefferson who performed and ratified these ongoing constitutional violations.  A state actor is one acting "under color of any statute, ordinance, regulation, custom, or usage of any State..." 42 U.S.C. § 1983; *Johnson v. Dallas Independent School District*, 38 F. 3d 198, 200 (5th Cir. 1994), *cert. denied*, 514 U.S. 1017 (1995). Under this definition, the state actors are Deputy Barker, Jefferson County, Tom Maness and

Walker, which for many years have done everything illegal and unconstitutional that Walker requested, that have repetitively violated the legal and constitutional rights of Morrison and multiple other victims. The state actor Defendants entered into an actual meeting of the minds with Walker to perpetrate a lengthy, ongoing pattern of constitutional and civil rights violations against Morrison and others. Their combined actions, and the actions undertaken alone by Walker with ratification by the State of Texas and the County of Jefferson, constitute an official policy, custom, or practice of these governmental entities sufficient to impose monetary liability upon them for all the unlawful conduct at issue. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978).

21.     The Fifth Circuit interprets the *Monell* requirement of an official policy, custom or practice to "include persistent or widespread practices which, although not officially authorized, are 'so common and well settled as to constitute a custom that fairly represents [official] policy.'" *Muldrow v. Berthot*, No. 6:12 CV 460, 2012 W.L. 3991366 (E.D. Tex. 2012), *citing Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). A pattern of incidents with notice to a governmental entity can satisfy the applicable standards. *See* authority *supra; see also Webster v. City of Houston*, 735 F. 2d 838, 841 (5th Cir. 1984); *Travis v. Texas Department of Criminal Justice*, No. 3-06-CV-1854 M, 2006 W.L. 3831221, at 2 (N.D. Tex. 2006).

22.     The State of Texas and the County of Jefferson have knowledge, both actual and constructive, that Walker, acting individually and also with the other state actor Defendants, have consistently engaged in ongoing misconduct that includes the ongoing and constant deprivation of Morrison's civil and constitutional rights under Color of State Law, intentional discrimination based on Ms. Morrison's race, as well as entering into agreements with others (the former Jefferson

County District Attorney Tom Maness and Deputy Barker) to violate the civil and constitutional rights of numerous people including but not limited to Morrison.   Walker and all the other Defendants have consistently violated Morrison's civil and constitutional rights in an ongoing pattern or scheme for up to ten (10) years.

23.     The Jefferson County Sheriff's Department, through Sheriff Mitch Woods, and  Defendant Barker,  facilitated  and participated  in  Walker's  vendettas against Morrison and others. Despite having knowledge that many of Walker's actions are  unconstitutional,  illegal,  and  impermissibly racially  motivated against Morrison, the Jefferson County Sheriff's Department refuses to follow its oath to support and defend the laws and Constitutions of the United States and Texas, and this Department continues to support Walker and implement his unlawful orders.

24.     The actions of Defendant Barker, in physically assaulting Morrison, were done in deliberate violation of Morrison's civil and constitutional rights, and also in violation of Texas Penal Code § 39.02 (Abuse of Official Capacity), § 39.03 (Official Oppression), and § 22.01 (Assault). Defendant Barker acted negligently per se and also grossly negligent per se in violating these Texas Penal Codes.  Defendant Barker is a Sheriff's Deputy with the Jefferson County Sheriff's Department.  He is fully knowledgeable of his oath and responsibility to follow the laws of the State of Texas. He is fully knowledgeable of the Texas Penal Code standards, and that it was unlawful for him to assault Morrison.  He is fully knowledgeable that he has an independent duty to follow the law, and therefore he should have ignored or refused to implement any unlawful or possibly criminal directive from Walker. Instead, Barker did precisely as he was told by Walker, and in the process Barker violated Texas Penal Code statutes, as well as the constitutional and civil rights of Morrison.  There is no way that Barker's actions could have been undertaken in good faith, because he knew that he

was doing wrong and committing acts that should be considered criminal, if only Jefferson County

had a District Attorney's Office that was not dedicating to shielding the legal system from any and

all criminal responsibility. Therefore, Barker does not qualify for a defense of either official or

qualified immunity.

25.     The Jefferson County District Attorneys' Office through Maness have directly participated

in some of Walker's culpable acts against Morrison and others. Defendant Maness authorized the

use of taxpayer money from the citizens of Jefferson County to work with Walker and Shettle

to  fabricate criminal charges against Morrison and to convene a grand jury against her under

pretenses that these Defendants knew were false and intended solely to injure and humiliate

Morrison.

26.     The State of Texas has direct knowledge of Walker's ongoing racist and unconstitutional

conduct against Morrison and others.  The Texas Judicial  Commission received a massive amount

of complaints against Walker.  Upon information  and  belief,  Morrison believes  that,  belatedly,

the Judicial Commission gave Walker the choice between resigning from the bench after he vested

for his ten (10) year retirement benefit, or being forcefully removed from the bench.  All this

constitutes  acquiescence and ratification by the State of Texas of  Walker's  unlawful  misconduct

toward  Morrison  and  others, and  therefore constitutes a custom, policy or practice of the State of

Texas to support the unconstitutional, racist and tortious actions of Walker against Morrison.

### JUDGE WALKER IS INDIVIDUALLY LIABLE FOR
### MONETARY DAMAGES TO MS. MORRISON

27.     Walker's order that Deputy Barker assault Ms. Morrison was a nonjudicial action completely

outside the scope of his jurisdiction, and this order violated multiple Texas Penal Codes, identified

16

above.  This order by Walker was not based upon any case assigned to the 252nd Judicial District

Court, and this order was not based on Walker's adjudicative functions. Every time Walker filed a

grievance against Morrison with the State Bar of Texas, he acted outside the scope of his jurisdiction

pursuant to his individual and racial vendetta against Morrison.  When Walker threatened court staff

with retaliation if they should be friendly with or have any dealings with Morrison, Walker engaged

in misconduct in his individual capacity outside the scope of jurisdiction of any particular case

pending in the 252nd District Court.  When Walker ordered that Morrison cannot be in a hallway

that is by necessity used by attorneys practicing criminal defense law in Jefferson County, Texas,

by prosecutors and all court staff employed in the criminal district courts and to access Judge

Stevens' chambers, Walker acted outside the scope of his jurisdiction on any case pending in the

252nd District Court.

28.    One of Walker's favorite unconstitutional practices is his persistent referral of people

he dislikes to Special Prosecutors or to the Jefferson County District Attorney's Office to fabricate

phony criminal charges, and to convene a grand jury to seek an indictment for falsified criminal

charges. Maness and the Jefferson County District Attorneys' Office participated in this illegal

and unconstitutional practice. Walker and Maness orchestrated false charges through the

Jefferson County District Attorneys' Office against Morrison, discussed above. These actions

by Walker (and also by Maness) are acts of Official Oppression and Abuse of Capacity, in violation

of Texas Penal Codes §§ 39.02 and 39.03.  Further, these actions violated Texas Penal Code § 15.02,

as a criminal conspiracy, and are also a civil conspiracy.

CASE LAW SUPPORTING INDIVIDUAL
LIABILITY AGAINST LAYNE WALKER

17

29.     A judge acting in his official judicial capacity has absolute immunity from liability for judicial acts performed within the scope of his jurisdiction.  *Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002).  The United States Supreme Court holds that judicial immunity extends to judge's judicial actions. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). The inquiry for judicial immunity is whether the judge's questioned act was undertaken in the course and scope of his adjudicative role over cases or other proceedings assigned to his or her court.  Judges are not immune from suit, however, when they undertake non-judicial actions, which are those actions not done in the judge's official adjudicative capacity, or those actions taken in the absence of the judge's court's jurisdiction.  *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

30.     The United States Supreme Court in *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 5, 8 (1988), discussed the distinction between "judicial" versus "non-judicial" acts, for which a judge's culpable conduct  leads to individual liability.  The Supreme Court focused on the nature of the judge's act at issue. The Court inquires whether the questioned act is a function normally performed by a judge, as contrasted with an administrative, legislative, or executive function that a judge may be called to perform as a result of his position or otherwise.

31.   Non-judicial acts include all those acts not associated with a judge's normal duties.  Stated another way, a judge's actions unrelated to the ongoing adjudication of a matter lawfully pending in the judge's court constitute nonjudicial acts. The *Forrester* Court provided several examples of non-judicial acts for which individual liability applies: (1) selecting jurors for the county's courts; (2) promulgating and enforcing a code of conduct for attorneys; and (3) making personnel decisions regarding court employees and officers. *Forrester*, 484 U.S. at 228-30.

32.     An important Fifth Circuit decision for this case regarding a judge's personal liability for acts

18

outside of the scope of his jurisdiction is *Harper v. Merckle*, 638 F.2d 848 (5ᵗʰ Cir. 1981), *cert.*

*denied*, 454 U.S. 816 (1982).  The Fifth Circuit held a judge did not have immunity for any conduct

that is not a judicial act. In *Harper*, the plaintiff instituted a civil rights action against Judge Merckle

under 42 U. S. C. § 1983.  The case involved an underlying divorce proceeding.  The plaintiff went

to tender a child support payment, and Judge Merckle was present in the office.  The judge entered

the office not dressed in a formal robe, and asked the court clerk to retrieve the case file from the

clerk's office.  The judge claimed he was trying to clear up a rumor about an outstanding

contempt violation against the plaintiff, stating he was attempting to "help" the plaintiff.  The judge

then began a conversation with the plaintiff about his child support check, questioned plaintiff over

his address, the post office box, etc.  The judge then swore the plaintiff in to give testimony.  The

plaintiff turned around to leave, and the judge sent the court bailiff to retrieve the plaintiff.  The

judge ordered the arrest of the plaintiff, who was frisked and hand-cuffed. The judge then held his

own contempt proceeding in his chambers.  After the judge placed the plaintiff in a small room to

await transportation to jail. The plaintiff was threatened with physical harm while in custody.

33.     The Fifth Circuit provided a lengthy discussion of judicial immunity, discussing several

decisions distinguishing between a "judicial act" and a "non-judicial act." 638 F.2d 858-859 (citing

Fifth Circuit cases).  The Court held that personal liability attaches to a judge for actions occurring

outside the scope of his jurisdiction.  Although Judge Merckle was exercising a "normal judicial

function" by holding a contempt hearing and by swearing in the plaintiff, the Court found Merckle

could be held individually liable, because his actions "centered around the domestic problems of one

of the Judge's friends, Harper's former wife."  The Court held that Merckle abused normal judicial

19

powers and his ill-motives were outside the scope of a judicial proceeding and therefore exceeded

the scope of his jurisdiction.  The Fifth Circuit held:

> Succinctly stated, we hold only that when it is beyond reasonable dispute that a judge
> has acted out of personal motivation and has used his judicial office as an offensive
> weapon to vindicate personal objectives, and it further appears that no party invoked
> the judicial machinery for any purpose at all, then the judge's actions do not amount
> to "judicial acts."  These nonjudicial acts, to state the obvious, are not cloaked
> with judicial immunity from suit under § 1983.  638 F.2d at 859.

There is also Texas authority following this same logic in distinguishing between immune acts and

non-immune acts of a judge.  The Houston Court of Appeals explained that "[j]udicial acts include

those performed by judges involving adjudicating, or otherwise exercising their judicial authority

over, proceedings pending in their courts." *Twilligear v. Carrell*, 148 S.W.3d 502, 505 (Tex. App.

• Houston [14th Dist.] 2004, pet. denied).

34.     Another important case guiding the issue of Walker's potential personal liability is *Ballard

v Wall*, 413 F. 3d 510 (5th Cir. 2005), which contains the four (4) factors the Fifth Circuit considers

when evaluating judicial immunity. This Amended Complaint addresses the *Ballard* factors above

for each of Morrison's allegations of Walker's misconduct.  Walker's orchestration of false criminal

charges against Morrison and attempts to indict Morrison's attorney to prevent prosecution of this

case, clearly satisfy all of the *Ballard* factors demonstrating Walker should be held personally liable.

This falsified criminal charge had nothing to do with a case in Walker's court, discussed above.

Also, Walker's order banning Morrison from the hallway at issue (which prevented Morrison from

accessing Judge Stevens' chambers), and also the filing of repetitive grievances, satisfy all of

the *Ballard* factors for the imposition of personal liability.  Further, all of Walker's misconduct,

taken as a whole, involved using his former authority and status as a judge "as an offensive weapon

to vindicate personal objectives." None of Walker's vindictive actions pled in this Amended Complaint are based upon him actually adjudicating a case in his court. Walker had a long-standing pattern and practice of using his authority as an offensive weapon to perpetrate unlawful actions.

35.     In addition to Fifth Circuit cases, there are other cases finding no judicial immunity for misconduct that includes some of Walker's misbehavior in this matter. That is, many of these cases involve circumstances similar to Ms. Morrison's situation. In *King v. Love*, 766 F. 2d 962 (6th Cir. 1985), *cert. denied*, 474 U. S. 971 (1985), the Sixth Circuit held that although setting a bond on an arrest warrant is a judicial act, the judge was not immune when the judge deliberately misled the police officer who was to execute the warrant about the identity of the person sought.  That is, the judge tried to institute criminal proceedings against the wrong person, and these actions were deliberate.   In this case, Walker, along with Maness, Rugg, and Shettle tried to institute false criminal charges against Morrison, wasting taxpayer money convening a grand jury under fraudulent pretenses. There should be no judicial immunity for that misconduct.

36.     In *Morrison v. Lipscomb*, 877 F.2d 463 (6th Cir. 1989), the Sixth Circuit held that a state court judge was not entitled to judicial immunity for an order declaring a moratorium on issuance of writs of restitution, because the judge was acting in an administrative capacity. In  *Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984), the court found individual liability against a juvenile court judge for his initiation of criminal prosecution and civil contempt proceedings against a father for his child support arrearage.   The judge in that case acted unilaterally and instituted the proceedings instead of adjudicating a matter that was lawfully assigned to him.   In  *New Alaska Development Corp. v. Guetschow*, 869 F.2d 1298 (9th Cir. 1988), the Ninth Circuit held that a receiver appointed by a state court to manage the business assets of an estate was not immune  from allegations that he

stole assets or slandered the parties, since those actions were not judicial in nature, but instead were the receiver's intentional torts. In *Harris v. Harvey*, 605 F.2d 330 (7th Cir. 1979), *cert. denied*, 445 U. S. 938 (1980), the Seventh Circuit held that repeating communications to the press and city officials that were critical of a police lieutenant, and the improper instigation of criminal proceedings against that lieutenant by a judge were not judicial acts.  The judge in that case, therefore, had no immunity from monetary liability.

37.    Virtually every action at issue perpetrated by Walker (and also the other Defendants to the extent they are linked to specific unconstitutional and unlawful actions) against Morrison is a non-judicial act outside the scope of his jurisdiction, including but not limited to: (1) seeking false criminal charges against her; (2) impaneling a grand jury to indict her under fraudulent pretenses; (3) filing repetitive grievances with the Texas State Bar to try to revoke her law license; (4) issuing an arrest or removal order authorizing an assault by Deputy Barker when Morrison was in a hallway that was not in either Walker's courtroom or in an adjunct space which means Walker's former chambers; (5) threatening others with retaliation in order to harm Ms. Morrison's professional relationships with court personnel; and (6) attempting to indict Morrison's attorney to prevent prosecution of this civil rights case.  There was not and is no pending proceeding lawfully assigned to the 252nd Judicial District Court that forms the basis of any of these unlawful actions. Therefore, in addition to seeking liability under 42 U.S.C. §§ 1981 and 1983 against the State of Texas and the County of Jefferson under *Monell* and its progeny, Morrison is also seeking individual monetary liability against Walker for these actions under 42 U.S.C. §§ 1981 and 1983, and for the pendent Texas tort claims, set forth below.

38.    Defendant Tom Maness is the former Criminal District Attorney for Jefferson County,

Texas. Defendant Maness had been actively involved in the wrongdoings at issue pertaining to the fabrication of false criminal charges against Morrison, and the attempts to wrongfully indict others who are politically unfavored in this county. Defendant Maness has been implicated therefore in multiple constitutional deprivations set forth above and in multiple Texas Penal Code violations, as well as violating Tex. Gov't Code § 79.001 *et seq*. Maness worked together with Walker to seek wrongful prosecution of Morrison. Maness was an employee of Jefferson County, Texas. He was a policy maker as the former elected District Attorney of Jefferson County, Texas. Maness resigned not long after his illegal slush fund was discovered. Maness as a state actor acted in violation of 42 U.S.C. § 1983 by intentionally participating in a plethora of unlawful conduct and constitutional deprivations, and also by acting negligently per se and also grossly negligent per se in violation of: (1) Texas Penal Code § 39.02, by Abuse of Official Capacity; (2) Texas Penal Code § 15.02, by entering into a criminal conspiracy with the other Defendants to violate Texas Penal Code provisions; (3) Texas Penal Code §§ 7.01 & 7.02, by becoming a party to criminal activity; (4) Texas Penal Code § 36.06, by retaliating against Morrison; (5) Texas Penal Code § 39.03, by Official Oppression; (6) Texas Disciplinary Rule of Professional Conduct § 4.04, by violating his duty of respecting the rights of third persons; and (7) Texas Disciplinary Rules of Professional Conduct § 8.04(a) (1), (2), (3), (4) & (6), by violating the Texas Disciplinary Rules, assisting others in violating these rules, committing criminal acts, engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, engaging in obstruction of justice, knowingly assisting a former judge in conduct that is a violation of applicable rule of judicial conduct of other laws. Maness' misconduct was intentional and particularly egregious, since he is an attorney, the former Jefferson County District Attorney, and a policy maker of Jefferson County,

with the sworn oath to respect and obey the Constitution and laws of the United States and the State of Texas. Maness knows intimately all of the Texas Penal Code provisions that he willingly violated and assisted others in violating, as well as all the Rules of Professional Conduct and Morrison's rights guaranteed under the United States Constitution that he willfully and flagrantly violated. These laws, constitutional rights and rules were very well established at the time Maness committed his misconduct, and Maness is charged with full knowledge of them.  Maness' misconduct is objectively unreasonable, particularly for a licensed attorney and as the former Criminal District Attorney of Jefferson County, Texas. Accordingly, at no time did Maness act in good faith, and therefore, he is not entitled to a defense of qualified or official immunity. Defendant Maness' negligence per se and gross negligence per se for violating those Texas Penal Codes and Disciplinary Rules identified above, have proximately caused Morrison substantial actual or compensatory damages.  Further, Defendant Maness engaged in misconduct that is extreme and outrageous, particularly for a licensed attorney and the former Criminal District Attorney, for the express purpose of causing Morrison substantial and severe emotional and mental anguish. Accordingly, Defendant Maness committed the tort of intentional infliction of emotional distress against Morrison, and Maness' misconduct in this regard proximately caused Morrison substantial actual or compensatory damages. Further, Defendant Maness acted knowingly, willfully, with deliberate disregard for the rights and welfare of Morrison. Defendant Maness' misconduct therefore knowingly and willingly facilitated the County of Jefferson, Walker, and the other Individual Defendants to violate Morrison's 5th Amendment and 14th Amendment Due Process Rights in her property interest in her career, her 14th Amendment Equal Protection Rights, and also Morrison's 1st Amendment Rights to Freedom of Association and Freedom of Speech. Maness supported and

24

facilitated the unconstitutional policy and practice of Jefferson County, Texas and the State of Texas to fully support, ratify, and participate in all of Walker's intentionally illegal and unconstitutional misconduct that for over ten (10) years habitually violated the constitutional and legal rights of many innocent citizens, like Morrison. Maness viewed his role to engage in public corruption, using his office as an offensive weapon to support unconstitutional and criminal misconduct all throughout the Jefferson County legal system. Further, since Defendant Maness acted maliciously, with conscious disregard for the rights and welfare of Morrison, and with the intent to cause Morrison as much harm and damage as possible, Morrison requests the imposition of punitive or exemplary damages at the discretion of the jury to punish Maness and to deter any further misconduct.

## DAMAGE CLAIMS

39.    Morrison asserts this lawsuit pursuant to 42 U.S.C. §§ 1981 & 1983.  Walker, Maness, Barker and Jefferson County are state and county actors and a governmental entity, and they have violated the constitutional, legal and civil rights of the Plaintiff in an ongoing basis, pursuant to an ongoing scheme due to Walker's racial prejudice and pursuant to a custom, practice and standard operating procedure of the State of Texas and the County of Jefferson. The complicity, ratification and facilitation by the State of Texas and the County of Jefferson of all of Walker's unconstitutional and unlawful activity are so wide spread and persistent that they constitute a custom that fairly represents official policy of both the State of Texas and the County of Jefferson. All the state actor Defendants have acted jointly, with a unity of purpose and with collective action, justifying the imposition of joint and several liability against all the state actor Defendants.  These  state  actor Defendants  have  caused  Ms.  Morrison substantial damages.

40.     Pursuant to §§ 1981, 1981a and 1983, Plaintiff seeks to recover against  Walker, Maness,

Barker and the County of Jefferson all of her compensatory or actual damages for all her economic

and non-economic harm that have been caused by these ongoing violations of §§ 1981 & 1983.

Morrison's economic damages are her financial or economic losses in the past, present and future,

that include but are not limited to loss of revenue and profits from her business and her practice of

law, loss of goodwill, loss of business, and other economic losses in the past, present and future, to

be demonstrated at the time of trial.  Morrison also seeks to recover all her non-economic losses

for her mental anguish and loss of enjoyment of life in the past, present and future.  Plaintiff seeks

to recover from all these state actor Defendants, individually and also Jefferson County,

$5,000,000.00 for her past, present and future compensatory damages against each and every state

actor Defendant and also from Jefferson County as a governmental entity, to be adjudicated jointly

and severally against the state actor Defendants and also Jefferson County, Texas.

41.     Sections 1981, 1981a and 1983 also authorize the recovery of punitive or exemplary damages

against state or local officials in their individual capacity, for conduct that the fact-finder finds to be

malicious, intentional, recklessly or callously indifferent to a plaintiff's constitutional rights.  *Smith

v. Wade*, 461 U.S. 30 (1983). In order to recover punitive or exemplary damages, the jury need not

find the conduct at issue was "outrageous" or "extraordinary," even though the misconduct of

Jefferson County, Walker, Maness and Barker certainly is outrageous and extraordinary. *Id.*; *Kolstad

v. American Dental Ass'n*, 527 U.S. 526, 535-36 (1999). Based upon these standards, Morrison seeks

the imposition of punitive or exemplary damages against each and every state actor Defendant and

Jefferson County in an amount to be set by the jury to punish all these wrongdoers fully and to deter

any future misconduct either by each and every state actor Defendant and Jefferson County.  While

the amount  awarded as punitive or exemplary damages is solely within the jury's discretion, Plaintiff requests the jury consider an award of punitive or exemplary damages against these Defendants in an amount of at least seven (7) times the compensatory or actual damages awarded by the jury.  The breach of public trust and blatant misuse of power by all of these state actor Defendants and Jefferson County against Morrison and others merit a strong punitive response. Plaintiff requests the jury make an example of each and every one of these state actor Defendants and Jefferson County to punish and deter each and all of them, to clean up Jefferson County, Texas and ensure a rule of law for all the citizens of Jefferson County, Texas, and in the process send a message to the Jefferson County legal system that this type of conduct will no longer be tolerated by law-abiding citizens.  None of the state actor Defendants are entitled to official or qualified immunity, because their negligence and negligence per se were all part of overall criminal activities and intentional misconduct outside the course and scope of their employment and at all times conducted in bad faith.

42.    Plaintiff also sues the state actor Defendants, separately, for intentional infliction of emotional distress, general negligence and also negligence per se in violation of multiple Texas Penal Codes and Disciplinary Rules (which are identified above and incorporated into this section of this Amended Complaint), and a civil conspiracy with all the other Defendants to perpetrate all the legal wrongs at issue in this case against Morrison, all of which have proximately caused actual or compensatory damages to Morrison. Morrison seeks to recover $5,000,000.00 from these Defendants, each, for her compensatory damages proximately caused by him.

43.    Further, Morrison sues Walker, Maness and Barker for gross negligence and gross negligence per se, due to each and every one of these Defendants' grossly negligent conduct against her and their

repetitive, willful violations against Morrison of (1) the Texas Code of Judicial Conduct for Defendant Walker, (2) the Texas Penal Code provisions identified in this Complaint, (3) the Texas Government Code, (4) the Texas Disciplinary Rules, and (5) the United States Constitution. Plaintiff contends that each and every Defendant is grossly negligent and grossly negligent per se for their all their breaches of constitutional, statutory duties, attorney Disciplinary Rules and common law duties to Morrison.  Walker was also negligent per se and grossly negligent per se by violating multiple Texas Judicial Cannons, including (1) Cannon One, which is maintaining the Independence and Integrity of the Judiciary; (2) Canon Two, which is Avoiding Impropriety in All of the Judge's Activities; (3) Canon Three, which is Performing the Duties of Judicial Office Impartially and Diligently; (4) Canon Four, which is Conducting the Judge's Extra-Judicial Activities to Minimize the Risk of Conflict with Judicial Obligations; and (5) Canon Five, which is Compliance with the Code of Judicial Conduct.  Walker's oppressive conduct toward Morrison has violated all these Judicial Canons openly and in an ongoing basis, with the knowledge and support of the State of Texas and the County of Jefferson. The malicious and tortious conduct of all the state actor Defendants and Jefferson County also constitutes gross negligence and gross negligence per se by violating (1) Ms. Morrison's civil rights under 18 U.S.C. § 241, and (2) Ms. Morrison's civil rights under Color of State law, in violation of 18 U.S.C. § 242. All these actions by these Defendants  have proximately caused Morrison actual or compensatory damages, as set forth and enumerated above. Further, these Texas state law torts have been perpetrated by each and every Defendant  maliciously and with a specific intent to harm  Morrison, justifying the imposition of punitive or exemplary damages against each and every Defendant in an amount set forth above.

ATTORNEYS' FEES, COSTS AND EXPENSES

44.     Morrison seeks to recover all her attorneys' fees, costs and expenses pursuant to 42 U.S.C. §§ 1981, 1981a and 1983. Plaintiff has employed Undersigned Counsel, who is Board Certified by the Texas Board of Legal Specialization in Civil Trial Law.  Plaintiff has retained the Morgan Law Firm on a standard 40% contingent fee basis, plus recoupment of all the Morgan Law Firm's costs and expenses incurred in prosecuting this cause of action. Pursuant to the Lodestar methodology, Plaintiff shall provide proof of attorneys' fees and expenses itemized on a hourly basis, at the rate of $450.00 per hour.  Plaintiff anticipates that hourly attorneys' fees, costs and expenses incurred through a trial of this case could reasonably reach  $350,000.00 or more.  For making or responding to any necessary appeal to the United States Court of Appeals for the Fifth Circuit, Plaintiff seeks attorneys' fees, costs and expenses in the amount of $75,000.00 for the initial appellate brief and oral argument, and $35,000.00 for any necessary motions for rehearing or rehearing en banc, conditioned upon success on appeal. Further, for making or responding to a Petition for Certiorari to the United States Supreme Court, Plaintiff seeks an additional $75,000.00, conditioned upon success before the United States Supreme Court.

45.     Plaintiff also requests an enhancement to the award of attorneys' fees for prosecuting this cause of action. Undersigned Counsel shall address the factors for an enhancement of attorneys' fees at trial or in a manner ordered by the Court.

     WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendants be cited to appear and answer herein.  Plaintiff requests that she obtain a Judgment against all Defendants, jointly and severally, for all her compensatory damages.  Plaintiff also requests that she recover punitive or exemplary damages against each Defendant in this case, jointly and severally.

Plaintiff also requests that she recover all her reasonable and necessary attorneys' fees, court costs and expenses, and an enhancement for her attorneys' fees. Finally, Plaintiff requests such other and further relief, at law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,

*/s/ John S. Morgan*
JOHN S. MORGAN
TBA#14447475 Morgan Law Firm
2175 North Street, Suite 101
Beaumont, Texas 77701
(409) 239-5984
(409) 835-2757 facsimile
jmorgan@jsmorganlaw.com
Attorney for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

This hereby certify that a true and correct copy of the foregoing document has been provided to counsel of records, via electronic filing on this 9th day of December, 2014.

Kathleen M. Kennedy                    *Via electronic filing*
Chief Civil Attorney
Jefferson County District Attorney's Office
1085 Pearl Street, 3rd Floor
Beaumont, Texas 77701


Joe J. Fisher, II                         *Via electronic filing*
Walter Umphrey
Mark Sparks
Provost Umphrey Law Firm
P. O. Box 4905
Beaumont, Texas 77704


Kim Coogan                             *Via electronic filing*
Assistant Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711




                              */s/ John S. Morgan*
                              JOHN S. MORGAN