| | | |
|---|---|---|
| STELLA MORRISON | § | |
| | § | |
| VS. | § | CASE NO. 1:13-CV-00327 |
| | § | |
| JUDGE LAYNE WALKER, THE COUNTY | § | Honorable Zack Hawthorn |
| OF JEFFERSON, TEXAS,  AND THE | § | |
| STATE OF TEXAS | § | |

**Defendant Layne Walker's Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6)**

Comes now Defendant, Layne Walker, and respectfully files this his *Defendant Layne Walker's Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6)*, and would respectfully show unto this Honorable Court as follows:

**A.      Plaintiff's New Complaint Adds New Defendants and Fails to Comply With Order**

Plaintiff Morrison sued Defendant Layne Walker, the former judge of the 252nd Judicial District Court of Jefferson County, alleging he is a racist bent on destroying her legal career.  *See Plaintiff's First Amended Complaint*, at pp.2-5 ,para.7-12 [Dkt.74].  Subsequently, this Honorable Court dismissed virtually all of her civil rights claims, with prejudice, and ordered her to replead with particularity facts supporting her "fabrication of false criminal charges" claims. *See Order Granting Motion to Dismiss* [Dkt.32], at p.1.  This Court ruled "Morrison will be provided the opportunity to amend one of her claims."  *Id.*  More specifically, the Court directed Morrison to replead her "claims concerning the fabrication of false criminal charges" and, in fact, outlined for Plaintiff Morrison the specifics that should be plead in her amended complaint:

| | |
|---|---|
| 1) | When did Walker fabricate false criminal charges? |
| 2) | How was this accomplished? |
| 3) | What evidence is there that Walker knew the criminal charges are false? |
| 4) | Did the false criminal charges concern activity in his court? |
| 5) | What was Tom Maness' personal involvement in this activity? |

6)      Did Morrison appear voluntarily before the grand jury?
7)      What facts suggest Walker's motivation was based upon retaliation and personal animus and not for other reasons?

*Id.*, at 16 & fn.5. Instead of providing those specific allegations, Plaintiff Morrison continues to press allegations against Walker that have little to nothing to do with her "fabrication of false criminal charges" claims.[1] Closer scrutiny of her current allegations reveals her failure to plead this alleged fabrication with particularity, let alone answer this Court's questions.

     *1. When did Walker fabricate false criminal charges?*

     The Court's first question went unanswered by Plaintiff Morrison. Here's what Plaintiff Morrison pleads: "Morrison does not remember the precise dates when here [sic] grand jury appearance occurred, but Morrison believes this occurred in approximately 2010. Discovery should yield the exact dates of the occurrence." *Plaintiff's First Amended Complaint*, at p.6, para.13. "I don't remember" is far from the particularity required by this Court; and "approximately 2010" falls short of any semblance of particularity, too. But assuming, for the moment, that "approximately 2010" is sufficient for particularity, then how is that claim not—on the face of this pleading alone—time-barred? Regardless, Plaintiff Morrison failed to answer the first question with particularity.

     *2. How was this accomplished?*

     This question wasn't even addressed by Plaintiff Morrison. The closest Defendant Walker can find to even addressing the "how" question is this: "In fact, Walker ordered Maness to come up with false charges, so they fabricated false criminal charges against Morrison based on a statement she made regarding client's probationary status in a case pending before Judge

---

[1] During the December 5, 2014 certificate of conference Plaintiff's counsel confirmed that many of these already-dismissed allegations are left in the complaint in an attempted effort to preserve a right to appeal and not as any effort to revive them. Accordingly, Defendant Walker focuses only on the "fabrication of false criminal charges" for the purposes of this motion.

Gist, the presiding Judge of Drug Court." *Plaintiff's First Amended Complaint*, at p.6, para.13.

Regurgitating the charges brought does nothing to plead, with particularity, *how* Defendant

Walker and Defendant Maness "fabricated" the charges. Plaintiff Morrison failed to answer the

second question with particularity.

> *3. What evidence is there that Walker knew the criminal charges are false?*

Plaintiff Morrison doesn't even attempt to respond to this question. Instead, Plaintiff

Morrison merely pleads the conclusion: "Maness worked together with Walker to try to have

Morrison wrongfully indicted and prosecuted for alleged perjury based upon Walker's request

due to his hatred of Morrison, even though Walker and Maness knew that Morrison did not

commit any crime…Walker and Maness knew these criminal charges against Morrison were

entirely false and were fabricated by Walker and Maness, and were only for political purposes."

*Plaintiff's First Amended Complaint*, at p.5 ,para.13. Nowhere in her proposed, amended

complaint does Plaintiff Morrison plead any evidence that Walker "knew the perjury charges

were false"—because she has none. Regardless, Plaintiff Morrison failed to even attempt to

answer the third question.

> *4. Did the perjury charges concern activity in his court?*

Defendant Walker concedes that Plaintiff Morrison did actually answer this question, and

will not waste this Court's time with unfounded or frivolous claims to the contrary. Here is what

Plaintiff Morrison pleads: "Instead, the fabrication of these false criminal charges occurred in

the Jefferson County District Attorney's Office, based upon Morrison's statement regarding her

client's probation status in Judge Gist's court, and the wrongful attempt to indict Morrison

occurred in the Jefferson County grand jury room." *Plaintiff's First Amended Complaint*, at p.7

para.14. Of course, it remains completely unknown what Morrison claims Defendant Walker did

in the District Attorney's Office or grand-jury room (presumably because there is no evidence he was even there)—because, of course, Plaintiff Morrison has no evidence to support any such allegation.  Regardless, Plaintiff Morrison concedes, at this point, Plaintiff has vaguely answered only one of the Court's seven (7) questions.

     *5.   What was Tom Maness' personal involvement in this activity?*

Once again, Plaintiff Morrison doesn't even attempt to respond to this question.  And, once again, Plaintiff Morrison merely pleads the conclusion:  "Walker and Maness arranged to have the Jefferson County District Attorney's Office convene a grand jury to consider falsified perjury charges against Morrison."  *Plaintiff's First Amended Complaint*, at p.5 para.13.  First, Defendant Walker simply can't "arrange to have the District Attorney's office convene a grand jury," which is why Plaintiff Morrison continues to keep the allegations vague.  Setting aside the "claims" against Maness are patently frivolous, the District Attorney's office seeks indictments based on evidence presented to them—and, in fact, has an obligation to do so regardless the source of information.  Plaintiff Morrison still has answered (vaguely) only one of the Court's seven (7) questions—and we only have two more to go.

     *6.   Did Morrison appear voluntarily before the grand jury?*

Plaintiff Morrison tried to avoid answering this question directly, because she doesn't like the answer—which is "yes," she voluntarily appeared before the grand jury.  Here is what Plaintiff Morrison plead:  "…Morrison **felt compelled** to appear before the grand jury for almost five (5) hours…While Texas law cannot force a target of a grand jury investigation to appear before a grand jury, Morrison appeared to defend herself and thereby prevent her wrongful indictment."  *Plaintiff's First Amended Complaint*, at pp. 5-6 para.13 (emphasis added).  Plaintiff Morrison's veiled answer is "yes"—despite what she was "feeling" that day, she voluntarily

appeared before the grand jury. Plaintiff Morrison—who voluntarily appeared before the grand jury—has now answered only two (2) of the Court's seven (7) questions.

> 7. *What facts suggest Walker's motivation was based upon retaliation and personal animus and not for other reasons?*

Plaintiff Morrison merely pleads Defendant Walker's motivation was based upon political reasons, alleged racism, and "hatred" of Plaintiff Morrison, without providing any ***facts*** that would support these conclusory allegations. *Plaintiff's First Amended Complaint*, at p.3 para.10 ("…were based upon his personal hatred of her due to her running for office against him, and also due to her race."). Nowhere does Plaintiff Morrison provide any *facts* that would support that Judge Walker's motivation—assuming he even had a hand in the decision to seek an indictment—was based upon retaliation and personal animus, and not because, for example, Plaintiff Morrison actually did perjure herself during representation of a client. Plaintiff Morrison answered only two (2) of the seven (7) specific questions posed her by this Court.

Assuming this Court permits Plaintiff Morrison to pursue her fabrication of false criminal charges against Defendant Walker without pleading, with particularity, the *facts* (and not hyperbolic and inflammatory conclusions) supporting those allegations (let alone answering the questions raised by this Court), such complaint still fails under absolute, judicial immunity.

**B. Immunity**

Assuming for the moment that Plaintiff Morrison sufficiently plead—with particularity—the fabrication of false criminal charges in response to the Court's prior order, she has still failed to state a claim for which relief can be granted because the facts alleged show that Defendant State District Judge Walker is entitled to judicial immunity. Judicial immunity protects judges from suit as to claims for money damages, in all actions taken in their judicial capacities, so long as they do not act in clear absence of all jurisdiction. *Mireles v. Waco,* 502 U.S.9, 11-12 (1991). In

*Mireles,* the United States Supreme Court reiterated the principle that absolute judicial immunity is overcome in only two rather narrow sets of circumstances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, that although judicial in nature, are taken in the complete absence of all jurisdiction. *Id. at* 11-12. The United States Supreme Court: " A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-357 (U.S. 1978).

In determining whether a judge's actions were "judicial in nature," federal courts consider "(1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity." *Ballard v. Wall,* 413 F.3d 510 (5th Cir. 2005). These four factors—often called the *Ballard* factors—are to be broadly construed in favor of immunity, and the absence of one or more factors does not prevent a determination that judicial immunity applies in a particular case. *Adams v. McIlhany,* 764 F.2d 294, 297 (5th Cir. 1985), *cert. denied,* 474 U.S. 1101 (1986).

Under the *Ballard* factors, the alleged actions of these four Defendants—and certainly the actions of Defendant Walker—are clearly judicial in nature. Plaintiff's contact with Defendant Walker was by virtue of the fact that she practices law in Jefferson County, and Defendant Walker was the judge of the 252nd District Court of Jefferson County, Texas. Defendant Walker's action initiating a perjury investigation (assuming that actually occurred) is well within actions governed by Cannon 3 of the Code of Judicial Conduct discussed below.

Indeed, Canon 3B (2) requires the Court to maintain professional competence. Moreover, as the Western District of Texas' Bankruptcy Court held:

> The Court has always had inherent power to regulate the practice of counsel appearing before the Court. *Chambers v. NACO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991), *In re Johnson*, 921 F.2d 585 (5th Cir.1991), *Price v. Lehtinen*, 564 F.3d 1052, (C.A. 9, 2009), *In re Placid Oil Co.*, 158 B.R. 404, 411 (N.D.Tex.1993), *In re Irons*, 379 BR 680 (Bankr., S.D. TX, 2007)
>
> …Tex. Disciplinary R. Prof'l Conduct 1.01 reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon Supp.2007) (Tex. State Bar R. art. X, § 9) require competent and diligent representation of clients and Tex. Disciplinary R. Prof'l Conduct 8.03 require the Court to report violations of the rule.

*In re Fahey*, 2009 Bankr. LEXIS 2601, 14-15 (Bankr. S.D. Tex. Sept. 1, 2009). Obviously, the conduct made the subject matter of the grand-jury investigation (misrepresenting a probationer's status to a sitting district judge) occurred in court (albeit Judge Gist's court). Assuming this pleading is true, and Judge Walker did instigate the investigation, he did so in a judicial capacity and, in fact, had an obligation to report it. For example, Canon Three of the Texas Code of Judicial Conduct:

> A judge who receives information clearly establishing that a lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct should take appropriate action. A judge having knowledge that a lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the Office of the General Counsel of the State Bar of Texas or take other appropriate action.

Tex.Jud.Cond.Code Canon 3(D)(2). Notably, this "appropriate action" is neither defined nor limited, and could indeed include reporting it to a law-enforcement agency. If Plaintiff indeed had committed perjury before a local judge and Defendant Walker had "knowledge" she had done so (which would also be a violation of the Texas Disciplinary Rules), then Defendant Walker actually had an obligation to report it "or take other appropriate action." Of course, an attorney committing perjury in front of a judge violates a litany of professional rules, including Texas Rules of Professional Conduct Rules 3.03 (candor toward a tribunal) and 4.01

(truthfulness in statements to others). Perjury or misrepresentation by an attorney also runs afoul of Rule 8.04 of the Texas Rules of Professional Conduct:

> (a) A lawyer shall not:
>
> (1) violate these rules, knowingly assist or induce another to do so, or do so through the acts of another, whether or not such violation occurred in the course of a client-lawyer relationship;
>
> (2) commit a serious crime, or commit any other criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
>
> (3) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

TEX.R.PROF.COND. Rule 8.04 (emphasis added). If Plaintiff indeed committed perjury before Judge Gist and Defendant Walker had such knowledge, he was in fact obligated to report it. Indeed, Rule 8.03 states attorneys with knowledge of such violations "shall inform the appropriate disciplinary authority." TEX.R.PROF.COND. Rule 8.03. In short, if Plaintiff misrepresented facts to Judge Gist about a probationer's status, and if Defendant Walker had that knowledge, then both the Judicial Canons and the Texas Rules of Professional Conduct required him to take "appropriate action."

The trial court has the inherent power to sanction "to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process." *IFC Credit Corp.v Specialty Optical Sys., Inc.* 252 S.W.3d 761, 772 (Tex.App.- Dallas 2008, pet. denied). "The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." *Eichelberger. v. Eichelberger,* 582 S.W.2d 395, 398-99 (Tex 1979). The allegations that Defendant Judge initiated a criminal investigation—assuming they are even true—that resulted in a grand-jury indictment are equally afforded immunity.

> Ms. Barnes specifies four distinct actions by Judge Winchell that she claims were prosecutorial in nature and taken in the absence of all jurisdiction. After Scott and Carolyn Barnes came before Judge Winchell , the judge: (1) "directed that the charges against plaintiff be changed" to allege menacing by stalking, Compl. P 13; (2) notarized Carolyn's complaint, Compl. P 14; (3) "prepared or assisted in the preparation of one or both of the complaints," Compl. P 14; and (4) maliciously refused to dismiss the complaints after the prosecutor determined they were frivolous. Compl. P 16.

*Barnes v. Winchell*, 105 F.3d 1111, 1119 (6th Cir. Ohio 1997).  The Sixth Circuit, considering all these allegations as true in the complaint, determined that such acts were indeed "judicial" for purposes of absolute judicial immunity:

> Similar to the Eleventh Circuit in Harris, we cannot say with assured confidence that the conduct alleged in Ms. Barnes's complaint overstepped judicial functioning such that Judge Winchell was not acting in his judicial capacity. Assuming Judge Winchell committed procedural errors, even "grave" ones, his actions are not rendered any less judicial for absolute judicial immunity purposes.

*Barnes v. Winchell*, 105 F.3d 1111, 1121 (6th Cir. Ohio 1997).  Here, despite this Court's order for repleading with particularity "[h]ow was this accomplished," Morrison's complaint fails to provide any answer at all.  As plead, Defendant Walker's alleged "fabrication of false criminal charges" includes nothing more than "instigating" the charges.  In *Barnes*, the judge directed the charges to bring, notarized the complaint, prepared or assisted in preparing the complaint, and maliciously refused to dismiss them despite knowing they were frivolous.  Even then, according to the Sixth Circuit, judicial immunity attached.  Respectfully, so should it here, particularly in the absence of any specific acts committed by Defendant Walker.

It is noteworthy that Defendant Walker was, at the time, the sitting judge of the 252nd Criminal District Court in Jefferson County, Texas.  Assuming for the moment Morrison's pleadings are true, then the suggestion that a criminal district judge reporting a crime or "instigating" a grand-jury investigation is beyond all bounds of jurisdiction is unprecedented, if

not patently illogical.  The Sixth Circuit, for example, rejected such a contention when a general-jurisdiction circuit judge, who allegedly did not issue arrest warrants, issued one and got sued:

> [M]erely acting in excess of authority does not preclude immunity.  *See Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984). For example, a criminal court judge would be immune from liability for convicting a defendant of a nonexistent crime, an act taken in excess of jurisdiction, whereas a probate court judge would not be immune for trying a criminal case, an act for which the probate judge clearly lacked all subject matter jurisdiction. *Stump*, 435 U.S. at 357 n.7. As developed below, the present case, involving allegations that a judge of a court of general jurisdiction improperly issued an arrest warrant, more closely resembles the former scenario for which absolute immunity is mandated under governing precedent.

*Ireland v. Tunis*, 113 F.3d 1435, 1441 (6th Cir. Mich. 1997).  Notably, the Sixth Circuit noted it could "find no law that specifically proscribes the jurisdiction of a Michigan circuit court as to the issuance of arrest warrants." *Ireland v. Tunis*, 113 F.3d 1435, 1441 (6th Cir. Mich. 1997).  That is, the circuit judge had no express authorization to do what he did—and he had no express authorization prohibiting what he did, either.  Here, assuming Defendant Walker "instigated" a grand-jury investigation against Morrison for perjury, there is no statute prohibiting Defendant Walker from doing so.[2]  And as to the "fabrication of evidence," there are no particularized pleadings describing any such conduct by Defendant Walker.  Finally, there is no statute prohibiting a sitting district judge, with knowledge of perjury, from reporting that criminal violation to the district attorney and seeking an indictment.

The Tenth Circuit considered a case where "[r]educed to its lowest terms, the plaintiff's complaint is that there was a misuse of state process as a result of the improper appointment of attorney Latimer and the prosecution by Latimer of a criminal action which was entirely lacking in merit." *Taylor v. Nichols*, 558 F.2d 561, 564 (10th Cir. Kan. 1977).  In dismissing the case in its entirety, the court said this about the judge, who was also sued:

---

[2] Another big question mark in Plaintiffs' case is this "evidence" allegedly fabricated.  What evidence did Defendant Walker fabricate?  Where is it?

"Finally, dismissal against Judge Nichols was fully justified for the reason that he was unquestionably entitled to absolute immunity." *Id.*, at p.566. So is, respectfully, Defendant Walker.

The Second Circuit considered a case brought by a grand juror, Mr. Fields, against a presiding judge who "issued an oral restraining order prohibiting Fields from communicating with his fellow jurors about matters other than those brought to their attention by the prosecutor." *Fields v. Soloff*, 920 F.2d 1114, 1116 (2d Cir. N.Y. 1990). The Second Circuit dismissed the case against Judge Soloff:

> Judicial immunity is by now a well-established doctrine. *See Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967); *Bradley v. Fisher*, 80 U.S. 335, 20 L. Ed. 646 (1871). A judge defending against a section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity. *Green*, 722 F.2d at 1016; *Dennis v. Sparks*, 449 U.S. 24, 27, 66 L. Ed. 2d 185, 101 S. Ct. 183 (1980). Moreover, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57, 55 L. Ed. 2d 331, 98 S. Ct. 1099 (1978) (quoting *Bradley*, 80 U.S. at 351).

*Fields v. Soloff*, 920 F.2d 1114, 1119 (2d Cir. N.Y. 1990). While Plaintiff Morrison was practicing law and making representations to courts in Jefferson County, Defendant Walker was well within his jurisdiction to report her improper behavior—this is, of course, assuming all of her pleadings about this even are true (and they aren't). Indeed, both the Judicial Canons and the Texas Rules of Professional Conduct required him to do so. *See* Code of Judicial Conduct, 3B; *see also* Tex.R.Prof.Cond. § 8.03. Regardless, Plaintiff Morrison has failed to plead with particularity anything that Defendant Walker did "in the complete absence of jurisdiction" that would arguably even fall within the narrow exception permitted by the United States Supreme Court. Instead, Plaintiff Morrison pleads—repeatedly—that Defendant Walker's action "was in

error, was done maliciously, or was done in excess of his authority." *Bradley*, 80 U.S. at 351.

All of this—assuming it is true, and it is not—fails to remove the immunity afforded Defendant

Walker.

      Morrison's allegation that Defendant Walker's conduct occurred outside his courtroom—

and again this is assuming it occurred—does not preclude a finding of judicial immunity.  A

Kansas district court, citing the Fifth Circuit, aptly described the expansive nature of judicial

immunity:

> A judge's jurisdiction extends to matters outside the courtroom. *Rheuark v. Shaw*,
> 628 F.2d 297, 304-05 (5th Cir. 1980), cert. denied, 450 U.S. 931, 101 S. Ct. 1392,
> 67 L. Ed. 2d 365 (1981). The general concern is whether the judge acted within
> the scope of his authority.  *Forrester v. White*, 792 F.2d 647, 655-56 (7th Cir.
> 1986).

*Bryant v. O'Connor*, 671 F. Supp. 1279, 1283 (D. Kan. 1986).  There, the district court dismissed

the Plaintiff's lawsuit against a judge for his allegedly racial discrimination and retaliatory

discharge of a probation officer.  *Id.*, at p.1280-81.  Citing Fifth Circuit precedent, the district

court found the act within the trial court's jurisdiction and granted summary judgment.  *Id.*, at

p.1286.  But more pertinent here, however, was the trial court's recognition of that plaintiff's

counsel's failure to identify *facts* that support the allegations:

> Finally, plaintiff's complete failure to respond to this Court's order with a
> meaningful discovery plan suggests that plaintiff lacked an evidentiary basis for
> the complaint when it was filed and hoped that discovery would reveal some set
> of facts supporting his allegations. Plaintiff failed to show this Court that he had
> any real facts at all on which to rely in support of the allegations of his complaint
> for which his counsel certified under Rule 11, FED. R. CIV. P. that there was a
> factual basis. The Court must conclude that plaintiff's counsel improperly certified
> the complaint under Rule 11.

*Bryant v. O'Connor*, 671 F. Supp. 1279, 1286 (D. Kan. 1986).  Here, Plaintiff Morrison's  failure

to respond to this Court's order to sufficiently answer seven (7) direct questions suggests

Plaintiff Morrison lacked an evidentiary basis for her complaint when it was filed and hoped that

discovery would reveal some set of facts supporting her allegations. Indeed, Plaintiff Morrison judicially admits she lacks the facts sufficient to support her claims when, in reference to the "when" question posed by this Court, she simply punts and says "[d]iscovery should yield the exact dates of this occurrence." *Plaintiff's First Amended Complaint*, at p.6 para.13.

Regardless, Plaintiff Morrison failed to plead any sufficient facts—with particularity—that would prevent dismissal based upon absolute judicial immunity. This Court has given Plaintiff Morrison multiple opportunities to amend her complaint. Respectfully, based upon absolute judicial immunity, the remaining "fabrication of criminal charges" complaints against Defendant Walker should be dismissed.

## C.     Pendant State Claims

Plaintiff's complaints against Defendant Walker for common law causes of action[3] are barred by *Franka v. Velasquez,* 332 S.W.3d 367 (Tex. 2012). In *Bordges v. City of Flower Mound, Texas,* 2011 WL 5600339 (E.D. Tex), adopted 2011 WL 5599925 (E.D. Tex) the federal court applied the *Franka* rule to a suit alleging trespass, invasion of privacy and false imprisonment under Texas common law:

> Under the *Franka* rule, all tort claims, including intentional torts, "could have been brought" against the governmental unit, regardless of whether the governmental unit's immunity from suit is expressly waived by the TTCA for those claims (citing *Franka* at page 385).

Even if Plaintiff's common-law allegations were not barred under the doctrine of judicial immunity, they would be barred under §101.106 Tex. Civ. Prac. & Rem. Code because Defendant Walker was acting in his official capacity. Moreover, if the purpose of serving the employer's business motivates the employee, her acts are within the scope of employment.

---

[3] Defendant Walker includes this section out of an abundance of caution. Although this Court previously dismissed these causes of action, the live complaint includes them and Plaintiff's counsel averred they are included only to preserve his appeal. To the extent the "fabrication of perjury charges" allegations are being used to support any alleged state-law claims, this section is being included.

*Anderson v. Bessman*, 365 S.W.3d 119, 126 (Tex.App. – Houston [1st Dist.] 2001) (department chairpersons' conduct in recommending faculty members for termination fell within scope of employment and, thus, Texas Tort Claims Act precluded plaintiffs' claims). As the Court noted:

> So long as it falls within the duties assigned, an employee's conduct is "within the scope of employment," even if done in part to serve the purposes of the employee or a third person. *Dictaphone Corp. v. Torrealba*, 520 S.W. 2d 869, 872 (Tex. Civ. App. – Houston [14th Dist.] 1975, writ ref'd n.r.e.)(employee's performance of duties to serve himself or third person did not take him outside the scope of employment); *Best Steel Bldgs., Inc. v. Hardin*, 553 S.W. 2d 122, 128 (Tex. Civ. App-Tyler 1977, writ ref'd n.r.e.)("The fact that the preponderate motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment.")

Here, the pendant state-law claims should be dismissed, too.

**D.      Qualified Immunity**

In the alternative to absolute judicial immunity, Defendant Walker is entitled to qualified immunity, too. The Fifth Circuit Court of Appeals

> Qualified immunity protects government officials who perform discretionary functions from liability "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson*, 44 F.3d at 276. The qualified immunity analysis is a two-step process. First, a court must determine whether the plaintiff has alleged the violation of a constitutional right. *Hale*, 45 F.3d at 917. Second, if the plaintiff has alleged a constitutional violation, the court must decide if the conduct was objectively reasonable in light of clearly established law at the time that the challenged conduct occurred. *Id.* "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). This means that "even law enforcement officials who 'reasonably but mistakenly [commit a constitutional violation]' are entitled to immunity." *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, (1991))

*Glenn v. City of Tyler*, 242 F.3d 307 (5th Cir.2001). Here, Plaintiff Morrison's claims of "fabrication of perjury charges" fail not for lack of any specificity that could avoid the application of qualified immunity.

Plaintiff previously cited this Court to *Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984) for the position that initiating prosecution is not a judicial function. Plaintiff failed to point out that ten years later in *Brookings v. Clunk*, 389 F.2d 61, 619-21 (6th Cir. 2004) the Sixth Circuit both limited and explained their holding in *Sevier*. After discussing the evolution of the portion cited by Plaintiff in *Sevier*, the Sixth Circuit:

> In summary, Judge Clunk was engaged in a judicial act in swearing out a criminal complaint against Brookings upon learning that he had committed a crime in his court. Because Judge Clunk had information indicating that Brookings had falsified his application for a marriage license and had attempted to obstruct justice in a case then pending before him, he had a duty to report Brookings' condut to the proper authorities. Therefore we find that Judge Clunk's actions constitute a judicial act taken to preserve the integrity of the judicial system.

*Brookings*, at p.622. This language makes it clear that the Sixth Circuit recognizes that judges have an obligation in their judicial capacity to preserve the integrity of the judicial system by bringing wrongful conduct to the attention of the appropriate authorities.

Similarly, Plaintiff's prio reliance on *Harris v. Harvey*, 605 F.2d 330 (7th Cir. 1979) is misrepresented. The factual basis for the racial claim in *Harris* is the judge made specific racial statements such as calling the plaintiff a "black bastard." *Id.*, at p.333. The non-judicial actions are set out by the court which notes that defendant, outside of his courtroom, repeated communications with the press and city officials that were critical of plaintiff. *Id.*, at p.336. In their 2005 decision of *Alexander v. Shan*, 161 Fed. Appx, 2005 WL 3557442 the Seventh Circuit discussed and clarified *Harris*:

> **We conclude that Judge Reid acted within his jurisdiction when he made the criminal referral.** We have found a complete lack of jurisdiction only in particularly egregious circumstances, such as when a judge not only maliciously referred a §1983 plaintiff for prosecution and caused unlawful arrest warrants to be issued, but also read those warrants over the air at a radio station and pressured plaintiff's employer to fire him. It is significant that the extrajudicial conduct in Harris was the conduct of the defendant publicizing the charges against plaintiff rather than the bringing of the charges.

*Alexander*, at pp.574-75 (emphasis added).  Here, this Court ordered Plaintiff Morrison to answer several specific questions with specificity on how Defendant Walker allegedly fabricated perjury charges.  Under the afore-mentioned precedent, the mere referral absent rampant publication of them is insufficient as a matter of law.  Plaintiff has not answered the questions raised by this Court—and Defendant respectfully contends that's because she can't plead with specificity something that never happened.  Regardless, the bulk of Plaintiff's allegations against Defendant Walker remain nonspecific allegations of Defendant Walker's purported malicious motive.  Simply put, there is no pleadings that outline with specificity any violation of a constitutional right, nor that Defendant Walker's actions were objectively unreasonable.  To mask this glaring inadequacy and skirt qualified immunity, Plaintiff Morrison peppers her complaint with pleadings about Defendant Walker's alleged motive.  The Northern District of Texas:

> Moreover, a judge does not lose immunity even if he was in error, took action maliciously, or acted in excess of his authority. *Id.* Rather, he loses immunity only if his act was not a "judicial act" or was "performed in the clear absence of jurisdiction."

*Spencer v. McNamara*, 2010 U.S. Dist. LEXIS 80339, 3-4 (E.D. La. July 16, 2010) (citation omitted).  Respectfully, all the malicious motive in the world plead in a complaint does not overcome the absence of pleadings that fail to show the clear violation of a constitutional right nor the unreasonableness of a defendant's actions *with specificity* sufficient to avoid qualified immunity.  Hyperbole and innuendo does not a Section 1983 claim make.

The landmark immunity case, *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1981), said it best: "We conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad reaching discovery. We therefore hold that government officials performing discretionary functions generally are

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1981). Respectfully, Plaintiff Morrison has not plead with specificity that Defendant Walker violated clearly established constitutional rights and this case should be dismissed.

### E. Conclusion

Plaintiff Morrison failed to comply with this Court's order to specifically itemize the who, what, where, when and why of these "fabrication of false criminal" allegations. Instead, Morrison added new defendants with even less particularity—precisely the opposite direction this Court previously ordered. The only claims remaining for Plaintiff are her "fabrication of false criminal charges" for alleged violation of her rights relating to her voluntary grand-jury appearance that resulted in a no bill. Assuming that Plaintiff's pleadings are true and that Defendant Walker conspired with Tom Maness to "instigate" a criminal investigation into statements she made to Judge Gist, Defendant Walker's reporting such a violation was not only well within his jurisdiction, it was actually required by controlling Judicial Cannons and Rules of Professional Conduct. Regardless, circuit-court precedent shows that Defendant Walker was not acting in the absence of all jurisdiction. As the district court of Kansas noted, citing the Fifth Circuit, a "judge's jurisdiction extends to matters outside the courtroom." Assuming Plaintiff's pleadings are true, then surely a district judge having knowledge of an attorney committing perjury in the courthouse should fall squarely within that jurisdiction outside his courtroom. Respectfully, the remaining "fabrication of false criminal charges" claim should be dismissed because Defendant Walker is both absolutely and qualifiedly immune from them.

Respectfully submitted,

BY: __/s/ Mark Sparks_____
JOE J. FISHER, II
STATE BAR NO. 00787471
MARK SPARKS
STATE BAR NO. 24000273
PROVOST & UMPHREY LAW FIRM, L.L.P.
P.O. BOX 4905
BEAUMONT, TEXAS  77704
(409) 835-6000
FAX:  (409) 838-8888

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing instrument was forwarded this the 23rd day of December, 2014, to all counsel of record by electronic filing.


___/s/ Mark Sparks_____
Mark Sparks