| | | |
|---|---|---|
| STELLA MORRISON | § | |
| | § | |
| VS. | § | |
| | § | CASE NO. 1:13-CV-00327 |
| LAYNE WALKER, THE COUNTY OF | § | |
| JEFFERSON, TEXAS AND THE STATE | § | |
| OF TEXAS | § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT LAYNE WALKER'S MOTION TO DISMISS UNDER RULES 12(B)(1) AND 12(B)(6)**

TO THE HONORABLE UNITED STATES JUDGE OF SAID COURT:

Plaintiff, STELLA MORRISON, files her Response to Defendant Layne Walker's Motion to Dismiss Under Federal Rules 12(b)(1) and 12(b)(6).

## BACKGROUND

1)      Morrison filed this lawsuit under 42 U.S.C. §§ 1981 & 1983, against former Judge Layne Walker (Walker), Jefferson County, Tom Maness and Anthony Barker.  Plaintiff alleges that Walker used his position as a judge as an "offensive weapon" against her to vindicate his personal and racial vendetta.  Morrison alleges complicity by the other Defendants to such an extent that it triggers County liability under §§1981 & 1983.  This Court granted Walker's Motion to Dismiss in part, instructing Morrison to amend her Complaint on the issue of fabrication of false criminal charges against Morrison.  Walker seeks to dismiss Morrison's First Amended Complaint (Complaint).

## STANDARD OF REVIEW

2)      Defendant's Motion seeks dismissal under Fed. R. Civ. P. 12(b)(1) (alleged lack of jurisdiction) and 12(b)(6) (alleged failure to state a claim upon which relief can be granted).  The

pleading requirements under Rule 12(b)(6) are set forth in *Bell Atlantic v. Twombly*, 550 U. S. 544 (2007). The *Twombly* Court established a two-party inquiry for pleading sufficiency: (1) the court must accept as true all of Morrison's allegations in the Complaint; and (2) the Complaint must state a **plausible claim for relief**. The trial court must rely upon its judicial experience and common sense to determine whether the factual allegations support a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U. S. 662 (2009). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Cuvillier v. Sullivan,* 503 F.3d 397, 401 (5th Cir. 2007). The plaintiff's factual allegations must be enough to "raise a right of relief above the speculative level." *Id*. The Fifth Circuit construes *Twombly* to hold that a plaintiff's complaint must contain something more than a statement of facts that merely creates the suspicion of a legally cognizable right of action. *Id*.

3)      When considering a challenge under Rule 12(b)(1), the trial court may consider the complaint alone, or may consider the complaint supplemented by undisputed facts in the record, as well as the court's inherent ability to resolve disputed facts in the record. *See  Clarke v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

**ARGUMENT AND AUTHORITIES**

**1)      Judicial Immunity is limited to a judge's "judicial acts**."

4)      The central inquiry is whether Morrison's Complaint articulated a **plausible** claim for relief against Walker outside the scope of judicial immunity on the remaining claim of fabrication of false criminal charges against Morrison. A judge acting in his judicial capacity has absolute immunity from liability for judicial acts performed within the scope of his jurisdiction. *Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002). This immunity, however, extends only to a judge's judicial actions. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). The inquiry is whether the judge's questioned act

2

was undertaken in the course and scope of his adjudicative role over cases or other proceedings assigned to his court. Judges are not immune from suit when they undertake non-judicial actions, which are those actions not done in the judge's official adjudicative capacity, or those actions taken in the absence of the judge's court's jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

5)      The Supreme Court in *Forrester v. White*, 484 U.S. 219, 227 (1988), distinguished between "judicial" and "non-judicial" acts, for which a judge's culpable conduct leads to individual liability. The Court focused on the nature of the judge's act at issue, inquiring whether the questioned act is a function normally performed by a judge, as contrasted with an administrative, legislative, or executive function that a judge may perform due to his position. Non-judicial acts include all those acts not associated with a judge's normal duties. The *Forrester* Court held that a judge's actions **unrelated** to the ongoing adjudication of a matter lawfully pending in the judge's court constitute non-judicial acts. *Forrester*, 484 U.S. 228-30. *See also Twilligear v. Carrell*, 148 S.W.3d 502, 505 (Tex. App. - - Houston [14th Dist.] 2004, pet. denied).

**A)      Walker used his status to fabricate false criminal charges against Morrison that were unrelated to any case Walker was adjudicating.**

6)      In *Harper v. Merckle*, 638 F.2d 848 (5th Cir. 1981), *cert. denied*, 454 U.S. 816 (1982), the Fifth Circuit held that a judge does not have immunity if: (1) he uses his position as "an offensive weapon"; (2) to vindicate his personal goals.   Although the *Harper* holding has been limited to its unique factual situation, the Court's reasoning in *Harper* provides guidance for an analysis of Morrison's live allegations against Walker under the *Ballard* factors, because Walker's fabrication of false criminal charges against Morrison involved the offensive use of his status to vindicate his personal vendetta, and Walker's actions were not based on a case Walker was adjudicating.

**2)      Morrison's Complaint satisfies the *Ballard* factors, which means Walker can be held individually liable.**

7)      The Fifth Circuit relies upon the four factors in *Ballard v. Wall*, 413 F.3d 510 (5th Cir. 2005), to evaluate whether a plaintiff has articulated a plausible claim for relief outside of judicial immunity. Comparing each factor to Morrison's Complaint demonstrates Morrison has a plausible cause of action against Walker for the remaining allegations.  Plaintiff shall review each factor in turn.

**A)      Walker's attempt to indict Morrison with fabricated criminal charges were not normal judicial functions.**

8)      Walker's actions at issue are definitely not normal judicial functions.  Morrison's allegation against Walker regarding the fabrication of false criminal charges against her is first discussed in her Complaint, para. 13, which is set forth below:

> Walker also has a prodigious habit, which is still ongoing, of seeking falsified criminal charges against people that he does not like.  Walker worked with the former Criminal District Attorney, Defendant Thomas Maness, to fabricate false criminal charges against Morrison.  Defendant Maness recently resigned, reportedly after the discovery that his Office controlled a substantial slush fund of illegally obtained money for the purpose of funding various unlawful activities. Maness personally prevented all criminal investigations into Walker's misconducts, including by refusing to authorize any investigations by the Texas Attorney General or by the Texas Rangers. Maness worked together with Walker to try to have Morrison wrongfully indicted and prosecuted for alleged perjury based upon Walker's request due to his hatred of Morrison, even though Walker and Maness knew that Morrison did not commit any crime. That is, Walker and Maness knew these criminal charges against Morrison were entirely false and were fabricated by Walker and Maness, and were only for political purposes.  Walker and Maness arranged to have the Jefferson County District Attorney's Office convene a grand jury to consider falsified perjury charges against Morrison. Based upon these fraudulent charges, Morrison felt compelled to appear before the grand jury for almost five (5) hours, which was a very humiliating and degrading situation for her.  While Texas law cannot force a target of a grand jury investigation to appear before a grand jury, Morrison appeared to defend herself and thereby prevent her wrongful indictment. If Morrison had not appeared, the grand jury would have only considered the false statements made through the

4

Jefferson County District Attorneys' Office to facilitate a wrongful indictment. Morrison does not remember the precise dates when here grand jury appearance occurred, but Morrison believes this occurred in approximately 2010. Discovery should yield the exact dates of this occurrence. The grand jury determined that the charges against Morrison were falsified and were being brought in bad faith, and thus the grand jury refused to indict Morrison. The County of Jefferson paid for this illegal conduct, as part of its and unconstitutional policy of fully supporting all of Walker's criminal and unconstitutional activities, with taxpayer money. These false criminal charges against Morrison that were orchestrated by Defendants Walker and Maness, had nothing to do with a case that was pending or had been adjudicated in Walker's Court. In fact, Walker ordered Maness to come up with false charges, so they fabricated perjury charges against Morrison based on a statement she made regarding a client's probationary status in a case pending before Judge Gist, the presiding Judge of Drug Court. That is, these false charges were not based upon a case pending before Walker. The case in which Morrison made her allegedly false statement was pending before Judge Gist. This attempt to indict Morrison was based upon Walker's ongoing personal and racial vendetta against Morrison, discussed above.

9)      Walker acting as a prosecutor or a self-made district attorney against Morrison is not barred by judicial immunity under these facts. Complaint, paras. 13 & 14. This issue has been ruled upon by the U.S. Courts of Appeals for the Sixth and Seventh Circuits, which have held that **a judge acting as a self-appointed prosecutor is not carrying out a judicial function and is not acting within the scope of judicial immunity**. *See King v. Love*, 766 F.2d 962 (6th Cir. 1985), *cert. denied*, 474 U. S. 971 (1985) (judge deliberately misled a police officer who was to execute a warrant about the identity of the person sought. The judge tried to deliberately institute criminal proceedings against the wrong person); *Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984) (judge instigating a criminal prosecution has no immunity); *Harris v. Harvey*, 605 F.2d 330 (7th Cir. 1979), *cert. denied*, 445 U. S. 938 (1980) (judge instigating criminal proceedings has no immunity). Morrison's Complaint alleges Walker deliberately instituted false criminal proceedings against Morrison, convincing the District Attorney, Tom Maness, and the District Attorneys' Office to cooperate fully with Walker's

illicit goal and to convene a grand jury based on these false charges. The grand jury no-billed Morrison (*i.e.*, refused to indict her). The legal authority holds that a judge instituting false criminal charges due to a retaliatory animus is not a normal judicial function. *See* authority, *supra*.

10)    Morrison requests this Court take judicial notice under Fed. R. Evid. 201 of the complaint in *Stephen Hartman v. Judge Layne Walker, et al,* Cause No. 1:13-cv-00355; In the United States District Court, Eastern District of Texas, Beaumont Division, Honorable Judge Crone presiding. Morrison also requests this Court take judicial notice of the allegations in *Philip Klein v. Layne Walker*; Cause No. 1:14-cv-00509; In the United States District Court, Eastern District of Texas, Beaumont Division, Honorable Ron Clark presiding. The *Hartman* case involves allegations of Walker, Jefferson County Sheriff Deputies, the District Attorneys' Office and others, instigating a wrongful arrest and false criminal proceedings against Hartman. Mr. Klein's case also involves allegations that Walker improperly and maliciously sought frivolous criminal charges against Klein. The allegations in those cases corroborate and substantiate Morrison's allegations and support the conclusion that Walker's alleged misconduct in this case did not involve a normal judicial function.

**B)    Walker's culpable conduct occurred outside the courtroom.**

11)    Morrison's Complaint is clear that Walker's culpable conduct pertaining to the fabrication of false criminal charges: (1) occurred outside Walker's former courtroom; and (2) was entirely unrelated to any case that Walker was adjudicating. Morrison specifically alleges that these false criminal charges pertained to a statement she made regarding her client's probationary status, which such proceeding originated in Judge Gist's Court, which is known as the Drug Impact Court. Morrison further alleges that the fabrication of these criminal charges occurred in the Jefferson County District Attorneys' Office. Morrison's Complaint, therefore, clearly satisfies the second

*Ballard* prong, demonstrating that Morrison's allegation against Walker is outside the scope of judicial immunity.

**C)**  **Morrison's allegations are not based upon a case Walker was adjudicating in his former court.**

12)  Morrison would again state that her Complaint is clear that her allegations against Walker are not based upon a case that Walker was adjudicating.  Walker sought to fabricate false criminal charges against Morrison based upon her statement regarding her client's probationary status on a case stemming from Judge Gist's court.  Accordingly, the third *Ballard* factor is satisfied.

**D)**  **Morrison's allegations do not stem from a visit to Walker in his official capacity**.

13)  Morrison's allegations have nothing to do with her visiting Walker in his official capacity. That is, Morrison's allegations regarding Walker's fabrication of false criminal charges against her have no relationship to any visit by Morrison to Walker in his official capacity.

14)  A visit to a judge in his or her official capacity means appearing before the judge when he or she is adjudicating a case. *Sleeman v. Brazoria County*, 78 F.3d 582, 1996 WL 60605 (5th Cir. 1996) (not designated for publication).  In that case, the plaintiff sued after the judge retaliated against the plaintiff for serving the judge with a summons.  Specifically, the plaintiff went to court too meet the judge in a non-judicial capacity by serving the judge with a summons.  Later, that same plaintiff **returned to court as a witness in a case that the judge was adjudicating**.  The judge's wrongful conduct occurred when plaintiff was a witness in the judge's court.  Although the judge's behavior was retaliatory, the judge's actual misconduct occurred during the plaintiff's visit to the judge in his official capacity, because that plaintiff was a witness in a case that was being adjudicated by the judge when the misconduct occurred.  Morrison's allegations regarding the fabrication of false criminal

charges by Walker, therefore, have no relationship to any visit by Morrison to Walker in his chambers, or to any visit by Morrison to Walker in his courtroom, or to any visit by Morrison to Walker regarding a case that Walker was adjudicating. Accordingly, Morrison's allegations against Walker do not stem from a visit to Walker in his official capacity.

15) Morrison's Complaint, therefore, satisfies the four-part standards set forth in *Ballard v. Wall*, 413 F.3d 510 (5th Cir. 2005), demonstrating that Judge Walker does not have judicial immunity for his culpable misconduct at issue.

**3)    Walker's arguments that Morrison allegedly failed to comply with this Court Order are incorrect.  Further, Walker's arguments in this regard are legally irrelevant, because the Fifth Circuit relies upon the *Ballard* factors to evaluate potential judicial immunity. Detailed factual development requires discovery.**

16) Walker's Motion argues to this Court based on the wrong standard of review. Walker focuses on factual issues, which essentially argues some sort of a summary judgment proceeding under Fed. R. Civ. P. 56. This Court asked Morrison to address certain factual questions in her re-pleading. Morrison addressed those questions to the best of her ability, since Morrison had to rely upon her memory. Morrison has not had the ability to conduct discovery necessary to prove her allegations by obtaining critical documents and deposition testimony that can provide all the detailed facts regarding these false criminal charges. It is very clear that Morrison's Complaint, under the *Ballard* factors, alleges facts against Walker outside the scope of judicial immunity. Further, contrary to Walker's representations, Morrison did answer the questions asked by this Court, to the best of Morrison's ability to do so without discovery. For example, Morrison stated clearly that the fabrication of these false criminal charges occurred in 2010, which addresses the Court's inquiry of when did this activity occur. This squarely addressed the Court's first inquiry.

17)     Morrison's Complaint in para. 13, also explains how the fabrication of these charges were accomplished.  Morrison provides as much detail as she can, given the fact that she has not been authorized by this Court to conduct discovery.  Frankly, deposition testimony is necessary for Morrison to prove her allegations and to provide more factual details.  Morrison alleges what she recalled about the fabrication of these charges, the persons involved, and how it led to a grand jury proceeding in which she was ultimately exonerated.  There is no way that Morrison can provide all possible details on "how" the fabrication of these false criminal charges were "accomplished", unless Morrison is permitted to engage in necessary discovery to flesh out all these facts.  There is a grand jury file containing documents responsive to this Court's inquiry.  Defendants have these documents, but Morrison does not.  There is also a file in the District Attorneys' Office containing responsive information.  Defendants have these documents, but Morrison does not.  There is also sworn testimony before the grand jury.  Morrison cannot obtain the grand jury documents and that testimony, however, until this Court permits Morrison to conduct discovery.

18)     Rule 12(b)(6) requires only legal "plausibility" for Morrison's allegations to be sufficient to proceed with discovery, and **not** a record that would be required to defeat a summary judgment motion under Fed. R. Civ. P. 56.  That is, the inquiry under Rule 12(b)(6) is not whether Morrison can read the minds of the Defendants, or somehow can obtain or read documents solely in the possession of the Defendants without discovery or without having any means to do so.  The inquiry is whether, simply put, the Complaint states a plausible cause of action that is facially outside the scope of any applicable immunity.  Under this standard, this Court must accept Morrison's allegations as true.  If Morrison states a legally plausible claim, she should be permitted discovery to adduce more facts and more evidence.  Since Morrison's Complaint clearly satisfies the *Ballard* factors,

discovery shall yield detailed facts that would permit Morrison to replead with more factual specificity prior to any summary judgment proceeding.

19)    Regarding the third inquiry (how Walker knew the criminal charges were false), Morrison cannot read Walker's mind to aver his thought process. **Morrison's Complaint overall, however, alleges that Walker has engaged in repetitive, vindictive actions that are very consistent with the actions that he engaged in against Stephen Hartman and also Philip Klein**. All three cases deal with the striking similarity of Walker seeking **false criminal charges** against those persons whom he does not like, with the full complicity and ratification of Jefferson County through its entire legal system. The striking similarity in these core facts supports the legal and factual plausibility of Morrison's Complaint. At this stage, Morrison can only state, without discovery, that she knew the criminal charges were false, and that Walker (and Maness) knew they were false but presented these false criminal charges anyway, **due to Walker's persistent and unrelenting personal vendetta against Morrison**. The grand jury obviously found the criminal allegations to be specious, because the grand jury refused to indict Morrison. Again, the Standard of Review under Rule 12(b)(1) & (6) is deferential to Morrison's Complaint, and only seeks legal plausibility, which does not require Morrison to recite every possible fact that discovery is necessary to uncover. The plausibility of Morrison's Complaint is supported by the other cases (identified above) which corroborate Walker's habit and customary behavior of seeking to wrongfully prosecute those persons, like Morrison, that Walker dislikes.

20)    This Court inquired about the evidence proving falsity of Walker's criminal charges against Morrison. This Court should understand that such evidence is solely in the possession of the Defendants. The refusal of the grand jury to indict Morrison, however, is very cogent evidence of

falsity. Morrison's allegations are corroborated by Walker's habit of seeking false criminal charges against those persons that he does not like, as corroborated by the *Stephen Hartman* and *Philip Klein* litigation. The fact there are other cases against Walker containing the same alleged misconduct corroborates the veracity and also the importance of Morrison's allegations. Morrison can only provide additional factual evidence of falsity after discovery, in addition to the notable evidence of the undisputed fact that the grand jury refused to indict Morrison. Without discovery, Morrison can only allege falsity of these proposed criminal charges, which is corroborated by: (a) the grand jury's refusal to indict Morrison; and, (b) Morrison's allegations regarding Walker's habit of pursuing criminal charges against his perceived enemies, which is corroborated by the *Stephen Hartman* litigation and the *Philip Klein* litigation. The cases cited above holding a judge is not immune for exercising abusive, prosecutorial functions are based upon accepting the plaintiff's allegations as true, in accordance with U.S. Supreme Court holding in *Twombly*, 550 U.S. 544. That is, the Court does not authorize weighing the evidence in evaluation of a motion to dismiss under Rules 12(b)(6) and 12(b)(1).

21)     The Court's next question was squarely answered by Morrison. These false criminal charges did not concern any activity or any case pending in Walker's former court. Walker does not dispute this fact.

22)     Morrison has also addressed Tom Maness' personal involvement in this wrongful activity. As corroborated by the allegations in the *Stephen Hartman* litigation regarding Maness and the District Attorneys' Office, Morrison alleges that Maness fully participated with Walker in the fabrication of these false criminal charges against her, and that Maness and his Office fully participated in the presentation of these criminal charges to a grand jury, with knowledge of their

falsity. The three (3) civil rights cases currently on file corroborate that the Jefferson County District Attorney's Office continually sought to appease, support and literally work for Walker, even when the Jefferson County District Attorney's Office (under Tom Maness' tenure) knew Walker's activities were retaliatory, unlawful, and deliberately unconstitutional.

23)    The next question was whether Morrison appeared voluntarily before the grand jury. Morrison answers this inquiry in her Complaint, para. 13. Morrison states clearly that her appearance was voluntary, but she felt compelled to attend (as any reasonable person would feel), because: (1) she knew that the charges were false; and (2) she knew that if she did not attend to explain the true facts regarding the baseless allegations to the grand jury, an indictment based upon these false charges could result. Any reasonable person would feel compelled to attend a grand jury proceeding, if that person knew they were being wrongfully accused of fabricated and trumped up criminal charges based upon a political vendetta of a former judge and his proverbial henchman, the former Criminal District Attorney.

24)    This Court also inquired about the factors suggesting that Walker's motivation was based upon retaliation and personal animosity. Respectfully, Morrison directs this Court to the entirety of Morrison's Complaint. Even though this Court dismissed Morrison's other allegations against Walker, individually, based upon this Court's analysis of judicial immunity, this partial dismissal does not obviate the clear fact that Morrison's Complaint has plead repeatedly, clearly, and cogently that all of Walker's misconduct toward Morrison stemmed from his personal vendetta against Morrison and her husband for running against him for Judge of the 252nd District Court, and also due Walker's prejudice against African Americans, like Morrison. Walker's ill motives are clearly addressed by Morrison throughout her Complaint. These same motives form the basis for her

allegations regarding Walker's deliberate fabrication of false criminal charges against her. Morrison's allegations regarding the retaliatory motives of Walker are clear.

**4)      Walker's argument, that Morrison committed misconduct that Walker was required to report, ironically corroborates that Morrison has stated a plausible cause of action, because Walker is essentially arguing there are material fact issues requiring discovery on Morrison's allegations.**

25)      Walker next argues factual matters, beginning with the assertion that a judge under Judicial Cannon 3B(2) is required to maintain the professional competence of the attorneys appearing before him or her. Walker's Motion, pp. 6-8. While this is a correct statement of the Judicial Cannon, and while Morrison acknowledges that a court has inherent powers to regulate the practice of counsel appearing before the court [*see, e.g., Chambers v. NACO, Inc.*, 501 U.S. 32 (1991),] these facts do not cause Morrison's allegations to be outside the scope of judicial immunity based upon the *Ballard* factors. Walker's argument on pages 6-8 of his Motion, clearly assume that Walker's intended criminal charges against Morrison were bona fide and based upon actual alleged perjury committed by Morrison. That is, Walker's argument assumes the truth of certain disputed facts, and Walker clearly assumes that full discovery would in fact prove that Walker's attempts to indict Morrison were based upon misconduct performed by Morrison. **Plaintiff naturally contests this argument, and Walker's position is the exact opposite of the facts alleged in Morrison's Complaint**. Under Rule 12(b)(6) and 12(b)(1), the Court is **required** to accept as true the Plaintiff's allegations, which necessarily requires the Court to **not accept as true** Walker's version of the facts. *Twombly*, 550 U.S. 544 (2007). Further, Walker's arguments demonstrate the necessity of discovery on these issues, because these fact issues are clearly disputed. In other words, if Morrison's allegations were patently frivolous under Rule 12(b)(6) and 12(b)(1) standards, Walker would not have attempted to frame

some of his arguments based on assuming certain disputed facts would ultimately support Walker's position.

26) For example, Walker cites this Court to Rule 8.04 of the Texas Rules of Professional Conduct, which prohibits an attorney from committing perjury or misrepresentation. Walker then argues: "If Plaintiff indeed committed perjury before Judge Gist and Defendant Walker had such knowledge, he was in fact obligated to report it." Walker's Motion, p. 8. Morrison submits that Walker is clearly raising a factual defense that demonstrates to the Court the plausibility of Morrison's allegations, and the necessity for full discovery. Although Walker's factual-based argument is improper under Rule 12(b)(6), ironically Walker sub silento admits the plausibility of Morrison's case by Walker's attempt to factually justify Walker's alleged misconduct.

27) Walker's citations to cases on pages 8 & 9 of his Motion also corroborate the plausibility of Morrison's Complaint. If Morrison's Complaint was legally baseless, there would be no need for Walker to argue the facts or to cite this Court to cases discussing a trial court's inherent power to regulate the judicial process. *See, e.g., IFC Credit Corp. v. Specialty Optical Systems, Inc.*, 252 S.W. 3d 761, 772 (Tex. App.–Dallas 2008 pet. denied) ("To the extent necessary to deter, alleviate, and counter bad faith abuse of the judicial process").

**5) The cases relied on by Walker in his Motion, pp. 9-12, support the legal plausibility of Morrison's Complaint, because the judges' alleged misconduct in these cases were all based upon matters assigned to their courts.**

28) Walker's reliance upon *Barnes v. Winchell*, 105 F.3d 111, 119 (6th Cir. 1997), further supports the plausibility of Morrison's allegations. In *Barnes*, Ms. Barnes alleged that Judge Winchell engaged in impermissible prosecutorial actions undertaken in the absence of his jurisdiction. The Sixth Circuit disagreed, finding those actions judicial, **because Judge Winchell acted in a prosecutorial fashion**

**in the context of a case that he was actually adjudicating.** Specifically, the plaintiff in that case filed a civil rights action against the municipal judge who presided over proceedings involving her arrest and prosecution. That is, the municipal court judge was actually presiding over the misdemeanor criminal case against the plaintiff. These core facts are absent in this case. The Sixth Circuit found that even if Judge Winchell "committed procedural errors, even 'grave' ones, his actions are not rendered any less judicial for absolute judicial immunity purposes." *Id* at 1121. The Sixth Circuit's reasoning is consistent with the Fifth Circuit's holding in *Ballard v. Wall* (citations omitted), which inquires, among other things, if whether the judge's alleged wrongful act occurred in a case the judge was adjudicating. The Sixth Circuit's holding is clearly premised on the fact that Judge Winchell's misconduct occurred in a case involving the plaintiff that Judge Winchell was adjudicating.

29) Morrison clearly alleges, however, and Walker does not dispute, that Walker's instigation of false criminal charges against her were not related to any case that Walker was adjudicating. Walker's instigation of these false criminal charges pertained to statements made by Morrison in a proceeding before the Honorable Judge Gist. Contrary to the facts in this case, the alleged misconduct of Judge Winchell was within the scope of judicial immunity because: (1) it occurred in his courtroom, and in his chambers; and (2) it stemmed from a case that Judge Winchell was adjudicating in his courtroom. **These critical facts are entirely the opposite of Morrison's Complaint**.

30) Walker also relies upon *Ireland v. Tunis*, 113 F. 3d 1435, 1441 (6ᵗʰ Cir. 1997), in which the Sixth Circuit held that there was no specific law prohibiting a Michigan state court circuit judge from issuing an arrest warrant from his court. As such, the judge had immunity for issuing such a warrant,

which was part of his normal duties. In so ruling, the court noted that the judge was "of a court of general jurisdiction," which gave him jurisdiction to issue an arrest warrant. In *Ireland*, the mayor of the city brought a civil rights action against prosecuting attorneys who obtained a warrant from the judge for her arrest, as well as the investigator who vouched for the truth of the facts asserted in support of the arrest warrant. The mayor sued the judge who issued the warrant. In finding judicial immunity, the court stressed that the judge's normal duties included issuing arrest warrants based upon warrant applications that were routinely provided to his court. That is, this judge was acting within the normal scope of his duties and within his jurisdiction, which included him issuing an arrest warrant based upon information presented to him. Clearly, the facts in *Ireland* have no bearing upon, and no relation to, the facts set forth in Morrison's Complaint regarding Walker's instigation of the fabrication of false criminal charges against Morrison.

31)     The other cases relied upon by Walker all have one central element that significantly distinguishes them from Morrison's Complaint, and also significantly distinguishes them from the *Ballard* factors that control the analysis of the scope of judicial immunity in the Fifth Circuit. Specifically, Walker relies on cases where the judge's alleged misconduct stemmed from a case the judge was actually adjudicating in his court. This is a very critical difference from the facts before this Court. For example, Walker relies upon *Fields v. Soloff*, 920 F.2d 1114, 1116 (2d Cir. 1990). In that case, the judge had immunity for issuing "an oral restraining order prohibiting Fields from communicating with his fellow jurors about matters other than those brought to their attention by the prosecutor." The judge's action expressly dealt with his handling jurors who were part of the judge's adjudication of a case in his court. The judge's actions pertained to his authority to keep order over the adjudication of a case in his court. Once again, these facts are entirely absent from Morrison's

allegations.

32)     Walker also relies upon *Taylor v. Nichols*, 558 F.2d 561 (10th Cir. 1977).  That case involved a civil rights action brought by a city policeman, who had been acquitted of criminal assault and battery arising out of a traffic arrest.  The policeman alleged that he had been prosecuted without just cause, and he was subject to harassment.  The policeman's sued the judge who actually presided over his trial in which he was acquitted.  That is, the judge at issue was actually presiding over the case in which the defendant was tried and ultimately prevailed.  Once again, those critical facts are entirely absent from Morrison's allegations.

33)     Walker's Motion also repetitively cites what Morrison considers basic principles of judicial immunity, such as settled law that "a judge defending against a §1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity."  *Fields*, 920 F.2d at 1116; *citing Dennis v. Sparks*, 449 U.S. 24, 27 (1980).  Walker's quotations of general statements regarding the scope of judicial immunity are not germane to an analysis of the applicable *Ballard* factors under the facts in Morrison's Complaint.  Neither Morrison nor Walker disagree about the general tenets regarding the scope of judicial immunity.  Walker's Motion, however, does not effectively challenge that Morrison's Complaint satisfies the *Ballard* factors.  Likewise, Walker's general statement that a judge's jurisdiction can extend to matters outside the courtroom (Walker's Motion, p. 12), essentially asks this Court to ignore the most important aspect of Morrison's Complaint that satisfies the *Ballard* factors, which is that Walker seized upon a statement made by Morrison in a case **outside** of Walker's court, stemming from Judge Gist's court, to seek criminal charges against Morrison.  Walker had no business whatsoever, and no jurisdiction, to be involved in what Morrison had said before Judge Gist.  Assuming, as Walker does, that Morrison engaged in material misrepresentation

17

or other misconduct regarding her statements before Judge Gist, then the correct judicial authority to report such alleged impropriety would have been Judge Gist. Walker apparently assumes, without any Fifth Circuit case authority to support his position, that he had a general duty to police the entire state court legal system in Jefferson County, and to report and prosecute any lawyer whom he considered to have engaged in alleged misconduct, even lawyers having done so **outside** of his courtroom **apart from** any case Walker adjudicated. There is no case law finding a judge would have judicial immunity for the extra-judicial and extra-jurisdictional prosecutorial actions that are at issue in Morrison's Complaint.

34)     Finally, Walker argues again that Morrison's Complaint is deficient for failing to identify sufficient facts to support the allegations. In this regard, Walker again wants to hold Morrison to a summary judgment standard under Fed. R. Civ. P. 56, instead of the legal plausibility standard of Fed. R. Civ. P. 12(b)(6). Walker also relies upon *Bryant v. O'Connor*, 671 F.Supp. 1279, 1286 (D. Kan. 1986). A review of that case ironically wholly supports the plausibility of Morrison's allegations, and also the necessity for Morrison being able to engage in discovery to adduce all the specific facts necessary to address any future motion for summary judgment. The federal judge in *Bryant* noted that the plaintiff failed to respond to the court's order for a "meaningful discovery plan," which "suggests that plaintiff lacked an evidentiary basis for the complaint when it was filed and hoped that discovery would reveal some set of facts supporting these allegations." *Id.* at 1286. The underlying facts in *Bryant* involved a civil rights claim brought by a probation officer, who was discharged from his position with the United States District Court for the District of Kansas. The former probation officer sued the chief judge and chief probation officer for the District of Kansas. In dismissing these allegations, the court found the chief judge necessarily had the duty and authority to evaluate and

terminate, if necessary, the employment of a probation officer for a federal district court. That is, the federal judge was engaging in a normal judicial function involving duties squarely within the scope of his authority as judge. **These critical facts are entirely absent from Morrison's Complaint.** The facts alleged by the plaintiff in *Bryant* were critical to the court's analysis of whether judicial immunity was applicable. Further, in this case, Morrison would welcome a discovery plan that Morrison can use to obtain discovery of documents, sworn testimony, and information that remains solely in the possession of the Defendants. Through discovery, the validity of Morrison's allegations will become substantially more certain. In short, *Bryant*, has no application to the facts in this case.

35)     In this case, Morrison alleges many years of an ongoing, continuing vendetta through which Walker used his status as a judge as an offensive weapon to vindicate his vendetta against her. *See* Complaint paras. 28, 29, 30 & 31. Judicial immunity, therefore, does not apply to the facts at issue in this case regarding the fabrication of false criminal charges. *See also Zarcone v. Perry*, 572 F.2d 52 (2d Cir. 1978) (there was no judicial immunity when a judge patronized a coffee vendor, adjudged his coffee as "putrid," ordered the vendor hand-cuffed and berated him for twenty (20) minutes, threatening him and his livelihood).

**6)     Walker provides no basis to dismiss Plaintiff's pendant state law claims. Morrison's Section 1981 & 1983 case entirely independent of her pendent Texas tort claims. The Texas Tort Claims Act does not preclude federal claims in addition to Texas tort claims.**

36)     Walker asks this Court to dismiss Morrison's pendent state law claims, purporting to rely upon the Texas Tort Claims Act for its reasoning that Morrison's federal claims prohibit Morrison from also asserting state claims against Walker.

37)     The Texas Tort Claims Act (the Act) is codified at Tex. Civ. Prac. & Code §101.001 *et seq.* (Vernon's 2014). The purpose of the Act is to waive sovereign immunity for Texas governmental

agencies, entities and employees for certain Texas tort claims. As a general rule, the 11th Amendment prohibits a plaintiff from suing the state or state employees for Texas torts, unless there is a waiver of sovereign immunity within the Act.

38)     Walker argues Morrison's federal claims bar her from asserting pendent state law claims. This argument has been essentially ruled upon by the Texas Supreme Court. In *Texas Department of Aging, et al. v. Mary Cannon, et al.* No.12-0830, 2015 WL 127829 (Tex. 2014), the Texas Supreme Court ruled that governmental employees who sought dismissal of a claim against them under §101.106 of the Act, due to a lawsuit being brought against those employees and their employer, were not entitled to dismissal when the plaintiff filed independent claims against the employees pursuant to 42 U.S.C. §1983. The Texas Supreme Court ruled that federal claims are not considered to be claims brought "under" the Texas Tort Claims Act, and therefore the Act does not mandate dismissal of Texas tort claims based upon a federal claim (*i.e.*, 42 U.S.C. §1983) that is asserted independently of the Act.

39)     Walker argues that Morrison's common law tort causes of action against Walker are barred by *Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2012). This case's holding is not on point to this situation. As stated above, the case law provides generally that state law tort claims against an individual government employee are generally barred under the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code § 101.106, if the governmental agency or employer is also sued for Texas tort claims. In this case, Morrison did not sue the State of Texas or Jefferson County for Texas tort claims. Morrison asserted independent §1983 causes of action. The Act's dismissal provision in §101.106, therefore, does not apply as a matter of law. *Mary Cannon*, 2015 WL 127829.

40)     Walker's reliance upon *Franka v. Velasquez*, 332 S.W. 3d 367 (Tex. 2012), therefore, is

entirely misplaced. That case involved the parents of a newborn infant. The infant suffered injury during delivery. The parents sued for medical malpractice under Texas state law against the state university hospital physician and also the resident who delivered the infant. The trial court denied these individual defendants' motion for summary judgment on the grounds of immunity, and they appealed. The San Antonio Court of Appeals affirmed, but the Texas Supreme Court reversed, finding that sovereign immunity barred the claims. In ruling, the Texas Supreme Court stressed that the parents' lawsuit could have been brought against the university hospital under the Texas Tort Claims Act, for Texas law claims stemming from injuries sustained by the newborn infant during the infant's delivery. The court was specifically construing the provisions of §101.106 of the Act, entitled "Election of Remedies." Under this provision, subsection (a), the "filing of a suit under this chapter [the Act] against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." As stated *supra*, the Texas Supreme Court has expressly ruled that §101.106 of the Act does not mandate dismissal of Texas tort claims against an individual defendant if there are claims asserted against a governmental entity under 42 U.S.C. §1983. *Mary Cannon*, 2015 WL 127829. Moreover, Walker was a Texas state court judge. Morrison is prohibited under the Eleventh Amendment from directly suing the State of Texas as a named party under 42 U.S.C. §1983. Morrison originally sued the State of Texas as a party, but when the Texas Attorney General's Office provided legal authority to Morrison's counsel demonstrating that sovereign immunity bars such a suit, Morrison elected to proceed with her §1983 claims directly against Walker, individually, for acting under color of state law, as well as against the other Defendants, for the reasons stated in Morrison's Complaint. All of the cases discussing judicial

immunity against judges (cited throughout this Opposition and in Walker's Motion), that involved claims under 42 U.S.C. §1983, sued those judges for alleged misconduct stemming from their activities undertaken pursuant to color of state law. None of the authorities cited in Walker's Motion mandate the necessary dismissal of pendent Texas tort claims against a judge, when such claims accompany a federal civil rights cause of action.

41)    The case *Anderson v. Bestman*, 365 S.W.3d 119, 126 (Tex. App. - - Houston [1ˢᵗ Dist.] 2011, no pet.), also considered only Texas tort claims against a state university's department chairpersons - - namely, for tortious interference with contract. Applying §101.106, the court dismissed the case because the Texas tort claims at issue could have been brought against the university. Once again, *Anderson* did not contain any federal allegations under 42 U.S.C. §1983. The court construed the Act, holding that tort claims against an individual government employee are barred **only** if those claims fall within the scope of the government employee's job duties, and the plaintiff could have sued the governmental employer. To the extent the government employee does something outside of the scope of his employment or outside the scope of his or her official duties, however, then common law tort claims are not barred, **even if** the plaintiff could have asserted Texas tort claims against the governmental entity.

42)    Even if §101.106 of the Act applied to this case (which *Mary Cannon* expressly holds it does not), the inquiry remains whether Walker's actions in this case could be considered within the scope of his duties as a judge. This inquiry is duplicative of the inquiry of whether Walker is entitled to judicial immunity under these facts. Since Walker is not entitled to judicial immunity (briefed above), then his misconduct at issue is not within the scope of a judge's normal judicial duties.

43)    Walker's orchestration of false criminal charges against Morrison is clearly beyond the scope

22

of a judge's official duties. *See* analysis, *supra*, applying the *Ballard* factors. A judge is not a lawful county prosecutor, particularly when the criminal charges do **not** stem from a case adjudicated within the judge's courtroom. Morrison's common law causes of action begin in her Complaint on page 27, paras. 42-43. These state law causes of action are not barred under the Texas Tort Claims Act as a matter of law.

**7)      Walker is not entitled to qualified immunity.**

44)      The case law on qualified immunity is well settled. Walker relies upon *Glenn v. City of Tyler*, 242 F.3d 307 (5th Cir. 2001), in which the Fifth Circuit held that a government official does **not** have qualified immunity if his or her conduct at issue "violates clearly established statutory or constitutional rights of which a reasonable person should have known." In analyzing qualified immunity, the Court must first determine whether the plaintiff has alleged a violation of a constitutional right. Morrison has clearly alleged constitutional violations throughout her Complaint, and Morrison has alleged constitutional deprivations related to the fabrication of false criminal charges against her. Complaint, para. 14 (asserting constitutional deprivations of her rights under the First and Fourteenth Amendments). Moreover, Morrison alleges that Walker's (and Maness') misconduct regarding the fabrication of false criminal charges against her constitutes the unlawful acts of Official Oppression and Abuse of Capacity, in violation of Texas Penal Code §§ 39.02 & 39.03. Complaint, para. 28. Morrison further alleges Walker and Maness conspired together to violate these Texas Penal Code provisions and to violate the U.S. Constitution against her, in violation of Texas Penal Code §15.02. *Id*. Morrison's Complaint, therefore, satisfies the first prong of this inquiry. Second, if the plaintiff has alleged a constitutional violation (which Morrison clearly alleges) "the court must decide if the conduct was objectively reasonable in light of clearly established

law at the time that the challenged conduct occurred." *Id.* In other words, the question is whether or not the public official is "mistaken" or committed the misconduct accidentally. *Id*, *citing Hunter v. Bryant*, 502 U.S. 224, 227 (1991). In assessing the objective reasonableness, this Court must accept as true Morrison's allegations. *Twombly*, 550 U.S. 544. That is, this Court is not permitted to consider Walker's factually based arguments that can be paraphrased as claiming that Morrison must have done something wrong to justify Walker seeking criminal charges against Morrison. Further, this Court must be guided by the *Ballard* factors. Since Walker's alleged misconduct is outside of judicial immunity under the *Ballard* factors, the unreasonableness of Walker's alleged misconduct is clearly apparent.

45) Morrison's Complaint clearly defeats qualified immunity for Walker, as well as for Maness and Barker. Morrison alleges that Walker's misconduct was entirely retaliatory and done in bad faith, based upon Walker's personal hatred of Morrison due to: (1) her running for office against him and her husband running for office against Walker, and (2) based upon Walker's racial animus against Morrison. Morrison's Complaint is full of these allegations, as well as allegations that Walker acted maliciously and pursuant to a "prodigious habit" of seeking criminal charges against those persons he does not like. Complaint, para. 13. There is nothing in Morrison's Complaint that could possibly be construed to indicate that Walker "mistakenly" fabricated false criminal charges against Morrison, or that Walker otherwise acted reasonably by intentionally fabricating false criminal charges against Morrison based on Walker's retaliatory motives. To the contrary, the entirety of Morrison's allegations, including the allegations pertaining to the fabrication of false criminal charges, deal specifically with malicious misconduct of Walker that was undertaken in bad faith for the express purpose to harm Morrison as much as possible, and to deprive her of her constitutional rights–namely

24

her First Amendment Rights of Freedom of Opinion and Freedom of Association, and her Fourteenth

Amendment substantive Due Process Rights to practice law, as well as her Fourteenth Amendment

rights to Equal Protection of the Laws.[1]  Further, Walker's intentional violations of Texas Penal

Codes, all done based upon Walker's retaliatory and racial animus against Morrison, is objectively

unreasonable.  As an attorney and a former judge, Walker is charged with full knowledge of his

intentional violations of Morrison's civil and constitutional rights.  As a former judge presiding over

a criminal district court, Walker intimately knows the Texas Penal Codes he violated.  It is axiomatic

that Morrison's constitutional rights, and the standards in the Texas Penal Codes, were well-

established and well known when Walker perpetrated his misconduct.  Morrison's Complaint,

therefore, satisfies the second prong of the inquiry for evaluating qualified immunity.  All of these

facts demonstrating the bad faith motives of Walker's constitutional and Texas Penal Code violations

against Morrison are clearly pleaded in Morrison's Complaint.

46)      Under the two part standard utilized by the Fifth Circuit for evaluating qualified immunity,

therefore, Walker is not entitled to qualified immunity under the factual allegations that Morrison has

set forth in her Complaint.

## CONCLUSION

47)      For the reasons set forth above, this Court should deny Defendant Layne Walker's Motion to

Dismiss under Rule 12(b)(1) & (6).

---

[1]Morrison also pleaded Fifth Amendment Due Process deprivations.  The Fifth Amendment Due Process clause is applicable to the states through the Fourteenth Amendment's Due Process Clause.  Morrison's pleading of a Fifth Amendment deprivation, therefore, is technically erroneous, and is surplusage.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court deny Defendant Layne Walker's Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6), and grant Plaintiff such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

*/s/ John S. Morgan*
JOHN S. MORGAN
TBA#14447475
Morgan Law Firm
2175 North Street, Ste. 101
Beaumont, Texas 77701
(409) 239-5984
(409) 835-2757 facsimile
jmorgan@jsmorganlaw.com

### CERTIFICATE OF SERVICE

This hereby certify that a true and correct copy of the foregoing document has been provided to counsel of record, via electronic filing, on this 26th day of January, 2015:

Kathleen M. Kennedy               *Via e-file*
Jefferson County District Attorney's Office
1085 Pearl Street, 3rd Floor
Beaumont, Texas 77701

Joe J. Fisher, II                 *Via e-file*
Walter Umphrey
Mark Sparks
Provost Umphrey Law Firm
P. O. Box 4905
Beaumont, Texas 77704

Kim Coogan                        *Via e-file*
Assistant Attorney General
P. O. Box 12548, Capitol Station
Austin, Texas 78711

*/s/ John S. Morgan*
JOHN S. MORGAN