UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| STELLA MORRISON | § | |
| | § | |
| VS. | § | CASE NO. 1:13-CV-00327 |
| | § | |
| JUDGE LAYNE WALKER, THE COUNTY | § | Honorable Zack Hawthorn |
| OF JEFFERSON, TEXAS, AND THE | § | |
| STATE OF TEXAS | § | |

**Defendant Layne Walker's Reply on Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6)**

Comes now Defendant, Layne Walker, and respectfully files this his *Defendant Layne Walker's Reply on Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6)*, and would respectfully show unto this Honorable Court as follows:

**I.   ALL OF MORRISON'S REMAINING CLAIMS ARE BARRED BY LIMITATIONS.**

In the Order Granting Defendant's Motion to Dismiss [Dkt. 32] ("Order"), the Court dismissed with prejudice all of Morrison's state law claims and all of Plaintiffs §§ 1981 and 1983 claims except those based on the alleged fabrication of the perjury charge, which the Court dismissed with leave to amend, and the Court gave Morrison 30 days to replead with the requisite particularity as required by Rule 12(b)(6). *See* Order at 16.

In Plaintiff's First Amended Complaint [Dkt. 74] ("FAC"), Morrison alleged that this incident occurred "in approximately 2010." FAC at 6. In Walker's motion to dismiss the FAC [Dkt. 78] ("MTD"), he posed the question: if the events occurred in "'approximately 2010' …then how is that claim not—on the face of this pleading alone—time-barred?" MTD at 2. In her response to the MTD [Dkt. 85] ("Response"), Morrison had no answer. Because it is.

Morrison alleged she was injured by having to (voluntarily) appear before the grand jury, which she alleged, was degrading and humiliating to her. FAC ¶13. Her claim would therefore have accrued no later than the date of her grand jury appearance. *See Wallace v. Kato*, 549 U.S.

1

384, 397 (2007) ("We hold that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."). "Although 42 U.S.C. §§ 1981[1] and 1983 and corresponding constitutional claims are not subject to specific federal statutes of limitations, we borrow the forum state's general

---

[1] The applicable state statute of limitations applies to a § 1981 claim unless the claim was newly made actionable by the Civil Rights Act of 1991. *See Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 381-383 (2004). The Civil Rights Act of 1991 was enacted in response to certain Supreme Court decisions on employment discrimination, and it redefined § 1981's "make and enforce contracts" language to include the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *See Jones v. R. R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004); Pub. L. No. 102-166. Basically, the 1991 amendments extended § 1981's reach to post-formation which was not actionable under prior law. *Mitchell v. Crescent River Port Pilots Ass'n*, 265 Fed. Appx. 363, 368 (5th Cir. 2008).

To the extent it might fall within the bounds of § 1981 at all, Morrison's claim would have to boil down to an allegation that Walker misused his governmental power due to racial animus, and that sort of claim was actionable long before the Civil Rights Act of 1991. *See, e.g., Alexis v. McDonald's Restaurants*, 67 F.3d 341, 348 (1st Cir. 1995) ("All courts of appeals which have considered the question have held that a misuse of governmental power motivated by racial animus comes squarely within the 'equal benefit' and 'like punishment' clauses of section 1981(a)."); *Ramsey v. Dintino*, No. 05-5492 (JAG), 2007 U.S. Dist. LEXIS 23517 at *19-24 (D.N.J. Mar. 30, 2007) (state statute of limitation applied to § 1981 claim alleging false arrest and manufacturing evidence because such claims cognizable under pre-1991 version of § 1981). While Morrison tosses in something about a "constitutionally recognized contractual right to practice law," FAC ¶14, she does not plead any facts showing interference with an actual contract, or allege any conduct that would be actionable under the current version of § 1981 that would not be equally actionable under the prior version. Morrison also alleges "retaliation" by Walker "based on her race and his personal vendetta, which violates § 1981." FAC ¶20. But again, since this purported "retaliation" claim is not tied to any alleged contract, or, more particularly, post-formation conduct, the two year state statute of limitations would apply. *Fonteneaux v. Shell Oil Co*, 289 Fed. Appx. 695, 698-99 (5th Cir. 2008).

To the extent Morrison's claim is not based on racial animus (since she did not allege discrimination based on her membership in any other protected class) she simply fails to state a claim. A plaintiff must prove racially discriminatory purpose of act to demonstrate Section 1981 or Section 1983 violation. *Larry v. White*, 929 F.2d 206, 209 (5th Cir. 1991). And while the FAC is littered with unsubstantiated allegations of racial animus, ¶ 13, which contains the allegations of the "false criminal charges" alleges that the charges were brought "*only* for political purposes." FAC ¶ 13 (emphasis added).

personal injury limitations period."[2] *King v. Louisiana*, 294 Fed. Appx. 77, 82 (5th Cir. 2008) (citing *Piotrowski v. City of Houston,* 237 F.3d 567, 576 (5th Cir. 2001)). In Texas, the statute of limitations on these claims is two years. *Piotrowski*, 237 F.3d at 576. The original complaint in this case was filed on May 22, 2013, which is just short of two years and six months after the last day of 2010. *See* Plaintiff's Original Complaint [Dkt. 1] ("Complaint").

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). That is exactly the case here. Morrison alleged in the FAC that Judge Walker had been out to get her at least since March of 2006 when Judge Walker defeated Morrison's husband in a primary election, *see* FAC at 3-4,[3] and that Judge Walker's alleged hostility was manifested in numerous ways over a number of years. There are no allegations in the FAC that Morrison was not on notice of the "falsified perjury charges" when she testified before the grand jury in "approximately 2010," or that would support an accrual date later than 2010. Consequently, all Morrison's claims should

---

[2] Morrison also mentions 42 U.S.C. § 1981a in the damages and attorney's fees sections of the FAC, but does not allege any facts that would give rise to a claim under that statute. *See* FAC ¶¶ 40, 41, 44. Section 1981a does not create an independent cause of action; it merely expands the remedies available under Title VII, and Morrison has not alleged that Walker was an employer, employment agency, or labor organization. *See Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998) (holding that only employers, employment agencies, and labor organizations. can liable for unlawful conduct under Title VII).

[3] In FAC ¶11, Morrison references an affidavit attached as Exhibit 1 to her original complaint as demonstrating that "Walker's ongoing unconstitutional and racist retaliatory actions" have been going on since 2006. The affidavit details Morrison's unprofessional conduct, and does not suggest any unconstitutional or racist actions on Judge Walker's part. Since Morrison elected to attach it to her Complaint and specifically reference it in the FAC, the Court can consider it in ruling on a 12(b)(6) motion. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (internal quotation marks and citation omitted)).

3

be dismissed on limitations grounds, regardless of whether judicial immunity applies.

**II.     JUDGE WALKER IS ENTITLED TO JUDICIAL IMMUNITY.**

Stripped of the conclusory assertions and hyperbolic language, the actual facts alleged in the FAC boil down to an allegation that in "approximately 2010," Judge Walker reported to the prosecuting authorities that Morrison allegedly committed perjury based on "statements she made regarding a client's probationary status in a case pending before Judge Gist."  FAC ¶13. Morrison does not allege that Morrison was arrested or that she was under any legal compulsion to testify before the grand jury, or that Judge Walker had any involvement in the conduct of the grand jury proceedings; nor does she allege any facts showing Judge Walker had any dealings with Morrison other than in his capacity as a judge; and she specifically alleges that her conduct that formed the basis for the criminal referral occurred in the criminal courts of Jefferson County during the course of judicial proceedings.

Even if Morrison's conduct that Judge Walker allegedly reported to the district attorney had happened in Judge Gist's courtroom (which it did not, as discussed in the next section), it still would have occurred within the scope of Judge Walker's judicial authority.  Judge Gist was not an elected Texas judge in 2010.  Judge Gist retired from the Criminal District Court of Jefferson County, Texas on December 31, 1995.  *See*  Exh. 1 (Judge Gist's judicial biography from the "Second Administrative Judicial Region of Texas" section of the Montgomery County, Texas, website).[4]  He now serves as a visiting judge on the "Drug Impact Court."  However, if

---

[4] Exhibits 1 and 2 were downloaded from Montgomery County's website. The Court may take judicial notice of information of this sort posted on government websites. *See, e.g., Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir.2005); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (noting that contents of government websites are a proper item of which to take judicial notice). These are matters of public record and the information can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Exhibit 1 is available at:http://www.mctx.org/courts/second_administrative_judicial_region/docs/GIST.pdf

one looks for the statutory authorization for the "Drug Impact Court" in the Texas Government Code, it is nowhere to be found. That is because the judge of the Drug Impact Court is a visiting judge, reappointed monthly, and serving at the pleasure of the judges to whose courts he is assigned. Judge Gist is a visiting judge assigned to the Criminal District Court and 252nd Judicial District Court of Jefferson County, Texas. *See* Exh. 2 (*Second Administrative Judicial Region, Visiting Judge Assignment Report Listing*).[5] The Criminal District Court of Jefferson County and the 252nd Judicial District Court were created by sections. 24.920 and 24.429 of the Texas Government Code, and each court has its own elected judge. Judge Walker was the judge of the 252nd. Since the Drug Impact Court is an adjunct to the Criminal District Court and the 252nd, Morrison's allegation that her "alleged perjury" occurred before Judge Gist does not amount to a "fact" indicating that it occurred outside Judge Walker's judicial authority. "[T]the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). The facts alleged do not show that Morrison's conduct was so far out of his judicial bailiwick as to render his actions, even as alleged in the FAC, so far out of bounds as to be extrajudicial acts.

Morrison cites three cases—two from the Sixth Circuit and one from the Seventh—which she asserts stand for the proposition that "a judge acting as a self-appointed prosecutor is not carrying out a judicial function," but none of those case address an issue remotely similar to the one presented here. *See* Response at ¶9.

First, In *King v. Love*, 766 F.2d 962 (6th Cir. 1985), the court did not say that reporting such a crime is a non-judicial act; in that case the alleged non-judicial act was the act of deliberately misleading officers who are to execute a warrant about the identity of the person

---

[5] Exhibit 2 is available at: http://www.mctx.org/courts/2ndreport/Default.aspx).

sought well after the warrant has been issued." *Id*. at 698. Causing the wrong person to be arrested for a crime has nothing to do with reporting perjury (or suborning perjury) to the appropriate authorities.

Next, in *Sevier v. Turner*, 742 F.2d 262 (6th Cir. 1984), it was alleged that a juvenile court judge responsible for collecting overdue child support payments instructed staff members to institute criminal proceedings, and then used the impending prosecutions "as leverage to extract signatures on consent orders that [were] approved by [the judge] without hearings." *Id*. at 272. For those fathers who did not remain current on their payments under the consent orders, the judge caused contempt proceedings to be initiated, with the fathers incarcerated or required to make purge payments, out of which the defendant received part of their salary. *Id*. As the Sixth Circuit explained it, in *Sevier*, the judge, "patently motivated by private interests and without involving a prosecutor, initiated criminal charges against persons who did not have any case then pending before the judges, and then, in highly irregular proceedings, passed judgment upon such charges." *Barnes v. Winchell*, 105 F.3d 1111, 1119 (6th Cir. 1997). This is a far cry from simply reporting illegal in-court conduct to the appropriate authorities and then letting justice take its court.

Finally, Morrison cites *Harris v. Harvey*, 605 F.2d 330, (7th Cir. 1979), as holding that "judge instigating a criminal prosecution has no immunity." Response at ¶9. In fact, the judge in that case was afforded judicial immunity for his actions in the criminal prosecution, but not for acts that "involved the defendant's repeated communications to the press and to city officials over the course of more than a year" that got the plaintiff suspended from his job as a police officer and caused other harm. *See id.* at 336. The situation is not remotely similar to the one alleged in the FAC, and the case does not support stripping Judge Walker of judicial immunity.

6

## III. MORRISON HAS NOT AND CANNOT ALLEGED SUFFICIENT FACT TO OVERCOME JUDGE WALKER'S JUDICIAL IMMUNITY.

Morrison asserts that she does not know enough about her own claim to plead more than the approximate year and that is involved "a statement she made regarding a client's probationary status in a case pending before Judge Gist, the presiding Judge of Drug Court." *See* FAC ¶13. The FAC lacks any facts about the case in which the statement was made (other than it was supposedly in Judge Gist's court), what the statement actually was, whether it was true or not, how Judge Walker would have even known about the statement if it was not made in his court, how he would have known whether the statement was true or false. Morrison attributes her inability to plead any actual facts about the claim to the fact that she "had to rely upon her memory" and essentially asserts that she needs to conduct discovery before she can plead the facts upon which her supposed claim is based. *See* Response at ¶16.

With all due respect to Morrison and her counsel, there is responsibility to investigate the claim before filing suit,[6] and not just to toss out some vague, conclusory allegations. It seems somewhat less than plausible that a lawyer, having been maliciously and falsely accused of a crime by a sitting judge, for conduct that occurred during the course of her representation of a client in court, and having testified for a harrowing five hours before the grand jury, would have nothing but her memory to go on in reconstructing the alleged events. The notion that a lawyer would not have some written records of such things—especially given the fact that a conviction could potentially result in the loss of her law license and her freedom—is surprising, to say the

---

[6] *See, e.g.,* FED. R. CIV. P. 11(b) (representations in a pleading require "an inquiry reasonable under the circumstances"); *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994) (Rule 11 requires "that the attorney has conducted a reasonable inquiry into the facts which support the document"); *Yonkers v. Otis Elevator Co.*, 106 F.R.D. 524, 525 18396 (S.D.N.Y. 1985) ("It is thus no answer to a motion seeking Rule 11 sanctions for asserting a baseless claim of fraud to suggest that plaintiffs needed discovery to ascertain whether the claim asserted was well founded.").

least. But if Morrison really has nothing to go on but her failing memory, perhaps the court records would refresh her memory.

The "statements [Morrison] made regarding a client's probationary status" referenced in the FAC only occurred in "approximately 2010" if the Court construes the word "approximately" to mean "give or take four years. And they occurred "in a case pending before Judge Gist" only if "Judge Gist" is construed to mean "Judge Walker." In fact, as court records show, the incident occurred in Judge Walker's courtroom on April 19, 2006, while Judge Walker was presiding over *State of Texas v. Peter Tran*, No. 96185. *See* Exh. 3, Excerpts From Guilt/Innocence in *State of Texas v. Peter Tran*, No. 96185, in the 252nd Judicial District Court of Jefferson County.[7]

During her brief representation of Tran, Morrison prepared a handwritten "Application for Community Supervision From the Court," which stated that "Peter Tran has never been convicted of a felony in the state of Texas or any other state." *See* Exh. 4, "Application For Community Supervision From the Court" filed in *State of Texas v. Peter Tran*, No. 96185, in the

---

[7] Exhibits 3 and 4 are judicially noticeable as court records since they are public notice and the accuracy of the information therein can be readily determined from sources whose accuracy cannot reasonably be questioned. The Court may take judicial notice of fact that Morrison filed documents or made statements on the record in another court. *See, e.g., Taylor v. Charter Med Cop*, 162 F.3d 827, 831 (5th Cir. 1998).

Note, however, that while the facts concerning what was filed and what happened during the course of the proceedings in *State of Texas v. Peter Tran* are properly judicially noticeable, the "allegations" in the complaints in other cases that Morrison asks the Court to judicially notice on ¶9 of the response are not, or at least not for any purpose relevant to the motion to dismiss. "Courts will not take judicial notice of factual propositions that are subject to reasonable dispute, even if they appear as allegations in pleadings, affidavits, trial testimony, or findings of fact in judgments." 1-201 Weinstein's Federal Evidence § 201.13(b) (footnotes omitted); *see also* 21B Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5106.4, at 232-36 (2d ed. 2005) ("It seems clear that a court cannot notice pleadings or testimony [in court records] as true simply because these statements are filed with the court. . . . [A] court cannot take judicial notice of the truth of a document simply because someone put it in the court's files . . . . [Courts] can notice [that an] assertion was made, but not that it was true . . . .").

252nd Judicial District Court of Jefferson County, Texas, on April 19, 2006. The Application was signed by Morrison and included an affidavit by Tran affirming that the statements in the Application were true and correct. *Id*. In addition, Tran swore in open court that he signed the Application and swore that everything in it was true and correct. Exh. 3 at 3. The certificate of service, the date of the jurat on Tran's affidavit, and the clerk's stamp are all dated April 19, 2006, Exh. 4, which was also the date of the court appearance, Exh. 3 at 1.

During the course of the proceedings, it transpired that the statements in the application were not true and correct, and later that day, Tran was questioned about his criminal history, and admitted that he had in fact been convicted of burglary of a building and burglary of a vehicle, and then was convicted of possession of a controlled substance while out on parole. Exh. 3 at 3-5. When questioned about the false statements by the State, Tran claimed to have misheard or misunderstood the questions did not understand what he was signing. Exh. 3 at 5-9. On redirect, Morrison asked a series of questions that appear to be directed at showing that Tran did not know what he was signing, Exh. 3 at 9-11, and then asked him:

> Q. When you came to me to represent you, did you not tell me that you had been previously convicted?
>
> A. Yes, ma'am. I told you I had a prior conviction.

Exh. 3 at 11. Morrison then continued along the line of questioning attempting to show that he did not understand what he was signing, even though she is the one who had him sign the Application in the first place. Exh. 3at 11-13. In short, the transcript of the proceedings in Judge Walker's court shows that Morrison's client told her that he had been convicted of a felony, but she nonetheless had him swear to the Application—which Morrison herself signed and filed—swearing that he had never "been convicted of a felony in the State of Texas or any other state," and then tried to defend her client's false statement by eliciting testimony that he did not

9

understand the affidavit that his own lawyer prepared for him

Even if Judge Walker reported Morrison's misconduct as alleged in the FAC, referring to the district attorney what appears on its face to be subordination of perjury is a judicial act for which a judge is afforded absolute immunity. If Judge Walker felt that a crime had been committed in his court, he had an obligation to report it to the prosecuting authorities. *Brookings v. Clunk*, 389 F.3d 614, 620-21 (6th Cir. 2004). As the Sixth Circuit observed, "if litigants are able to perpetrate fraud on courts and subsequently threaten judges with personal liability for reporting such behavior, the integrity of the judicial system is jeopardized." *Id*. at 621; *see also, e.g., Barrett v. Harrington*, 130 F.3d 246, 260-61 (6th Cir. 1997) (judge entitled to absolute immunity for statements made to prosecuting authorities, but not for statements made to news media). While Morrison may have been no-billed by the grand jury, that does not mean there would be anything improper or extrajudicial in Judge Walker's reporting the conduct. And claiming that Judge Walker was motivated by some personal vendetta or racial animus does not change that. *See Mireles v. Waco*, 502 U.S. 9, 10 (1991) (finding judicial immunity to be absolute and "not overcome by allegations of bad faith or malice" or corruption).

## IV. CONCLUSION AND PRAYER

For the reasons set out in Walker's motion to dismiss, and for all the foregoing reasons, Walker respectfully requests that all Morrison's claims against Walker be dismissed with prejudice, and that Walker be afforded all other relief to which he may justly be entitled.

Respectfully submitted,

BY: \_\_\_/s/ Joe J. Fisher, II_____
JOE J. FISHER, II
STATE BAR NO. 00787471
PROVOST & UMPHREY LAW FIRM, L.L.P.
P.O. BOX 4905
BEAUMONT, TEXAS 77704
(409) 835-6000
FAX: (409) 838-8888

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing instrument was forwarded this the 6th day of February, 2014, to all counsel of record by electronic filing.

\_\_\_/s/ Joe J. Fisher, II_____
Joe J. Fisher, II

11