# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **STELLA MORRISON** | § | |
| | § | |
| **VS.** | § | **CASE NO. 1:13-CV-00327** |
| | § | |
| **JUDGE LAYNE WALKER, THE COUNTY** | § | **Honorable Zack Hawthorn** |
| **OF JEFFERSON, TEXAS, AND THE** | § | |
| **STATE OF TEXAS** | § | |

### Defendant Layne Walker's Motion for Attorneys' Fees and Expenses
### Under 42 U.S.C. § 1988 and 28 U.S.C. § 1927

JOE J. FISHER, II
STATE BAR NO. 00787471
PROVOST & UMPHREY LAW FIRM, L.L.P.
P.O. BOX 4905
BEAUMONT, TEXAS 77704
(409) 835-6000
FAX: (409) 838-8888

MARK SPARKS
STATE BAR NO. 24000273
MOSTYN LAW FIRM
6280 DELAWARE STREET
BEAUMONT, TEXAS 77706
(409) 832-2777
FAX: (409) 832-2703

ATTORNEYS FOR DEFENDANT
LAYNE WALKER

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

I.       Introduction ................................................................................................................. 1

II.      Background ................................................................................................................. 1

III.     Morrison and Morgan should be held jointly responsible for Walker's
         attorneys' fees and expenses. ..................................................................................... 4

    A.       Morrison is liable for Walker's attorneys' fees and expenses under 42
             U.S.C. § 1988 ....................................................................................................... 4

    B.       Morgan is liable for Walker's attorneys' fees and expenses under 28
             U.S.C. § 1927 ....................................................................................................... 6

IV.      Amount Sought or Fair Estimate. ............................................................................. 15

V.       Conclusion and Prayer ............................................................................................. 19

CERTIFICATE OF CONFERENCE ..................................................................................... 21

CERTIFICATE OF SERVICE .............................................................................................. 21

## TABLE OF AUTHORITIES

**Cases**

*Alizadeh v. Safeway Stores, Inc.*,
  910 F.2d 234 (5th Cir. 1990). .............................................................. 6

*Ballard v. Wall*,
  413 F.3d 510 (5th Cir. 2005). .............................................................. 3

*Baulch v. Johns*, 70 F.3d 813 (5th Cir. 1995). .............................................. 6

*Black v. SettlePou, P.C.*,
  732 F.3d 492 (5th Cir. 2013) ................................................................ 15

*Blum v. Stenson*,
  465 U.S. 886 (1984).............................................................................. 19

*Brookings v. Clunk*,
  389 F.3d 6141 (6th Cir. 2004). ............................................................ 4

*Browning v. Kramer*,
  931 F.2d 340, 345 (5th Cir. 1991). .................................................... 7, 8

*Christiansburg Garment Co. v. EEOC*,
  434 U.S. 412 (1978)............................................................................. 5

*DeLeon v. City of Haltom City*,
  113 Fed. Appx. 577 (5th Cir. 2004)................................................. 5, 6

*Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*,
  782 F.2d 329 (2d Cir. 1986). ............................................................... 7

*Dreis & Krump Mfg. Co. v. International Assoc. of Machinists & Aerospace
  Workers, Dist. No. 8*,
  802 F.2d 247 (7th Cir. 1986), ............................................................. 9

*F.D.I.C. v. Calhoun*,
  34 F.3d 1291 (5th Cir. 1994) ............................................................... 7

*Fin. Cas. & Sur., Inc. v. Parker*,
  No. H-14-0360, 2015 U.S. Dist. LEXIS 148360 (S.D. Tex. Nov. 2, 2015). ........... 17

*Fox v. Vice*,
  563 U.S. 826 (2011)....................................................................... 4, 5, 16

*Franceschi v. Schwartz*,
  57 F.3d 828 (9th Cir. 1995) ................................................................ 5

*Hagerty v. Succession of Clement*,
  749 F.2d 217 (5th Cir. 1984). ............................................................. 8

*Hamilton v. Boise Cascade Express*,
  519 F.3d 1197 (10th Cir. 2008) ......................................................... 6

*Hogue v. Royse City, Tex.*,
  939 F.2d 1249 (5th Cir. 1991) ........................................................... 7

*In re Schaefer Salt Recovery, Inc.*,
  542 F.3d 90 (3d Cir. 2008) ................................................................. 6

*In re TCI, Ltd.*,
  769 F.2d 441 (7th Cir. 1985) .............................................................. 8

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir.1974) ......................................................... 15, 16

*Johnson v. State of Mississippi*,
  606 F.2d 635 (5th Cir. 1979). ........................................................ 15

*Johnson-Todd v. Morgan*,
  09-15-00210-CV, 2015 Tex. App. LEXIS 11078 (Tex. App.—Beaumont Oct.
  29, 2015). ........................................................................................ 18

*Jones v. Texas Tech Univ.*,
  656 F.2d 1137 (5th Cir. 1981). ........................................................... 5

*Knighton v. Watkins*,
  616 F.2d 795 (5th Cir. 1980). ........................................................ 15

*Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*,
  739 F.3d 848 (5th Cir. 2014). ......................................................... 6, 7

*Lewis v. Brown & Root, Inc.*,
  711 F.2d 1287 (5th Cir. 1983) ...................................................... 1, 7, 8

*Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs.*,
  787 F.3d 716 (5th Cir. 2015) ............................................................ 10

*McClain v. Lufkin Indus., Inc.*,
  2009 U.S. Dist. LEXIS 27983 (E.D. Tex. Apr. 2, 2009) ..................... 16

*McCully v. Stephenville Indep. Sch. Dist.*,
  No. 4:13-CV-702-A, 2013 U.S. Dist. LEXIS 179989 (N.D. Tex. Dec. 23, 2013) .................... 7

*Payne v. Univ. of S. Miss.*,
  No. 1:12-CV-41-KS-MTP; 2015 U.S. Dist. LEXIS 42118 (S.D. Miss. Mar. 31,
  2015). ................................................................................................ 9

*Perdue v. Kenny A. ex rel. Winn*,
  130 S. Ct. 1662 (2010) ..................................................................... 16

*Procter & Gamble Co. v. Amway Corp.*,
  280 F.3d 519 (5th Cir. 2002) .............................................................. 7

*Rodriguez v. MumboJumbo, L.L.C.*,
  347 S.W.3d 924 (Tex. App.—Dallas 2011, no pet.) ............................ 4

*S. Leasing Partners, Ltd. v. McMullen*,
  801 F.2d 783 (5th Cir. 1986) .............................................................. 9

*Salazar v. District of Columbia*,
  123 F. Supp. 2d 8 (D.D.C. 2000) ..................................................... 17

iii

*Stalley ex rel. United States v. Mountain States Health Alliance*,
   644 F3d 349 (6th Cir. 2011) ............................................................ 6

*Stanley v. Foster*,
   464 F.3d 565 (5th Cir. 2006) ............................................................ 3

*Steinert v. Winn Group, Inc.*,
   440 F.3d 1214 (10th Cir. 2006). ...................................................... 6

*Thomas v. Capital Sec. Serv., Inc.*,
   836 F.2d 866 (5th Cir.1988) (en banc). ........................................... 7

*Tollett v. City of Kemah*,
   285 F.3d 357 (5th Cir. 2002). ........................................................ 19

*Williams v. Wynne*,
   533 F.3d 360 (5th Cir. 2008) .......................................................... 10

*Wilson v. First Houston Inv. Corp.*,
   566 F.2d 1235 (5th Cir. 1978) ........................................................ 10

*Wilson v. Garcia*,
   471 U.S. 261 (1985)......................................................................... 3

## Statutes

28 U.S.C. § 1927 ............................................................... 1, 6, 7, 8

42 U.S.C. § 1981 ................................................................. 2, 4, 10

42 U.S.C. § 1981a ........................................................................ 4

42 U.S.C. § 1983 ................................................................. 2, 3, 4, 5, 10

42 U.S.C. § 1988 ................................................................. 1, 4, 5, 6

42 U.S.C. § 2000e-5(k) ................................................................ 1

Tex. Civ. Prac. & Rem. Code § 101.106 .................................... 2, 10

Tex. Civ. Prac. & Rem. Code § 16.003 ........................................ 3, 8

Tex. Penal Code § 7.01 ................................................................ 4

Tex. Penal Code § 7.02. ................................................................ 4

## Rules

E.D. Tex. Local Rule AT-2(a) ..................................................... 14

Fed. R. Civ. P. 11 ............................................................. 6, 13, 14

Fed. R. Civ. P. 54(d) ............................................................. 1, 19

Tex. Disciplinary R. Prof. Conduct 3.07 ..................................... 14

## Other Authorities

*Are you Charging Enough?[Chart]*, Texas Lawyer (July 24, 2015).......................... 17

*State Bar of Texas 2013 Hourly Rate Fact Sheet* .......................................................................... 17

**<u>Defendant Layne Walker's Motion for Attorneys' Fees and Expenses
Under 42 U.S.C. § 1988 and 28 U.S.C. § 1927</u>**

Comes now Defendant, Layne Walker, and respectfully files this his *Defendant Layne Walker's Motion for Attorneys' Fees and Expenses Under 42 U.S.C. § 1988 and 28 U.S.C. § 1927*, and would respectfully show unto this Honorable Court as follows:

## I.    INTRODUCTION

On November 2, 2015, the Court entered a Final Judgment (Doc. 108), disposing of all parties and issues. In accordance with FED. R. CIV. 54(d)(2), Defendant Layne Walker ("Walker") respectfully requests that the Court award him his reasonable attorneys fees incurred in defending against this action. As set out below, Plaintiff Stella Morrison ("Morrison") is properly liable for Walker's attorneys' fees and expenses under 42 U.S.C. § 1988, as is her lawyer John Morgan ("Morgan") under 28 U.S.C. § 1927. Under such circumstances, it is appropriate enter the fee award against Morrison and Morgan jointly. *See Lewis v. Brown & Root, Inc*., 711 F.2d 1287, 1292 (5th Cir. 1983), *clarified on reconsideration*, 722 F.2d 209 (5th Cir.1984) (approving joint award of attorneys' fees against plaintiff under 42 U.S.C. § 2000e-5(k) and lawyer under 28 U.S.C.S. § 1927). An award of fees against Morrison is appropriate under § 1988 because Walker is the prevailing party in a civil rights action and Morrison's claims against him were frivolous, and against Morgan under § 1927 because the entire course of proceedings was unwarranted and should neither have been commenced nor persisted in.

## II.    BACKGROUND

Morrison filed her Plaintiff's Original Complaint ("Complaint") on May 22, 2013, naming as defendants Judge Walker, Jefferson County, and the State of Texas. (Doc. 1) The Complaint was a scattershot barrage of unfounded accusations of racism and retaliation relating to Walker's conduct as a judge of the 252nd Judicial District Court of Jefferson County, Texas.

1

In the January 2, 2014, Order Granting Defendants' Motion to Dismiss (Doc. 32), the Court dismissed Morrison's 42 U.S.C. §§ 1981 and 1983 claims against Walker not relating to the alleged fabrication of perjury charges with prejudice, and ruled that all of Morrison's state-law claims were precluded by TEX. CIV. PRAC. & REM. CODE § 101.106. However, because the Court could not say, based on Morrison's prior pleadings, that the allegations regarding fabrication of the criminal charge was "patently frivolous," the Court gave Morrison 30 days to replead the claims with the required particularity. (Doc. 32 at 16) In a footnote, the Court instructed that if Morrison elected to file an amended complaint, she should answer seven questions. (Doc. 32 at 16 n.5) When Morrison filed her first amended complaint (FAC) (Doc. 74), the facts she alleged in response to almost every question were either demonstrably or admittedly false, or mere conclusory allegations.

|    | Question the Court Ordered Morrison to Answer | Allegations in Amended Complaint | The True Facts as Disclosed in *Peter Tran* Court Records |
|----|-----------------------------------------------|----------------------------------|----------------------------------------------------------|
| 1. | When did Walker fabricate perjury charges? | "approximately 2010" | The incident complained of arose out of conduct in Judge Walker's court on April 19, 2006. Furthermore, transcript of the proceedings and court records show that no charges were "fabricated." |
| 2. | How was this accomplished? | With some unspecified assistance of Tom Maness and the Jefferson County District attorney's office. (FAC ¶13) | The evidence demonstrates that no charges were "fabricated." |
| 3. | What evidence is there that Walker knew the perjury charge was false? | Conclusory allegations. | The evidence demonstrates that any charges were justified. The record shows that Morrison knowingly prepared a false affidavit for her client's signature, had him sign it, and filed it with the court. |
| 4. | Did the perjury charges | No. Morrison claimed the | Yes. |

| | concern activity in his court? | conduct occurred in Judge Gist's court. (FAC ¶13) | |
|---|---|---|---|
| 5. | What was Tom Maness's personal involvement in this activity? | Worked with Walker in some unspecified manner to fabricate false criminal charges and have Morrison wrongfully indicted for perjury. (FAC ¶¶13, 14) | The evidence conclusively demonstrates that any charges were justified. |
| 6. | Did Morrison appear voluntarily before the grand jury? | Morrison claimed she "felt compelled" to appear to defend herself, but was not legally required to appeal. (FAC ¶13) | Morrison appeared voluntarily. |
| 7. | What facts suggest Walker's motivation was based upon retaliation and personal animus and not for other reasons? | Conclusory allegations. | None. The evidence conclusively demonstrates that Walker's actions were justified by Morrison's misconduct in his court. |

Under the actual facts, as have now been admitted by Morrison, (*see* Doc. 104), Morrison's claim clearly barred by limitations[1] *and* by Judge Walker's judicial immunity. Every one of the *Ballard* factors is clearly and inarguably met.[2] Furthermore, it is clear beyond reasonable dispute that the allegation in the Complaint and the FAC that Walker fabricated false

---

[1] The statute of limitations for civil rights claims under 42 U.S.C. § 1983 is governed by state statutes of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261 (1985). In Texas, the applicable period is two years. *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006); TEX. CIV. PRAC. & REM. CODE § 16.003(a). Since this case was filed on May 22, 2013, even the "approximately 2010" date alleged in the FAC shows that the claim was on its face barred by limitations. In the Sur-Reply on the motion to dismiss, Morgan claimed there was a "continuing tort" because he realleged claims that that had already been dismissed with prejudice that allegedly occurred within the statute of limitations. Apart from the fact that the alleged fabrication of perjury charges was a discrete act not subject to the continuing violation doctrine, there was no actionable conduct within the limitations period.

[2] The Fifth Circuit has developed a four-factor test to use in determining whether a judge acted within the scope of his judicial capacity. The four factors are "(1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005).

3

perjury charges[3] against Morrison is false. As an objective assessment of the record in the *Peter Tran* case demonstrates, such a charge would be fully justified.

Moreover, it is not plausible that Morrison, a licensed attorney who says she spent five grueling hours testifying before the grand jury, was not aware of her conduct that lead to her being referred to the grand jury in the first place. Assuming Judge Walker actually referred Morrison's conduct to the district attorney or forwarded the Transcript to the state bar, the undisputed evidence shows that his actions would be objectively reasonable and proper.

As the Sixth Circuit observed, "if litigants are able to perpetrate fraud on courts and subsequently threaten judges with personal liability for reporting such behavior, the integrity of the judicial system is jeopardized." *Brookings v. Clunk*, 389 F.3d 614, 621 (6th Cir. 2004). And that, really, is what Morrison's lawsuit is all about.

## III.  MORRISON AND MORGAN SHOULD BE HELD JOINTLY RESPONSIBLE FOR WALKER'S ATTORNEYS' FEES AND EXPENSES.

### A.  Morrison is liable for Walker's attorneys' fees and expenses under 42 U.S.C. § 1988.

In her Complaint, Morrison asked for attorneys' fees and expenses "pursuant to 42 U.S.C. §§ 1981, 1981a and 1983." Complaint at ¶39. However, attorneys' fees in civil rights litigation are a two-way street. The road may be wider and easier to traverse on the plaintiffs' side, but the law allows a prevailing defendant to recover fees as well. *See Fox v. Vice*, 563 U.S. 826, ___, 131 S. Ct. 2205, 2211 (2011). "[T]he purpose of § 1988 is not only to encourage potentially meritorious civil-rights suits, but also to discourage frivolous suits." *DeLeon v. City*

---

[3] Although it hardly needs saying, perjury is a crime in Texas. TEX. PENAL CODE §§ 7.01, 7.02. So is subornation of perjury. *See* TEX. PENAL CODE §§ 37.02, 37.03; *Rodriguez v. MumboJumbo, L.L.C.,* 347 S.W.3d 924, 928 (Tex. App.—Dallas 2011, no pet.) ("To suborn perjury, a party, acting with the intent to promote or assist a witness in committing perjury, must solicit, encourage, direct, aid, or attempt to aid the witness to commit perjury.").

*of Haltom City*, 113 Fed. Appx. 577, 578 (5th Cir. 2004) (citing *Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1144 (5th Cir. 1981)).

Section 1988 "allows the award of 'a reasonable attorney's fee' to 'the prevailing party' in various kinds of civil rights cases, including suits brought under § 1983." *Fox v. Vice,* 131 S. Ct. at 2213. While most decisions addressing § 1988 involve an award to a prevailing plaintiff, the Supreme Court held in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), that prevailing defendants can recover attorneys' fees as well, albeit under a more demanding standard. Although attorneys' fees are not automatically awarded to a prevailing defendant; an award is proper only upon a finding that the plaintiff's suit is "frivolous, unreasonable, or groundless." *Id.* at 422. The transcript of the *Peter Tran* proceeding, along with Morrison's admissions and voluntary dismissal with prejudice of her claims based on the alleged fabrication of perjury charges demonstrate that that claim was frivolous, unreasonable, and groundless. Moreover, as with Morrison's other claims against Walker, any claim based on charges arising out of Morrison's conduct in Walker's court would be barred by Walker's judicial immunity.

A defendant who successfully asserts an immunity or affirmative defense in an action for damages is the prevailing party under 42 U.S.C. § 1988. *DeLeon*, 113 Fed. Appx. at 578. If the plaintiff's claims are plainly barred under the governing law or lack a "reasonable basis," a fee award to the defendant is appropriate. *Id.* Because Morrison's claims against Walker were barred by judicial immunity, the lawsuit was frivolous and an award of attorneys fees under § 1988 is appropriate. *Id.* at 579-80 ("Quite simply, DeLeon's suit against Byno was frivolous, since Byno was undeniably protected from liability by judicial immunity."); *Franceschi v. Schwartz*, 57 F.3d 828, 832 (9th Cir. 1995) (where defendant protected by judicial immunity, suit was "unreasonable, frivolous, meritless, and vexatious," and attorneys fees properly awarded to

defendant under § 1988). Furthermore, the Court should award the full amount of the fees incurred as a result of Morrison's frivolous lawsuit. "[A] plaintiff's ability to pay should not be considered by the district judge when deciding whether to award attorneys' fees." *DeLeo*n, 113 Fed. Appx. at 579; *see also Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 238 (5th Cir. 1990).

**B.    Morgan is liable for Walker's attorneys' fees and expenses under 28 U.S.C. § 1927.**

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.[4] "Underlying the sanctions provided in 28 U.S.C. § 1927 is the recognition that frivolous . . . arguments waste scarce judicial resources and increase legal fees charged to parties." *Baulch v. Johns*, 70 F.3d 813, 817 (5th Cir. 1995).

Sanctions under § 1927 are punitive in nature and require clear and convincing evidence that sanctions are justified. *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 872 (5th Cir. 2014). "Section 1927 sanctions should be employed 'only in instances evidencing a serious and standard disregard for the orderly process of justice,' lest 'the legitimate zeal of an

---

[4] A motion for sanctions and attorney's fees under Section 1927 is not subject to either the separate motion requirement or the "safe harbor" provisions of Rule 11. *See In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 102 (3d Cir. 2008); *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1223-1224 (10th Cir. 2006). Furthermore, while Rule 11 requires the least severe sanction necessary to deter the misconduct, § 1927 is punitive in nature and permits a court to compensate the victims of abusive litigation practices, not merely to deter and punish offenders. Accordingly, a district court may order compensation under § 1927 without considering whether a less severe sanction might deter the offending conduct. *See Stalley ex rel. United States v. Mountain States Health Alliance*, 644 F3d 349, 352 (6th Cir. 2011) (sanctions imposed under 28 U.S.C. § 1927 or court's inherent authority are also punitive and, therefore, may be greater than amount necessary for deterrence); *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205-1206 (10th Cir. 2008) ("The statute fits much more comfortably with a victim-centered approach, and we would be reluctant to supply a parsimony provision where Congress has not done so.").

attorney in representing [a] client [be] dampened.'" *Id.* (citing *Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1256 (5th Cir. 1991)).

For § 1927 to apply, the conduct multiplying the proceedings must be both "unreasonable" and "vexatious." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002) (citing *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir. 1994)). Thus, the Fifth Circuit has said that "[a]n award of attorneys' fees under § 1927 requires 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'" *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d at 871. Pursuing frivolous claims is an example of bad faith. *See Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 345 (2d Cir. 1986). ("the appropriate focus for the court in applying the bad faith exception to the American Rule is the conduct of the party in instigating and maintaining the litigation, for an assessment of whether there has been substantive bad faith as exhibited by, for example, *its pursuit of frivolous contentions . . . .*") (emphasis added).

Under § 1927, only those fees and costs associated with "the persistent prosecution of a meritless claim" may be awarded. *Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 875 (5th Cir.1988) (en banc). Section 1927 "creates liability only for *excess* costs, expenses and attorneys' fees reasonably incurred because of the attorney's unreasonable and vexatious multiplication of the proceedings." *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991). Consequently, "[e]xcept when the entire course of proceedings were unwarranted and should neither have been commenced nor persisted in, an award under § 1927 may not shift the entire financial burden of an action's defense." *Id.*; *see Lewis v. Brown & Root*, 711 F.2d at 1292; *McCully v. Stephenville Indep. Sch. Dist.*, No. 4:13-CV-702-A, 2013 U.S. Dist. LEXIS 179989 at *7 (N.D. Tex. Dec. 23, 2013) ("Though § 1927 speaks of vexatious multiplication of litigation, the section can support

an award of attorney's fees for an entire course of proceeding if the case never should have been brought in the first place.").[5] That is exactly the case here. It is clear that *all* Morrison's claims against Walker were barred by judicial immunity and/or TEX. CIV. PRAC. & REM. CODE § 16.003(a),[6] and any lawyer objectively evaluating Morrison's claim would have recognized that they should never have been brought. The Fifth Circuit has said that imposing damages and costs on the plaintiff alone for a frivolous § 1983 action "will not guarantee that his attorney will be directly affected or that he will be deterred from bringing similar frivolous appeals in the future." *Hagerty v. Succession of Clement*, 749 F.2d 217, 222 (5th Cir. 1984). In such a case, the court said, the policy underlying the imposition of sanctions was better served by assessing part of the costs on the party's attorney under § 1927. *Id*. Morgan is clearly in need of deterrence.

Morgan was plainly aware that judicial immunity was an impediment to Morrison's claims as evidenced by the fact that the Complaint was littered with conclusory assertions that Walker was acting in a nonjudicial capacity even though he plainly was; *see* Complaint at ¶¶6, 9, 21, 23, 28, 31; and the Complaint devoted several pages to argument (not facts) regarding the applicability of judicial immunity, particularly with respect to the alleged institution of trumped up criminal charges against Morrison *see* Complaint at ¶¶23-32. Thus, it cannot be argued that Morgan failed to appreciate that judicial immunity was an issue, or to put it down to mere inadvertence of incompetence. He filed the Complaint knowing full well that the claims were

---

[5] The circuits disagree as to whether a frivolous complaint can "multiply" proceedings within the meaning of § 1927. In the Seventh Circuit, the filing of a baseless lawsuit is sanctionable under section 1927. *See In re TCI, Ltd.,* 769 F.2d 441, 448 (7th Cir. 1985). In the Fifth Circuit, as *Browning v. Kramer* and *Lewis v. Brown & Root* demonstrate, it can.

[6] While Morrison's claim based on allegedly falsified criminal charges was voluntarily dismissed, it was voluntarily dismissed *with prejudice*, and Judge Walker was clearly entitled to judicial immunity for the conduct that formed the basis for the claim. The fact that Morrison avoided an earlier dismissal by misrepresenting the facts, or that it was "voluntarily" dismissed after the misrepresentations were exposed, does not make it any less sanctionable.

barred, which shows that he was acting unreasonably and vexatiously, and in bad faith.

It is also indicative of bad faith that Morgan filed a rambling 34-page Complaint made all sorts of unfounded allegations of racism, retaliation, and other wrongdoing against Judge Walker and others (including Jefferson County; the Jefferson County District Attorneys' Office; District Attorney Tom Maness; Sheriff Mitch Woods and various deputies; Hon. Olen Underwood, Presiding Judge of the Second Administrative Judicial Region of Texas; Texas State Commission on Judicial Conduct; and the State of Texas), who all supposedly conspired to advance Judge Walker's nefarious deeds, or at least look the other way. Exactly what, if anything, Morgan expected to accomplish with this other than to harass and defame Judge Walker is anyone's guess, but it is apparent just from reading the Complaint that it is not a good-faith attempt to present a legitimate claim. As the Seventh Circuit observed, "[m]ounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have made it imperative that the federal courts impose sanctions on persons and firms that abuse their right of access to these courts." *Dreis & Krump Mfg. Co. v. International Assoc. of Machinists & Aerospace Workers, Dist. No. 8*, 802 F.2d 247, 255 (7th Cir. 1986),

Furthermore, "[v]ague, imprecise 'shotgun' pleading clouds the legal and factual issues in a case. At best, it indicates an attorney's failure to fully analyze the case and adopt a coherent defense or theory of liability. At worst, it constitutes intentional obfuscation." *Payne v. Univ. of S. Miss.*, No. 1:12-CV-41-KS-MTP; 2015 U.S. Dist. LEXIS 42118 at *11-12 (S.D. Miss. Mar. 31, 2015). And it's sanctionable. As the court observed in *Payne*:

> In this case, the Court believes that Section 1927 sanctions are an appropriate punishment for Plaintiff's counsel's "shotgun approach to pleadings," in which he "heedlessly throws a little bit of everything into his complaint in the hopes that something will stick."

*Id.* at *10 (quoting *S. Leasing Partners, Ltd. v. McMullen*, 801 F.2d 783, 788 (5th Cir. 1986)).

And that is what Morgan and Morrison did here.

It is also indicative of bad faith that the one claim that survived the first motion to dismiss was based on misrepresentations of fact, and those misrepresentations appear to have been designed specifically to overcome a judicial immunity defense.

In granting Walker's motion to dismiss, the Court ruled that it was clear that "Morrison's §§ 1981 and 1983 claims not relating to the alleged fabrication of the perjury charge are barred by judicial immunity and her state law claims are precluded by TEX. CIV. PRAC. & REM. CODE § 101.106" and dismissed those claims with prejudice. The Court granted leave to amend only because the alleged fabrication of the perjury charge, though inadequately pled, did not appear "patently frivolous" or that an amendment could not cure the defects. (Doc. 32 at 16) In the FAC, Morrison disregarded the Court's order and repleaded all the claims that had been dismissed with prejudice,[7] and failed to cure the defects in the one claim that had not been dismissed with prejudice. (*See* Doc. 74) And then, when Walker produced a transcript of the hearing that formed the basis for the "alleged fabrication of the perjury charge" that demonstrated that all the material facts alleged in the Complaint and the FAC were false (*see* Doc. 90), Morrison filed a sur-reply in which she continued to assert that Walker was not entitled to judicial immunity because he was supposedly acting as a "self-appointed prosecutor" and that he "tried to falsely charge Morrison with a crime, convincing the D.A. Maness and his Office to participate in this goal." (*See* Doc. 92 at 3) Morrison then objected to consideration of the *Peter Tran* transcript and

---

[7] Any assertion that Morrison needed to include claims that had been dismissed with prejudice for the purposes of appeal would be wrong. "If the district court dismissed the claim on the merits or with prejudice, the plaintiff may appeal that ruling without needing to include the claim in a later amended complaint." *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs.*, 787 F.3d 716, 723 (5th Cir. 2015); *see also Williams v. Wynne*, 533 F.3d 360, 365 (5th Cir. 2008); *Wilson v. First Houston Inv. Corp.*, 566 F.2d 1235, 1238 (5th Cir. 1978), *vacated on other grounds*, 444 U.S. 959 (1979).

complained that "Walker offers no proof this proceeding is the underlying case at issue." (*See* Doc. 92 at 5)

As the Court observed in the Order for More Definite Statement:

First, despite vague and unspecified claims of "age and health issues," it is wholly implausible that Morrison, a practicing attorney, cannot recall the "specific underlying proceeding" that led to her having to testify before a grand jury *for five hours* which was a "very humiliating and degrading situation." (Doc. No. 74, p.6.)

(Doc. 102 at 3) And, as the Court further observed, "Thus far, a reasonable inquiry under the circumstances has not been conducted as to the simple matter of in which court the alleged events occurred that gave rise to the alleged false criminal charges." (Doc. 102 at 3)

In Morrison's sur-reply, Morgan told the Court: "The undersigned shall show Morrison this excerpted transcript and determine if it refreshes Morrison's memory on this issue. If in fact the underlying proceeding occurred before Walker, the Undersigned shall inform the Court." (Doc. 92 at 5 n.1) That was on February 13, 2015. It was not until more than six months later, and then only after being ordered by the Court, that Morgan actually bothered to carrying through with his promise to the Court. (*See* Doc. 104) And, as it turns out, the one claim asserted on Morrison's Complaint might potentially have actually stated a claim was just a pack of lies.

Morgan and Morrison may object to the word "lies," but under the circumstances, the term is appropriate. Morrison admits that the Reporter's Record from the *Peter Tran* case is correct and "the previous factual representation of Plaintiff in her live Complaint was incorrect," but claims there is a reasonable explanation. (*See* Doc. 104 at 2) The purported explanation falls flat:

The currently pleaded facts, which are now proven to be erroneous, were based on her recollection that when she arrived for docket call, Walker questioned her about the eligibility of her client for probation. The error was based on which client (*i.e.*, Morrison's client in Judge Gist's court or her client in Walker's court) was the subject of Walker's examination and later attempted criminal charge.

11

(*See* Doc. 104 at 3) Note that when she made the false allegations in the Complaint and the FAC, Morrison knew she was appearing in court with Judge Walker presiding and that Judge Walker questioned her about the eligibility of some client for probation, but only claims to have been confused about which client was involved. Even under Morrison's alleged misremembered version of the facts, if she had not intentionally omitted the fact that her statements were in response to questioning by Judge Walker during the course of judicial proceedings, it would have been obvious from the start that this claim was barred by judicial immunity, just as with instances where Judge Walker allegedly filed grievances against Morrison with the State Bar. (*See* Doc. 32 at 9) The fact that Morrison portrayed this incident as something that happened exclusively in Judge Gist's court—and using this false representation to argue in the FAC that none of the *Ballard* factors favors judicial immunity—is just plain dishonest and demonstrates the bad faith of Morrison and her counsel in making these allegations.[8] (*See* Doc. 74 at ¶¶13-14)

Furthermore, although Morgan and Morrison claim Morrison was somehow unable to connect her allegation to the *Peter Tran* case until after her memory was refreshed with the transcript, that very case was the subject of an affidavit attached to her Complaint. The affidavit of Rodney Williams, attached as Exhibit 1 to the Complaint describes an altercation Ms. Morrison had with Mr. Williams, who was the bailiff of the 252nd Criminal District Court. That affidavit begins with a discussion of how Ms. Morrison took over the representation of Peter Tran on April 19, 2006. While it does not address Morrison's conduct in the courtroom, Mr.

---

[8] In the Order Granting Plaintiff's Motion to Dismiss, the Court noted that although Morrison finally acknowledged that the proceeding forming the basis of her complaint against Walker occurred n Walker's court, "Morrison originally alleged in her operative complaint that these proceedings 'had nothing to do with a case that was pending or had been adjudicated in Walker's Court . . . .'" (Doc. 106 at 1 & n.1) It is obvious that the *only* purpose of this false allegation was to manufacture a basis to argue against the applicability of judicial immunity.

William's affidavit dealt with Ms. Morrison being escorted out of (and banned from) Judge Walker's chambers and office, since it all happened on the same day and in the same case, the information in the affidavit—which she attached to her own complaint—would surely have been sufficient to refresh Ms. Morrison's memory regarding the circumstances of her misconduct in Judge Walker's courtroom.

It is also clear from the pleadings that Morgan's interest in pursuing this case was personal, not professional. Specifically, in requesting an enhanced attorneys' fee award in the Complaint, Morgan wrote:

> Ms. Morrison's attorney, Undersigned Counsel, has experienced ongoing retaliation orchestrated by Judge Layne Walker, his protectors in the Provost Umphrey law firm and others, for (l) representing Ms. Morrison and (2) opposing unlawful conduct. For example. Judge Layne Walker filed a retaliatory grievance against Undersigned Counsel based on his representation of Ms. Morrison. Undersigned Counsel reasonably anticipates, based upon the extensive history of ongoing official oppression and retaliation, this retaliatory conduct will continue and intensify, in an attempt to bully Undersigned Counsel and Ms. Morrison into dismissing this cause of action. Accordingly, due to the specter of more retaliation against both Ms. Morrison and her attorney, an enhancement of attorneys' fees should be consider [*sic*] by the Court in this matter.

Complaint at ¶40. Morgan made it about himself from the very beginning.

Morgan also filed pleadings (or at least included them in a motion for leave) falsely alleging that that Walker had been forced to resign by the Texas Commission on Judicial Conduct "due to corruption" (something that Morgan just made up); that Walker, Walker's counsel, and various county officials conspired to have Morgan wrongfully indicted (something else that Morgan just made up), that Walker and his counsel, Joe Fisher and Mark Sparks were conspiring with white supremacists to have him "shanked" to death in jail—as part of "organized crime, and so forth (yet another thing that Morgan just made up). *See* Morrison's proposed First Amended Complaint (Doc. 36-2). While Morgan may have been able to evade a motion for sanctions under Rule 11 by filing an amended motion for leave and omitting these allegation

from the version of the FAC that was finally filed,[9] these bizarre allegations—which relate to him personally and not to any supposed claim by Morrison—further demonstrate that this case was part of Morgan's personal vendetta, and that he was acting as anything but a dispassionate lawyer seeking justice for his client.

If any more evidence of Morgan's bad faith and the personal nature of his crusade against Judge Walker is needed, Walker would point out that on July 27, 2013, a couple months after the Complaint was filed, Morgan went so far as to pay for an advertisement in the Beaumont Enterprise, proclaiming that "Judge Walker is an enemy of justice" and stating that "[t]he offenses against this judge are too many to list," and inviting the public to attend a "Bring Justice Back" rally at the Jefferson County Courthouse. *See* Exhibit D. Since the rally was advertised to feature Quanell-X, the leader of the New Black Panther Party in Houston, the connection with the Stella Morrison case is fairly blatant, as is the impropriety of such conduct by a lawyer. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 3.07(a) ("In the course of representing a client, a lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding. A lawyer shall not counsel or assist another person to make such a statement."); *see also* E.D. TEX. LOCAL RULE AT-2(a) ("The standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and

---

[9] Morgan and Morrison were served with a motion for sanctions on or about May 2, 2014, and on May 20, 2014, Morrison took advantage of Rule 11's "safe harbor" provision and filed a Motion for leave to File New Version of First Amended Complaint (Doc. 46), which the Court granted on October 20, 2014 (Doc. 59). Walker would have attached the motion as an exhibit to this motion, but for Rule 11(c)(2)'s requirement that the motion for sanctions "must not be filed or presented to the court" if the challenged paper is withdrawn or corrected within the 21-day period.

responsibilities of all attorneys appearing in this court.").

Morgan should be required to pay Walker's attorneys' fees and litigation expenses incurred as a result of his filing this case because the entire course of proceedings was unwarranted and should neither have been commenced nor persisted in. And Morgan knew it.

## IV.   AMOUNT SOUGHT OR FAIR ESTIMATE.

Rule 54 requires that an attorneys' fee application "state the amount sought or provide a fair estimate of it. In this case, Walker requests that the Court award fees in the amount of $163,222.50, which represents 357 hours of attorney time at the rate of $450 per hour and 33.6 hours of paralegal time at the rate of $75 per hour, plus $4009.90 in expenses, for a grand total of $167,232.40. *See* Exhibit A.   This includes time spent in preparing this motion.[10] It does not include time spent on documents that the Court struck, including Walker's June 19, 2013, supplemental motion to dismiss (Doc. 15) or Walker's October 2, 2014, motion to dismiss (Doc. 55), or other items that Walker's counsel felt the Court might not find strictly necessary.

In the Fifth Circuit, attorney's fees are calculated using the lodestar method. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." *Id*. After calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir.1974). *See Black*, 732 F.3d at 502.[11]

---

[10] The Fifth Circuit has held that time spent in preparing the fee application is properly included in computing the lodestar figure. *Knighton v. Watkins*, 616 F.2d 795, 801 (5th Cir. 1980); *Johnson v. State of Mississippi*, 606 F.2d 635, 638 (5th Cir. 1979).

[11] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of

The Supreme Court has said that a fee is "reasonable" if it is sufficient to induce capable attorneys to undertake the representation of meritorious claims involving a fee-shifting statute, "but that does not produce windfalls to attorneys." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672 (2010). "[T]he lodestar method yields a fee that is presumptively sufficient to achieve this objective. *Id.* at 1673. The Supreme Court has also said that "the determination of fees 'should not result in a second major litigation.'" *Fox v. Vice,* 131 S. Ct. at 2216.

> The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." *Ibid.* But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Id.*

In her pleadings, Morrison pegged the appropriate rate at $450 per hour.[12] *See* Complaint at ¶39; FAC at ¶44 ("Pursuant to the Lodestar methodology, Plaintiff shall provide proof of attorneys' fees and expenses itemized on an hourly basis, at the rate of $450.00 per hour."). Consequently, Morrison should have no objection to Walker's attorneys (who are no less qualified or distinguished than Morrison's lawyer[13]) being compensated at that rate.[14] As set out

---

other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

[12] This is in line with the $400 per hour market rate for similarly experienced attorneys approved by Judge Clark six years ago in *McClain v. Lufkin Indus., Inc.*, 2009 U.S. Dist. LEXIS 27983 at *16-22 (E.D. Tex. Apr. 2, 2009) (finding a $ 400 rate reasonable for experienced lawyers in the Eastern District of Texas in complex litigation), *aff'd in part, vacated in part on other* grounds, 649 F.3d 374 (5th Cir. 2011).

[13] According to his website (http://www.jsmorganlaw.com/), Morgan earned a J.D. from Tulane University cum laude in 1989, and he is board certified in Civil Trial Law by the Texas

in Exhibit A, Walker's counsel has expended 357 hours on this case.

Walker also suggests that an enhanced fee award would be appropriate in this case for reasons similar to those set out in ¶40 of the Complaint. In particular, the specter of retaliation looms wherever Morgan is involved, and he singled out the Provost Umphrey Law Firm in the Complaint as orchestrating retaliation against him in league with Judge Walker. Morgan is well known in Jefferson County for filing unwarranted grievances and lawsuits against lawyers and judges who get on his bad side and using court filings to publish scurrilous false and defamatory material (or material that would be defamatory if he published it published anywhere else). This suit is a good example. Another case of interest is *Johnson-Todd v. Morgan*, 09-15-00210-CV,

_____

Board of Legal Specialization. Based on his website, he appears to be a solo practitioner. The Martindale Hubbell website lists him as BV rated. As set out in Exhibit A, the lawyers working on this case for Judge Walker are at least Mr. Morgan's equals in professional reputation and experience.

[14] Provost & Umphrey does not typically handle cases on an hourly basis. Consequently, Walker's counsel do not have well-established billing rates. While Walker contends that Morrison's judicial admission that $450 per hour is the appropriate rate should be sufficient, the Court can also look at other sources, including such things as billing surveys. *See, e.g., Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14 (D.D.C. 2000) (relying upon National Survey Center and National Law Journal surveys to determine reasonable hourly rates in the District of Columbia); *Fin. Cas. & Sur., Inc. v. Parker*, No. H-14-0360, 2015 U.S. Dist. LEXIS 148360 at *12 (S.D. Tex. Nov. 2, 2015) (taking judicial notice of the Texas State Bar's "Hourly Rates in 2013 Report"). In that regard, the Texas Lawyer's 2015 billing survey found that the median hourly billing rate for survey respondents of $383 for equity partners, $345 for non-equity partners, $295 for seventh year associates and $138 for senior paralegals, with higher rates in larger cities and larger forms. *See* Exhibit B, *Are you Charging Enough?[Chart]*, Texas Lawyer (July 24, 2015) (http://www.texaslawyer.com/id=1202732969463). According to the State Bar of Texas's 2013 Hourly Rate Fact Sheet, the median hourly billing rate for full-time Texas attorneys was $242 per hour in 2013. *See* Exhibit C. *State Bar of Texas 2013 Hourly Rate Fact Sheet* (https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends& Template=/CM/ContentDisplay.cfm&ContentID=27264). The average hourly billing rate for lawyers in the Beaumont-Port Arthur area was $218 per hour in 2013. The median rate for lawyers state-wide was about $20 per hour higher for lawyers with the number of years of experience of Walker's counsel. ($261 for 16-20 years experience and $264 for 20-25 years experience). However, Provost & Umphrey is not an "average" law firm, nor are the lawyers involved average lawyers. In terms of professional reputation, experience, and accomplishments, the firm and the lawyers involved are significantly above average.

2015 Tex. App. LEXIS 11078 (Tex. App.—Beaumont Oct. 29, 2015) (ordering Morgan's suit against his ex-wife's divorce lawyer dismissed, and remanding to assess attorneys' fees against Morgan for violation the Texas Citizen's Participation Act in suing her for revealing the fact that he had pleaded no contest to filing a false police report).[15] Another is the Original Disciplinary Petition recently filed against Morgan by the Commission for Lawyer Discipline based on his making false criminal accusations against various members of the Jefferson County District Attorney's Office. *See* Original Disciplinary Petition in *Commission for Lawyer Discipline v. John S. Morgan*, No. D-197479, filed August 25, 2015, in the Judicial District Court of Jefferson County, Texas[16] (seeking reprimand, suspension, or disbarment based on Morgan's plea of no contest to making a false police report), attached hereto as Exhibit E. Other good examples could be found in the exhibits to Walker's Supplemental Motion to Dismiss (Doc. 15). While the motion to dismiss may not have been the proper place to bring those matters to the Court's attention (and Judge Clark struck the Supplemental Motion as a result), they demonstrate the risks that a lawyer takes when opposing Morgan.

If the Court is of the opinion that Morrison's pleadings and other materials available to the Court are insufficient to establish $450 per hour as a reasonable rate, Walker requests that he be afforded the opportunity to obtain and file additional evidence relating to the prevailing rates

---

[15] Although the decision of the Beaumont Court of Appeals was unanimous, the author of the opinion, the Hon. Hollis Horton, was labeled a RINO and dubbed "Sid Vicious" on Philip Klein's "Southeast Texas Political Review" website. All this because Justice Horton wrote an opinion suggesting that Morgan acted improperly in attempting to "manipulate the legal system to intimidate and silence others who have used the system to vindicate their rights." The post has been scrubbed from Klein's blog, but at least for the time being, it is preserved on the Internet Archive at https://web.archive.org/web/20151103232232/http://www.setpoliticalreview.com/the-top-story-southeast-texax-beaumont-jefferson-county/. In the event this motion is granted, perhaps this Court will get to be Johnny Rotten.

[16] The Supreme Court of Texas has appointed the Honorable F. Alfonso Charles, Judge of the 124th District Court, Gregg County, Texas, to preside over the disciplinary case.  *See* Exhibit E.

in the Beaumont area for cases of comparable nature.

In the alternative, Walker requests that the Court award him his attorneys' fees at the rate of $200 per hour, which represents a discounted rate Provost & Umphrey agreed to with Walker's insurer, with a reasonable enhancement for the reasons set out above.[17] At $200 per hour for attorney time and $75 for paralegal time, the total set out in the attached invoices (Exhibits 1-3) would come to 73,974.50.  Walker asks for this reduced fee only in the alternative because it represents a discounted rate, and "reasonable fees" under  1988 are determined based on prevailing market rates rather than a cost-based standard.  *See Blum v. Stenson*, 465 U.S. 886, 895-96 (1984), The measure of the reasonable rate is the market rate for similar services by similarly trained and experienced lawyers in the relevant legal community. *Tollett v. City of Kemah,* 285 F.3d 357, 368 (5th Cir. 2002).

Finally, while attorneys' fees in the event of an appeal appear to be a matter for the court of appeals, in the event this Court can award contingent attorneys fees in the event of an appeal, Walker would request that the Court award the amounts that Morrison said were reasonable in her pleadings-- $75,000 to respond to an appeal in the Fifth Circuit, another $35,000 in the event of a motion for rehearing, and $75,000 to make or respond to a Petition for Certiorari to the United States Supreme Court. *See* Complaint at ¶39; FAC at ¶44.

## V.    CONCLUSION AND PRAYER

Morgan and Morrison are both lawyers, and any lawyer looking at the actual facts behind Morrison's claims should have recognized that they did not state a cause of action, and any

---

[17] FED. R. CIV. P. 54(d)(2)(B)(iv) requires that a party seeking attorneys fees "disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made." Although the Court has not yet ordered any such disclosure, Provost & Umphrey agreed with Walker's insurer to represent him at the discounted rate of $200 per hour for attorney time and $75 per hour for paralegal time.  *See* Exhibit A.

reasonably competent lawyer would have known that this case was frivolous. That's just a fact. The best that might charitable be said was neither conducted even the most cursory investigation of the facts or law before filing suit. But the circumstances do not support an inference of a pure heart and an empty head. The case is just a part of a campaign of harassment and revenge because Morgan and Morrison felt personally aggrieved by the way Judge Walker carried out his duties as a judge, and Morgan, at least, clearly was aware of just what he was doing.

For all the foregoing reasons, Defendant Layne Walker respectfully requests that the Court enter an order requiring Plaintiff Stella Morrison and her lawyer John Morgan to pay Walker's reasonable attorneys fees and expenses incurred in defending against this frivolous lawsuit in the amount of $167,232.40. Walker further requests all other relief to which he may justly be entitled.

Respectfully submitted,

BY: ___/s/ Joe J. Fisher, II_____
JOE J. FISHER, II
STATE BAR NO. 00787471
PROVOST & UMPHREY LAW FIRM, L.L.P.
P.O. BOX 4905
BEAUMONT, TEXAS 77704
(409) 835-6000
FAX: (409) 838-8888

___/s/ Mark Sparks_____
MARK SPARKS
STATE BAR NO. 24000273
MOSTYN LAW FIRM
6280 DELAWARE STREET
BEAUMONT, TEXAS 77706
(409) 832-2777
FAX: (409) 832-2703

ATTORNEYS FOR DEFENDANT
LAYNE WALKER

20

## <u>CERTIFICATE OF CONFERENCE</u>

This is to certify that (1) that counsel has complied with the meet and confer requirement in Local Rule CV-7(h); and (2) that the motion is opposed. On November 6, 2015, the undersigned conferred by telephone with John Morgan, counsel for Plaintiff, who would not agree to this motion. No agreement could be reached because neither Mr. Morgan nor his client want to pay Walker's attorneys' fees. The discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.


\_\_\_/s/ Mark Sparks _____
Mark Sparks




## <u>CERTIFICATE OF SERVICE</u>


This is to certify that a true and correct copy of the above and foregoing instrument was forwarded this the 16th day of November, 2015, to all counsel of record by electronic filing.


\_\_\_\_/s/ Joe J. Fisher, II _____
Joe J. Fisher, II

21