UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION


| | | |
|---|---|---|
| STELLA MORRISON, | ) | CASE NO:  1:13-CV-00327-KFG |
| | ) | |
| Plaintiff, | ) | CIVIL |
| | ) | |
| vs. | ) | Beaumont, Texas |
| | ) | |
| LAYNE WALKER, ET AL., | ) | Thursday, May 17, 2018 |
| | ) | (2:43 p.m. to 5:26 p.m.) |
| Defendants. | ) | |


MOTION FOR ATTORNEY'S FEES (DOC 110)
AND MOTION TO REOPEN AND SUPPLEMENT MOTION
FOR ATTORNEY'S FEES (DOC 160)


BEFORE THE HONORABLE KEITH GIBLIN,
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:            JOHN S. MORGAN, ESQ.
                         Morgan Law Firm
                         2175 North Street, Suite 101
                         Beaumont, TX 77701

For Layne Walker:         MARK C. SPARKS, ESQ.
                         The Ferguson Law Firm, LLP
                         350 Pine Street, Suite 1440
                         Beaumont, TX 77701

Deputy Clerk/ECRO:        Sherre White

Transcribed by:           Exceptional Reporting Services, Inc.
                         P.O. Box 18668
                         Corpus Christi, TX 78480-8668
                         361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

## INDEX

| DEFENSE WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| STELLA MORRISON | 7 | 39 | 46 | 51 |
| JOHN MORGAN | 53/76 | | | |

## PLAINTIFF'S WITNESSES

| | DIRECT | CROSS | | |
|---|---|---|---|---|
| JOHN MORGAN | 93 | 95 | | |
| MARK SPARKS | 100 | | | |

1          **Beaumont, Texas; Thursday, May 17, 2018; 2:43 p.m.**

2                              **(Call to Order)**

3          **THE COURT:**  Okay.  We're on the record in Cause

4  Number 1-13-CV-327.  This is Morrison versus Walker, et al.

5  We're here today regarding Document Number -- Docket Number 110

6  and Document -- Docket Number 160, which is a Motion for

7  Attorneys' Fees and a Motion to Reopen the Supplement Motion

8  for Attorneys' Fees in this case.  For the plaintiffs -- or for

9  the defendants in this case, I see Mr.  Walker and Mr. Sparks.

10  And who do I have with you over there?

11          **MR. SPARKS:**  Your Honor, this is Patrick Crosby

12  (phonetic), a 3-L from Baylor.  If it's okay, could  he sit up

13  as a peer?

14          **THE COURT:**  He certainly can.

15          **MS. SPARKS:**  Thank you.

16          **THE COURT:**  And I see that -- I have Ms. Morrison

17  here.  And I also have her attorney here with us.  And we are

18  ready to -- are we ready to proceed, Counsel?

19          **MR. MORGAN:**  Yes, Your Honor.

20          **THE COURT:**  Okay.  Go ahead and -- we're  here today

21  to see any type of evidence of hear arguments regarding the

22  attorneys' fees in this case.  As we know, the case has been up

23  on appeal.  It was affirmed, it came back down, and now we're

24  here to determine whether or not attorneys' fees are justified

25  in this case and if so, how much.  Okay.  You can proceed,

1   Mr. Sparks.

2          **MR. SPARKS:**  Thank you, Your Honor.  Instead of

3   starting with argument, I think I'd just like to get straight

4   into the testimony, if it pleases the Court?

5          **THE COURT:**  That'd be fine.

6          **MR. SPARKS:**  And so we would call -- defendant would

7   call Ms. Stella Morrison to the stand.

8          **MR. MORGAN:**  Your Honor, I need to object.  It is my

9   understanding that in this type of -- I was told to talk to the

10  microphone, but I should also stand before the Court.  So it's

11  my understanding in this type of proceeding the questions have

12  to come from Your Honor directly.  I'm not aware that Counsel

13  is allowed to take my client or myself on the stand.  If I'm

14  incorrect --

15         **THE COURT:**  Do you have any case law to that effect?

16  I've never seen any case law to that effect.  Do you know of

17  any case law, Mr. Morgan?

18         **MR. MORGAN:**  No, Your Honor, but I've had -- I have

19  attended one of these hearings before and have always seen it -

20  - two -- on two occasions, I've seen it conducted by the Court.

21         **THE COURT:**  Mr. Sparks?

22         **MR. SPARKS:**  I've never seen it conducted by the

23  Court at all, Your Honor.

24         **THE COURT:**  Okay.  I'll overrule  your objections .

25  You can call Ms. Morrison.

1         Ms. Morrison, if you'll take the stand.  You can come

2   right here, Ms. Morrison.

3              **THE WITNESS:**  Where do you want me, right here, Your

4   Honor?

5              **THE COURT:**  Yes, ma'am.  I'm going to swear you in

6   right here.  Okay?  Ms. Morrison, if you'd raise your right

7   hand for me, please, ma'am.

8              **STELLA MORRISON, DEFENSE WITNESS, SWORN**

9              **THE COURT:**  Thank you so much, Ms. Morrison.  Have a

10   seat right there.  Make sure and talk in the microphone for me.

11   Mr. Sparks, if you'll go from the podium?

12             **MR. SPARKS:**  Yes, Your Honor.  And, Your Honor, I

13   have notebooks for the Court, the Court's Law Clerk.  I've

14   already tendered one to Mr. Morgan as well.  If it please the

15   Court?

16             **THE COURT:**  Please.

17             **MR. SPARKS:**  I also have one for the witness as well.

18             **THE COURT:**  Yes, you can approach.  And approach --

19   both sides approach at will.

20             **THE WITNESS:**  Thank you.

21             **MR. SPARKS:**  Yes, ma'am.

22             **MR. MORGAN:**  Your Honor, before he begins, I need to

23   make some objections, if I may?

24             **THE COURT:**  Please stand for me if you don't --

25             **MR. MORGAN:**  Yes, sir.  He filed today -- Mr. Sparks

1   filed today  an affidavit from himself on attorneys' fees.  He

2   also filed today, I believe, an affidavit of John Cowan

3   (phonetic) on attorneys' fees.  And has just handed me

4   defendant Layne Walker's brief on subject matter waiver of the

5   attorney-client privilege and work product protection.  Your

6   Honor, all of these were filed today, which means I've not had

7   an opportunity to review them or respond to them.

8          THE COURT:  Okay.  What I'll do is, is for the record

9   I'll overrule that objection, but I'll take any type of

10  supplemental briefing that you -- I'm not going to make a

11  decision today on attorneys' fees or the amount.  So what I'll

12  do is I'll give you three days to file any type of responses

13  you want to, to those and I'll take that into consideration

14  also.

15         MR. MORGAN:  Could I at least ask for five business

16  days, because I --

17         THE COURT:  Five business days would be fine.

18         MR. MORGAN:  Thank you, Your Honor.

19         THE COURT:  You're welcome.

20         MR. SPARKS:  Your Honor, if you'll look in the pocket

21  of each one's binder, like Mr. Morgan has, you'll see that the

22  Attorney Fee -- the Attorney Waiver Brief was filed sometime

23  ago.  There's a Docket Stamp at the top.

24         MR. MORGAN:  That is what it indicates, Your Honor,

25  so I stand corrected.  But I do not recall seeing it.

1          **MR. SPARKS:**  It's --

2          **MR. MORGAN:**  So if I still may have five business

3    days?

4          **THE COURT:**  I will give you five days.  Let's

5    proceed.

6          **MR. MORGAN:**  Thank you.

7          **MR. SPARKS:**  If it please the Court, Counsel?

8          **THE COURT:**  Yes.

9        **STELLA MORRISON, DEFENSE WITNESS, PREVIOUSLY SWORN**

10                      **DIRECT EXAMINATION**

11   **BY MR. SPARKS:**

12   Q    Ms. Morrison, would you introduce yourself to the Court,

13   please, ma'am?

14   A    My name's Stella Morrison.

15   Q    Ms. Morrison, my name is Mark Sparks and I represent Layne

16   Walker, who you sued in this lawsuit.  Do you understand that's

17   who I am and who I represent?

18   A    It's a pleasure meeting you.

19   Q    I think we've met before sometime ago.  My father was

20   Jimmy Sparks.  He did a lot of work at the courthouse.

21   A    Well, I knew your father, but I don't recall ever meeting

22   you.

23   Q    Ms. Morrison, are you currently licensed to practice law

24   in the State of Texas?

25   A    So far as I know I am.

1  Q    Ms. Morrison, at the time that you filed this lawsuit,

2  were you licensed to practice law in the State of Texas?

3  A    If I recall correctly, I was.

4  Q    And, Ms. Morrison, anytime between the -- this time --

5  during the time that this lawsuit was pending, have you always

6  been licensed to practice law in the State of Texas?

7  A    So far as I know, sir, yes.  That's kind of -- that's a

8  long period of time to remember.

9  Q    It has been.  It's been almost five years since this

10  lawsuit was first filed.  Do you remember that?

11  A    Not really.

12  Q    Ms. Morrison, some of the affidavits filed by your counsel

13  and yourself and the pleadings filed by counsel suggest that

14  perhaps your memory interfered with your ability to relay facts

15  correctly to Mr. Morgan.  Do you -- have you seen any of those

16  affidavits or pleadings?

17  A    Some of them, yes.  I'm sure all of them at some point in

18  time.

19  Q    Ms. Morrison, if you felt that you were incapable of

20  remembering key facts or things, you certainly would tell your

21  clients before representing them in Felony Criminal Court,

22  wouldn't you?

23  A    I would assume that would be true for you too.

24  Q    Yes, ma'am, it would be.  But, Ms. Morrison, since this

25  time as this lawsuit's been filed or since the time that you

Morrison - Direct / By Mr. Sparks                      9

1   met with Mr. Morgan, have you ever advised any of your clients

2   not to hire you, because you  had a memory problem or would not

3   be able to relay facts or law accurately to the Courts?

4   A    I don't have that kind of memory problem.

5           **MR. MORGAN:**  Objection, Your Honor, irrelevant.

6           **THE COURT:**  Hold on a second.  What's your objection?

7           **MR. MORGAN:**  Objection, Your Honor.  Irrelevant.

8           **THE COURT:**  Overruled.  Answer the question.

9           **THE WITNESS:**  I do not have that kind of memory

10  problem, which you're referring to, sir.

11  **BY MR. SPARKS:**

12  Q    So you don't have a memory problem as it relates to facts

13  or the law insofar as representing your clients over the past

14  five years?

15  A    To be specific and honest, I was accosted by Layne Walker

16  so many times --

17          **THE COURT:**  Ms. Morrison, answer the question.  What

18  we need --

19          **THE WITNESS:**  That's what I'm doing, Your Honor.

20          **THE COURT:**  Well, I need -- he asked you a specific

21  question.  If you have had any type of --

22          **THE WITNESS:**  Each --

23          **THE COURT:**  Let me answer --

24          **THE WITNESS:**  I need to understand the question then.

25          **THE COURT:**  Just a second.  Okay?  I run this

1    courtroom.

2            **THE WITNESS:**  I apologize, Your Honor.

3            **THE COURT:**  Okay.  And we're not going to have this

4    go into some type of Judge Judy type of situation here.  He's

5    going to ask the questions.  You're going to answer the

6    questions.  And your attorney will be able to ask you questions

7    on redirect.  So what is the question?

8    **BY MR. SPARKS:**

9    Q    Your Honor, the question is, at any time since this case

10   has been pending over the past five years, have you ever

11   advised any of your clients that you did not think you'd be

12   able to faithfully become or practice as their lawyer, because

13   you're incapable of remembering key facts or law?

14   A    No.

15   Q    Because that's not true, is it?

16   A    I don't understand the question.

17   Q    Because you can remember facts, can't you?

18   A    I still do not understand the question.

19   Q    Ms. Morrison, do you know what a fact is?

20   A    I know what it is to me.

21   Q    So as a fact is to you, can you remember facts

22   sufficiently to represent your clients?

23   A    I would think I would.

24   Q    And have you been able to do that for that past five

25   years, Ms. Morrison?

1   A    So far as I can remember, yes.

2   Q    And the law -- certainly you would -- did you -- just out

3   of curiosity, did you go to the courthouse today to represent

4   some criminal clients?

5   A    No.

6   Q    When was the last time you were at the Jefferson County

7   Courthouse?

8   A    Monday.

9   Q    Did you represent some clients in Felony Court?

10  A    Yes.

11  Q    And, Ms. Morrison, you'd agree with me that when a

12  client's faced with a felony charge, that's a serious charge,

13  isn't it?

14  A    Of course.

15  Q    And, Ms. Morrison, you want to defend them and advocate

16  for your clients, don't you?

17  A    I think I do that pretty well.

18  Q    I -- Ms. Morrison, so if you thought that you couldn't

19  remember things and being the fact of the law, you wouldn't be

20  going to court to defend these felony -- accused felony

21  defendants, would you?

22  A    I still don't have a clue what you're referring to, sir.

23  Q    When you went to court Monday, did you understand the law?

24  A    Of course.

25  Q    When you needed to discuss the law with the Court, were

1    you capable of doing so?

2    A    Yes.

3    Q    Because you were able to remember it, right?

4    A    Yes.

5    Q    Because I've seen you when you go to Court.  You don't

6    even -- I've seen you don't even have a briefcase when you go

7    into the courtrooms; is that right?

8    A    I beg your pardon?

9    Q    You don't carry a briefcase when you go to court, do you?

10   A    I don't?

11   Q    Because the law's in your head, isn't it?

12   A    I carry a briefcase.

13   Q    But most of the law's in your head, you've been practicing

14   it for so long, right?

15   A    I would assume.  I'm not understanding the depth of your

16   question.

17   Q    That's okay.  We'll move on.

18   A    Maybe you can help me to understand.  That's all I was

19   trying to say earlier.

20   Q    Sure.  I just want to make sure that insofar as the

21   allegations in this case, that you have memory problems to

22   where you can't remember and relay facts or you can't remember

23   and relay law, that's not been your experience as you represent

24   criminal defendants accused of felonies over the past five

25   years, is it?

1   A     I would think not.

2   Q     Yeah.

3   A     But that -- to answer you correctly, I don't see the

4   difference in my remembrance of anything.  That's my -- that's

5   what I'm confused about.  You -- the way I'm understanding your

6   question, Mr. Sparks, is that I have memory for certain things,

7   but not for other things.  Is that what you're alluding to?

8   Q     Yes, ma'am.

9   A     Okay.

10  Q     Do you think you have --

11  A     Then in that case, sir, to answer your question, I have

12  memory.  I have -- I'm just as -- the same as anybody else.

13  Q     Insofar as your memory?

14  A     Yes.  I can remember things.  There are things I don't

15  remember.  It depends on what it is.  That's what I was trying

16  to tell you earlier.

17  Q     Thank you, Ms. Morrison.

18  A     It depends on what it is.

19  Q     Ms. Morrison, if you look in your binder there and turn to

20  Tab 21.  Let's look at Tab 21 and turn to Tab 21.  Let me know

21  when you get there, Ms. Morrison.

22  A     Exhibit 2, sir?

23  Q     Yes, ma'am.  It's labeled Exhibit 2.  It was attached to a

24  pleading.

25  A     All right.

1   Q    Okay.  If you'd go to the front page of that affidavit.

2   First of all, is this your signature at the back of the

3   affidavit or declaration?

4   A    It is, sir.

5   Q    Yes, ma'am.  The front page, Page 1, first paragraph.

6   Excuse me, second paragraph.  Last sentence.  You state under

7   oath, "There are times when I have issues with my memory, due

8   to my age and health conditions."  Did I read that correctly?

9   A    Where are you?

10  Q    It's the second paragraph.

11  A    Second paragraph?

12  Q    Yes, ma'am.

13  A    After I say my name, my age, and that?

14  Q    Can -- do you want me to -- it's the second paragraph,

15  after 1947.  Do you see the date 1947?

16  A    On the second paragraph it says my name is Stella

17  Morrison.

18  Q    Okay.

19  A    That's how it starts.

20  Q    Yes, ma'am.  Third paragraph.  Excuse me.  Before the

21  interim paragraph.

22  A    Okay.  Where I'm 68?

23  Q    "There are  times when I have issues" -- do you see after

24  1947?

25  A    Yes, sir.

1  Q    It states, "There are  times when I have issues with my

2  memory, due to my age and health conditions."  Did I read that

3  correctly?

4  A    Yeah.

5  Q    Before we proceed with your sworn testimony any further,

6  do you currently feel you're on any medication or have any

7  health conditions to prevent you from testifying truthfully

8  here today?

9  A    I'm going to answer truthfully, as I understand the truth

10  to be, regardless of what you ask.

11  Q    Yes, ma'am.  I asked if you were on any medications or

12  believe -- or claim to have any health conditions that would

13  prevent you from testifying truthfully here today.

14  A    No, sir.

15  Q    All right.  So this statement here that there are  times

16  when I have issues with my memory, due to my age and health

17  conditions; is this something that you advise your clients?

18       **MR. MORGAN:**  Objection, Your Honor.  Asked and

19  answered.

20       **THE WITNESS:**  I don't have a clue what you're asking

21  me.

22       **THE COURT:**  Overruled.

23  **BY MR. SPARKS:**

24  Q    Ms. Morrison, then let me just open it up.  Why don't you

25  explain to the Court what you contend your health conditions

1   are that sometimes trigger your memory loss and when it happens

2   and how it happens?

3   A    All right.  As I -- as I've lived it, I have a high -- I

4   have high blood pressure.  I have a bleeding ulcer.  I have

5   rheumatoid arthritis.  However, since I've been practicing

6   under Layne Walker, I suffered anxiety attacks -- severe

7   anxiety attacks, to the point where when I had a real bad one

8   after leaving his court one day, I literally undressed myself.

9   Got buck naked in the bathroom at the courthouse, and wasn't

10  aware of what I was doing.  Had it not been for Susan

11  (phonetic) -- I think her last name is Hebert -- to rescue me

12  that day, I don't know what would have happened to me.

13  Q    Yes, ma'am.

14  A    So -- and that was due to numerous things that he had done

15  to me and say to me, coupled with the fact that he had a -- one

16  of his bailiff assault me.  Not to mention the numerous

17  grievances that he filed on me, all of which was -- were

18  dismissed by the State Bar of Texas.  In that regard, using his

19  position as the Honorable Layne Walker, the State Bar had to

20  tell him stop filing frivolous lawsuits against me, all of

21  which -- it could have been at least 11 or more -- were

22  dismissed by the State Bar.  He also filed a complaint against

23  me with the District Attorney Office alleging that I had

24  perpetrated a fraud to the Court in the Peter Tran case,

25  knowing that that could not have been the circumstances, taking

1    into consideration all of the circumstances that was involved

2    in that situation.

3    Q    So you know -- right now, you know that you didn't

4    perpetrate a fraud in the Peter Tran case?

5    A    For a fact, sir.

6    Q    And you know that, and you remember that clearly don't

7    you?

8    A    That is why the Grand Jury of Jefferson County no-billed

9    me.

10   Q    Right.  But today you're telling the Judge that you

11   remember very clearly about the Peter Tran case; is that right?

12   A    I have no  choice, sir.  It was the most hilarious thing

13   I've ever experienced in my life.

14   Q    The question though -- if I could get a yes or no.  Do you

15   remember very clearly the Peter Tran case as you sit here

16   today?

17   A    I think every lawyer in this county does and I do too.

18   Q    All right.  And you would agree with me that your memory's

19   not got -- well, strike that.

20   A    I beg your pardon?

21   Q    I said, strike my question.  I was going to move on to a

22   different area.  Judge Walker hasn't been on the bench since

23   early 2014; is that right?

24   A    I wouldn't know when he got off the bench.  I don't keep

25   up with him.  I don't pray for him.

1   Q    All right.  The original question that I asked you,

2   Ms. Morrison, was what are the health conditions that you have

3   that trigger your memory loss?  And you responded about the

4   high -- anxiety and the high blood pressure.  Are there any

5   other medical conditions that you contend trigger your memory

6   loss?

7   A    Like I say, the amount of stress that I was led to

8   practice on because of him, that -- that's indescribable, sir.

9   Q    Now, was the Peter Tran case the one that they went on and

10  found that you were ineffective assistance of counsel?

11  A    I wouldn't have a clue about that.  I was never served

12  with any papers by anyone.

13  Q    You don't know the results of Mr. Tran's case?

14  A    I was never served with any legal document by anyone or

15  from anyone.

16  Q    But if --

17  A    If that is a fact, I'm not aware of it.

18  Q    You've never seen the opinions of the --

19  A    Never.

20  Q    -- declaring you ineffective assistance of counsel?

21  A    No one has ever notified me, served me any documents,

22  filed anything against me, nor has the Court ever contacted me.

23  So if that's a fact, I'm not aware of it.

24  Q    You state in your next sentence that,

25           "I did not retain Mr. Morgan to file a lawsuit

1              against former Judge Layne Walker for the purpose of

2              harassing Walker."

3    Do you see that in your affidavit?

4    A     In the next paragraph, sir?

5    Q     Yes, ma'am.  First sentence.

6    A     Yes, I do.

7    Q     Okay.  Is that your sworn testimony, that you didn't file

8    this lawsuit to harass Judge Walker?

9    A     Precisely.  That's not my way.

10   Q     Ms. Morrison, would you agree with me that you have a

11   little bit of animosity towards Judge Layne Walker?

12   A     No, I wouldn't agree with you about anything.  I don't

13   have a clue who you are.

14           **THE COURT:**  Ms. Morrison, just answer the questions,

15   okay?

16           **THE WITNESS:**  I'm sorry, Your Honor.

17           **THE COURT:**  Okay.  No sidebars, okay?  Thank you.

18           **THE WITNESS:**  I apologize to the Court and also, to

19   Mr. Sparks.

20           **THE COURT:**  That's okay.  Okay.  Let's proceed.

21   **BY MR. SPARKS:**

22   Q    Okay.  Ms. Morrison, Mr. Morgan claims in a pleading to

23   have -- well, let's just read the pleading.  Go to Tab 14,

24   Ms. Morrison.  Tab 14, Page 5.

25   A    Plaintiff Response to Court Order?

1   Q    It's Page 5.  It's -- let me come show you.

2          **MR. SPARKS:**  Can I approach, Your Honor?

3          **THE COURT:**  Yes, you can.

4          **(Counsel approaches)**

5   **BY MR. SPARKS:**

6   Q    This is a pleading filed by Mr. Morgan on your behalf in

7   this court.  Do you see the highlighted language at the bottom

8   of the page?

9   A    Yes, I do, sir.

10  Q    Yes, ma'am.  It says,

11          "The original complaint that was filed in this matter

12          was based on the undersigned's interview of the

13          plaintiff for an extensive period of time over two

14          days, plus a review of all documentation that she had

15          in her possession relating to her experiences with

16          former Judge Walker.  These documents included

17          grievance proceedings and responses, allegations of

18          ineffective assistance of counsel in the 252nd

19          District Court," et cetera.

20  Did I read that portion correctly?

21  A    I wouldn't know.

22  Q    Did you --

23  A    I'm reading it, but I don't know whether it's correctly

24  states -- stipulated.

25  Q    Well, that's what I'm going to ask you.  Is he correct

Morrison - Direct / By Mr. Sparks                          21

1    when he says that?

2    A    I just said I don't know, sir.  I honestly don't know.  I

3    do know for a fact that this was my first time learning about

4    this.

5    Q    I'm sorry.  This is your first time learning that you had

6    an --

7    A    Yeah.

8    Q    -- interview with Mr. Morgan?

9    A    Oh, no.  First time hearing anything about ineffective

10   assistance of counsel.  Because I would assume if someone filed

11   a petition to have me declared ineffective, I would have been

12   notified.  I think I'm still an American and entitled to due

13   process under the law.  I wasn't notified by anybody.

14   Q    Ms. Morrison, I don't -- I'm not asking you if the

15   statements are true.  I'm just asking you if I read them

16   correctly at this point.  Did you read along with me?

17   A    I did.  And you read that correctly.

18   Q    So now I'm asking you, did -- before this lawsuit -- prior

19   to this lawsuit being filed, Ms. Morrison, as your counsel

20   states, did he conduct an extensive interview with you and go

21   over grievance documents that you provided him?  That's what

22   Mr. Morgan says here.

23   A    If I recall correctly, he did, sir.  I think he was very

24   extensive and thorough.

25   Q    And he also looked -- this says he also reviewed grievance

Morrison - Direct / By Mr. Sparks                    22

1    proceedings and responses.  Did you see that?

2    A    Yes, sir.

3    Q    So prior to this lawsuit being filed, you provided

4    Mr. Morgan grievance proceedings and responses?

5    A    That I recall.  Yes, sir.

6    Q    Did you provide all that you had related to Judge Walker?

7    You didn't hold anything back from John -- Mr. Morgan, did you?

8    A    I wouldn't remember, sir.  Not right now.

9    Q    Does he still have possession of those things or did he

10   return them?

11   A    Well, I had -- I gave him copies of it.  I mean, I have my

12   own.

13   Q    So if you go to the front of your binder, Tab 2.  I'm

14   looking at Page 6 in Tab 2.  You want me to help you?

15   A    No, I have --

16            **MR. MORGAN:**  Which tab?  I apologize.

17            **MR. SPARKS:**   That's okay, John.  It's 2.

18            **THE WITNESS:**  Exhibit 6, sir?

19   **BY MR. SPARKS:**

20   Q    Yes.  Can I come -- I'll turn it for you.  Let me get it

21   for you.

22   A    My own handwriting?

23            **MR. MORGAN:**  Okay, I got it.

24   Q    No, ma'am, not -- if I may, Ms. Morrison.  Thank you.

25   Exhibit 6.  We can start with the front page.

1          **MR. MORGAN:**  All right.  I got it.

2    **BY MR. SPARKS:**

3    Q    And so  pulling a few pages back, looking at Page 1.  It's

4    dated January 9th, 2012, but we contend that's actually --

5    should be 2013, based on some different correspondence.  Do you

6    see this page we're looking at now, January 9th, 2012, letter

7    to Kaylee Morgan (phonetic)?

8    A    Yes, sir.

9    Q    Okay.  This is one of your responses to the grievances by

10   Judge Walker; is that right?

11   A    I don't know.  I guess so.

12          **THE COURT:**  Mr. Sparks, is this Tab 2, where it says

13   personal data?

14          **MR. SPARKS:**  It's Tab 2.  And it's Exhibit 6.

15          **THE COURT:**  Yes.  Okay.

16          **MR. SPARKS:**  Yes, sir.  And it's behind her

17   handwritten -- she -- what happened is she first wrote a

18   handwritten response and then she asked --

19          **THE COURT:**  I see.  I'm there.  Okay.  Go ahead.

20          **MR. SPARKS:**  Yes, sir.

21   **BY MR. SPARKS:**

22   Q    So looking at this, Ms. Morrison, is this -- well, at

23   least the beginning, if you turn back, that is your

24   handwriting, right?

25   A    It is.

1    Q    Yes, ma'am.  And then if you look at this, it's a typed up

2    version that says,

3              "Would you please disregard the reply to the

4              grievance that was filed against me by Judge Layne

5              Walker and mailed to you on January 8, 2013 and

6              replace it with this one?"

7    Do you see that, the first sentences?

8    A    Yes, sir.

9    Q    Okay.  I guess my first question is, did Mr. Morgan type

10   this or his office help you type this?

11   A    I don't recall.  It's too long ago.

12   Q    Did you type it?

13   A    I don't type.

14   Q    Did you have someone in your office back then that typed

15   for you?

16   A    Yes, I did.

17   Q    Okay.

18   A    But I can't say what happened.  I don't remember,

19   Mr. Sparks.

20   Q    But these are some -- these -- when we asked or talked

21   about grievance documents that you've now testified you

22   provided to Mr. Morgan before he filed this lawsuit, these are

23   certainly some of the grievance documents you would have given

24   him, right?

25   A    Yes.  I -- they -- I didn't -- yes.

1    Q    And so if you turn the -- a few pages in and go to Page

2    6 --

3    A    Of the document we're referring to now?

4    Q    Yes, ma'am.  The typed version.

5    A    Okay.  I'm there.   Mr. Tran's  case, sir?  What you have

6    underscored or highlighted?

7    Q    Right.  It says -- one-man show, sorry.  It says, "The

8    case of Mr. Tran, the Asian who  wanted to go to trial."  Do

9    you see that?

10   A    Yes.

11   Q    And here is where you're discussing at length the Peter

12   Tran case that is at issue to some extent in this lawsuit; is

13   that right?

14   A    I would assume.

15   Q    And you  discuss this at some length with the Bar, don't

16   you?

17   A    Yes, sir.

18   Q    And if you go to Page 8, in the context of discussing the

19   Peter Tran case and this grievance response that was typed for

20   you, if you look at the last highlighted sentence, it says,

21          "As if the grievance with the State Bar wasn't

22          enough, Judge Walker went further and filed a

23          complaint with the Grand Jury trying to get me

24          indicted for Grand Perjury."

25   Is that right?

1   A    That is correct.

2   Q    And that was in relation to the Peter Tran case?

3   A    That is correct, sir.

4   Q    Now, in this document, you repeatedly state that the Peter

5   Tran case -- just look at the -- in this -- on this page alone,

6   twice you -- or one, two, three times you mention the 252nd

7   District Court.  Do you see that?

8   A    No, but I'll wait for the question.

9   Q    Okay.  Anywhere on here that you mention that this was in

10  Judge Gist's court and not the 252nd, which was Judge Walker's

11  court?

12  A    It was -- I was already in trial in Judge Gist's court.  I

13  had been in trial, I believe, for 3-1/2 days when the jury was

14  in deliberation and I asked Judge Gist to be  excused to go to

15  Docket Call in Judge Walker's court and he excused me to go to

16  Docket Call in Judge Gist's court -- I mean, Walker's court,

17  because of the Peter Tran case.

18  Q    Right now are you testifying from your memory?

19  A    Oh, yes.

20  Q    Because you remember this very clearly, don't you?

21  A    I have no choice.

22  Q    But you remember it clearly?

23  A    Of course.  I mean, do you -- yes.

24  Q    And you remember clearly that the Peter Tran case was in

25  Judge Walker's court; is that right?

1  A    That is correct.

2  Q    And you don't -- it's not that this document's reminding

3  you that, you remember that very clearly on your own?

4  A    Yes.

5         **THE WITNESS:**  May I have some water, Your Honor,

6  please?

7         **THE COURT:**  Yes, you may.

8         **MR. MORGAN:**  I'll --

9         **MR. SPARKS:**  I got it.

10 **BY MR. SPARKS:**

11 Q    You want to wait for your water or can we proceed?

12 A    I can proceed.

13 Q    Thank you, Ms. Morrison.  Now --

14 A    I apologize to you, Mr. Sparks.  I'm dry mouth.

15 Q    There's no apology necessary.  Ms. Morrison, so now we

16 know that as you sit here today, you remember very clearly that

17 the Peter Tran was in Judge Walker's court, the 252nd, right?

18 A    Thank you.  Yes, it was, sir.

19 Q    And as we sit here today, we now see in grievance

20 documents that you provided to Mr. Morgan prior to filing this

21 lawsuit, which specifically discuss the Peter Tran case and

22 show that it was in the 252nd District Court; is that right?

23 A    Yes, sir.

24         **MR. MORGAN:**  Your Honor, I have to object.  Assumes

25 facts not in evidence.  He is assuming I received all grievance

1    documents, which I will clear up on cross examination.

2              THE COURT:  I'll overrule.  You can clear up on

3    cross.

4              MR. SPARKS:  Well, I would go ahead and move to admit

5    this document, Exhibit 2, as an admission by party opponent,

6    Your Honor.

7              THE WITNESS:  I have to correct you on something, if

8    I may?

9              THE COURT:  Hold a second.  Let us resolve this

10   issues.  Mr. Morgan?

11             MR. MORGAN:  Give me one moment, Your Honor.  Is this

12   the Exhibit 6?

13             MR. SPARKS:  Yes, it's Tab 2,  John -- Mr. Morgan.

14             MR. MORGAN:  Yeah, that's fine.

15             MR. SPEAKER:  (Indiscernible) responsive, Judge.

16             THE COURT:  It's already in the record of the case.

17   Just refer to it -- I mean, it's already part of the Court's

18   record.  So you -- I don't think you have to admit it.  I'll

19   take Judicial Notice that it's in the record.

20             MR. SPARKS:  Thank you, Your Honor.

21             THE WITNESS:  But I didn't provide it to --

22             THE COURT:  Hold on one second.  We'll clear that up

23   in just a second.  Okay.

24             THE WITNESS:  Okay.

25             THE COURT:  I'll just take Judicial Notice that it's

1    Docket -- we're talking about Docket Number 160, so --

2              **MR. SPARKS:**  Yes, Your Honor.

3              **THE COURT:**  -- it's in the record already.

4              **MR. SPARKS:**  Thank you, Your Honor.

5              **THE COURT:**  Okay.

6    **BY MR. SPARKS:**

7    Q    All right.  So, Ms. Morrison, just to be clear, the

8    document that you have in front of you is one of the grievance

9    documents is -- that you provided to John Morgan before you

10   filed this lawsuit?

11   A    No, I did not provide that document to Mr. Morgan.

12   Q    Why not?

13   A    He got it himself from the State Bar, I guess, or

14   wherever.  I did not provide this document to Mr. Morgan.

15   Q    We discussed earlier whether you provided grievance

16   documents as according to -- well, Mr. Morgan says --

17   A    We discussed it, yes.  But I, for one, did not provide

18   this to him, but we discussed it subsequently thereafter.

19   Q    Thereafter filing the complaint?

20   A    After some questions came up as to what really happened in

21   that case.

22   Q    What -- if you did not provide this grievance document to

23   Mr. Morgan before filing your lawsuit directly related to this,

24   what grievance documents did you provide?

25   A    I don't recall.  I do not recall.  There were so many

1    grievances, so many things going on, I had to keep my mind in

2    place just to practice law, I had so many grievances to respond

3    to filed by Mr. Walker.  Sir, it was really difficult for me

4    during that period of time, trying to keep my license, practice

5    law, respond to grievances that were frivolous, go before Grand

6    Jury that no-billed me.  It was just -- it was incredibly hard.

7    Q    And don't --

8             **THE COURT:**  Ms. Morrison -- hold on just a second.

9    Ms. Morrison, back away from -- Ms. Morrison, back away from

10   the microphone just a little bit.  Okay?  Go ahead.  Ask your

11   question.

12   **BY MR. SPARKS:**

13   Q    Not to mention that during all this time, you actually ran

14   for political office; is that right?

15   A    I don't recall.

16   Q    I've got some  Facebook posts --

17   A    You want to tell me what years?

18   Q    Sure.

19   A    Because I don't recall the years.

20   Q    We'll look at those posters in a second.  But before I

21   leave this document, it's now your testimony that you did or

22   did not provide this document to Mr. Morgan before this lawsuit

23   was filed?

24   A    No.  And I was also active in civic works in the city and

25   things like that, and the county as well.  That didn't stop me

Morrison - Direct / By Mr. Sparks                    31

1    from doing what I liked doing and being who I am and what I am.

2           **THE COURT:**  Ms. Morrison, did you provide this

3    document that we're talking about?

4           **THE WITNESS:**  No, I did not.

5           **THE COURT:**  Okay.  Thank you.  Let's move  along.

6           **MR. SPARKS:**  Yes, Your Honor.

7    **BY MR. SPARKS:**

8    Q    This is the -- go to the next tab.

9           **MR. MORGAN:**  Tab 3?

10          **MR. SPARKS:**  Yes.

11   Q    Ms. Morrison, are you at the next tab, Tab 3?

12   A    I'm there, sir.

13   Q    This is your original complaint that you filed back in

14   2013.  Did you read a copy of this complaint before it was

15   filed against Judge Walker?

16   A    Yes, sir.  Yes, sir.

17   Q    At the time that this complaint was filed, did you have

18   memory problems?

19   A    Right now I do.  It's just so many things that was going

20   on.  Very -- I mean, he definitely -- I mean, everybody in

21   Jefferson County who practiced law will tell you --

22          **THE COURT:**  Ms. Morrison, at the time this was filed,

23   did you have memory problems?  That's the question.

24          **THE WITNESS:**  I cannot remember now what was going

25   on.  That's what I'm trying to tell him.

1          **THE COURT:**  So you --

2          **THE WITNESS:**  It was too much going on with him.

3          **THE COURT:**  Okay.  So just answer -- but answer my

4    question.  At the time this was filed, did you have -- do you

5    remember having -- did you have memory problems at the time

6    this --

7          **THE WITNESS:**  I don't know, Your Honor.  That's what

8    I'm trying to tell you.

9          **THE COURT:**  Okay.  Move  along.

10          **THE WITNESS:**  I don't know, to answer your question.

11          **MR. SPARKS:**  All right.

12          **THE COURT:**  That's fine.  That's fine.  Let's move.

13          **MR. SPARKS:**  All right.

14          **THE WITNESS:**  I really don't understand some of the

15    questions, because it's hard to remember a lot of things.

16          **THE COURT:**  I understand.  Just do the best you can.

17    We'll make him rephrase the question if you don't understand

18    them, okay?

19          **THE WITNESS:**  Okay.

20          **MR. SPARKS:**  Ms. Morrison --  how do you zoom?  Do

21    you know how to  zoom on this thing?  Oh, well.  That's all

22    right.  Everyone can see it who has a -- oh.

23          **(Counsel conferred off the record)**

24          **MR. SPARKS:**  If I can keep going, Your Honor?

25          **THE COURT:**  Yes, you may.

1   **BY MR. SPARKS:**

2   Q    All right.  So, Ms. Morrison, you're looking at the Tab

3   22.  This is a Facebook post.

4   A    Tab 22 now you're on?

5   Q    Yes, ma'am.  Tab 22.  All right.

6   A    Okay.

7   Q    All right.  Ms. Morrison, at the time that this lawsuit

8   had already been filed, for about a year -- a little under a

9   year into the progression of this lawsuit, Ms. Morrison, do you

10  see where you were running for Precinct 50?

11  A    I know I ran for Precinct 50 State Rep.

12  Q    And do you see the date that says March 3rd, 2014?

13  A    Uh-huh.

14  Q    Ms. Morrison, at the time that you ran for political

15  office in Jefferson County on March 3rd, 2014, were you able to

16  recall facts and have memory sufficient to serve in that

17  position?

18  A    You know what Precinct 50 is about, sir?

19  Q    If you'd like to tell us briefly, I --

20  A    You don't have to campaign for positions like that.

21  Q    I'm just asking, is that the time -- is it a political

22  office?

23  A    It was Precinct Chairman.

24  Q    Okay.  So as Precinct Chairman, Ms. Morrison, of Precinct

25  50, do you think that at that time you had sufficient ability

1  to recall facts to be that person?

2          **MR. MORGAN:**  Your Honor, I would object.

3          **THE WITNESS:**  I can tell you I didn't campaign --

4          **THE COURT:**  Hold on a second, Ms. Morrison.  What's

5  your objection?

6          **MR. MORGAN:**  It's irrelevant.

7          **THE COURT:**  It's relevant to -- she's brought up the

8  issue of memory problems and memory issues.  I'm going to give

9  you a little bit more.  Your objection's overruled.  I'm going

10 to give you a little bit more leeway on it.  Overruled.

11         Ms. Morrison, the question is, at the time you ran

12 for Precinct 50 on March -- on or about March 3rd of 2014, did

13 you feel that you had memory problems?

14         **THE WITNESS:**  No, I mean.  I didn't campaign.  You

15 didn't have to campaign.

16         **THE COURT:**  I didn't say you campaigned.  I said at

17 the time you ran --

18         **THE WITNESS:**  No, I didn't have a memory problem.

19 But I don't understand the question.

20         **THE COURT:**  But --

21         **THE WITNESS:**  Because he -- the way I'm

22 understanding, does --

23         **THE COURT:**  You answered the question for me.

24         **THE WITNESS:**  Okay.

25         **THE COURT:**  And listen to it again.  I want to make

1   sure we're clear.  At the time that you were up for election

2   for Precinct 50, on or about March the 3rd of 2014, do you feel

3   at that time that you had memory problems?

4          **THE WITNESS:**  I can't tell you whether I did or not.

5   All I know is that if I was depending on my memory  to

6   campaign, that couldn't be it, because I didn't have to

7   campaign.

8          **THE COURT:**  Okay.  Let's move along.

9   **BY MR. SPARKS:**

10  Q    So, Ms. Morrison, and this is the last sentence I'll read

11  from this and we'll move on.  Look at the top of the

12  highlighted at the next page.  Turn the page.  And this is

13  where you ask,  "Can anyone explain why Judge Layne Walker

14  found it necessary to pay Attorney Morrison's opponent the sum

15  total of 900 grand for a total of 17 minutes of work."  Do you

16  see that statement?

17  A    Uh-huh.

18  Q    And you were using Judge Walker at this time as part of

19  your political campaign?

20  A    I don't recall this statement, sir.  That's too long ago.

21  Too long ago.  I've been involved in too many things.

22  Q    Let's turn to the next one.  It's the last one.

23         **MR. SPARKS:**  I'll skip the rest, Your Honor.

24  A     So am I at 23?

25  Q    Yes, ma'am.  Go to Tab 23.  Are you there?

1   A    Yes, sir.  I'm sorry.

2   Q    Yes, Ms. Morrison.

3   A    I apologize.

4   Q    It's at  May 6th, 2014, during the pendency of this

5   lawsuit; is that right?  See the date?  Under elect Stella

6   Morrison Precinct 50?

7   A    Uh-huh.

8   Q    Do you see the date?  Yes?

9   A    Where is it, sir?

10  Q    Right under the -- all caps, it says, elect Stella

11  Morrison?

12  A    Yes, sir, I do.

13  Q    May 6th, 2014, is that right?

14  A    Yes, sir.

15  Q    If you turn the page to the last sentence.  Ms. Morrison,

16  you actually refer your electorate to this lawsuit; is that

17  right?

18  A    Where at, sir?

19  Q    At the very end.  Page 3 of 3.  You say, see Morrison v.

20  Layne Walker, Cause Number 1:13-CV-327, Eastern District of

21  Texas; is that true?

22  A    Yes, sir.

23  Q    Ms. Morrison, were you using this lawsuit as an effort to

24  boost your political campaign?

25  A    I wouldn't know, but I don't think so.  Everybody was

Morrison - Direct / By Mr. Sparks                37

1    aware of him.  He made a mockery out our judicial system.

2    Q    Ms. Morrison, to skip through the rest of them, would you

3    agree with me that at the time that you were running for this

4    political office, you, A, were able to remember things, and, B,

5    were referencing Judge Walker in your political campaign?

6    A    Would you repeat the question?

7    Q    Yes, ma'am.  I'll split it up.

8    A    Thank you.

9    Q    At the time that you -- without going through the rest of

10   these, would you just agree with me that during the pendency of

11   this lawsuit, you were running for a political office and you

12   had the ability to remember things sufficient to be in that

13   political office?

14   A    I would think so.

15   Q    And at the time of the pendency of this lawsuit and at the

16   time that you were running this political campaign, you were

17   actually referencing this lawsuit to your electorate to try to

18   get them to vote for you, weren't you?

19   A    Yes, sir.

20   Q    Do you recall the State vs. Lewis case?

21   A    Yes, sir.

22            **MR. MORGAN:**  Which tab?

23            **MR. SPARKS:**  Tab 28.

24            If I may have just a moment, I think I'm through,

25   Your Honor?

1          **THE COURT:**  Yes, you may.

2      **(Pause)**

3  **BY MR. SPARKS:**

4  Q   Ms. Morrison, I want to turn to one last tab.  Just a

5  second.  Ms. Morrison, this is an ad that was placed in the

6  *Beaumont Enterprise* during the pendency of  this lawsuit.  It

7  was a rally.  It's difficult to read on the ELMO.  But for the

8  record, it's Tab 20 and it's already been filed with the Court,

9  Your Honor.  And in the hard to read section, it says,

10              "The offenses against this judge are too many to

11              list.  As Martin Luther King once remarked,

12              'Injustice anywhere is a threat to justice

13              everywhere.'"

14  There's an X through my client's face on the political ad -- on

15  the ad.  And it says, "Judge Layne Walker is an enemy of

16  justice."  And there was a rally on July 28, 2013, at the

17  Jefferson County Courthouse.  Did you know anything about that

18  rally?

19          **MR. MORGAN:**  Objection, Your Honor.  Again, this is

20  entirely irrelevant to Section 27 and Section  1988 sanctions.

21          **THE COURT:**  Where we going with this?

22          **MR. SPARKS:**  Absolutely, directly to the motive for

23  her filing this lawsuit, Your Honor, as well as bad faith.

24          **MR. MORGAN:**  That's entirely speculative, Your Honor.

25          **THE COURT:**  Overruled.  You can cross examine her on

Morrison - Cross / By Mr. Morgan                    39

1   that.  Overruled.  Go ahead.

2   **BY MR. SPARKS:**

3   Q    So, Ms. Morrison, did you know anything about this rally

4   while this lawsuit was pending?

5   A    Right now I can't recall.  What kind of rally was it, sir?

6   Q    Well, the ad lists the gentleman on the left is  Quanell

7   X, he's in the ad.  And on the right, there's a media

8   consultant named John Griffing and it was in front of the

9   Jefferson County Courthouse.  I think it was a Sunday.  Did you

10  know anything that this rally -- about this rally when it

11  happened during the -- while this lawsuit was filed?

12  A    I think it was some article in the papers or something.  I

13  was aware of a rally by Mr. X, but I don't know Mr. X, nor did

14  I attend the rally.

15       **MR. SPARKS:**  Thank you.  That's the only question I

16  have.  I'll pass the witness at this time.

17       **THE COURT:**  Mr. Morgan?

18       **MR. MORGAN:**  May it please the Court?

19       **THE COURT:**  Yes, sir.

20                      **CROSS EXAMINATION**

21  **BY MR. MORGAN:**

22  Q    Ms. Morrison, are you ready to proceed?

23  A    Yes, I am.

24  Q    All right.  I don't have a lot of questions.  As you sit

25  here today, do you know how many grievances Judge -- former

Morrison - Cross / By Mr. Morgan                    40

1    Judge Layne Walker filed on you?

2    A    I don't have a clue.  It was that many.

3    Q    Okay.  Do you recall telling me that it was probably over

4    10 and maybe up to 20?

5    A    Judge Walker not only was filing grievances against me, he

6    had clients of mine filing grievances against me -- several.

7    He mentioned the man, Lewis.  Lewis was one of them.

8    Q    Okay.  I'm going to rephrase my question.

9    A    He even tried to get Mr. Tran to file a grievance on me.

10   Q    All right.  Try to focus on my question.  Okay?

11   A    Yes, sir.

12   Q    Is it a fair statement that you do not recall how many

13   were filed?

14   A    I do not recall.  It was too many.

15   Q    Okay.  And as you sit here today before the Judge, is it

16   true or not that you do not have copies of every grievance and

17   you did not provide all those to me?

18   A    No, I didn't.

19   Q    All right.  Now, do you remember how many times you have

20   been accused of ineffective assistance of counsel while

21   representing a defendant in former Judge Walker's court?

22   A    Never.  Never.  I don't recall that at all.  I was never

23   served with any due process.  I've never received any document

24   from Judge Walker or from the Court of Appeals.  From no one.

25   Q    All right.  I'm going to try to refresh your recollection

1   on one occasion.

2   A    All right.

3   Q    Do you remember a client named Tyrone Gilbert?

4   A    Yes.

5   Q    Do you remember that you asked me to review the situation

6   to determine whether I could -- whether you could file a Motion

7   to Recuse Judge Walker from presiding over an ineffective

8   assistance of counsel proceeding?

9   A    I do.

10  Q    Do you recall that I did that for you?

11  A    Yes.

12  Q    As you sit here today, do you know of any other documents

13  you gave to me showing any other ineffective assistance of

14  counsel proceedings?

15  A    No.

16  Q    All right.  Do you recall at one point I gave to you the

17  Fifth Circuit decision  called Ballard versus Wall and

18  explained to you the Law of Judicial Immunity?

19  A    Yes, you did.

20  Q    All right.  Now, I want to talk to you about your

21  allegations that you believe Judge -- well,  I'm going to

22  rephrase it.  Do you believe Judge Walker and former District

23  Attorney Tom Maness tried to wrongfully indict you?

24  A    Yes.  Most definitely.

25  Q    All right.  My pleadings reference that this occurred, at

1    least you recall it occurring, in 2010.  Do you remember

2    telling me that date?

3    A    No, I don't remember that, Mr. Morgan.  I don't remember

4    the date at all.

5    Q    All right.  That's fine.  Mr. Sparks has produced a

6    document stating that that actually occurred in 2013.  Do you

7    remember whether it was '13 or just don't remember?

8    A    I don't remember.  That's -- he's saying '13.  I couldn't

9    tell you whether it was '13 or '12 or '10 or whenever.  I can't

10   remember those dates.  That's too long ago.

11   Q    All right.  I want to talk to you directly about the Peter

12   Tran reporter's record.

13   A    Okay.

14   Q    Can you -- do you recall that I called you and asked you

15   to come in to review it?

16   A    Yes, I do.

17   Q    And you did review it?

18   A    Yes, I did.

19   Q    And did you confirm that the record was accurate?

20   A    Yes, I did.

21   Q    All right.  I'm going to have to ask you, do you recall

22   whether I was confused or not?

23   A    Yes.  Well, I realized was that you were confused.

24   Extremely confused.

25   Q    All right.  Had you represented to me that you had been in

1   trial that whole day in Judge Gist's court?

2   A     Been in trial 3-1/2 days in Judge Gist's court.

3   Q    Do you recall me asking you or saying, I didn't understand

4   how  can you be in trial in Judge Gist's court and also be in

5   trial in Judge Walker's court?

6   A     Precisely.  I did.

7   Q    Tell the Judge what you recall about my level of confusion

8   while we reviewed that transcript.

9   A     At the time, I went to -- I got Judge Gist to allow me --

10  to release me for a minute during the time that the jury was in

11  deliberation on the guilt and  innocence phase of my trial that

12  lasted for 3-1/2 days, Your Honor.  When Judge Gist released --

13  allowed me to go to Docket Call in Judge Walker's court for

14  Mr. Tran -- on behalf of Mr. Tran, after I got to Judge

15  Walker's court, there were numerous  attorneys on the Trial

16  Docket on that day and he wanted -- he decided that Tran was

17  going to trial.  When two or three other attorneys who were on

18  the Docket pleaded -- pleaded with him to let them go to trial,

19  because their clients had been sitting in jail for three to

20  four years or longer.  However, I was not prepared to go to

21  trial in the Peter Tran case, because I had just gotten the

22  case that Saturday before the Trial Docket that Monday.  So on

23  that day is when I  filed my Motion to Substitute Counsel to

24  replace the attorney that Mr. Tran had, primarily, because that

25  attorney refused to go to trial with Mr. Tran and under no

1  circumstances did Mr. Tran wanted him to continue representing

2  him.  So I agreed to, on Saturday before the date of -- the

3  trial date that Monday I prepared a Motion for Substitute and

4  filed it early that Monday morning before I went to Judge

5  Gist's court.  I went before the  jury started deliberating and

6  before Judge Gist literally let me go to Docket Call in Judge

7  Walker's court, since the jury were deliberating.  So there I

8  was in trial for 3-1/2 days in Judge Gist's court  on a drug-

9  related charge.  For a minute he allowed me to go across the

10 street to Judge Walker's court to answer Docket in the Tran

11 case to explain to him why I decided to represent Mr. Tran and

12 he decided that I was going to trial no matter what, regardless

13 of what the other attorneys were begging and pleading him.

14 They were begging and pleading him to let them go to trial,

15 because the fact that their attorneys were -- I mean, their

16 clients had been sitting in jail.  When I get to Judge -- so I

17 asked for a few minutes to go to Judge Gist's court to let

18 Judge Gist know I could no longer stay in his court and try

19 this case, because Judge Walker decided that I was going to

20 trial in his court.  I could not understand how that could be.

21 But that's how it was.  So when I got to Judge Gist's court,

22 Judge Gist was on the phone with  Judge Walker and Judge Walker

23 was cursing him out and telling him he was getting ready to

24 fire him for whatever reason if he didn't release me that

25 instant and allow me go back to his court and try that case.

Morrison - Cross / By Mr. Morgan                                    45

1   Q    Okay.   I want to follow up.

2   A    So Judge Gist told me, he said, Stella go on.  I can't

3   make sense with him at all.  So at the time I didn't have any

4   discovery in the case.  I had not filed any pleadings, other

5   than the Motion to Substitute Counsel.  I was not prepared to

6   go to trial in that case.  And I'm trying to tell him this in

7   open court on the record, but he didn't want to hear that.  He

8   wanted Peter Tran to plead guilty, because  the attorney that

9   was representing him refused to go to trial.

10            **THE COURT:**  Okay.  Let Mr. Morgan ask you a question.

11   Go ahead, Mr. Morgan.

12   **BY MR. MORGAN:**

13   Q    Ms. Morrison, is it a true statement that all the detail

14   you just gave to the Judge, the first time you told me those

15   facts was after you read the Peter Tran reporter's record in my

16   office?

17   A    That is correct. That's when you really learned what

18   happened.

19   Q    And wasn't I surprised what I learned?

20   A    You were shocked, because you couldn't -- it was very hard

21   for you to  mesmerize that this actually happened, but that's

22   what really happened.

23   Q    All right.  And when you told me -- after reviewing the

24   transcript, can you tell the Judge whether or not at that

25   meeting I said, we must dismiss that allegation?

1  A    Well, yes, and you did that.

2  Q    Okay.

3  A    As soon as you learned that you had misinterpret the facts

4  in this case, you filed a Motion to Withdraw that particular

5  allegation out of the pleadings.

6  Q    And is it also true, in front of the Judge, that I had to

7  explain the law and why I felt it was necessary to dismiss that

8  allegation after you reviewed the transcript?

9  A    That you had misinterpreted.

10       **MR. MORGAN:**  Okay.  I pass the witness.  Thank you,

11  ma'am.

12       **THE COURT:**  Okay.  Mr. Sparks, very briefly.

13       **MR. SPARKS:**  Very briefly, Your Honor.

14                    **REDIRECT EXAMINATION**

15  **BY MR. SPARKS:**

16  Q    Ms. Morrison, I don't want to relitigate the Peter Tran

17  case, but since you all discussed it, I'm just going to ask a

18  couple questions.  You -- the issue that happened -- what

19  happened there -- I can't get this right.  Let's see -- is you

20  wrote out a plea agreement and a request and told the Court

21  that he did not have a prior conviction; isn't that correct?

22  A    That's after the fact, sir.  That was after I was told by

23  Judge Walker that I'm definitely going to trial in his court,

24  regardless of whether I was in trial for three days or three

25  weeks in Judge Gist's court.  And in that --

1  Q    I'm glad you mentioned that.

2        **THE COURT:**  Hold on a second.  Let her finish.  Go

3  ahead.

4        **THE WITNESS:**  And in that situation, sir, I not only

5  -- since I was mandated to go to trial in Judge Walker's court

6  regardless of the fact that I was already in a trial in Judge

7  Gist's court, I not only had to walk back to Judge Gist's court

8  and get my briefcase, because I left my briefcase there, and

9  I'm walking in three-inch heels.  I'm not walking in flat

10  shoes.  From the big courthouse to the Drug Impact Court.  I

11  had to also prepare an affidavit by Mr. Tran.  I think that's

12  what you're alluding to, sir.  In that case, I made the mistake

13  of using the trial that I was already in, in Judge Gist's

14  court, Motion for --

15        **THE COURT:**  Ms. Morrison.  Ms. Morrison,  push your

16  microphone away.

17        **THE WITNESS:**  I'm sorry, Your Honor.

18        **THE COURT:**  That's okay.  Push it back.

19        **THE WITNESS:**  What I'm doing?

20        **THE COURT:**  Go ahead.  Go ahead.

21        **THE WITNESS:**   -- Motion for Probation in that other

22  young man's case as a format to prepare one for Mr. Tran.  And

23  in so doing, I inadvertently wrote the wrong thing in that

24  particular pleading.  I'm requesting that Mr. Tran be placed on

25  probation or be considered for probation, because he had never

1    been convicted before when it was the other young man's format,

2    the case that I was already in  trial on in Judge Gist's court.

3    I was using his case as a format and I inadvertently wrote down

4    in Mr. Tran's motion the same thing I had in his -- in the

5    other guy's case -- whose case I had been in -- whose trial I

6    had been in for 3-1/2 days.

7    **BY MR. SPARKS:**

8    Q    Okay.  Ms. Morrison, are you through with your answer?

9    A    That was my error.

10   Q    That's okay.  So the first thing I'd like to point out is,

11   in fact, you asked to represent Peter Tran.  You weren't

12   mandated to represent Peter Tran like you testified; isn't that

13   true?

14   A    I didn't ask anything.

15            **MR. MORGAN:**  Objection.

16            **THE COURT:**  Hold on a second.  What's your objection?

17            **MR. MORGAN:**  It's irrelevant to --

18            **THE COURT:**  What is the relevance of this about what

19   -- about the Peter Tran issue?

20            **MR. SPARKS:**  Well, the Peter Tran issue, Your Honor,

21   is the actual pleading that they pled around, and they knew

22   they shouldn't have been pleading to avoid or to shoehorn in to

23   the Ballard Factor.  So that's why Peter Tran is --

24            **THE COURT:**  I understand that, Mr. Sparks, but I

25   guess my question -- the issue is, is when did they know about

1   it or did they know it was in the right court.

2          **MR. SPARKS:**  Okay.

3          **THE COURT:**  How it happened I don't think is

4   relevant.

5          **MR. SPARKS:**  Fair enough.  Fair enough.

6          **THE COURT:**  Okay.

7          **MR. SPARKS:**  It's just because they went into it in

8   such depth, I didn't want to leave it unresponded to, Your

9   Honor.

10          **THE COURT:**  Okay.

11          **MR. SPARKS:**  But I'll move on.

12          **THE COURT:**  Okay.

13  **BY MR. SPARKS:**

14  Q    So, Ms. Morrison, you've testified very clearly today

15  about specific days, Monday, Wednesday that you recall from

16  five years ago now; is that right?

17  A    Clearer.  We had dismissed for our trial.  We were in

18  trial those days in Judge --

19          **THE COURT:**  Listen to his question, Ms. Morrison.

20  Ask the question again.

21  **BY MR. SPARKS:**

22  Q    Ms. Morrison --

23  A    It was a Monday if I recall correctly, sir.

24  Q    And you're --

25  Q    Is that what you're asking?

Morrison - Redirect / By Mr. Sparks                    50

1   Q    Yes, ma'am.

2   A    Okay.

3   Q    And you're recalling from your memory; is that right?

4   A    Uh-huh.

5   Q    All right.

6   A    Yes, sir.

7   Q    Do you understand that just because Mr. -- or excuse me,

8   Judge Walker filed a grievance or two or however many against

9   you, do you understand that that doesn't necessarily make a

10  1983 civil rights complaint?

11  A    Well, I'll tell you what, I don't know exactly how to

12  respond to that, but it definitely can be part of.

13  Q    Did you rely --

14  A    I mean, when you're doing it because you have a problem

15  with the person that you're filing these frivolous complaint

16  against, whether it's my gender, whether it's my race, or for

17  whatever reason, I think Judge Walker's case was that he could

18  not intimidate me like he did everybody else practicing law in

19  that court.  He had everybody walking like they walking on

20  eggshells.  And he couldn't touch me that way.  I have too much

21  of a strong relationship with God for him to go there with me.

22  Q    Do you understand that the filing of repeated grievances

23  against Judge Walker -- or against you doesn't make a Section

24  1983 case or did you rely on Mr. Morgan for that?

25          **MR. MORGAN:**  Objection, Your Honor.  That's a

1    conclusion of law.  That's improper to ask that of the witness.

2              **THE COURT:**  Overruled.  She can answer.

3              **THE WITNESS:**  I don't understand the question.

4    **BY MR. SPARKS:**

5    Q    Do you understand that if Judge Walker filed one, five, or

6    one million grievances against you, that that doesn't

7    necessarily make a 1983 case under the Ballard Factors?

8    A    I don't think the grievances he filed against me had

9    anything to do with why I filed a lawsuit against him.

10             **MR. SPARKS:**  Pass the witness.

11             **THE WITNESS:**  The lawsuit I filed against him had

12   everything to do with the way he treated me.

13             **MR. SPARKS:**  Thank you.

14             **MR. MORGAN:**  One final question.

15             **THE COURT:**  One final question.

16                        **RECROSS EXAMINATION**

17   **BY MR. MORGAN:**

18   Q    Ms. Morrison, I just want to make this clear to the Judge.

19   A    Yes, sir.

20   Q    Did you ever talk to me about the Peter Tran case before

21   you reviewed the reporter's record in my office?

22   A    No.

23   Q    Okay.  So that's what --

24   A    If I did, right now I can't recall, because it's too many

25   things referring to that case.  Judge Walker know what he did

1    in that case.  It was beyond explain -- I can't even explain

2    his actions.

3    Q    All right.  That's fine.  We're going to step away from

4    that.  But were -- did you have to read the reporter's record

5    before you remembered all the facts?

6    A    Yeah, that is correct now.

7    Q    And is that when you told me those facts?

8    A    Yes, sir.

9    Q    Thank you.

10   A    That is correct.

11            **MR. MORGAN:**  Thank you.  Pass the witness.

12            **THE COURT:**  All right.  Thank you.

13            **MR. SPARKS:**  No further questions, Your Honor.

14            **THE COURT:**  Thank you, Ms. Morrison.  You can step

15   down.  Do you need help?

16            **THE WITNESS:**  Thank you.  I'm going to need help.

17       **(Witness  steps down)**

18            **THE COURT:**   You can proceed.

19            **MR. SPARKS:**  Your Honor, we call Mr. Morgan to the

20   stand.

21            **THE COURT:**  Mr. Morgan.

22            **MS. MORRISON:**  Give me a second, please.

23            **MR. SPEAKER:**  No, problem, no problem.

24            **MR. MORGAN:**  Your Honor, I'd like to wait until she

25   gets back in her chair.

1          **THE COURT:**  Yes, please.  Yes, please.

2          **MR. SPARKS:**  The binders omit these affidavits.  May

3    I approach and hand out the affidavits?

4          **THE COURT:**  Make sure that -- yes.  Make sure that

5    everyone's got a copy of it.

6          Take your time, Ms. Morrison.

7       **(Pause)**

8          **THE COURT:**  Go and sit up there, John, and I'll swear

9    you in, okay?

10         **MR. MORGAN:**  Yes, sir.

11              **JOHN MORGAN, DEFENSE WITNESS, SWORN**

12         **THE COURT:**  Thank you so much.  You can have a seat.

13   You can proceed, Mr. Sparks.

14         **MR. SPARKS:**  May it please the Court, Counsel.

15                    **DIRECT EXAMINATION**

16   **BY MR. SPARKS:**

17   Q    Mr. Morgan, introduce yourself briefly to Judge Giblin.

18   A    My name is John Morgan.

19   Q    Mr. Morgan, I'm going to ask you a few questions about

20   this lawsuit.  First of all, is it your sworn testimony that

21   you did not file this lawsuit to harass or oppress or humiliate

22   Judge Walker?  Is that your sworn testimony?

23   A    That is correct.  I thought the lawsuit was meritorious.

24   Q    How many lawsuits have you filed against Judge Walker?

25   A    Two, except that the Hartman Federal Court case the

1    Federal pleading -- the Federal Constitutional case was

2    dismissed, which required me to refile the State Tort Claims in

3    State Court.

4    Q    You don't remember suing Judge Walker, along with the

5    Special Counsel Phelps (phonetic) in State Court?

6    A    Oh, that's -- I apologize.  I forgot that one.  I

7    dismissed that one.

8    Q    Any others that you've forgotten?  For example, like for

9    Mr. Klein (phonetic)?  Have you filed any lawsuits against

10   Mr. Walker -- for Judge Walker for Mr. Klein?

11   A    You'd have to refresh me.  I don't -- I thought Larry

12   Watts did those.  I'm not aware of -- if I'm wrong, please

13   refresh me.

14   Q    I think he subbed in or -- I can't remember whether you-

15   all were both Counsel of Record, but there have been other

16   lawsuits filed against Judge Walker by Larry Watts; is that

17   correct?

18   A    I believe Larry Watts handled the ones -- all of those for

19   Mr. Klein, that's correct.

20   Q    You didn't assist in those?

21   A    Other than being interviewed is my recollection.  I'm not

22   sure.

23   Q    All right.  Let's go to the pleadings you filed in this

24   case.

25   A    Yes.

Morgan - Direct / By Mr. Sparks                    55

1   Q    After the -- after we produced the Peter Tran -- let me

2   ask this question, Mr. Morgan.  When we first produced the

3   Peter Tran excerpt to you, you objected to it?

4   A    Yes.

5   Q    Why?

6   A    Because I'm an attorney.  I have to  preserve the

7   objection.

8   Q    How many months afterwards until you finally took action?

9   How long?

10  A    I received a notification from Magistrate Hawthorn that I

11  had not followed up, so I followed up pretty much immediately

12  within days of receiving his notification.  As I sit here

13  today, Mark, I don't recall.  But I did file a pleading with

14  Judge -- Magistrate Hawthorn stating I apologized for the

15  delay.

16  Q    Ms. Morrison just testified that you were mesmerized at

17  the time that she revealed this to you.  It was, in fact, over

18  six months until you actually took action to dismiss these

19  charges -- these complaints; isn't it?

20  A    Again, I do not recall the time delay.  I know that when

21  you produced the transcript to me, there was delay.  I was

22  working on the Hartman briefing with you and other attorneys.

23  I do not know the time delay, but I have apologized for that.

24  Q    So here after we produced the certified transcript --

25  because originally, we produced excerpts from the transcript,

Morgan - Direct / By Mr. Sparks                    56

1   right?

2   A     I believe that's correct.

3   Q     Yeah.  Here's where you say the original complaint that

4   was filed in this matter was based upon the undersigned's

5   interview of the plaintiff for an extensive period of time.

6   Over two days you interviewed Ms. Morrison; is that right?

7   A     Yes, there were two days back-to-back.  That is correct.

8   Q     And, Mr. Morgan, if it was two days of her saying, I don't

9   recall, I don't recall, you wouldn't have spent two days with

10  her, would you?

11  A     Well, there are many things that she did recall.  A lot of

12  the specific facts she did not recall.  The issues that were

13  set forth were identified.  Like, for example, the filing of

14  grievances.  As she told you, she did not recollect, she

15  thought there were over 10, possibly up to 20.  The incident in

16  the hallway, which I had most of the documentation on.  The

17  issue of falsification of criminal charges.  She was very

18  adamant on that, but yes, she was sketchy on the details.  And

19  I asked her if she had the Grand Jury testimony and she said

20  she did not have it.

21  Q     You asked her at that first meeting whether she had the

22  Peter Tran Grand Jury testimony?

23  A     No, you didn't produce that.  You produced what was in

24  Judge Walker's court.  I did ask for Grand Jury testimony if

25  she had it, because I know that I cannot obtain Grand Jury

1    testimony.  First went to a public information request.  I've

2    tried it before.  She did not have any of the Grand Jury

3    testimony.

4    Q    Was it related to Peter Tran?

5    A    I don't know, because I've never seen the Grand Jury

6    testimony.  I did not know Peter Tran was the person at issue,

7    until after she came to my office and authenticated the

8    reporter's record.  That's when I learned the name.  I didn't

9    know who the name was.

10   Q    It's your testimony you didn't know the name Peter Tran,

11   until well into this lawsuit, after it had been filed?

12   A    I didn't know that Peter Tran was the person at issue with

13   reference to the potential false charges.  There have been lots

14   of names, like Yates (phonetic), Gilbert, et cetera.  But she

15   was not able to tell me a specific name related to those

16   charges.  So no, I did not know that.

17   Q    So where are the grievance documents that she provided you

18   over these two days of examination?

19   A    I have the documents that she gave me, but they were very

20   sparse.

21   Q    And you've preserved them?

22   A    I should have them.  I see no reason why I wouldn't.

23   Q    And so if the Court wanted to see them, you would  tender

24   them to the Court?

25   A    Of course, with what -- anything I have, the Court can

1   have.

2   Q    Now, over two days of this examination, if you keep on

3   going, you say in your pleading to the Court -- I can't show

4   it.  There.  She had -- hang on.  I can't show it.  Sorry.

5   Let's see if it will -- yeah.  She had in her possession,

6   relating to her experiences with former Judge -- and go to the

7   next page.

8   A    Which tab is this, Mark?

9   Q    You're on Tab 14 -- Walker.  And then you state to the

10  Court,

11              "These documents include grievance proceedings and

12              responses, allegations of ineffective assistance of

13              counsel in the 252nd District Court," et cetera.

14  Did I read that correctly?

15  A    Yes.

16  Q    And did you have any of the grievance documents related to

17  the grievances Judge Walker had filed against her with the

18  Texas State Bar?

19  A    One of two.  I don't recall specifically.  I had one that

20  was addressed to the State Bar Investigator  Kaylee Morgan.  I

21  think it's been produced in this case.  I have to see it, but

22  it wasn't with reference to Peter Tran.  I also had the issue

23  with Tyrone Gilbert, the ineffective assistance of counsel

24  claim.

25  Q    Was it typewritten, the one to  Kaylee Morgan, or was it

Morgan - Direct / By Mr. Sparks                          59

1   in her handwriting?  She has pretty distinctive handwriting.

2   A    What I recall having was Judge Walker's grievance

3   against --

4   Q    And not a response?

5   A    I don't recall seeing her response.

6   Q    Mr. Morgan, did your office help her type her response?

7   A    No.

8   Q    Then you say that the undersigned has also conducted

9   extensive research on the legal issues prior to filing the

10  lawsuit.  Did you do that?

11  A    Extensively, yes.  And I'm willing to discuss the law with

12  you at any time.

13  Q    I -- you're very intelligent, John.  I have no doubt about

14  that.  Mr. Morgan, so before filing his lawsuit you were aware

15  that if any of the conduct Ms. Morrison was complaining of

16  occurred in Judge Walker's courtroom, in the 252nd Court, that

17  it would not be actionable as a 1983 case, correct?

18  A    Well, that's not what the U.S. Supreme Court said in the

19  Forrester case on Page 227.  Even actions occurring within the

20  Court, such as the picking of jurors, such as establishing and

21  enforcing a code of conduct for attorneys, which is definitely

22  related to the grievances he filed, are not part of judicial

23  immunity.  Also, Harper v. Merkel,  Fifth Circuit decision,

24  sir, denied by the United States Supreme Court in 1981, states

25  that the Situs Test, which you are using, claiming that the

Morgan - Direct / By Mr. Sparks                              60

1   site of the act alone insulates the judge, does not apply if

2   the judge invokes the judicial machinery on a personal

3   vendetta.   I cited Harper.   I cited Forrest -- the Forrest

4   case, 1988 Supreme Court case in all of my complaints and in

5   all of my briefing.

6   Q    So why did you dismiss her complaint if you were right all

7   along?

8   A    Because when I learned the true facts about Tran, that she

9   had been in trial in Judge Gist's court and had been called to

10  trial in Judge Walker's court and the pleading that I signed

11  represented differently than that, I have a duty as an attorney

12  to dismiss that allegation.

13  Q    But not if you think the law is supporting you, like you

14  just discussed with me.   Harper v. Merkel, the Forrester case,

15  Page  2, whatever.   Why didn't you just keep going with the

16  case if it was meritorious?

17  A    Because I had misrepresented a fact unintentionally.   I

18  was not comfortable with proceeding with it, since I had told

19  Judge Hawthorn I felt certain, because my client had told me

20  that she was in trial all day in Judge Gist's court.   And when

21  I was found -- when I was proven to be erroneous, I decided

22  that I would proceed with the rest of the case, but not that

23  allegation.   And I explained that to Ms. Morrison that I was

24  not willing to do it, because my complaints contained a mistake

25  in a material fact.

Morgan - Direct / By Mr. Sparks                    61

1  Q    John -- Mr. Morgan, so this grievance response filed by

2  Ms. Morrison, did you or did you --  this -- excuse me, being

3  Tab 2, did you or did you not have possession of this document

4  prior to filing the original complaint in this case back in

5  2013?  Tab 2, Mr. Morgan.

6  A    I don't recall seeing this.  I do not recall seeing this

7  at all.

8  Q    And so the papers that are at your office now that you

9  gathered with her over two days of extensive investigation does

10 not contain -- or do not contain this particular document?

11 A    That's my recollection, yes.

12 Q    Looking at your complaint, which is Tab 3, Mr. Morgan, the

13 bottom, says, "Upon information" --

14 A    Which page?

15         **THE COURT:**  Which page?

16 Q    Page 16.  Forgive me, John.

17 A    That's fine.

18 Q    Page 16, Paragraph 20.  It says,

19         "Upon information and belief, the Texas State

20         Commission on Judicial Conduct has received a massive

21         amount of complaints against Judge Layne Walker, many

22         of them complaining about Judge Layne Walker's

23         racism."

24 Did I read that correctly?

25 A    Yes.

1  Q    What is your information and belief that the Judicial

2  Commission on Conduct received massive amounts of complaints

3  about Judge Walker being a racist?  What's your source?

4        MR. MORGAN:  Your Honor, I'm going to object to that.

5  I don't see any relevance to this.

6        THE COURT:  Mr. Sparks?

7        MR. SPARKS:  It goes straight to his effort to defame

8  and malign Judge Walker in pleadings and it goes to his bad

9  faith and his motive in drafting this complaint and not

10 dismissing it earlier, when it should have been dismissed, Your

11 Honor.

12       THE COURT:  The issue -- your objection is overruled,

13 Mr. Morgan.  The issue in this case is whether or not this is

14 filed frivolously or vindictively or things such as that as far

15 as this goes.  And so I'm going to -- I'll make you answer that

16 question.  Your objection is overruled.  You can answer.

17       THE WITNESS:  I personally spoke to Cathy Bradford,

18 Counsel -- Chief Counsel for the Judicial Commission.

19 BY MR. SPARKS:

20 Q    Ms. Bradford told you there were massive amounts of

21 complaints against Judge Walker?

22 A    She did not use those terms, but is was certainly my

23 interpretation of that.  I'd also received information from

24 Mr. Klein indicating that there was a significant amount of

25 complaints against Judge Walker pertaining to racism.  In

Morgan - Direct / By Mr. Sparks                               63

1   addition -- one of them about sentencing an African-American to

2   88 years in prison, just because he had 88 cents in his pocket,

3   even though as I understood the Sentencing Guidelines were

4   limited to 10 years in prison.  And I heard similar stories to

5   that as well.

6   Q    I'd just like to know from Ms. Bradford exactly how many

7   complaints she relayed to you, so I can talk to her about that.

8   How many complaints did she relay to you?

9   A    Mr. Sparks, she did not give me a number, and that

10  conversation occurred in 2012.  I didn't record it.  I can tell

11  you I spoke to her.  I don't recall -- I can't recite it

12  verbatim.

13  Q    So then, Mr. Klein, if you can't recall how many she gave

14  you, and she didn't give you a number, according to your

15  testimony just now, how many did Mr. Klein relay to you, based

16  upon his investigation?

17  A    Again, I don't state in my petition a specific number.

18  Q    You say massive amounts?

19  A    That's correct.  I believe he has been subjected to a very

20  high number of complaints.

21  Q    How many have you filed against Judge Walker?

22  A    My attorney prepared one for my signature.  One complaint.

23  Q    It's your testimony you've only filed one complaint

24  against Judge Walker?

25  A    I have follow-up communications via correspondence with

1    the Judicial Commission providing information.  To the best of

2    my recollection, I only filed one specific complaint.  I've had

3    no dealings with Judge Walker since --

4    Q    Your divorce case?

5    A    -- 2012.  April -- I think it was April or May 2012.

6    Q    Was that the divorce case?

7    A    Yes, custody case.

8    Q    Custody case.  Excuse me.  And certainly you don't -- is

9    it your sworn testimony you don't harbor any animosity towards

10   Judge Walker for him overseeing the custody matter of your

11   children?  Is that your sworn testimony, you have no animus?

12   A    At this time, I have no animus.  I've learned the

13   importance of forgiveness.

14   Q    2013?

15   A    Yes, I was angry.

16   Q    Now, this -- we're looking now at your original complaint

17   that you filed in 2013.  If you would turn to Exhibit 1 of that

18   complaint.

19            THE COURT:  Which tab?

20            MR. SPARKS:  I'm sorry, Your Honor.  I keep doing

21   that.  Tab 3.  Tab 3.

22   BY MR. SPARKS:

23   Q    You said earlier that -- first you said you didn't know

24   Peter Tran's name, and I want to talk to you a little bit about

25   this affidavit that you attached as Exhibit 1  to your

Morgan - Direct / By Mr. Sparks                    65

1   complaint.  We're at Tab 3, Exhibit 1.  First of all, did you

2   attach this affidavit from Rodney Williams (phonetic) to your

3   original complaint in this case?

4   A    Yes, I did.

5   Q    Where'd you get it from?

6   A    This was provided to me from my client.

7   Q    From Ms. Morrison?

8   A    That's correct.

9   Q    Are you aware that it was also attached to her grievance

10  response?

11  A    No.

12  Q    Well, in the first paragraph, midway through, it says,

13           "Among the defendants was Peter Tran and his attorney

14           at first was Donald Moye, who wanted to be taken off

15           the case.  Stella Morrison wanted to be Peter Tran's

16           attorney for records.  Judge Walker allowed the

17           substitution after admonishing Ms. Morrison to be

18           ready for trial and that Mr. Tran's case would

19           probably be reached that day."

20  Did I read that correctly?

21  A    Yes, you did.

22  Q    So, Mr. Morgan, in the affidavit that you attached to the

23  original complaint in this case, you specifically reference the

24  Peter Tran case being in Judge Walker's court under oath by

25  Rodney Williams, the bailiff, don't you?

1  A    Yes.

2  Q    Did you read this affidavit before filing the complaint?

3  A    Well, yes.  And may I explain?  Complete my answer?

4           **THE COURT:**  Yes, you may.  Go ahead.

5  **BY MR. SPARKS:**

6  Q    Of course.  Of course.

7  A    This affidavit does not identify Peter Tran as the person

8  who was the subject of the Grand Jury testimony.  This

9  affidavit does not tell me that Ms. Morrison was in trial in

10  Judge Gist's court all day and then was called to a

11  simultaneous trial in Walker's court.  My reason for attaching

12  it, Your Honor, was right here, the second to last paragraph.

13  And I'd like to read it.

14           "The problems with Ms. -- Mrs. Morrison have been

15            going on since Judge Walker first defeated her in the

16            first election for the 252nd Criminal District Court

17            and has continued since defeating her husband, Kermit

18            Morrison in March Primary 2006."

19  My complaint is very clear under both my 1983 and my 1981

20  causes of action that the hostility that Layne Walker had

21  toward Ms. Morrison, which I'm sure she would agree with, is

22  based upon her race and that she ran for office against him and

23  that her husband ran for office against him.  This is stated on

24  repeated grounds in my complaint.  And that's why I attached

25  the affidavit.  The significance of Mr. Tran in my mind at that

Morgan - Direct / By Mr. Sparks                    67

1   time was like any other name I heard, the Yates and all the

2   other different names of her clients.

3   Q    Well, let me ask you this then, Mr. Morgan.  If you didn't

4   know -- if you were just pleading vaguely that something

5   happened to her in Judge Gist's court -- and at this time, you

6   didn't even know when it happened, right?

7   A    The original complaint, that's correct.  Ms. Morrison was

8   unable to tell me a year.

9   Q    Did you --

10  A    I was hoping to obtain discovery, so that I could find

11  out.

12  Q    Do you really think that that was a good -- you had a good

13  faith basis to file a complaint against Judge Walker when you

14  didn't know when the incident occurred, where the incident

15  occurred, or how the incident occurred?  Do you think that's a

16  good faith basis to proceed with a Federal complaint against a

17  judge?

18  A    Okay.  Well, you're wrong on one of the most important

19  facts.  I didn't know when the incident occurred.  Under both

20  Section 1981 and Section 1983, if one incident in a series is

21  within the statute of limitations, Federal law allows tolling

22  backwards in time.  Since the assault in the hallway occurred

23  in 2013, I knew that any prior acts demonstrating a history of

24  antagonism, based upon her politically running for office

25  against him, which is what Rodney Williams swore to, would be

1    pertinent.  I believed that the allegations that went to Grand

2    Jury stemmed from a statement that she made regarding -- a

3    misstatement she made regarding a  probationer's status while

4    she was in court before Judge Gist.  And as she explained, when

5    she saw the Peter Tran transcript and explained that she had

6    simultaneous trials in two courts on the same day, I was very

7    confused.  I had to get a -- more of an explanation and that's

8    when I said, this must be dismissed, because I made an error.

9    Q    So you were relying on these affidavits to draft the

10   complaint; is that right?

11   A    This affidavit in this paragraph here,  second to last

12   paragraph, directly corroborated and supported my theory of the

13   case, and supported the 1981 and 1983 theories of the case of a

14   pattern of acts, based upon race and her political activities

15   against Judge Walker.

16   Q    But nowhere in the complaint do you mention Judge Gist's

17   court, do you?

18   A    I believe that was in the first amended, when Judge

19   Hawthorn, without you filing a Motion for More Definite

20   Statement, because you certainly could have -- Judge Hawthorn -

21   - I'm going by memory -- issued an order for me to file a

22   Motion for More Definite Statement.  At that time, I

23   interviewed Ms. Morrison.  I filed a more definite statement,

24   based upon my interview with her and Judge Hawthorn's, I

25   believe, seven questions, to the extent she could remember.

Morgan - Direct / By Mr. Sparks                    69

1    And it was after I filed that complaint, at some point, Mark, I

2    don't remember when, you produced the reporter's record to me.

3    And I don't remember when it was.

4    Q    Mr. Morgan, we're talking about the original complaint

5    that I have open in front of you right now.  Could you focus on

6    that complaint, please, sir?  At the time that you wrote the

7    original complaint and filed it, did you mention the name Judge

8    Gist anywhere in the complaint?

9    A    I don't believe I did.

10   Q    Let's look at the next affidavit that you attached.  Do

11   you see this affidavit?  It's dated March 21st, 2013.  Do you

12   see this affidavit?

13   A    Yes, I do.

14   Q    Mr. Morgan, this is Ms. Morrison's affidavit, isn't it?

15   A    Yes, it is.

16   Q    Mr. Morgan, the third paragraph is where she's talking

17   about this door incident, right?

18   A    Yes.

19   Q    Do you believe your client's sworn testimony -- or did you

20   believe your client's sworn testimony as she provided it to you

21   back then in 2013?

22   A    I believe that she had memory issues, but she was doing

23   the best that she could.

24   Q    Did you believe this client's sworn testimony at the time

25   that you drafted the original complaint, and did you rely on

1   it?

2   A    I relied on it, and yes, I believed it.  However, to

3   complete my answer, I was -- I assumed that discovery would

4   allow me to get more specific facts, because even in 2013, I

5   determined in my opinion that she had some memory deficits.

6   Q    All right.  So we see where Ms. Morrison has told you

7   under oath in 2013 that she opened the secure door that leads

8   to Judge Walker and Judge Stevens' office.  Do you see where

9   she says secure door?

10  A    Yes.

11  Q    And then do you see here, again, secure -- then opened the

12  secure door, and she's telling you twice it was a secure door,

13  right?

14  A    Yes, I've seen it.

15  Q    We go back to where you pled it in the complaint.  You

16  reference a public hallway --

17  A    Yes.

18  Q    -- in the complaint; is that right?

19  A    Yes.

20  Q    She was, in fact, behind a secure area; wasn't she,

21  Mr. Morgan?

22  A    Yes and no.  The answer was that Judge Walker put in that

23  door.  It was a public hallway.  And furthermore, no member of

24  the public was ever excluded from it.  All they had to do was

25  identify a reason.  I know for a fact, because I've been back

1   there as an attorney and I've been back there on other court

2   business that members of -- regular citizens have been in that

3   hallway, the press has been in that hallway, criminal

4   defendants, all members of the Bar.  What I pleaded and what I

5   still believe is true, is that Judge Walker ruled that only

6   Stella Morrison, only  her and no one else, could not be in

7   that hallway.

8   Q    Mr. Morgan, I'm just asking you that your client swore to

9   you under oath that it was a secure door twice, didn't she?

10  A    Mark, I think I've answered your question.

11       **THE COURT:**  He's answered your question.  Let's move

12  on.

13  **BY MR. SPARKS:**

14  Q    You mentioned Harper v. Merkel.  It's been ruled in this

15  case by Judge Hawthorn -- we're at Tab 5 -- to have, according

16  to the 5th Circuit that it's virtually without precedential

17  value, on Page 8 of 16.  Do you see that, or do you recall that

18  from Judge Hawthorn's opinion?

19  A    Absolutely.

20  Q    And that's from the  Fifth Circuit, the McAllister case,

21  the Bradley case, the Stump case, the Harlow case.  These are -

22  - he string cites a whole bunch of cases there, doesn't he?

23  A    Yes.

24  Q    So when you filed this case, do you agree that the case

25  you continue to cite Harper v. Merkel was, according to the

1   Fifth Circuit, "virtually without precedential value"?

2   A    Yes and no.  And here's the answer.  Harper v. Merkel,

3   according to the  Fifth Circuit decision cited by Magistrate

4   Hawthorn is limited to its extreme facts.  The  Fifth Circuit

5   has never ruled Harper v. Merkel.  Additionally, on the appeal

6   of Ms. Morrison's case to the  Fifth Circuit, the  Fifth

7   Circuit had another opportunity to overrule it.  It did not

8   overrule it at all.  It's still good law, limited to its

9   extreme facts.  I believe, still believe that those facts are

10  extremely analogous to the factual pattern that Ms. Morrison

11  related.

12  Q    Eventually related after about a year or two into the

13  lawsuit, right?

14  A    Okay.  No, I disagree with that.  Because we talked about

15  the assault in the hallway.  There's no immunity for that.  I

16  couldn't find a single case.  No case would extend judicial

17  immunity for one judge controlling access to another judge's

18  chambers.  I think it's ludicrous legally.  Additionally, the

19  Forrester case, United States Supreme Court has limited

20  judicial immunity to only the adjudication -- the act of

21  adjudicating a case.  So when you look at Harper v. Merkel, I

22  had a duty in my briefing -- and I did this before the  Fifth

23  Circuit -- to say, yes, it's limited to its facts.  Here are

24  the facts.  Here are my client's.  Here's what the Court looked

25  at in assessing the motivation of Judge Harper or Judge Merkel

1    and here's what I pleaded.

2    Q    So, Mr. Morgan, at the time that you met with Ms. Morrison

3    and drafted this complaint, you knew that she was having memory

4    problems in relaying certain facts to you?

5    A    I  knew that discovery was going to be necessary to me --

6    for me to fully present her case, certainly.  And that's always

7    the case.  Whenever a lawyer files a lawsuit, once they do

8    discovery, the pleadings get refined.  Always.  There's never

9    an exception to that.

10   Q    The question is though, you-all have been talking about

11   her memory problems and how she was unable to remember things

12   over this two-day interview.  Do you recall that discussion we

13   had?

14   A    Yes, I do.

15   Q    Okay.  So at the time before you filed this lawsuit, you

16   knew that your client had memory problems and you also knew the

17   case you were relying upon had, according to the  Fifth

18   Circuit, "was virtually without precedential value"?  You knew

19   those things before you filed this lawsuit?

20        **MR. MORGAN:**  Well, number one, I'm going to object as

21   asked and answered.  And --

22        **THE COURT:**  What was the question again?  I know we

23   talked about --

24        **MR. SPARKS:**  Before he -- Your Honor, may I rephrase?

25        **THE COURT:**  Yes, please.

1  **BY MR. SPARKS:**

2  Q    Before you filed this lawsuit, the original complaint, did

3  you know that Ms. Morrison was having memory problems in

4  relaying facts to you, yes or no?

5  A    On some of the details of her allegations, but the

6  allegations and the pattern to this day still fit within Harper

7  v. Merkel, which the  Fifth Circuit could have overruled in

8  2016 and they again didn't overrule it.

9  Q    And so you knew before you filed this lawsuit that the

10 case you're relying upon had been ruled by the  Fifth Circuit

11 to have "virtually -- was virtually without precedential

12 value," yes or no?

13 A    You've asked that, and I will state again, I've read those

14 cases --

15 Q    Right.

16 A    -- and I put in the complaint the facts of Harper v.

17 Merkel, to show the good faith basis of Ms. Morrison's lawsuit.

18 I discussed it in every complaint, because I wanted the Court

19 to know I am relying on a case that is good law, but is limited

20 to extreme facts, which I believe I have shown in this case.

21 Q    All right.

22          **MR. SPARKS:**  I'm moving along, Your Honor.

23          **THE COURT:**  Okay.

24 //

25 //

Morgan - Direct / By Mr. Sparks                                75

**BY MR. SPARKS:**

1  **BY MR. SPARKS:**

2  Q    All right.  Mr. Morgan, did your animus towards the

3  lawyers in this case or Judge Walker ever cause you to put

4  something in a complaint that had a motive that wasn't pure to

5  harass or annoy or embarrass?

6  A    Like yourself, your first Motions to Dismiss were

7  stricken, because they were full of just personal attacks, I

8  did put some personal attacks and comments that I should not

9  have, and I withdrew the complaint and substituted another one.

10 That's correct.  And it was about that time that Judge Hawthorn

11 issued his advisory prohibiting any further personal attacks,

12 which I scrupulously followed, but which you did not, because

13 your Motion for Sanctions contained five pages of irrelevant

14 attacks, including seeking to sanction me based  upon

15 Mr. Klein's publications in his blog.

16 Q    Are you through, John?

17 A    Yes.

18         **THE COURT:**  Let's take about a five-minute restroom

19 break and let's get a glass of water.  We'll be in recess for

20 about five minutes.

21         **THE CLERK:**  All rise.

22     **( A recess is taken from 4:14 p.m. to 4:32 p.m.)**

23         **THE COURT:**  Go ahead and proceed.

24     **MR. SPARKS:**  Your Honor, I'm coming to the end.

25         **THE COURT:**  Okay, thank you.

**EXCEPTIONAL REPORTING SERVICES, INC**

1        **MR. SPARKS:**  All right.  May I proceed, Your Honor?

2        **THE COURT:**  Yes, you may.

3        **MR. SPARKS:**  If it please the Court, Counsel.

4              **DIRECT EXAMINATION (CONTINUED)**

5    BY MR. SPARKS:

6    Q    Mr. Morgan, in one of the amended complaints that you

7    asked to file in this Court, you -- first of all, you sought to

8    add me as a defendant; is that right?

9    A    I withdrew that complaint.  We've already discussed that

10   issue.

11   Q    It's been filed in the docket papers in this case.  And I

12   want to ask you a few questions about your good faith belief

13   before you filing this in the papers in this case, Mr. Morgan.

14   A    Then I need to formally object, Your Honor, because I

15   withdrew the complaint personally to the Court's advisory, so

16   it's no longer at issue.

17   Q    This --

18         **THE COURT:**  Hold on a second.  Your objection's

19   overruled.  It was filed.  It was filed in the record in a case

20   after the original complaint was filed.  Let's proceed.

21         **MR. SPARKS:**  Mr. --

22         **THE WITNESS:**  Which tag number, please?

23         **MR. SPARKS:**  I'm sorry, Your Honor.  It's document

24   36-2; so it's tab --

25         **THE WITNESS:**  Tab 6.

1            **MR. SPARKS:**  -- 6.

2            **THE WITNESS:**  Which page?

3            **MR. SPARKS:**  Page 18, footnote 1.

4    BY MR. SPARKS:

5    Q    Are you there, Mr. Morgan?

6    A    Yes.

7    Q    Did you write this complaint?

8    A    Yes.

9    Q    And at first, did you intend to file this complaint with

10   the Court?

11   A    Yes.

12   Q    Footnote 1 says that you have reported to both federal and

13   state law enforcement that Walker met with Provost Umphrey Law

14   Partners, including Joe Fisher, and Mark Sparks, and others to

15   have Morgan jailed without charges on a six-month no-hold -- or

16   excuse me -- no-bond hold in 2012.  Did I read that sentence

17   correctly?

18   A    Yes, you did.

19   Q    What was your good-faith basis for placing that allegation

20   in the pleading?

21   A    I was told that it was a fact.  And so I reported it to

22   the Texas Rangers, and also to the FBI.

23   Q    Who told you that?

24   A    Mr. Philip Klein.

25   Q    Did he tell you anything else, other than he discovered

1   that?

2   A    What he told me -- let me finish reading the footnote,

3   please; give me a moment.

4   Q    I'm going to take it sentence by sentence, Mr. Morgan.

5   A    Well, I still need to --

6            **THE COURT:**  Let him read the footnote.

7            **THE WITNESS:**  -- read the footnote, please.

8            **MR. SPARKS:**  Forgive me.

9            **THE COURT:**  Go ahead.

10           **THE WITNESS:**  Okay, I finished reading the footnote.

11  **BY MR. SPARKS:**

12  Q    Did you have any other basis for this footnote, other than

13  Philip Klein?

14  A    Yes.

15  Q    What?

16  A    I began receiving what I consider terroristic threats from

17  Thomas Rexlauv (phonetic).  He's a member of the -- self-

18  professed member of the Aryan Brotherhood.  I've received -- I

19  couldn't count them; maybe 50 to 60.  I also was -- another

20  Aryan Brotherhood member JoJo Kamp (phonetic) was -- became

21  involved.  I was receiving threats from white supremacists to

22  my health, to my physical safety.  And it terrified me.  So

23  this is what I reported to the FBI and the Texas Rangers.

24  Q    Mr. Morgan, do you have any evidence to share with the

25  Court today that either myself, Judge Walker, or Joe Fisher

1   ever conspired with the Aryan Brotherhood to have you shanked

2   in jail?

3   A    Mr. Sparks, the relevant inquiry is, did I believe it in

4   good faith, and did I report it.  Yes, I did.  If it had been a

5   deliberately false report, then the FBI would've done something

6   about it.  I did report it.  Now, as I sit here today, do I

7   believe this as I sit here in front of Judge Giblin?  The

8   answer is, I don't know.

9   Q    So you still think today that it could be that

10  Judge Walker, myself, and Joe Fisher conspired with the Aryan

11  Brotherhood to have you shanked in prison?

12  A    The answer is, I don't know whether or not, as I sit here

13  today, it is true.  At the time, it terrified me.  And when I

14  received emails, corroboratory emails, and threats from Aryan

15  Brotherhood, I did believe that it was true, yes, at the time.

16  Right now, I don't know whether it's true or not, Mark.

17  Q    But Mr. Klein told you this?

18  A    Again, I've told you the source of the evidence.

19  Mr. Klein's reporting, in my mind, which I did not know was

20  true or not, but it certainly scared me, was then in my mind

21  corroborated with the involvement of people who claim to be

22  Aryan Brotherhood members.

23  Q    Nothing was ever done by the FBI or law enforcement

24  against myself, Mr. Fisher, or Judge Walker, was it?

25  A    The answer is, I don't believe so.  But I am not privy to

1    what the FBI does or does not do.  I did interview with them.

2    Q    What did you tell them?

3    A    Pretty much the same thing written down.

4    Q    You told them what Philip Klein told you?

5    A    Well, I gave them what I believed was my side of the story

6    and my concerns for my safety, yes.

7    Q    Did Mr. -- sorry, I cut you off, John; go ahead.

8    A    Yeah, I had concerns for my safety.  They gave me an

9    interview.

10   Q    Mr. Morgan, do you have any documentary evidence to

11   support that I, Joe Fisher, or Judge Walker ever tried to kill

12   you in prison, have you shanked in prison, or conspire with the

13   Aryan Brotherhood?

14   A    I have to give you the same answer; no.  I've identified

15   the sources of the information and the reason why I believed it

16   at that time.  I still receive threatening emails from Thomas

17   Rexlauv.  The last one was a few weeks ago.  And I know that

18   Mr. Klein has received them.  I know that Mr. Klein has

19   received emails to the effect of Mr. Rexlauv threatening to

20   rape his daughter to death.  And these emails reference Layne

21   Walker, many of them.  I do not believe Layne Walker wrote the

22   emails.  And as I sit here today, he may be entirely innocent

23   of any involvement.  At the time, when I was terrified, I

24   thought it was the case.  As I sit here today, I do not know.

25   Q    So at the time, just so it's clear for the record, you had

Morgan - Direct / By Mr. Sparks                          81

1   Philip Klein telling you that Judge Walker, myself, and Joe

2   Fisher were in this conspiracy with the Aryan Brotherhood and

3   you had emails from Thomas Rexlauv; is that right?

4           **MR. MORGAN:**  Your Honor, I object as asked and

5   answered, but yes, that is correct.

6           **THE COURT:**  That's been asked and answered; let's

7   move along.  Sustained.

8   **BY MR. SPARKS:**

9   Q    Why not sue Thomas Rexlauv?  Why sue me?  If he's the one

10  who's got the emails that you've now been provided, you've got

11  documentary evidence, why are you suing me?

12  A    I'm not suing you.  I have no case against you.  I

13  withdrew the complaint.  You were never served with anything,

14  to my knowledge.

15  Q    Would you like to tell the Court why you withdrew the

16  complaint?  Didn't I serve you --

17  A    Yes.

18  Q    -- the Rule 11 Safe Harbor Provision that suggested to you

19  that these were brought in bad faith?

20  A    You did.  And that's what's very interesting.  Under Rule

21  11; Subsection C; Subsection 2, a party who believes an

22  allegation is frivolous sends a letter stating that the

23  allegation may be frivolous and gives the opposing party 21

24  days to either substantiate it or withdraw it.  Since I could

25  not substantiate it with proof, I decided that it would be

Morgan - Direct / By Mr. Sparks                              82

1    prudent to withdraw it.  And I also realized that it was

2    improper to put into a federal court complaint, as were your

3    personal attacks.  But you did not send me a Rule 11 with the

4    Safe Harbor 21 days on the Peter Tran transcript, which I've

5    always found very strange.

6              **THE COURT:**  Just answer the question.  Listen to the

7    question and answer the question.  Ask your next question.

8    **BY MR. SPARKS:**

9    Q    My next question, Mr. Morgan, is look at the next page.

10   This is something you continue to put in pleadings.  Bottom

11   line, page 19, paragraph 26.  Because the Texas Judicial

12   Commission gave Walker a firm deadline of January 22nd, 2014 to

13   resign from the bench or face forced removal; what was your

14   basis for that allegation?

15   A    Mr. Klein told me that that was actually going to occur.

16   And so I included it with the hope of obtaining discovery.

17   Again, people make allegations, and discovery either supports

18   them or does not.

19   Q    Are you aware that it's actually the law in Texas that a

20   judge can't resign in lieu of discipline without it being

21   public record accessible on the website, if you just go to the

22   website?

23   A    No, I didn't, I did not.

24   Q    Tab 17; this is a printout from the SCJC Texas.gov public

25   information Rule 12, from the State Commission on judicial

1    conduct -- tell me when you're to tab 17.

2    A    I have reviewed this exhibit, Mr. Sparks.

3    Q    Do you think it's the law?  Do you believe in good faith

4    it's the law?

5    A    Yes, now that I've read it, yes.

6    Q    And here, right off their website, also, under this

7    section, suspension orders and proceedings related thereto, and

8    voluntary agreements to resign in lieu of disciplinary

9    proceedings upon their acceptance by the commission are

10   available to the public; is that true?

11   A    Yes.  I've subsequently learned that, yes.

12   Q    And in fact, on the same website, Mr. Morgan, it took me

13   maybe three minutes to find this yesterday, or get it for and

14   print it out.  They actually list the judges who have resigned

15   from judicial office in lieu of disciplinary action, don't

16   they?

17   A    Yes.  And Judge Walker's name is not on there.  I did

18   review this.

19   Q    Right.

20   A    Correct.

21   Q    So my question is, rather than rely on Mr. Klein for

22   writing your complaints, did you have any obligation before

23   making these allegations against Judge Walker or myself to do

24   any other independent investigation?

25   A    Mr. Sparks, none of this is relevant to the merits of

Morgan - Direct / By Mr. Sparks                          84

1   Ms. Morrison's case.

2   Q    It's relevant to the ability for you to draft a complaint

3   when you're not angry, as an attorney, investigating yourself

4   in good faith the allegations, and investigating yourself the

5   law, and not relying on Mr. Klein to tell you what the law is.

6           **THE COURT:**  To the --

7           **THE WITNESS:**  He --

8           **THE COURT:**  Wait a second.  Wait a second.  The --

9   that -- Mr. Sparks, what page is that that we're talking about

10  in the complaint, document 36, page 19 of document -- for the

11  record, it's page 19 of document 36 -- it's in a complaint that

12  because the Texas Judicial Commission gave Walker a firm

13  deadline to resign -- of January 22nd to resign from the bench

14  or face removal.

15          Mr. Morgan has testified that he got that information

16  from Mr. Klein.  The question is, did he have -- does

17  Mr. Morgan think that he had any duty to do anything to

18  substantiate that information he received of Mr. Klein?

19          I think there's been a speaking objection from

20  Mr. Morgan to that -- of the relevance to that extent.  That's

21  overruled because it is in the complaint.  So you can answer

22  the question, was -- did you believe that you had a duty to do

23  any type of investigation to substantiate this information that

24  you received from Mr. Klein?  So you can answer that question.

25          **THE WITNESS:**  The answer was yes.  And I did do

1   something.  By looking at the website, I know that it states

2   that all complaints and the disposition of those complaints are

3   confidential.

4           I was not aware of what you produced.  But having

5   looked the website -- and it's on there, and I'm certain about

6   this, when it says, complaints and the Commission's disposition

7   of them is confidential -- I determined that I probably could

8   not obtain any more information at that time until I depose

9   Judge Walker -- or former Judge Walker.

10  **BY MR. SPARKS:**

11  Q    So do you now agree, Mr. Morgan, that Judge Walker did not

12  resign in lieu of discipline; can we at least agree on that

13  fact?

14  A    After I reviewed what you produced, the answer appears to

15  be yes.

16  Q    Did Kathy Bradford tell you he was being suspended?

17  A    No, she more interviewed me.  But I don't recall those

18  terms.

19  Q    So it's clear -- let's just move on.

20          **THE COURT:**  Very briefly.

21          **THE WITNESS:**  I'm sorry?

22          **THE COURT:**  No, I said, very briefly.

23          **MR. SPARKS:**  Yes, sir.

24  //

25  //

1   **BY MR. SPARKS:**

2   Q     In Judge Hawthorne's order granting the Defendant's motion

3   to dismiss --

4   A     Which tab, please?

5   Q     Oh, okay, tab 5.

6   A     Thank you.

7   Q     Yeah.  Tell me when you're there.

8   A     I have it.

9   Q     Okay.  Now, his last page includes a footnote.  And you

10  would agree with me, it's directed at you, right, Mr. Morgan?

11  Page 16 of 16, footnote 5.

12  A     These are the seven questions that I referenced earlier in

13  my testimony, correct.

14  Q     If Morrison decides to file on an amended complaint, she

15  should answer the following questions:

16         When did Walker fabricate perjury charges?  How was

17  that accomplished?  What evidence is there that Walker knew the

18  perjury charges were false?  Did the perjury charges concern

19  activity in his court?  What was Tom Maness's  personal

20  involvement in the activity?  Did Morrison appear voluntarily

21  before the Grand Jury?  And what facts suggest Walker's

22  motivation was based upon retaliation and personal animus, and

23  not for other causes?  Did I read that correctly?

24  A     Yes, you did.

25  Q     This order was signed January 2nd of 2014; is that right?

1    A    Yes, that is the date.

2    Q    Is that when you called in Ms. Morrison, to have this

3    mesmerizing discussion with her?

4    A    Well, first of all, mesmerizing is not accurate.  But I'm

5    happy to answer your question.

6    Q    Please do.

7    A    Okay.  After I received this order, I did schedule a

8    meeting with Ms. Morrison.  I can't tell you the date.  I

9    interviewed her over these seven questions.  Peter Tran's name

10   was not mentioned.  I then put that information, to the extent

11   she had information, into an amended complaint.  At some point

12   after that, you produced me the Peter Tran reporter's record.

13   Now, that being said, she was not able to remember many of the

14   specific facts.  But in any litigation, without discovery, you

15   have to go with what you have.  I believe that what I pleaded

16   was more than sufficient to answer the judge's questions to

17   permit discovery.

18   Q    We're almost a year into the lawsuit at this point, right?

19   It was filed in early 2013, Mr. Morgan?

20   A    I believe --

21   Q    May maybe?

22   A    -- May.  I believe --

23   Q    You're right.

24   A    -- it was May.

25   Q    Okay, we're about seven months into the lawsuit, right?

1   A    And I think your answer came down in June, so six to

2   seven, yeah --

3   Q    Yeah.

4   A    -- well, let's see, beginning of January, six -- about six

5   months, Mark.

6   Q    So Judge Hawthorne ordered you -- you'd agree at this

7   point you were ordered to get answers to these questions,

8   correct?

9   A    Well, he left it up to me and my client whether we were

10  going to file an amended complaint on that issue; okay?  It's

11  not an order; it wasn't an order for a more definite statement.

12  That's what I was explaining to Judge Giblin.  You had a right

13  as Walker's counsel to file a motion for a more definite

14  statement.  And the Court had a right sua sponte to issue an

15  order.  But I did treat this as that.  And I met with her to

16  try to resolve these issues.

17  Q    And this question, did the perjury charges concern

18  activity in his court, do you see that question there?

19  A    Absolutely.

20  Q    You didn't withdraw -- tab 14 -- you didn't withdraw your

21  complaint until August; is that right?

22  A    Just a second.

23  Q    Sure.  It's tab 14, Mr. Morgan.

24  A    August 28, that is accurate.

25  Q    So what is that, seven, eight months, from

1    Judge Hawthorne's order for you to determine whether or not it

2    was filed or occurred directly in Judge Walker's court?

3    A    Yes, respectfully, we've gone through this.  Yes, the

4    delay in time is a error.  And I take responsibility.  But

5    there was no activity in the case in the meantime.  When the

6    judge reminded me, I then made it a priority.

7    Q    In your affidavit --

8         **MR. SPARKS:**  Rounding third and coming home, Your

9    Honor, I promise.

10   **BY MR. SPARKS:**

11   Q    Mr. Morgan, in your affidavit, you tell us that you

12   requested attorney's fees at the rate of 450, because you

13   realized this case would be very complex, both factually and

14   legally, and it would consume a tremendous amount of time and

15   resources for you to handle this effectively on behalf of

16   Ms. Morrison.  Do you still agree with that statement?

17   A    Yes, I do.

18   Q    If it would consume a tremendous amount of your time,

19   Mr. Morgan, wouldn't it also consume a tremendous amount of my

20   time in defending Mr. -- excuse me -- defending Judge Walker?

21   A    I would say generally that's a correct statement.  I can

22   say, I know Judge Giblin has handled 1983 cases.  I think it is

23   accurate to say that the burden on the plaintiff's lawyer tends

24   to be much higher than on the defense attorney, because the

25   defense attorney's job is to plead all of these affirmative

Morgan - Direct / By Mr. Sparks                    90

1   defenses; and then I've got to navigate through the minefield.

2   But yes, 1983 cases are difficult and time-consuming, and the

3   files are very voluminous; all of them are.

4          **MR. SPARKS:**  Your Honor, I think that's all I have.

5          **THE COURT:**  Okay.  Thank you, thank you so much.

6          **MR. SPARKS:**  Wait, Your Honor, (indiscernible).  I do

7   have one more.

8          **THE COURT:**  One more.  I'll give you one more.

9          **MR. SPARKS:**  Thank you.

10  **BY MR. SPARKS:**

11  Q    Tab 20 -- excuse me -- tab 20.  During the pendency of

12  this lawsuit, Mr. Morgan, did you pay for a ad to run in the

13  Beaumont Enterprise while this lawsuit was pending to host a

14  rally that included or was to include Quanell X, and did you

15  attend that rally?

16  A    I gave a contribution of $250.  I did not know the

17  contribution was going to be for a specific ad.  And I was very

18  distressed that my name was placed on that ad.  I did not agree

19  to the placement of my name on that ad.  And I then

20  subsequently severed any relationship with that reporter

21  because that was not divulged to me.  There was no rally.  I

22  did show up.  There was nobody there.

23  Q    It's your testimony there was no one there at all?

24  A    It was me, the reporter, Mr. Griffin (phonetic), maybe a

25  few people.  There was somebody from the press; but I don't

1    remember that person's name.  I don't recall it being more than

2    just a handful of people.  There certainly was no rally that

3    I'm aware of that occurred against Judge Walker, and no Quanell

4    X or anyone else.

5    Q    Mr. Gripping (phonetic) was there.

6    A    Yes, he was.

7    Q    Your media consultant, is that who you paid, your media

8    consultant, Mr. Gripping?

9    A    I paid $250 as a contribution, yes.

10   Q    Contribution for what; why would you give him a

11   contribution?

12   A    Well, there's something called the 1st Amendment,

13   Mr. Sparks.  People have a right in this country, even in

14   Jefferson County, to express their opinions --

15   Q    What was --

16   A    -- and gather peacefully.

17   Q    -- opinion you wanted him to express, Mr. Morgan?

18   A    I wasn't asked to give a speech; I was asked if I would

19   contribute to what -- a rally; and I did.

20   Q    Is it your sworn testimony that if I get a -- have a

21   discussion with Mr. Gripping, he's going to say it was his

22   decision to have the rally and not yours?

23   A    Number one, I don't know what he's going to say.  Number

24   two, I've never communicated with Quanell X.  I don't know the

25   man.

Morgan - Direct / By Mr. Sparks                               92

1   Q    Not Quanell X; Mr. Gripping was my question.

2   A    I don't know what he would say, Mr. Sparks.  How could I

3   possibly know that?

4   Q    But it's your sworn testimony that the only reason this

5   rally occurred is not because of you, but because of something

6   he did?

7   A    I did not organize the rally.

8   Q    Did you ask him to organize it?

9   A    My recollection of events is that he told me a rally was

10  going to occur and that he had spoken with Mr. Quanell X, and

11  Mr. Quanell X was going to attend the rally, and would I please

12  contribute.  I don't remember anything more specific than that.

13  That was a long time ago.

14          MR. SPARKS:  I have the video from the rally.

15  Instead of watching it, can I just tender it to the Court so

16  the Court can watch it?

17          THE COURT:  Yes, you may.

18          MR. SPARKS:  Thank you.  Nothing further.

19          THE COURT:  Okay, thank you.

20          Thank you, Mr. Morgan.

21          THE WITNESS:  Your Honor, may I --

22          THE COURT:  Yes, you --

23          THE WITNESS:  -- testify direct?

24          THE COURT:  Yes, you may.

25  //

1          **JOHN MORGAN, PLAINTIFF'S WITNESS, PREVIOUSLY SWORN**

2               **DIRECT EXAMINATION (VIA NARRATIVE)**

3               **BY MR. MORGAN (THE WITNESS):**

4          Okay.  Your Honor, I filed tab 7, Plaintiff's first

5   amended complaint after Judge Hawthorne asked those seven

6   questions.  As I understand it, what's really relevant here is

7   whether or not I intentionally withheld information pertaining

8   to Peter Tran.

9          Now, the Court can review; but on page 7 --

10         **THE COURT:**  What tab are we on, 7?

11         **THE WITNESS:**  Tab 7 --

12         **THE COURT:**  Tab 7, page 7.

13         **THE WITNESS:**  -- page 7.

14         **THE COURT:**  Okay, I'm with you.

15         **THE WITNESS:**  Okay?  I interviewed Ms. Morrison at

16   length.  And I included, as best as I could in a paraphrasing

17   form, her allegations, which I always thought were more than

18   sufficient to defeat judicial immunity based on my

19   understanding of the facts; okay?

20         So for example, I put on page 7, Walker managed to

21   arrange to have the Jefferson County District Attorney's Office

22   convene a Grand Jury to consider falsified perjury charges

23   against Morrison.  Based upon these fraudulent charges,

24   Morrison felt compelled to appear before the Grand Jury for

25   almost five hours, which was a very humiliating and degrading

1   situation for her.

2          Included in Mr. Sparks' exhibits is a statement from

3   Ms. Morrison that she did attend Grand Jury for five hours.  So

4   her memory was correct on that.

5          The biggest issue was I was under the impression that

6   the alleged misrepresentation pertaining to her client's

7   probationary status occurred in Judge Gist's court.  And that's

8   what I wrote on page 8; okay?

9          I put down two-thirds of the way down, "In fact,

10  Walker ordered Maness to come up with false charges, so they

11  fabricated perjury charges against Morrison based on the

12  statement she made regarding client's probationary status in

13  the case pending before Judge Gist, the presiding judge of drug

14  court".

15         Now, my reason for believing it was in Judge Gist's

16  court, Your Honor, was because she told me she was in trial

17  that day in Judge Gist's court.  There was no reference to a

18  separate trial proceeding that day.

19         Now, I've been practicing law -- licensed to practice

20  law since 1990 -- yeah, 1990.  And I've never seen a situation

21  where a lawyer is in trial in two different courts in the same

22  day.

23         After Ms. Morrison authenticated the Peter Tran

24  transcript and explained the situation to me, that was the

25  first time I arrived at the understanding that she had been

1    called to a simultaneous trial in Judge Walker's court and the

2    Peter Tran issue was raised there.

3           If you look at my complaint, I don't reference Peter

4    Tran as a name, because she did not recall who the person was.

5    And I had hoped to take discovery on it.  But once I realized

6    that this fact was in error, I advised her, and I did dismiss

7    those allegations.

8           That's it, Your Honor.

9           **THE COURT:**  Okay, thank you.

10          **MR. SPARKS:**  Just very briefly, I want --

11          **THE COURT:**  Just very briefly --

12          **MR. SPARKS:**  Yes.

13          **THE COURT:**  -- two questions at the most.

14          **MR. SPARKS:**  Yes, sir.

15                        **CROSS EXAMINATION**

16   **BY MR. SPARKS:**

17   Q    Do you remember Tom Rugg telling you that Judge Walker had

18   nothing to do with any of these allegations, Mr. Morgan?  Do

19   you remember Mr. Rugg telling you that -- Judge Rugg -- do you

20   remember telling you that?

21          **THE COURT:**  Are we talking about the allegation

22   that --

23          **THE WITNESS:**  I don't know.

24          **THE COURT:**  Hold on just a second; let me clarify.

25   Are we talking about the allegation with Peter Tran, the --

1              **MR. SPARKS:**  The wrongful fabrication --

2              **THE COURT:**  -- wrongful indictment.

3              **MR. SPARKS:**  -- of indictment --

4              **THE COURT:**  Okay, go ahead.  Go ahead.

5              **MR. SPARKS:**  -- yes, Your Honor.

6              **THE COURT:**  Yes.

7      **BY MR. SPARKS:**

8      Q    Do you remember Tom Rugg telling you that, Mr. Morgan?

9      A    No.  I remember him talking about Captain Carr in the

10     Hartman case; but I don't remember that comment on

11     Ms. Morrison's case.

12             **MR. SPARKS:**  Nothing further.

13             **THE COURT:**  Okay.  Thank you, Mr. Morgan.

14             **MR. MORGAN:**  May I step down, Your Honor?

15             **THE COURT:**  Yes, you may.  Thank you, sir.

16       **(Witness steps down)**

17             Mr. Sparks, you rest?

18             **MR. SPARKS:**  Your Honor, I do, with one issue.  I've

19     got the video that I'd like to submit to the Court.  And I have

20     an authentication, a certificate of authentication of the

21     video.  I have it on a zip drive.

22             **THE COURT:**  Mr. Morgan, have you seen the video?

23             **MR. MORGAN:**  No, I have not seen the video, Your

24     Honor.

25             **THE COURT:**  Okay.  Have you shown it to him; have

1   you --

2            **MR. SPARKS:**  I have not.

3            **THE COURT:**  Okay.  I'm not going to -- I'm going

4   to -- I'm not going to take it until he has a chance to look at

5   it and --

6            **MR. SPARKS:**  Okay.  Sure.

7            **THE COURT:**  -- and make any objections that he wants

8   to about it.

9            **MR. SPARKS:**  What I would like to do since we're here

10  is go ahead and submit to the Court the authentication of the

11  video.  May I approach?

12           **THE COURT:**  Yes, you may.

13           **MR. SPARKS:**  And I know that this was not made part

14  any motions, Your Honor.  So I guess I do move to admit this

15  for the purposes of these proceedings.

16           **THE COURT:**  Okay.  I'm not going to -- what I'm going

17  to do is I'm not going to admit it until he's got a -- he sees

18  it and makes whatever objections he wants to.  And this is a

19  video of the rally?

20           **MR. SPARKS:**  This is the rally where Mr. Morgan

21  attends with Mr. Gripping and starts talking to people in front

22  of Jefferson County Courthouse on Sunday about Judge Walker and

23  all their anger they have against Judge Walker.

24           **THE COURT:**  Okay.  Well, I'm not going -- that's not

25  going to be admitted at this point in time.  Like I said, it's

1    going to take me a while to go through the weeds.

2              If you want to offer it after Mr. Morgan -- the

3    parties can talk, if you don't have any objection to it, you --

4    or you can make an objection --

5              **MR. MORGAN:**  I reasonably anticipate, Your Honor,

6    that once I see the video it may refresh facts, I'm going to

7    request the opportunity to testify.

8              **THE COURT:**  How long is the video?

9              **MR. SPARKS:**  Like -- it's not long, Judge, maybe 10,

10   20 minutes.

11             **THE COURT:**  Is it playable on a --

12             **MR. SPARKS:**  Yeah.

13             **THE COURT:**  -- laptop?

14             **MR. SPARKS:**  Yes, sir.  I gave him -- didn't I give

15   him the zip?  Did I -- can I give him -- can I just give him

16   his own copy?

17             **THE COURT:**  Yes.  Yes.  Well, why don't you take a

18   look at it?  And we're going to take another short recess.  If

19   you want that admitted -- is it important to you guys; you want

20   it admitted?

21             **MR. SPARKS:**  I don't have to.  I would like the Court

22   just to know that the rally occurred.

23             **THE COURT:**  And I think we've got that through the

24   testimony.  If you insist on --

25             **MR. SPARKS:**  No.

1          THE COURT:  -- admitting it, I'll give you time --

2          MR. SPARKS:  I don't.

3          THE COURT:  -- for him to look at it.

4          MR. SPARKS:  No, sir, I don't insist.

5          THE COURT:  I think we've seen the ad for it.  And

6    you questioned him extensively about it.  And so unless it's

7    super-important, then it's no big deal.

8          MR. SPARKS:  No, I don't need to; it's not super-

9    important.

10          THE COURT:  Okay, all right, okay.  So you rest.

11          Mr. Morgan, I can give both sides an opportunity to

12   argue or put on whatever testimony they want.  Do you have any

13   testimony that you want to put -- you've already testified, do

14   you have anything else you need to say?

15          MR. MORGAN:  I'd like to call Mr. Sparks to the

16   stand.

17          THE COURT:  Okay.  Mr. Sparks?

18          MR. SPARKS:  Yeah.

19           MARK SPARKS, PLAINTIFF'S WITNESS, SWORN

20          THE COURT:  Thank you so much.

21          THE WITNESS:  John, do I need my binder?

22          MR. MORGAN:  Yeah, I think so, Mark.  I'm going to be

23   short though.

24   //

25   //

**DIRECT EXAMINATION**

**BY MR. MORGAN:**

Q    Do you want some water?  Are you ready?  All right.  I'll try to get directly to it and keep it short.  Mr. Sparks, I believe you've indicated that I have -- that I am suing you. Are there any other -- have you ever been served with a lawsuit filed by me?

A    I didn't indicate that, Mr. Morgan.  I indicated you filed a pleading with the Court asking to sue me.

Q    All right.  And you knew I withdrew that?

A    After I threatened sanctions, yes.

Q    Okay, we're going to get to that.  You also indicated that you believe I represented Mr. Klein against former Judge Walker.  I'm not aware.  Were those -- aren't those all by Larry Watts?

A    No, there were some -- Mr. Morgan, in State Court, when I was at Provost Umphrey, and it was Shane Phelps, you sued Judge Walker and Shane Phelps in the same State Court petition. I think you were on those pleadings.  It might have been Larry Watts, but I thought that you were on there too.  I don't know, he subbed in on this case at some point.  So I get confused when you all aren't together and you are together.

Q    All right.  All right, that's fine.  Now, let's talk about Rule 11.  That is the sanctions rule, correct?

A    Yes, one of them.

1   Q    And you know that Subsection -- Rule 11; Subsection C,

2   Subsection 2, provides what's called a 21-day safe harbor

3   provision?

4   A    Yes, sir.

5   Q    And you sent me one of those letters with regard to my

6   original first amended complaint; and then I withdrew it,

7   correct?

8   A    You did.

9   Q    All right.  Is it true that you never sent me a Rule 11

10  warning letter with regard to the Peter Tran transcript or the

11  allegations in my first amended complaint on file, that said

12  this occurred while she was in trial in Judge Gist's court?

13  A    That's true, just the motions to dismiss, John.

14  Q    Okay.  Now, the question I have for you is, did you -- at

15  the time I filed the amended complaint for Ms. Morrison, after

16  reading Judge Hawthorne's seven questions, did you know about

17  the Peter Tran reporter's record?

18  A    I think I had to get with Judge Walker on that.

19  Q    Okay.  So is it a fair statement in front of this judge

20  that you didn't know the true facts either until you read the

21  reporter's record?

22  A    No, that's not a fair statement; because John Cowan was

23  working with me on the case at the time.

24  Q    Okay.  Then how long had you known that the --

25  Ms. Morrison's allegations of the alleged fabrication of false

Sparks - Direct / By Mr. Morgan                          102

1   criminal charges, which she stands by today, occurred from a

2   proceeding in the 252nd District Court instead of Judge Gist's

3   Court?

4   A    I think these questions are better directed to Mr. Cowan

5   who was more involved with the case at that time.

6   Q    I respectfully disagree.

7        THE COURT:  Wait a second.  Let's stop both sidebars.

8   If you can't answer the question, just say, I can't answer; and

9   let's go ahead and proceed.  So what --

10       THE WITNESS:  Can't answer the question.

11       THE COURT:  Okay.

12  BY MR. MORGAN:

13  Q    Okay.  Here's my issue then.  Is it fair if neither you

14  nor I knew the true facts until the transcript, the reporter's

15  record was prepared, is it fair for either one of us to be

16  sanctioned for not knowing the information?

17  A    Absolutely.

18  Q    Okay.  And before you produced the transcript to me, the

19  reporter's record, how long before did you know of those facts

20  related to Peter Tran before you sent me the reporter's record?

21  A    Again, I can't answer that question; you need to speak to

22  Mr. Cowan about that.

23  Q    I'll rephrase it in a simple way.  Did you unreasonably

24  delay or did you act relatively promptly?

25  A    As soon as we had the -- I think in fact we filed an

1  uncertified portion of the transcript is the thing that you

2  objected to.

3  Q    That's correct, I did.

4  A    So we got it on file as soon as we could.  I think

5  about -- if I remember correctly, I got it from Judge Walker.

6  I got the uncertified portion from Judge Walker.

7  Judge Hawthorne issued an order asking -- I think a seven-day

8  order for a certified transcript.  And then I got the certified

9  transcript.

10  Q    Okay.  So just so it's clear -- and I know that you're

11  diligent; I'm not questioning that -- when you learned of the

12  true facts, you acted promptly?

13  A    Yeah, we wanted the lawsuit dismissed, yes, sir.

14  Q    Okay, all right.

15       **MR. MORGAN:**  That's all the questions I have.

16       **THE COURT:**  Thank you.

17       **MR. MORGAN:**  Thank you.

18       **THE COURT:**  Okay.  Any other witnesses?

19       **MR. MORGAN:**  I have nothing further, Your Honor.

20       **THE COURT:**  All right, thank you.

21       Gentlemen, what I'll do is I'll give each side five

22  or six minutes to point out the strong points of your case.

23  And we've been here for a while.  What time is it?  It's 5:06.

24       Mr. Sparks, I'll give you five minutes, and give

25  Mr. Morgan five minutes.  Because I have -- I may have a couple

1  questions to ask you both.

2      **MR. SPARKS:**  If it please the Court, Counsel.  Your

3  Honor, the standard that we're working under -- the bad faith

4  is just the gravy; it's not required in order to shift the fees

5  in favor of Judge Walker.

6      We've been up and down to the Fifth Circuit twice on

7  this case.  The standard is, if you find quote, "the

8  plaintiff's action was frivolous, unreasonable, or without

9  foundation".

10     So the fact that Ms. Morrison and John Morgan, who is

11  a very intelligent and capable attorney -- and he knows that I

12  think that about him -- the fact that they're in good faith,

13  didn't know what they were doing, didn't know what they were

14  saying, didn't know what they were pleading, that doesn't

15  excuse them under that standard.

16     It's page 3 of our motion to reopen.  It cites the US

17  Supreme Court case of *Christianburg Garment versus EEOC*, 434 US

18  412, 422.  The bad motive and the animosity just shows the

19  Court why they did what they did.

20     And I think the testimony's been pretty clear today

21  that Stella Morrison had a political animus against

22  Judge Walker.  She used and cited this case to whip up

23  political support for her campaign; first time I've ever seen

24  that.

25     During the pendency of this case, Mr. Morgan paid for

1    an article to be published, or he issued a rally and invited

2    Quanell X to come to the rally.  He did now show by the way.

3    But John Gripping was there, and Mr. Morgan showed up to the

4    rally while this case was pending.

5            And these things go beyond the fact that this case

6    was brought just without foundation.  What we established today

7    was lack of any foundation.

8            We established that Ms. Morrison claims to have a

9    memory problem, and now doesn't seem to have a memory problem.

10   What we've established today is that there was a two-hour

11   interview -- or excuse me -- two day interview, where

12   apparently very little was learned about the fabrication of

13   false perjury charges.

14           Wouldn't it be better, Your Honor, to wait until they

15   know what they're suing on?  The theory -- as you know, I

16   normally practice as a plaintiff's attorney.  I don't normally,

17   in a case involving -- like a 1983 case, get to file the

18   lawsuit and then hope that the defendant makes my case for me.

19           That's not the way the system works.  That was done

20   here.  I think Mr. Morgan was clouded in his pursuit against

21   Judge Walker; and we all know why; I won't go into it.

22           I think Mr. Morgan had terrible information from

23   Philip Klein about shanking in prison and other information.  I

24   didn't even get into all the other times Philip Klein fed

25   terrible information to him.

1        I think John Morgan was taken advantage of frankly.

2   And I think he was taken advantage of, and this is the result;

3   five years of litigation, and the complaints and pleadings that

4   then smeared in the public domain to do nothing but defame and

5   harass Judge Walker and anyone who stands next to him.

6        I don't care so much about me.  It's Judge Walker.

7   At some point, after all of these lawsuits filed by John Morgan

8   are thrown out, Judge Giblin, at some point, some court,

9   somewhere, please, has to make the pronouncement that what they

10  said was false, what they did was wrong, and it's not going to

11  happen in my courtroom.

12       Until that happens, Judge, I will continue to

13  represent Judge Walker until my ponytail falls off.  Because in

14  all candor, it's not going to stop until a judge has the

15  fortitude to stop it.  And that's what we're asking the Court

16  to do, Your Honor.

17       **THE COURT:**  Mr. Sparks, isn't the seminal issue in

18  this case as far as attorney's fees, whether the case -- I know

19  about the bad faith between the parties.  I've lived here all

20  my life, and I've heard the evidence.

21       Isn't the seminal issue in this case of whether or

22  not -- or the _Ballard_ factors, whether or not Mr. Morgan or --

23  whether or not Mr. Morgan somehow realized that Ms. Morrison's

24  case did not fit the _Ballard_ factors, and therefore, official

25  immunity didn't apply?

1          **MR. SPARKS:**  It is.  I think the _Ballard_ factors

2    should be the focus, because John's a very intelligent lawyer;

3    he put that in his complaint; he talked about it in his

4    complaint.

5          And if you look at the _Ballard_ factors, Your Honor,

6    at the inception of this case, they didn't have the answers to

7    any of those questions related to the fabrication of perjury

8    charges.  And that's why Judge Hawthorne issued the order in

9    that clip, note 5, page 6, 6 I think, saying, guys, you need to

10    answer these questions.

11          Well, that's almost eight, nine months into the --

12    seven, eight months into the lawsuit, Your Honor.  And it's --

13    and even at that point, it was still six more months, still six

14    more months.

15          And I don't it's because John's a bad lawyer; I think

16    that he was clouded with his anger, which he admitted on the

17    stand originally, he had anger against Judge Hawthorne.  And I

18    think I respect --

19          **MR. MORGAN:**  Excuse me, Judge Walker, not Judge --

20          **MR. SPARKS:**  Oh, not --

21          **MR. MORGAN:**  -- Hawthorne.

22          **MR. SPARKS:**  -- Judge Hawthorne.  No, not

23    Judge Hawthorne, Judge Walker.

24          **THE COURT:**  Yeah, let's make that clear.

25          **MR. SPARKS:**  Yeah.  So, you know, I mean that's the

1  problem, Your Honor, is I'm not even sure Mr. Morgan should

2  have taken this case.

3           THE COURT:  What about the -- I find it interesting,

4  because I looked at *Adams* and I looked at *Harper*, and you know,

5  I guess the notation by the Fifth Circuit that *Harper* was a

6  case that is only limited to its facts and is almost non-

7  precedential.

8           What about the argument that he made that --

9  regarding that case not being overturned?  He looks at --

10          MR. SPARKS:  Sure.

11          THE COURT:  -- that case and he feels that he can sue

12  Judge Walker on these things because judicial immunity --

13  absolute immunity doesn't apply.

14          MR. SPARKS:  On what facts?  And that's why I was

15  trying to make the point, if you're going to ride that sick

16  horse into town, you'd better have a strong sidearm; you better

17  have some good facts if you're going to limp in on *Harper*

18  *versus Merkle*.

19          That would be the analysis, I think, that a lawyer

20  who wasn't clouded by anger would make.  Look, this is a

21  longshot, Ms. Morrison; tell me specifically what happened.

22          That's how I'd do it.  And frankly, that's how

23  Mr. Morgan normally does it.

24          THE COURT:  Okay, so let me follow you.  So -- and

25  I'm being the devil's advocate here.

1          **MR. SPARKS:**  Yes, sir.

2          **THE COURT:**  She comes into Morgan's office.  She says

3  that -- I'll just pick one -- she says that he's filed

4  continued grievances against me, and he did it because of race

5  or he's mad at me or whatever.

6          What else can he do, or what else can a lawyer do, to

7  substantiate that, and then reading *Harper*, go where judicial

8  immunity might not apply -- misreading *Harper*, I guess is what

9  I'm saying?  Talk to me about that.

10         **MR. SPARKS:**  What else could John -- excuse me --

11  Mr. Morgan have done when she's in his office?

12         **THE COURT:**  Well, I mean what else can you do --

13  you've got a bunch of grievances.  I'm asking what would you

14  do?  I mean I'm just --

15         **MR. SPARKS:**  You know, I've actually had people come

16  to me with fights against lawyers and doctors.  And I did a lot

17  med mal against doctors too.

18         And I would tell them, look, just because there's a

19  complaint filed against you doesn't make it a negligence case.

20  That's where I'm getting that from --

21         **THE COURT:**  Right.

22         **MR. SPARKS:**  -- because med mal, I needed --

23         **THE COURT:**  Right.

24         **MR. SPARKS:**  -- serious damages and that kind of

25  stuff.

1    **THE COURT:**  Right.

2    **MR. SPARKS:**  And I'd tell them, you need to go talk

3  to the American Medical Association, the Medical Board in

4  Texas.  That's where you need to have this fight, not in a

5  courtroom; and frankly, because I know I'm going to have to

6  invest a significant amount of money in the case.

7    **THE COURT:**  Right.

8    **MR. SPARKS:**  So the problem here is they -- she moved

9  her fight into a -- she's trying to jam the round thing into

10  the square peg; and it doesn't fit.  And it was Mr. Morgan's

11  responsibility to say, hey, that's a round thing; this 1983

12  case is a square peg; you're not -- it doesn't fit.

13    **THE COURT:**  What is -- I understand your argument.

14    **MR. SPARKS:**  And may I say one more thing?

15    **THE COURT:**  You may.

16    **MR. SPARKS:**  She wasn't getting any relief from the

17  grievances she was filing.  And so I understand why she got

18  frustrated; I understand why she got upset.

19    **THE COURT:**  Ms. Morrison, do you need to stand up, or

20  do you need to go outside, or --

21    **THE PLAINTIFF:**  I have to go (indiscernible)

22    **THE COURT:**  Okay.

23    **THE PLAINTIFF:**  (Indiscernible)

24    **THE COURT:**  We got somebody -- go ahead, Mr. Sparks.

25    **MR. SPARKS:**  So since she wasn't getting relief, she

1    somehow or another found Mr. Morgan; I didn't inquire into

2    that.  And they both have animosity towards Judge Walker;

3    that's undisputed.

4          **THE COURT:**  It is undisputed.

5          **MR. SPARKS:**  And so it goes back to, well, what's

6    John to do?  Well, he's in -- let's say he's in his office with

7    Stella Morrison.  He's to have a moment of clarity and say,

8    I've got a woman in here who clearly has animosity towards

9    Judge Walker; I am angry at Judge Walker; maybe I need to

10   bounce this off someone else before I haul off and file it.

11         And worse than that, she's having memory problems and

12   not being able to state clearly what the heck they're suing

13   about.  It's a risky -- and John's very good in Federal Court.

14   He's very intelligent.

15         And he knows I have respect for him in that way.

16   He's a very intelligent lawyer.  It's Federal Court.  I mean --

17   I don't want to say you can get away with it in State Court,

18   but it's a little bit different when you file these things in

19   Federal Court, Your Honor.

20         **THE COURT:**  Right, you're right.

21         **MR. SPARKS:**  And I have to come back to -- and I'm

22   sincere; it has to end.  We really -- we just want it to stop.

23   And it's not going to until a court makes it stop, Judge.

24         It's just -- I know I'm never going to have to stop

25   doing this.  And I'm not going to stop doing it.  I'm not going

1    to stop defending him.

2            **THE COURT:**  Thank you, Mr. Sparks.

3            Mr. Morgan, five minutes.

4        **MR. MORGAN:**  I want to start with this, Your Honor.

5    I've turned down four other cases against Layne Walker.  The

6    only one I have left is the Hartman case.

7            The two that I filed, one of them I did dismiss.  I

8    was a pro se plaintiff.  This case I lost; Hartman I did not

9    lose.  The Ninth Court of Appeals rejected the defense of

10   judicial immunity on the tort claims.

11           The Fifth Circuit ruled that the constitutional

12   claims didn't cut the mustard; but the case proceeds.  So this

13   statement of he'll never stop is not fair or accurate.

14           Now, second thing, you are being asked to punish me,

15   when Mr. Sparks was in the same situation I'm in.  Mark is a

16   very intelligent attorney.  No doubt we respect each other's

17   ability.

18           I know his work and style; he knows mine.  He has a

19   close relationship with Layne Walker, Judge Walker.  He didn't

20   know the true facts either.

21           He told you when I learned I sent it to you.  And I

22   objected, because I had to, because it wasn't authenticated.

23           **THE COURT:**  But he's not the one who filed the

24   lawsuit.

25           **MR. MORGAN:**  Well, yes, sir.  But the point is

1    this --

2              **THE COURT:**  And he's not the one that has to follow

3    Rule 11 obligations.

4              **MR. MORGAN:**  That's the point.

5              **THE COURT:**  No, that's not the point.  The point is,

6    is that you've got a duty early on to do investigation and to

7    file your case in good faith.  He has no duty at all when the

8    case is filed but to file an answer, right?

9              **MR. MORGAN:**  Well, yes, Your Honor.  But if he feels

10   that the facts are wrong, he certainly has a duty to bring it

11   up to me.  They didn't contest any other facts, except one.

12             **THE COURT:**  Okay.

13             **MR. MORGAN:**  The only fact they contested is where

14   was Ms. Morrison when this occurred.  The only material fact

15   that I got wrong was where she was.

16             And upon learning that fact, I dismissed the case.

17   Mr. Sparks could have -- and I'm not attacking his legal work

18   in any way -- filed a motion for a more definite statement.

19             When someone files a -- when there's a 12(b)(6)

20   proceeding, I can't take discovery.  There's no way that any

21   allegation in a section 1983 case are going to be 100 percent

22   accurate without discovery.

23             Now, let's go on.  The case law addresses this issue.

24   First of all, under 28 U.S.C. Section 1927, they seek sanctions

25   under that, you have to show that I, "intentionally multiplied

1   the proceedings by filing multiple cases".

2          The biggest one is the *Wessolet* (phonetic) case from

3   Judge Sim Lake, where the plaintiff's lawyer lost in Federal

4   Court, filed again, and then filed again in State Court, and

5   then filed again in Federal Court, all the same, all barred by

6   res judicata; he just kept going.

7          I didn't file Ms. Morrison's separate complaint

8   against -- in State Court.  I stayed with this to the end.

9   Now, if you go to 1988, one of the most important cases Section

10  1988 sanctioned that Mr. Sparks relies on is the *De Leon*

11  (phonetic) case.

12         The *De Leon* case was a prisoner sued a municipal

13  judge for incarcerating her after the judge adjudicated

14  misdemeanor violations.  So what the prisoner sued under

15  *De Leon* was I don't like your ruling.

16         I didn't do that with her.  Now, *Harper versus*

17  *Merkel*, again, the Fifth Circuit could have overruled it; but

18  they still didn't.  And I took great care in my pleadings of

19  demonstrating how it fit within *Harper versus Merkel*.

20         And I remind the Court, *Forrester versus White*, the

21  US Supreme Court, *Forrester versus White* specifically says,

22  judicial immunity is only for judicial acts.

23         And nonjudicial acts include one, selecting jurors

24  for the counties' courts -- that occurs in the courtroom --

25  two, promulgating and enforcing a code of conduct for

1   attorneys, three, making personnel decisions regarding court

2   employees and officers.

3         A fair reading of the *Forrester* case is that these

4   actions if shown to be racist support a 1981 cause of action.

5   And I did plead a prima facie case under 1981.

6         No disrespect to Judge Hawthorne or the Fifth

7   Circuit, because the Fifth Circuit's opinion was per curiam.

8   No one to date has explained to me how I couldn't proceed with

9   a Section 1981, at least on the issue of discovery.

10         Now, in terms of what could I have done to be more

11   accurate on the facts, again, I respectfully state to you, I

12   made a mistake on, one, I really thought I was right.

13         I was totally surprised, as Ms. Morrison stated; I

14   was almost flabbergasted.  How can you be in trial in two

15   courts at the same time?  And until she explained it to me, I

16   didn't know.

17         And when I learned, I complied with the rules.  Now,

18   again, there was -- if I say what did I do wrong?  I researched

19   the case.  I brought all the allegations in under case law.  I

20   cited it in my complaints.

21         I did put things in the first amended complaint I

22   shouldn't have; but they did the same, Your Honor.  Their first

23   motion to dismiss was a lengthy 35-page diatribe, which was

24   just thrown out and said, refile it, we're not going to have

25   it.

1          When Judge Hawthorne issued an advisory, I complied;

2     they did not.  The motions for sanctions contains five pages of

3     ad hominem irrelevant attacks.  Okay?

4          So the anger and hostility, in 2018 is gone from my

5     perspective.  And it may be gone from Mark's, I don't know --

6     Mr. Sparks'.  But the point is it was on both sides; and that's

7     unfortunate.

8          Now, I want to finish this off by reminding the Court

9     that if my recollection had been correct -- my understanding,

10    not recollection, my understanding that this had to come from

11    Judge Gist's court because she was in trial that day, then

12    under the *Ballard* factors, which puts in the situs test,

13    meaning where, clearly, there would have been no judicial

14    immunity.

15         Now, the argument under *Ballard* is that repetitive 10

16    to 20 grievances is not a normal judicial function.  That is a

17    basis and fact that *Forrester* supports.

18         So -- and the Fifth Circuit's decision in *Ballard*,

19    which controls, is more conservative than the US Supreme

20    Court's, I respectfully submit.  It's certainly more

21    conservative than the Texas Supreme Court's.

22         And that's why when the issue was raised, when

23    Ms. Morrison said, no, I was called simultaneously to trial in

24    Judge Walker's court, why did I feel I had to dismiss it?

25    Because at that point, it completely satisfied the situs test

1   under *Ballard*, meaning where did it occur, the site.

2           And that's why in -- unlike the other allegations, I

3   didn't think I could support it in good faith under *Ballard*.

4   But the rest of them, I still think I could, certainly the one

5   about the assault in the hallway.  There's -- *Ballard versus*

6   *Wall* says, judicial immunity occurs in the location if the

7   judge is doing a judicial act.

8           They focus on location; we know that.  I call it the

9   situs test.  They say the location is the courtroom and the

10  office; that's it.

11          There has been no case, Judge, that has ever extended

12  it to a hallway, none.  I checked every Circuit.  Mr. Sparks,

13  who's very thorough, couldn't find -- I couldn't -- it just

14  didn't exist like that.

15          So when you're looking at under 1927, did I

16  intentionally file multiple cases after I lost?  The answer is,

17  obviously not.  Under 1988, was the whole case frivolous

18  without a legal -- without a factual legal foundation?  The

19  answer was, it was not.

20          I lost this case.  I can tell you that I really

21  thought if I had had discovery, I would've been able to succeed

22  on some or all of the allegations.  I can't say without

23  discovery and after summary judgment which ones the Court may

24  have allowed me to have a jury charge on; I can't do that.

25          But I have obviously no animus against

1  Judge Hawthorne, and obviously no animus against you or the

2  Fifth Circuit.  I evaluated whether to apply for writ of

3  certiorari.  And I was frustrated because had the Fifth Circuit

4  given me a written opinion instead of a per curiam, I could've

5  gone to the US Supreme Court and say, look, look at the

6  differences in the law here.

7          But without that opportunity, as I explained to

8  Ms. Morrison, I wasn't able to take it up.  So it is where it

9  is; the case is over.  And I appreciate the Court listening to

10  me.  Is there any questions that Your Honor has?

11          **THE COURT:**  I don't have any other questions.

12          **MR. MORGAN:**  I do have to say one thing -- and Your

13  Honor is free to say no, but I'm required to ask --

14  Ms. Morrison stated she wants to address the Court.  That's up

15  to Your Honor.  I am her attorney.  That's up to Your Honor to

16  decide yes or no.

17          **THE COURT:**  I'm not going to let the parties -- it's

18  a late time in the evening.  I got people on overtime.  I'm not

19  going to let either party make a statement.  That's what they

20  have lawyers for.

21          **MR. MORGAN:**  Yes, sir, understood.  I just had to

22  make the request.

23          **THE COURT:**  Thank you so much.

24          **MR. MORGAN:**  Thank you.

25          **THE COURT:**  Yes, sir?

1          **MR. SPARKS:**  I just -- Your Honor, let me go to the

2     podium.

3          **THE COURT:**  Mr. Sparks, I'm not going to have any

4     more argument.  Okay.  Both sides got a shot.  Okay.  All

5     right, I'll take the case under advisement.  Thank you,

6     gentlemen.

7          **THE MARSHAL:**  All rise.

8          **THE COURT:**  Thank you.  The Court's in recess.

9        **(Proceeding adjourned at 5:26 p.m.)**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION


I certify that the foregoing is a correct transcript from the
electronic sound recording of the proceedings in the above-
entitled matter.



_____          _July 11, 2018_


                    TONI HUDSON, TRANSCRIBER